# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
ANTHONY RAPP and C.D.,

|  | Index No.: | /20 |
|---|---|---|
|  | Date Filed: | /20 |

                      Plaintiffs,

       -against-

<u>SUMMONS</u>

Plaintiffs designates New
York County as the place of
trial.

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

Basis of Venue: CPLR 503(a)
County in which a substantial
part of the acts or omissions
giving rise to claim occurred.

                    .        Defendant.

-------------------------------------------------------------------X

TO THE ABOVE NAMED DEFENDANT:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the plaintiffs' attorneys within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: New York, New York
       September 8, 2020

                        Yours etc.,
                        GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
                        HERSHENHORN, STEIGMAN & MACKAUF
                        Attorneys for Plaintiffs

                        PETER J. SAGHIR
                        80 Pine Street, 34th Floor
                        New York, New York 10005
                        (212) 943-1090

TO:

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY
622 Ponte Villas North #1
Baltimore, Maryland 21230

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

ANTHONY RAPP and C.D.,

                                     Index No.

                   Plaintiffs,

            -against-                          <u>VERIFIED COMPLAINT</u>

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                           Defendant.
-----------------------------------------------------------------X

         Plaintiffs, complaining of defendant, by and through their attorneys, GAIR,

GAIR, CONASON, RUBINOWITZ, BLOOM, HERSHENHORN, STEIGMAN & MACKAUF,

respectfully show to this Court and allege as follows:

AS AND FOR A FIRST CAUSE OF ACTION
<u>ON BEHALF OF ANTHONY RAPP - ASSAULT</u>

         1.       Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY FOWLER, has also been known as KEVIN SPACEY (hereinafter "KEVIN

SPACEY").

         2.       Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY, was an actor and acting teacher.

         3.       That at all times herein mentioned, plaintiff, ANTHONY RAPP, was

under the age of 18 years.

         4.       In approximately 1986, plaintiff, ANTHONY RAPP, while performing on

Broadway in Precious Sons, met defendant, KEVIN SPACEY.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 4 of 126

5.      Thereafter, in approximately 1986, defendant, KEVIN SPACEY, was having a party at his home on the east side of Manhattan and invited plaintiff, ANTHONY RAPP, age 14, to the party.

6.      Plaintiff, ANTHONY RAPP, attended the party at defendant's home.

7.      While plaintiff was at the home of defendant, KEVIN SPACEY, defendant intentionally and voluntarily and without plaintiff's consent engaged in an unwanted sexual advance with a 14 year old and grabbed then infant plaintiff, ANTHONY RAPP's, buttocks, lifted him onto a bed and laid on plaintiff's body.

8.      Prior to touching plaintiff's body and buttocks, defendant, KEVIN SPACEY, through his words and acts, intentionally caused the plaintiff, ANTHONY RAPP, to become apprehensive that a harmful and/or offensive bodily contact was about to occur.

9.      As a result of the forgoing conduct, plaintiff was forced to extricate himself and, fearing for his safety, ran into the bathroom of defendant's apartment.

10.     After spending a few minutes in the bathroom, plaintiff left and went for the door of the apartment when defendant, KEVIN SPACEY, tried to persuade plaintiff to stay but plaintiff refused and quickly left the defendant's apartment.

11.     By reason of the foregoing, plaintiff, ANTHONY RAPP, sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, ANTHONY RAPP, has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

12.   That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

13.   That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

14.   It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

### AS AND FOR A SECOND CAUSE OF ACTION
### ON BEHALF OF ANTHONY RAPP – BATTERY

15.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of this complaint marked "1" through "14" inclusive, with the same force and effect as if fully set forth at length herein.

16.   Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY, intentionally touched plaintiff ANTHONY RAPP's buttocks and body without plaintiff's consent and in doing so caused plaintiff to suffer an offensive bodily contact.

17.   In, among other things, touching the then 14 year old plaintiff's buttocks, the aforesaid abuse constituted a sexual offense as defined in article one hundred thirty of the penal law, committed against such person who was less than eighteen years of age, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age.

18.   By reason of the foregoing, plaintiff, ANTHONY RAPP, sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; and has been caused to suffer

Case 1:20-cv-09586-LAK    Document 1-1    Filed 11/13/20    Page 6 of 126

mental anguish, emotional and psychological damage as a result thereof, and, upon information

and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff,

ANTHONY RAPP, has been forced to abstain from the duties of his vocation, and has and/or

will become obligated to expend sums of money for medical expenses.

19.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and

exemplary damages.

20.     That the amount of damages sought exceeds the jurisdictional limits of all lower

courts that would otherwise have jurisdiction.

21.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is

exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided

in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7)

(recklessness).

AS AND FOR A THIRD CAUSE OF ACTION
ON BEHALF OF ANTHONY RAPP -
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

22.     The plaintiff repeats, reiterates, and realleges each and every allegation contained

in those paragraphs of this complaint marked "1" through "21" inclusive, with the same force

and effect as if fully set forth at length herein.

23.     Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY's conduct toward plaintiff, ANTHONY RAPP, who was a minor, was so

shocking and outrageous that it exceeded all reasonable bounds of decency.

24.     Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY, acted recklessly toward the then minor plaintiff and with utter disregard of the

consequences that might follow.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 7 of 126

25.     By reason of the foregoing, plaintiff, ANTHONY RAPP, sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, ANTHONY RAPP, has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

26.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

27.     That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

28.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

### AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF C.D. – ASSAULT

29.     The plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of this complaint marked "1" through "28" inclusive, with the same force and effect as if fully set forth at length herein.

30.     That at all times herein mentioned, plaintiff, C.D., was a minor under the age of 18 years.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 8 of 126

31.     In approximately 1981, plaintiff, C.D., who was approximately 12 years old, met defendant, KEVIN SPACEY, who was teaching an acting class in Westchester County, New York. Plaintiff, C.D. at the time was an acting student in the class.

32.     Thereafter, when plaintiff, C.D., was approximately 14 years old, plaintiff happened to meet defendant, KEVIN SPACEY, in New York City, and SPACEY invited the then minor plaintiff, C.D., to his apartment.

33.     The plaintiff, C.D., went to defendant KEVIN SPACEY's apartment where defendant SPACEY engaged in sexual acts with the plaintiff, C.D., while the plaintiff was 14 years old, including, but not limited to, the infant plaintiff performing anal intercourse on defendant SPACEY and oral sex.

34.     The defendant, KEVIN SPACEY, continued to engage in sexual acts on different occasions with the plaintiff, C.D., while plaintiff was approximately 14 years old.

35.     During the final sexual encounter, the defendant, KEVIN SPACEY, for the first time, attempted to anally sodomize the plaintiff, C.D., who was then a minor. The plaintiff, C.D., resisted and said "No" multiple times, but the defendant, KEVIN SPACEY, continued to attempt to anally sodomize the infant plaintiff despite the plaintiff's verbal and physical resistance.

36.     The infant plaintiff was able to free himself from defendant, KEVIN SPACEY, and fled the defendant's apartment.

37.     Prior to intentionally and voluntarily attempting to anally sodomize the plaintiff, defendant, KEVIN SPACEY, through his words and acts, intentionally caused the plaintiff, C.D., to become apprehensive that a harmful and/or offensive bodily contact was about to occur.

Case 1:20-cv-09586-LAK    Document 1-1    Filed 11/13/20    Page 9 of 126

38.     By reason of the foregoing, plaintiff, C.D., sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; certain internal injuries; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, C.D., has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

39.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

40.     That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

41.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF C.D. - BATTERY

42.     The plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of this complaint marked "1" through "41" inclusive, with the same force and effect as if fully set forth at length herein.

43.     Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY, intentionally and voluntarily engaged in sexual acts and attempted to sodomize plaintiff, C.D., without plaintiff's consent, while plaintiff was approximately 14 years old, and in doing so caused plaintiff to suffer an offensive bodily contact.

44.     The aforesaid abuse constituted attempted rape and a sexual offense as defined in article one hundred thirty of the penal law, committed against such person who was less than eighteen years of age, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age.

45.     By reason of the foregoing, plaintiff, C.D., sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; certain internal injuries; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, C.D., has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

46.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

47.     That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

48.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

AS AND FOR A SIXTH CAUSE OF ACTION
ON BEHALF OF C.D. -
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49.     The plaintiff repeats, reiterates, and realleges each and every allegation contained

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 11 of 126

in those paragraphs of this complaint marked "1" through "48" inclusive, with the same force and effect as if fully set forth at length herein.

50.      Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY's conduct toward plaintiff, C.D., who was a minor, in engaging in sexual acts with and in attempting to sodomize the then minor plaintiff, was so shocking and outrageous that it exceeded all reasonable bounds of decency.

51.      Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY, acted recklessly toward the then minor plaintiff and with utter disregard of the consequences that might follow.

52.      By reason of the foregoing, plaintiff, C.D., sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; certain internal injuries; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, C.D., has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

53.      That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

54.      That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

55.      It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided

in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7)

(recklessness).

WHEREFORE, the plaintiffs demand judgment against the defendant in the first, second,

third, fourth, fifth, and sixth causes of action for compensatory and punitive damages, together

with the interest, costs, and disbursements pursuant to the causes of action herein.

Dated: New York, NY
       September 8, 2020

Yours etc.,
GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
Attorneys for Plaintiffs

PETER J. SAGHIR
80 Pine Street, 34th Floor
New York, New York 10005
(212) 943-1090

STATE OF NEW YORK     )
                         )     ss.:
COUNTY OF NEW YORK   )

ANTHONY RAPP, being duly sworn, deposes and says:

       I am one of the plaintiffs in the within action; I have read the foregoing VERIFIED

COMPLAINT and know the contents thereof; that the same is true to my own knowledge, except

as to the matters therein stated to be alleged on information and belief, and as to those matters, I

believe them to be true.

ANTHONY RAPP

Sworn to before me this
8th day of September 2020

Notary Public

RICH MOORE
NOTARY PUBLIC, State of New York
No. 01MO6012017
Qualified in Suffolk County
Commission Expires August 17, 20 2 2

# Exhibit B

At Part _____ of the Supreme Court
of the State of New York, held in
and for the County of New York,
held at the Courthouse, 60 Centre,
New York, NY 10007, on the
_____ day of _____, 2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------------X
ANTHONY RAPP and C.D.,                                    Index No.: _____ /20

                              Plaintiff,

                                                          ORDER TO SHOW CAUSE
            -against-                                     FOR LEAVE TO FILE A
                                                          CIVIL ACTION UNDER
KEVIN SPACEY FOWLER, a/k/a, KEVIN SPACEY,                 THE *CHILD VICTIMS ACT*
                                                          USING A PSEUDONYM

                              Defendant.
-------------------------------------------------------------------------------X

        Upon reading and filing the Affirmation of Peter J. Saghir, Esq., sworn to on the 8th day

of September 2020, it is hereby

        **ORDERED** that Defendants show cause at a Special Term of this Court to be held at

_____, on the _____ day of

_____, 2020, at _____ o'clock in the _____ or as soon as counsel may be

heard why an Order should not be made:

        1.      Deeming plaintiff's use of the pseudonym, "C.D.," and the caption "ANTHONY

RAPP and C.D. v. KEVIN SPACEY FOWLER, a/k/a, KEVIN SPACEY" to be proper;

        2.      Permitting Plaintiff to proceed in this action under the pseudonym "C.D." and

with the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN

SPACEY;"

        3.      Directing that the parties, their attorneys, and agents refrain from publishing

plaintiff's true identity; and

      4.      Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to the plaintiff by the pseudonym, "C.D." and bear the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY" and directing the County Clerk to enter and record all papers in the action under the title "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY;" and

      5.      Granting such other and further relief as may be just and proper; and it is further

      **ORDERED** that Plaintiff is permitted as interim relief to maintain the above pseudonym caption pending a hearing on this Order to Show Cause; and it is further

      **ORDERED** that sufficient cause appearing therefore, let service upon defendant of a copy of this Order, together with the papers upon which this Order is granted, and the Summons and Verified Complaint, on or before the _____ day of _____ 2020, be deemed good and sufficient service. An affidavit or other proof of service shall be presented to this Court on the return date directed in this Order.

Dated: New York, NY
      September _____, 2020

                           **ENTER**:

                           _____

                           Hon. _____ J.S.C.

TO:
      KEVIN SPACEY FOWLER
      622 Ponte Villas North #1
      Baltimore, Maryland 21230

# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------------X
ANTHONY RAPP and C.D.,                                                    Index No.: _____ /20

                              Plaintiffs,

                                                                                         PETITION IN SUPPORT
                    -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                              Defendants.
--------------------------------------------------------------------------------X

        PETER J. SAGHIR, an attorney duly licensed to practice law in the State of New

York, hereby affirms under penalty of perjury pursuant to CPLR 2106 as follows:

        1.        I am a member of the firm of GAIR, GAIR, CONASON, RUBINOWITZ,

BLOOM, HERSHENHORN, STEIGMAN & MACKAUF, attorneys for the plaintiffs herein,

and am fully familiar with all of the facts, circumstances, pleadings, and proceedings pertaining

to this litigation.

        2.        This Petition is submitted in support of the prefixed Order to Show Cause, which

seeks an Order:

        a. Deeming plaintiff's use of the pseudonym, "C.D.," and the caption "ANTHONY
           RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY," to be
           proper;

        b. Permitting plaintiff to proceed in this action under the pseudonym "C.D." and
           with the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER
           a/k/a KEVIN SPACEY;"

        c. Directing that the parties, their attorneys, and agents refrain from publishing
           plaintiff's true identity;

        d. Directing that all papers filed in this action, and all judgments, orders, decisions,
           notices to the Court and any other document relating to the action refer to the
           plaintiff by the pseudonym, "C.D." and bear the caption "ANTHONY RAPP and
           C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY," and directing the
           County Clerk to enter and record all papers in the action under the title

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 19 of 126

"ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY;" and

e.   Granting such other and further relief as may be just and proper.

Allowing plaintiff to proceed under an anonymous caption will spare plaintiff from the potential embarrassment and stigmatization that may arise if this matter is tried in a public forum.

## BACKGROUND INFORMATION

3.     On September 3, 2020 plaintiff, C.D., filed a Summons and Verified Complaint pursuant to New York State's Child Victims Act ("CVA") (CPLR § 214-g. Certain child sexual abuse cases). The following, non-governmental institutions and individuals are named in the complaint: KEVIN SPACEY FOWLER (Exhibit A: Summons and Verified Complaint). In the complaint, plaintiff alleges that, "The plaintiff, C.D., went to defendant KEVIN SPACEY's apartment where defendant SPACEY engaged in sexual acts with the plaintiff, C.D., while the plaintiff was 14 years old, including, but not limited to, the infant plaintiff performing anal intercourse on defendant SPACEY and oral sex" (Exhibit A: Summons and Complaint at ¶33). Plaintiff C.D. further alleges that, as a result of the sexual abuse physical and psychological injuries were suffered, including but not limited to, "severe emotional distress, humiliation, fright, anger, depression and anxiety" (Exhibit A: Summons and Complaint at ¶38).

4.     Courts must use their discretion when determining whether to grant a party's request to proceed under an anonymous caption. In making this determination the Court needs to balance a plaintiff's privacy interests with the presumption of open trials and any potential prejudice to defendants (*ARK61 DOE v. Archdiocese of New York*, 2019 Misc. LEXIS 6035 at 4 [Sup. Ct. Bronx County Nov. 4, 2019]; *see also Anonymous v. Lerner*, 124 A.D.3d 487, 487 [1st Dept. 2015]).

5.     Plaintiff's privacy interest is strong. The present matter, involving the sexual

2

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 20 of 126

abuse of a minor child, is of the utmost sensitive nature. Were plaintiff to use their name in this

delicate matter, they are likely to be subject to "stigmatization and potential embarrassment,"

(*Ark61 DOE* at 1). The consequences to a victim of revealing abuse are real. There is a real

"fear of losing their job, fear they won't find another job, fear they will be passed over for a

promotion, fear of losing their credibility, fear of being branded a troublemaker, fear of being

blackballed in their industry, fear of their physical safety," (Exhibit B: Beverly Engel L.M.F.T.

*Why Don't Victims of Sexual Harassment Come Forward Sooner?*, PSYCHOLOGY TODAY, Nov.

16, 2017, https://www.psychologytoday.com/us/blog/the-compassion-chronicles/201711/why-

dont-victims-sexual-harassment-come-forward-sooner). Moreover, the passage of the Child

Victims Act has led to increased media attention of sexual abuse cases (*Id.* at 2). This media

attention is only heightened by the "Me Too" movement, as a result of which thousands of

people have come forward to reveal that they were sexually abused in their lives. If plaintiff

were subject to this heightened attention, a chilling effect may occur that dissuades plaintiff and

other similarly situated individuals from coming forward (*ARK DOE61* at 2).

      6.     Moreover, the risk of prejudice to the defendants in this matter is non-existent.

Plaintiff consents to sharing details about his identity with the defendant so that defendant's due

process rights are not violated. Plaintiff will share all details of his identity in a manner that is

consistent with Case Management Order No. 1, Paragraph 3, which was issued by the Honorable

George J. Silver as part of the *In re: CHILD VICTIMS ACT NYC LITIGATION* on February 24,

2020 (Exhibit C: Case Management Order No. 1).

## **FACTORS TO CONSIDER**

      7.     There are several factors Courts must weigh when considering the use of a

pseudonym. They are:

3

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 21 of 126

"whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend litigation or is to preserve privacy in a manner of a sensitive and highly personal nature; whether the party seeking anonymity has an illegitimate ulterior motive; the extent to which the identity of the litigant has been kept confidential; whether identification poses a risk of mental or physical harm, harassment, ridicule or personal embarrassment; whether the case involves information of the utmost intimacy; whether the action is against a governmental entity; the magnitude of the public interest in maintaining confidentiality or knowing the party's identity; whether revealing the identity of the party will dissuade the party from bringing the lawsuit; whether the opposition to anonymity has an illegitimate basis; and whether the other side will be prejudiced by use of the pseudonym,"

(*Doe v. Szul Jewelry, Inc.*, 2008 N.Y. Misc. LEXIS 8733 at 16-17 [Sup. Ct. New York County May 18, 2008] [internal citations omitted]).

A review of these factors below shows that plaintiff in this matter will be extremely prejudiced if forced to use his name in this litigation, whereas there is no prejudice to defendant if plaintiff uses a pseudonym.

8.      The first factor is whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature.  There is no doubt that the potential media attention, embarrassment, and stigmatization plaintiff seeks to avoid goes beyond the traditional minor annoyance and criticism that is part and parcel of any litigation.  Plaintiff seeks to preserve his privacy in a deeply personal matter concerning sexual assault that occurred when plaintiff was a minor.

9.      The second factor is whether the party seeking the anonymity has an illegitimate ulterior motive.  Plaintiff has no reason to proceed under an anonymous caption other than to protect his privacy and avoid the consequence of revealing that he is a victim of sexual abuse.

10.     The third factor is the extent to which the identity of the litigant has been kept confidential.  Plaintiff C.D. has not gone public and revealed his name to any media outlets or

4

social media channels with the fact that he was sexually abused as a minor, nor does plaintiff ever intend to do so.

11.     The fourth factor is whether identification poses a risk of mental or physical harm, harassment, ridicule or personal embarrassment.  As part of his complaint, plaintiff C.D. asserts that he suffered severe emotional distress, humiliation, fright, anger, depression and anxiety" (Exhibit A: Summons and Complaint at ¶38). There is no doubt that revealing his identity to the public will heighten this mental distress.  Moreover, when victims of sexual abuse reveal their identity they often suffer from online abuse and harassment, and their physical safety is threatened by internet trolls.  Plaintiff may suffer these consequences if his identity is revealed.

12.     The fifth factor is whether the case involves information of the utmost intimacy. Plaintiff is alleging he was sexually abused as a minor.  There is possibly no case involving more sensitive information than one involving the sexual abuse of a child.

13.     The sixth factor is whether the action is against a governmental entity.  The named defendant in the Verified Complaint is KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY (Exhibit A: Summons and Verified Complaint).  No defendant is a governmental entity. As such, this is not a factor that "would mitigate in favor of the public's right to know," *ARK61 DOE* at 6.

14.     The seventh factor is the magnitude of the public interest in maintaining confidentiality or knowing the party's identity.  Plaintiff, C.D., is not an individual in the public eye and does not have a public persona.  There is no public interest in revealing plaintiff's identity.  However, maintaining confidentiality is of the public interest, as discussed *infra*.

15.     The eighth factor is whether revealing the identity of the party will dissuade the party from bringing the lawsuit.  There is no doubt that plaintiff, and similarly situated

5

plaintiff's complaint is insufficient and that the defendant is unable to adequately prepare a

defense to the case.

20.     While open access to civil proceedings ensures "that the proceedings are

conducted efficiently, honestly and fairly" and is a "bright light cast upon the judicial process,"

constitutionally required access to the courts can be observed while also restricting access to

sensitive information, such as the name of a sexual abuse victim (*ARK61 DOE* at 4). This is

particularly the case here, where plaintiff agrees to share details of their identity that are

consistent with Case Management Order No. 1 issued *In re: CHILD VICTIMS ACT NYC*

*LITIGATION* on February 24, 2020.


## CONCLUSION

21.     It is clear that plaintiff's privacy interest in this matter outweighs any potential

prejudice that defendant may suffer if plaintiff were allowed to proceed under an anonymous

caption. Indeed, there is no identifiable prejudice that defendant will suffer.  Plaintiff is simply

asking the defendant not to reveal any personal information publicly, which, "has been notably

accepted in the lion share of CVA cases before this court," (*ARK61 DOE* at 5).

WHEREFORE, it is respectfully requested that this Court sign the prefixed Order to

Show Cause directing defendant, KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY, to show

cause why the following is improper:

        a.  Deeming plaintiff's use of the pseudonym, "C.D.," and the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY," to be proper;

        b.  Permitting plaintiff to proceed in this action under the pseudonym "C.D." and with the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY;"

7

c. Directing that the parties, their attorneys, and agents refrain from publishing plaintiff's true identity;

d. Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to the plaintiff by the pseudonym, "C.D." and bear the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY," and directing the County Clerk to enter and record all papers in the action under the title "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY;" and

e. Granting such other and further relief as may be just and proper.

Dated: New York, NY
        September 8, 2020

PETER J. SAGHIR

8

# Exhibit D

# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
ANTHONY RAPP and C.D.,

                                 Plaintiffs,

             -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                           Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| Index No.: | /20 |
| Date Filed: | /20 |

<u>SUMMONS</u>

Plaintiffs designates New York County as the place of trial.

Basis of Venue: CPLR 503(a) County in which a substantial part of the acts or omissions giving rise to claim occurred.

TO THE ABOVE NAMED DEFENDANT:

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
        September 8, 2020

                                   Yours etc.,
                                    GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
                                    HERSHENHORN, STEIGMAN & MACKAUF
                                    Attorneys for Plaintiffs

                                    PETER J. SAGHIR
                                    80 Pine Street, 34th Floor
                                    New York, New York 10005
                                    (212) 943-1090

TO:

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY
622 Ponte Villas North #1
Baltimore, Maryland 21230

Case 1:20-cv-09586-LAK    Document 1-1    Filed 11/13/20    Page 29 of 126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

ANTHONY RAPP and C.D.,

               Plaintiffs,

            -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,


               Defendant.
-----------------------------------------------------------------X

Index No.

<u>VERIFIED COMPLAINT</u>

       Plaintiffs, complaining of defendant, by and through their attorneys, GAIR,

GAIR, CONASON, RUBINOWITZ, BLOOM, HERSHENHORN, STEIGMAN & MACKAUF,

respectfully show to this Court and allege as follows:

AS AND FOR A FIRST CAUSE OF ACTION<br><u>ON BEHALF OF ANTHONY RAPP - ASSAULT</u>

      1.     Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY FOWLER, has also been known as KEVIN SPACEY (hereinafter "KEVIN

SPACEY").

      2.     Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY, was an actor and acting teacher.

      3.     That at all times herein mentioned, plaintiff, ANTHONY RAPP, was

under the age of 18 years.

      4.     In approximately 1986, plaintiff, ANTHONY RAPP, while performing on

Broadway in Precious Sons, met defendant, KEVIN SPACEY.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 30 of 126

5.      Thereafter, in approximately 1986, defendant, KEVIN SPACEY, was having a party at his home on the east side of Manhattan and invited plaintiff, ANTHONY RAPP, age 14, to the party.

6.      Plaintiff, ANTHONY RAPP, attended the party at defendant's home.

7.      While plaintiff was at the home of defendant, KEVIN SPACEY, defendant intentionally and voluntarily and without plaintiff's consent engaged in an unwanted sexual advance with a 14 year old and grabbed then infant plaintiff, ANTHONY RAPP's, buttocks, lifted him onto a bed and laid on plaintiff's body.

8.      Prior to touching plaintiff's body and buttocks, defendant, KEVIN SPACEY, through his words and acts, intentionally caused the plaintiff, ANTHONY RAPP, to become apprehensive that a harmful and/or offensive bodily contact was about to occur.

9.      As a result of the forgoing conduct, plaintiff was forced to extricate himself and, fearing for his safety, ran into the bathroom of defendant's apartment.

10.     After spending a few minutes in the bathroom, plaintiff left and went for the door of the apartment when defendant, KEVIN SPACEY, tried to persuade plaintiff to stay but plaintiff refused and quickly left the defendant's apartment.

11.     By reason of the foregoing, plaintiff, ANTHONY RAPP, sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, ANTHONY RAPP, has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 31 of 126

12.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and

exemplary damages.

13.     That the amount of damages sought exceeds the jurisdictional limits of all lower

courts that would otherwise have jurisdiction.

14.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is

exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided

in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7)

(recklessness).

AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF ANTHONY RAPP – BATTERY

15.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

those paragraphs of this complaint marked "1" through "14" inclusive, with the same force and

effect as if fully set forth at length herein.

16.     Upon information and belief, that at all times herein mentioned, defendant,

KEVIN SPACEY, intentionally touched plaintiff ANTHONY RAPP's buttocks and body

without plaintiff's consent and in doing so caused plaintiff to suffer an offensive bodily contact.

17.     In, among other things, touching the then 14 year old plaintiff's buttocks, the

aforesaid abuse constituted a sexual offense as defined in article one hundred thirty of the penal

law, committed against such person who was less than eighteen years of age, or a predecessor

statute that prohibited such conduct at the time of the act, which conduct was committed against

such person who was less than eighteen years of age.

18.     By reason of the foregoing, plaintiff, ANTHONY RAPP, sustained psychological

injuries, including but not limited to, severe emotional distress, humiliation, fright, anger,

depression and anxiety; a severe shock to his nervous system; and has been caused to suffer

mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, ANTHONY RAPP, has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

19.    That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

20.    That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

21.    It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

AS AND FOR A THIRD CAUSE OF ACTION
ON BEHALF OF ANTHONY RAPP -
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

22.    The plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of this complaint marked "1" through "21" inclusive, with the same force and effect as if fully set forth at length herein.

23.    Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY's conduct toward plaintiff, ANTHONY RAPP, who was a minor, was so shocking and outrageous that it exceeded all reasonable bounds of decency.

24.    Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY, acted recklessly toward the then minor plaintiff and with utter disregard of the consequences that might follow.

25.    By reason of the foregoing, plaintiff, ANTHONY RAPP, sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, ANTHONY RAPP, has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

26.    That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

27.    That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

28.    It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

AS AND FOR A FOURTH CAUSE OF ACTION
ON BEHALF OF C.D. – ASSAULT

29.    The plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of this complaint marked "1" through "28" inclusive, with the same force and effect as if fully set forth at length herein.

30.    That at all times herein mentioned, plaintiff, C.D., was a minor under the age of 18 years.

31.     In approximately 1981, plaintiff, C.D., who was approximately 12 years old, met defendant, KEVIN SPACEY, who was teaching an acting class in Westchester County, New York.  Plaintiff, C.D. at the time was an acting student in the class.

32.     Thereafter, when plaintiff, C.D., was approximately 14 years old, plaintiff happened to meet defendant, KEVIN SPACEY, in New York City, and SPACEY invited the then minor plaintiff, C.D., to his apartment.

33.     The plaintiff, C.D., went to defendant KEVIN SPACEY's apartment where defendant SPACEY engaged in sexual acts with the plaintiff, C.D., while the plaintiff was 14 years old, including, but not limited to, the infant plaintiff performing anal intercourse on defendant SPACEY and oral sex.

34.     The defendant, KEVIN SPACEY, continued to engage in sexual acts on different occasions with the plaintiff, C.D., while plaintiff was approximately 14 years old.

35.     During the final sexual encounter, the defendant, KEVIN SPACEY, for the first time, attempted to anally sodomize the plaintiff, C.D., who was then a minor.  The plaintiff, C.D., resisted and said "No" multiple times, but the defendant, KEVIN SPACEY, continued to attempt to anally sodomize the infant plaintiff despite the plaintiff's verbal and physical resistance.

36.     The infant plaintiff was able to free himself from defendant, KEVIN SPACEY, and fled the defendant's apartment.

37.     Prior to intentionally and voluntarily attempting to anally sodomize the plaintiff, defendant, KEVIN SPACEY, through his words and acts, intentionally caused the plaintiff, C.D., to become apprehensive that a harmful and/or offensive bodily contact was about to occur.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 35 of 126

38.     By reason of the foregoing, plaintiff, C.D., sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; certain internal injuries; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, C.D., has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

39.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

40.     That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

41.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF C.D. - BATTERY

42.     The plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of this complaint marked "1" through "41" inclusive, with the same force and effect as if fully set forth at length herein.

43.     Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY, intentionally and voluntarily engaged in sexual acts and attempted to sodomize plaintiff, C.D., without plaintiff's consent, while plaintiff was approximately 14 years old, and in doing so caused plaintiff to suffer an offensive bodily contact.

Case 1:20-cv-09586-LAK    Document 1-1    Filed 11/13/20    Page 36 of 126

44.     The aforesaid abuse constituted attempted rape and a sexual offense as defined in article one hundred thirty of the penal law, committed against such person who was less than eighteen years of age, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age.

45.     By reason of the foregoing, plaintiff, C.D., sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; certain internal injuries; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, C.D., has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

46.     That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

47.     That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

48.     It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7) (recklessness).

AS AND FOR A SIXTH CAUSE OF ACTION
ON BEHALF OF C.D. -
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49.     The plaintiff repeats, reiterates, and realleges  each and every allegation contained

in those paragraphs of this complaint marked "1" through "48" inclusive, with the same force and effect as if fully set forth at length herein.

50.      Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY's conduct toward plaintiff, C.D., who was a minor, in engaging in sexual acts with and in attempting to sodomize the then minor plaintiff, was so shocking and outrageous that it exceeded all reasonable bounds of decency.

51.      Upon information and belief, that at all times herein mentioned, defendant, KEVIN SPACEY, acted recklessly toward the then minor plaintiff and with utter disregard of the consequences that might follow.

52.      By reason of the foregoing, plaintiff, C.D., sustained psychological injuries, including but not limited to, severe emotional distress, humiliation, fright, anger, depression and anxiety; a severe shock to his nervous system; certain internal injuries; and has been caused to suffer mental anguish, emotional and psychological damage as a result thereof, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature; and plaintiff, C.D., has been forced to abstain from the duties of his vocation, and has and/or will become obligated to expend sums of money for medical expenses.

53.      That by reason of the foregoing, defendant is liable to plaintiff for punitive and exemplary damages.

54.      That the amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

55.      It is hereby alleged pursuant to CPLR 1603 that the foregoing cause of action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 38 of 126

in CPLR 1602, including but not limited to CPLR 1602(5) (proof of intent) and 1602(7)

(recklessness).

WHEREFORE, the plaintiffs demand judgment against the defendant in the first, second,

third, fourth, fifth, and sixth causes of action for compensatory and punitive damages, together

with the interest, costs, and disbursements pursuant to the causes of action herein.

Dated: New York, NY
        September 8, 2020

Yours etc.,
GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
Attorneys for Plaintiffs

PETER J. SAGHIR
80 Pine Street, 34th Floor
New York, New York 10005
(212) 943-1090

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 39 of 126

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

ANTHONY RAPP, being duly sworn, deposes and says:

I am one of the plaintiffs in the within action; I have read the foregoing VERIFIED

COMPLAINT and know the contents thereof; that the same is true to my own knowledge, except

as to the matters therein stated to be alleged on information and belief, and as to those matters, I

believe them to be true.

_____
ANTHONY RAPP

Sworn to before me this
8th day of September 2020

_____
Notary Public

RICH MOORE
NOTARY PUBLIC, State of New York
No. 01MO6012017
Qualified in Suffolk County
Commission Expires August 17, 20 2 2

# Exhibit E

# EXHIBIT B

Case 1:20-cv-09586-LAK Document 1 filed 11/13/20 Page 42 of 126

US

Find a Therapist (City or Zip)

Verified by Psychology Today

 **Beverly Engel L.M.F.T.**
The Compassion Chronicles

EMBARRASSMENT

# Why Don't Victims of Sexual Harassment Come Forward Sooner?

These are eight reasons why victims of sexual harassment don't come forward.

Posted Nov 16, 2017

   💬 57



Source: AntonioGuillem/Shutterstock

People seem to ask this question every time a high-profile sexual harassment or assault case is reported. Cases like the recent article from Washington Post detailing allegations against Roy Moore, Alabama's Republican candidate for Senate, seems to have offered fresh opportunities to perpetuate victim blaming. It is amazing how many people shift the blame onto alleged victims, asking why they waited until now.

The Equal Employment Opportunity Commission reports receiving 12,000 allegations of sex-based harassment each year, with women accounting for about 83 percent of the complainants. That figure is believed to be just the tip of the iceberg. In a study issued last year, the co-chairwomen of a commission task force said that roughly three to four people experiencing such harassment never tell anyone in authority about it. Instead, they said women typically "avoid the harasser, deny or downplay the gravity of the situation, or attempt to ignore, forget, or endure the behavior."

It is indeed very common for victims to delay disclosing their trauma, if they ever do. But since even highly educated people are continually baffled by why women don't come forward, I offer some information based on the psychology of abuse and my forty-year experience working with victims of sexual abuse, sexual assault, and sexual harassment to help answer this question.

Let's begin by making sure we are all on the same page. Sexual harassment and behaviors that fall under this category include: inappropriate touching; invasion of privacy; sexual jokes; lewd or obscene comments or gestures; exposing body parts; showing graphic images; unwelcome sexual emails, text messages, or phone calls; sexual bribery, coercion, and overt requests for sex; sexual favoritism; being offered a benefit for a sexual favor; being denied a promotion or pay raise because you didn't cooperate. And of course, some women experience what more aptly could be described as sexual assault: being forced to perform oral sex on a man in a position of power, a man in power forcing himself on the woman either orally, vaginally, or anally, being drugged and rendered unconscious or incapable of defending oneself.

Below I have listed the most significant reasons why women do not come forward more often or delay in coming forward. While I recognize that men are also sexually harassed and assaulted, due to limited space, I am going to limit this article to a discussion about female victims of sexual harassment and assault. Male victims do, however, suffer from many of the same after-effects and have many of the same reasons for not coming forward.

**Shame**

FILED: NEW YORK COUNTY CLERK 09/09/2020 11:59 AM
6/25/2020

NYSCEF DOC. NO. 5

Case 1.20-cv-09066 Administration document d 11/19/20 ? Page 43 of 126

INDEX NO. 950648/2020

RECEIVED NYSCEF: 09/09/2020

US

Women, in particular, feel shame, because they are often blamed for being sexually assaulted. Even today, women are accused of causing their own victimization with comments like, "What did she expect when she dresses like she does?" and "She shouldn't have had so much to drink."

And women are used to being shamed and feeling shame. Women feel shame when they are heckled by men on the street. They feel shame when men make fun of their body or make disparaging remarks about the size of their breasts or behinds. They feel shame when their entire being is reduced to how attractive or unattractive a man finds them.

This sense of shame has a cumulative effect. Depending on how much a woman has already been shamed by previous abuse or by bullying, she may choose to try to forget the entire incident, to put her head in the sand and try to pretend it never happened.

**Denial, Minimization**

This tendency to blame themselves and to be overwhelmed with shame leads into the next important reason why women don't come forward: denial and minimization. Many women refuse to believe that the treatment they endured was actually abusive. They downplay how much they have been harmed by sexual harassment and even sexual assault. They convince themselves that "it wasn't a big deal." As one client told me, "I know a lot of women who were brutally raped, and I have friends who were sexually abused in childhood. Being sexually harassed by my boss was nothing compared to what these women went through. I told myself to just move on and forget the whole thing."

Unfortunately, this same client had come to see me because she was suffering from depression. She couldn't sleep at night, she had no appetite, she had lost her motivation, and she had isolated herself from friends and family. When we traced these symptoms back, we discovered that they all began after the sexual harassment incident. Depression is one of the major after-effects of sexual harassment or assault. Victims may experience self-doubt, which can lead to self-blame, and the hopelessness of the situation can also lead to depression.

ARTICLE CONTINUES AFTER ADVERTISEMENT

Other women are good at making excuses for their abusers. I have often heard victims of sexual harassment say things like "I felt sorry for him," or "I figured he wasn't getting enough sex at home," or even "I knew he couldn't help himself."

Case 1:20-cv-09586-LAK Document 1-9 Filed 11/13/20 Page 44 of 126

tell her story of how Roy Moore sexually attacked her when she was 16 and said, "I thought I was Roy Moore's only victim."

**Fear of the Consequences**

Fear of the repercussions is a huge obstacle women face when it comes to reporting sexual harassment or assault — fear of losing their job, fear they won't find another job, fear they will be passed over for a promotion, fear of losing their credibility, fear of being branded a troublemaker, fear of being blackballed in their industry, fear of their physical safety. This is true whether it is a case of a young woman in her first job being harassed, an actress trying to make her way in the entertainment business, or a career woman desperately trying to break through the glass ceiling.

Many don't disclose, because they fear they won't be believed, and until very recently, that has primarily been the case. The fact that sexual misconduct is the most under-reported crime is due to a common belief that women make up these stories for attention or to get back at a man who rejected them. Victims' accounts are often scrutinized to the point of exhaustion. In high-profile cases, victims are often labeled opportunists, blamed for their own victimization, and punished for coming forward.

ARTICLE CONTINUES AFTER ADVERTISEMENT

Another reason why victims don't report or delay reporting is that they fear retaliation, and we have evidence from recent events to validate that fear. Sexual harassers frequently threaten the lives, jobs, and careers of their victims. And many victims are frightened by the perpetrator's position of power and what he could do with it. Those who have reported sexual harassment or assault, especially by powerful men, have reported that they lost their jobs, and that their careers or reputations have been destroyed. In the case of Harvey Weinstein, the New Yorker reported that he enlisted private security agencies staffed with "highly experienced and trained in Israel's elite military and government intelligence units" to collect information on women and journalists who tried to expose sexual harassment allegations against him. This fear of retaliation does not only apply to high-profile cases; people who wield their power to prey on other people are often quite adept at holding onto that power by any means necessary. Sexual harassment cuts across all industries — Hollywood, politics, media, tech, and service industries, like food services.

**Low Self-Esteem**

Some victims have such low self-esteem that they don't consider what happened to them to be very serious. They don't value or respect their own bodies or their own integrity, so if someone violates them, they downplay it. As one client who had been sexually violated by a boss when she was in her early twenties shared with me: "Guys were always coming on to me and trying to grab me back then. When my boss did it, I figured, 'Why not let him do what he wants, no big deal.'" But my client had not anticipated what the short-term and long-term consequences of "giving herself away" might be. "When I look back, I can recognize that my boss violating me was a real turning point in my life. After that, I started acting out. I had never taken drugs before, but when someone offered me some cocaine, I thought, 'Why not?' When guys wanted to party, including having group sex, I figured, 'What have I got to lose?' I just stopped caring about myself."

Case 1:20-cv-09586-LAK Document 1-1 filed 11/13/20 Page 45 of 126

reaction to being violated or abused. In fact, abuse, by its very nature, is humiliating and dehumanizing." This is especially true with sexual violations. The victim feels invaded and defiled, while simultaneously experiencing the indignity of being helpless and at the mercy of another person.

ARTICLE CONTINUES AFTER ADVERTISEMENT

This sense of shame often causes victims to blame themselves for the sexual misconduct of their perpetrator. Case in point, Lee Corfman, the woman who reported to a Washington Post reporter that she was molested by Roy Moore when she was 14, said, "I felt responsible. I thought I was bad." Time after time, clients who experienced sexual harassment at work or at school have told me things like: "I assumed it was my fault. I'm a very friendly person, and I always smiled and said hello to my boss. I think he must have thought I was flirting with him." Another client, a student who was sexually assaulted by one of her college professors told me, "I liked all the attention I was getting from him. We'd sit for hours in his office talking, and I was learning a lot from him. I guess I was sending him the wrong message."

Understanding more about the emotion of shame can help explain why women blame themselves when they are violated, and why more women do not report sexual assault or harassment. Shame is a feeling deep within us of being exposed and unworthy. When we feel ashamed, we want to hide. We hang our heads, stoop our shoulders, and curve inward as if trying to make ourselves invisible. Most people who have been deeply shamed take on the underlying and pervasive belief that they are defective or unacceptable. They feel unworthy, unlovable, or "bad." Shame can also cause us to feel isolated — set apart from the crowd. In fact, in primitive cultures, people were banished from the tribe when they broke society's rules. Being shamed feels like being banished — unworthy to be around others.

Sexual harassment and assault can be a humiliating experience to recount privately, let alone publicly. Victims of sexual harassment and sexual assault in adulthood or sexual abuse in childhood tend to feel shame, because as human beings, we want to believe that we have control over what happens to us. When that personal power is challenged by a victimization of any kind, we feel humiliated. We believe we should have been able to defend ourselves. And because we weren't able to do so, we feel helpless and powerless. This powerlessness causes humiliation — which leads to shame.

It is often easier to blame oneself than to admit that you were rendered helpless or victimized by another person. As humans, we want to believe that we are in control of our own lives. When something that occurs reminds us that, in fact, we are not always in control, it is very upsetting. So upsetting that we would prefer to blame ourselves for our victimization.

ARTICLE CONTINUES AFTER ADVERTISEMENT

Case 1.20-CV-09518-LAK Document 3 Filed 11/13/20 Page 46 of 126

price to pay for "going along" with sexual exploitation. A woman doesn't just give away her body; she gives away her integrity.

In the last several years there has been a focus on raising the self-esteem of girls and young women. We want our young women to feel proud and strong, to walk with their heads held high. We try to instill confidence in them and tell them they can do whatever they set their minds to do. We send them off to college with the feeling that they are safe, that they can protect themselves, and that we will protect them. But this is a lie. They are not safe, they don't know how to protect themselves, and we don't protect them.

By far the most damaging thing to affect the self-esteem of young girls and women is the way they are mistreated in our culture. Beginning in early childhood, the average girl experiences unwanted sexual remarks and sexual behavior from boys and men. Remarks about her body and her sexuality come from boys at school and from men on the streets. Young girls today continually complain that they are bullied in school — not in the way we think of boys bullying other boys — but by boys making remarks about their genitals, their behinds, and as they get older, about their breasts. In today's schools, there is a common practice of boys running by girls and grabbing their behinds or breasts and running away.

Even the most confident girl cannot sustain her sense of confidence if she is sexually violated. She feels so much shame that it is difficult to hold her head up high. She finds it difficult to have the motivation to continue on her path, whether it be college or a career.

**Feelings of Hopelessness and Helplessness**

Research has shown us that victims who cannot see a way out of an abusive situation soon develop a sense of hopelessness and helplessness, and this in turn contributes to them giving up and not trying to escape or seek help. Specifically, learned helplessness is a condition in which a person suffers from a sense of powerlessness, arising from a traumatic event or persistent failure to succeed and considered to be one of the underlying causes of depression. A concept originally developed by the research of psychologist Martin Seligman and Steven D. Meier, learned helplessness is a phenomenon that says when people feel like they have no control over what happens, they tend to simply give up and accept their fate.

Women feel it is useless to come forward, because they have seen the way others have been treated. They feel it is hopeless, because they won't be believed, and their reputations will be tainted, if not ruined. Women who have already been sexually assaulted or harassed feel especially helpless, since the chances are extremely high that they did not receive the justice they so desperately needed. These fears can cause women to think there is nowhere to turn, to feel trapped and even hopeless.

Most women feel they are on their own when it comes to protecting themselves from sexual harassment. While they may take precautions to protect themselves, overall, they still feel helpless about changing the situation. Many women have learned the hard way that going to the HR in their company is useless, since HR departments are notorious for protecting the company at all costs.

As mentioned above, many women are overwhelmed with self-blame and debilitating shame due to sexual harassment. This self-blame and debilitating shame robs them of their power, their sense of efficacy and agency, and their belief that they can change their circumstances.

Some women don't have the emotional strength to stand up to intense manipulation, to sexual pressure, or to threats of rejection. While they may take precautions against being sexually assaulted, from avoiding walking alone at night, to avoiding eye contact, to carrying pepper spray in their handbags, measures such as these don't take away their overarching fear, brought on by witnessing and experiencing the consistent objectification of women, as well as evidence of the rape culture which currently permeates our country. In a recent study, researchers found that the treatment of women as sex objects has shown to contribute to women's fear of sexual assault. According to Dr. Laurel Watson, a psychology professor specializing in trauma at the University of

6/25/2020                        Why Don't Victims of Sexual Harassment Come Forward Sooner? | Psychology Today

US

**A History of Being Sexually Violated**

Closely related to the above, women who have already been traumatized by child sexual abuse or by sexual assault as an adult are far less likely to speak out about sexual harassment at work or at school. Research shows that survivors of previous abuse and assault are at a higher risk of being sexually assaulted again. For example, research shows that 38 percent of college-aged women who have been sexually violated had first been victimized prior to college.

Those who experienced previous abuse will likely respond to overtures of sexual harassment much differently than women who have not been abused. As one client shared with me, "Time after time I just freeze when a guy makes a sexual advance, hoping it will stop him or he will walk away." This "freezing reaction" is a common one for those who were sexually abused in childhood. And as was mentioned above, those who have previously been victimized are more likely to keep quiet about the abuse, since they may have already had the experience of not being believed and not receiving justice.

**Lack of Information**

Recent statistics show that 70 percent of women suffer sexual harassment on the job. In fact, the stats for sexual harassment are the same as those for sexual assault: one in every four women nationwide have been sexually harassed at work. And yet many women, even highly educated ones, are uneducated about exactly what constitutes sexual harassment, don't recognize sexual harassment as a real threat, don't understand how sexual harassment or assault affected them, nor do they understand the real world consequences of not reaching out for help or not reporting it. For example, the emotional effects of this type of harassment can have devastating psychiatric effects, including:

- Anxiety

- Loss of self-esteem

- PTSD — Studies have found a link between victims of sexual harassment and PTSD, which causes the victim to re-live the harassment and avoid situations where it could happen again.

- Suicidal behavior — Studies suggest that sexual harassment can lead to suicidal behavior. Up to 15 of 1,000 females studied reported saying they made suicidal attempts after suffering from some sort of sexual harassment.

**Disbelief, Dissociated, or Drugged**

Finally, sometimes women don't report sexual harassment or assault, because at the time of the abuse they were drugged, inebriated, or dissociated. As was the case with the Bill Cosby accusers — it is not uncommon for women and girls to have been drugged by their abusers and, because of this, to have only vague memories. Others may have been so drunk before the assault that they doubt their memories, and as we know, some are so traumatized that they dissociated during the attack and have only vague memories. It usually takes one woman coming forward before a woman is able to trust her own memories of the experience. Unless other women come forward to make a complaint about someone, most will continue doubting themselves and assuming they will be doubted if they report.

It is understandable that women have a difficult time coming forward for a number of reasons. These women deserve our recognition about how difficult it is and our compassion for what they have been through. Women need to be encouraged to begin to push away their internalized shame with anger and to learn how to give the shame back to their abusers.

Instead of focusing so much energy on trying to figure out why victims don't report, it would be far more productive to ask, "Why do we allow men to continue to sexually harass and assault women?" Perhaps even more important, we need to stop asking why victims wait to report and instead focus on how we can better

6/25/2020    Case 1:20-cv-0968oL Why Document 3 ment docoument 11/13/20 r Page 49 of 26
US

National Sex Assault Hotline: (800) 656-4673



ADVERTISEMENT

## About the Author



**Beverly Engel** has been a psychotherapist for over 30 years and is the author of 20 books, including *The Emotionally Abusive Relationship* and *The Right to Innocence.*

**Online:** Beverly Engel, Facebook

## Read Next

Stop Telling Me You Are Socially Awkward

Develop Empathy for Others and Self Compassion for Yourself

Stop Shaming Victims of Sexual Assault for Not Reporting

Why the Women in the Weinstein Case Are So Believable

Why Adult Victims of Childhood Sexual Abuse Don't Disclose

How to Tell if You're in an Abusive Relationship

How Denial and Victim Blaming Keep Sexual Assault Hidden

Sibling Bullying and Abuse: The Hidden Epidemic

## Embarrassment Essential Reads



Unloved Daughters: Mother's Day and the Sense of Loss



Revictimization: How Can This Keep Happening?

Find a Therapist

8/25/2020

Case 1:20-cv-09586 Document 1 Filed 11/13/20 Page 49 of 126

US

City or Zip

Cities:

| | | |
|---|---|---|
| Atlanta, GA | Jacksonville, FL | Phoenix, AZ |
| Austin, TX | Las Vegas, NV | Pittsburgh, PA |
| Baltimore, MD | Los Angeles, CA | Portland, OR |
| Boston, MA | Louisville, KY | Raleigh, NC |
| Brooklyn, NY | Memphis, TN | Sacramento, CA |
| Charlotte, NC | Miami, FL | Saint Louis, MO |
| Chicago, IL | Milwaukee, WI | San Antonio, TX |
| Columbus, OH | Minneapolis, MN | San Diego, CA |
| Dallas, TX | Nashville, TN | San Francisco, CA |
| Denver, CO | New York, NY | San Jose, CA |
| Detroit, MI | Oakland, CA | Seattle, WA |
| Houston, TX | Omaha, NE | Tucson, AZ |
| Indianapolis, IN | Philadelphia, PA | Washington, DC |

Are you a Therapist?

Get Listed Today

## Recent Issues

May 2020 magazine cover

March 2020 magazine cover

January 2020 magazine cover

Subscribe Today!

About    Privacy    Terms    Accessibility

United States

Psychology Today © 2020 Sussex Publishers, LLC

# Exhibit F

# EXHIBIT C

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 52 of 126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND

---

In re:  CHILD VICTIMS ACT NYC LITIGATION          CASE MANAGEMENT
                                                  ORDER No. 1

---

### I.    Applicability of Order.

1.    This Case Management Order ("CMO") applies to all actions filed or
      hereafter filed in the Supreme Courts in and for the counties of Bronx,
      Kings, New York, Queens, and Richmond pursuant to the Child Victims
      Act (the "CVA Actions"), including any such matters filed before the one-
      year window commenced on August 14, 2019, and which were then
      stayed pending the opening of the window on August 14, 2019.

2.    This CMO applies to all pre-trial procedures and proceedings in the CVA
      Actions, except as otherwise directed by the Court upon good cause shown
      by the party seeking such relief.

### II.    Rules of Procedure.

1.    The Civil Practice Law and Rules, the Uniform Civil Rules for Supreme
      and County Courts together with the express provisions of this CMO and
      further orders issued by this Court, shall govern all pre-trial proceedings.

### III.    Anonymity.

1.    If consented to by all defendants to an action, a plaintiff may initiate an
      action and file a complaint by initials or pseudonym, rather than the
      person's legal name, and proceed on the Court's public docket by initials
      or pseudonym. If all defendants do not consent, then, together with the
      filing of the complaint, a plaintiff must file an application by order to
      show cause seeking permission to proceed by initials or pseudonym.

2.    If a defendant consents to anonymity, it retains all rights to conduct full
      discovery, investigate, and otherwise prepare its defenses that would exist
      in the absence of this order, including without limitation the right to
      disclose a plaintiff's legal name and information described below in
      paragraph III.3 (including to its insurers and agencies) in providing notice
      of the claim and seeking and obtaining discovery and information from
      third parties and in providing information to any expert witnesses or
      consultant, so long as such persons provided with this information agree to

maintain the confidentiality of the information and be subject to the Confidentiality Order discussed at paragraph IX.A.1 below.

3.  Within 14 days of receiving an appearance by a defendant in the matter, a plaintiff who files a complaint using initials or a pseudonym must provide to defense counsel or, if the defendant appears *pro se*, the defendant, the plaintiff's name (including maiden name, if any), plaintiff's name at the time of the alleged abuse, date of birth, social security number, parents and/or guardian's names at the time of the alleged abuse, current address, and address at the time of the alleged abuse, if known. A plaintiff's identification information shall be considered Confidential Personal Information only to the extent provided by Section 202.5(e) of the Uniform Civil Rule of the Supreme Court and shall be omitted or redacted in any filings on the Court's public docket. The filing party shall serve unredacted copies of any such filings on all parties to the action.

4.  The Court's authorization for a plaintiff to proceed on the docket by initials or pseudonym is the result of party agreement or Court Order. The Court's Order permitting such agreement is not intended to reflect any modification to existing law on the issue.

## IV.   Conferences.

1.  The Court shall hold a General Status Conference on the first Tuesday of each month at 2:00 p.m. at 111 Centre Street, Courtroom 1227, unless otherwise designated by the Court.

2.  The Plaintiffs' Liaison Committee ("PLC") and Defendants' Liaison Committee ("DLC") (collectively, "Liaison Committees") shall confer as necessary ten business days prior to each General Status Conference and provide an agenda of items to the Court no later than 3:00 p.m. three business days prior to a General Status Conference. The PLC and DLC may, but are not required to, file separate letter submissions with the Court of no more than 3 pages in connection with *each* agenda item, *i.e.* a liaison committee may file multiple letter submissions depending on the number of agenda items. Any letter submissions must be filed three business days prior to a scheduled conference.

3.  Immediately following the General Status Conference, the Court will conduct conferences in individual CVA Actions to address case-specific matters as necessary. Parties wishing to raise an issue in any individual action to the Court shall file a letter not exceeding three pages in the applicable individual action no later than 3:00 p.m. seven business days prior to the General Status Conference. The opposing party may file a letter response not exceeding three pages in the same action no later than 3:00 p.m. three business days prior to the General Status Conference.

2

> Letters filed with the Court pursuant to this paragraph shall be emailed to each Liaison Committee at the time of filing at the email addresses set forth in section XI.

4. Working copies of the letter submissions described in this section shall be delivered to chambers.

5. Nothing in this Order forecloses a party from seeking relief by appropriate motion.

## V.   Individual Actions.

1. The parties may meet and confer on any CVA Action that has been filed by, or on behalf of, multiple plaintiffs as of the date of this Order to discuss the severance, without prejudice, into new and independent individual actions for each plaintiff.

2. If the parties agree to the severance, the parties may enter into a stipulation reflecting such agreement, and each severed plaintiff will file a new action (using the same pleading) under a separate index number. Each re-filed complaint shall be deemed filed as of the date the initial action was filed. If the Complaint has previously been served, each re-filed action may be served pursuant to CPLR §2103(b). Each individual action shall be assigned to the Hon. George J. Silver, Deputy Chief Administrative Judge for the New York City Courts, for all pretrial matters.

3. If the parties cannot resolve the issue of severance after a good faith attempt to do so, a motion may be filed with the Court seeking to sever the action into new and independent individual actions.

4. Any previous orders regarding proceeding on the docket by pseudonym or initials entered in an action shall be deemed to have been made in each severed individual action.

## VI.   Coordinated Motion Practice.

1. To conserve resources and avoid burdening the Court with duplicative motion practice, the parties in separate actions may stipulate to address issues common to multiple CVA Actions through a coordinated motion, *i.e.*, one set of opening motion papers, one set of opposition papers, if any, and one set of reply papers, if any. The coordinated motion practice set forth herein may proceed only as stipulated between the parties to such stipulation. The parties may file motion papers in multiple actions under this section. By way of example, the parties may stipulate to filing one motion under CPLR §3211 or CPLR §3212 in multiple cases brought by the same plaintiff's counsel.

3

2.    Counsel shall make a good faith effort to resolve any coordinated motions to dismiss prior to filing, including by taking into consideration decisions that have been rendered by the Court and the existing body of law.

3.    Counsel shall provide courtesy copies of all papers related to coordinated motions to each Liaison Committee by email to the email addresses set forth in section XI within three days of filing or service.

## VII.   Procedures for Responses to Complaints.

1.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between August 14, 2019 through and including October 14, 2019, is extended until 35-days from the effective date of this Order.

2.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between October 15, 2019 through and including December 11, 2019, is extended until 45-days from the effective date of this Order.

3.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between December 12, 2019 through and including February 11, 2020, is extended until 55-days from the effective date of this Order.

4.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant on February 12, 2020 and later shall be 60-days from the date of service upon the responding defendant.

5.    In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant prior to December 12, 2019, is extended 25-days from the effective date of this Order.

6.    In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between December 12, 2019 through and including February 11, 2020, is extended 30-days from the effective date of this Order.

7.    In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant on February 12, 2020 and later shall be 30-days from the date of service upon the individual defendant.

4

8.    Where a complaint or amended complaint is re-filed pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action before the effective date of this Order, the time to answer, move against, or otherwise respond to such re-filed complaint or amended complaint shall be 45-days from the date the complaint is refiled.

9.    The deadlines set forth in this section supersede any deadlines for answering or otherwise responding to a complaint or amended complaint that were previously stipulated by the parties or ordered by this Court.

10.    Absent agreement by the parties or Order of this Court, no motion to dismiss shall stay discovery unless the moving party seeks to dismiss the complaint in its entirety. In the event that a party moves to dismiss the complaint in its entirety, discovery shall be stayed only as to that moving defendant and shall proceed as against the remaining defendants.

## VIII.  Procedures for Responses to Pending Motions.

1.    The time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §§3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served prior to Administrative Order #40 dated February 4, 2020, is extended to 30-days from the effective date of this Order.

2.    Should the motion(s) not be resolved and withdrawn by the parties as of the date proscribed by paragraph 1 of this section, the Court will set any additional due dates as necessary for reply papers, return date, and oral argument.

3.    The deadlines set forth in this section supersede any deadlines for the service of opposition papers and the filing of working copies of motion papers that were previously stipulated by the parties or ordered by this Court.

## IX.  Disclosure.

A.    Confidentiality Order.

1.    Within 21 days of the effective date of this Order, Plaintiffs' and Defendants' Liaison Counsel shall jointly submit a proposed Confidentiality Order (or alternate proposals) that will apply to disclosure in all CVA Actions. No disclosure (other than disclosure of plaintiffs' identifying information pursuant to section III.3 above) in any CVA Action may take place prior to entry by the Court of a Confidentiality Order.

5

B.  **Disclosure Requests.**

    1.    Plaintiffs shall serve responses and/or objections to Standard Automatic Disclosures and Common Demand for Verified Bill of Particulars in an individual action upon the answering defendant no later than 30 days from defendant filing an answer, motion or other response to the complaint or amended complaint, except as provided in section VII.10.

    2.    Each defendant shall serve responses and/or objections to Standard Automatic Disclosures in each individual action no later than 30 days after receiving plaintiff's responses and objections described above in paragraph IX.B.1.

    3.    Each plaintiff and defendant shall serve responses and/or objections to Standard Combined Demands/Notices to Produce no later than 40 days after service of the responding defendant's responses and/or objections described above in paragraph IX.B.2.

    4.    Unless otherwise agreed by the parties to a CVA Action, responses and/or objections to any disclosure demands are to be served by U.S. Mail or its equivalent, and/or by email where agreed to by the parties, and will not be e-filed by any party on the Court's docket. However, subject to the Court's forthcoming Confidentiality Order, excerpts of such responses may be e-filed if they are pertinent exhibits to a motion, *e.g.* in a motion to compel.

    5.    Any party may serve supplemental, non-repetitive disclosure requests in accordance with the CPLR and applicable discovery submission schedule for that action. Counsel shall exercise good faith, in determining the need for such further requests.

    6.    None of the requests attached to this Order shall be construed to be interrogatories for purposes of CPLR §3130. No party may avoid sitting for a deposition by reason of responding to the discovery requests contained in this Order.

    7.    To the extent a defendant has filed an answer before the effective date of this Order, the time for a plaintiff to serve responses and/or objections to Standard Automatic Disclosures and Common Demand for Verified Bill of Particulars shall be 50 days from the effective date of this Order. All other discovery deadlines shall follow the provisions of this section as set forth herein.

C.  **Standard Plaintiff Disclosures and Authorizations.**

    1.    Standard Automatic Disclosures directed at Plaintiffs shall be provided to the Court and shall become Exhibit A to this Order.

6

2.      Common Demand for Verified Bill of Particulars directed at Plaintiffs shall be provided to the Court and shall become Exhibit B to this Order.

3.      Standard Automatic Disclosures directed at Defendants shall be provided to the Court and shall become Exhibit C to this Order.

4.      Standard Combined Demands directed at Plaintiffs shall be provided to the Court and shall become Exhibit D to this Order.

5.      Standard Combined Demands directed at Defendants shall be provided to the Court and shall become Exhibit E to this Order.

6.      All disclosure requests listed in this section are deemed served as of the date of the response to the complaint.

## X.    Stay of Actions for Settlement Discussions.

1.      If the parties to any CVA Action wish to discuss settlement without litigating the action simultaneously, the parties may jointly notify the Court by letter of their intention to do so. The parties' notification shall automatically adjourn all case deadlines (e.g., discovery, motion practice, etc.) by 45 days from the date of the parties' letter notification. The parties' letter notification shall set forth an amended schedule for any court deadlines reflecting this adjournment. Upon further agreement by the parties, the amended schedule shall be automatically effective for the action without further order of the Court for a maximum of two 45-day adjournments for a total of 90 days. Any further adjournments must be so-ordered by the Court.

## XI.   Cooperation.

1.      The Court recognizes that cooperation among counsel and parties is essential for the orderly and expeditious resolution of this litigation. The communication of information among the plaintiffs' counsel, among defendants' counsel, and among defendants or other necessary participants shall not be deemed a waiver of the attorney-client privilege, the protection afforded by the attorney work-product doctrine, or any other privilege to which a party may be entitled. Any cooperative efforts described above shall not, in any way, be used against any of the parties and shall not be communicated to the jury.

2.      In the interests of justice and cooperation, the parties may stipulate to a two-week extension of any of the deadlines set forth in this Order without further Order of this Court.

3.      Any counsel or party who needs to communicate with Plaintiffs' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court, shall email nycplc@cvaplaintiffs.com. The

7

members of this email address shall be limited to Plaintiffs' Liaison Counsel, their staff, and their associates or co-counsel.

4. If the Court needs to communicate with Plaintiffs' Liaison Counsel the Court will email nycplc@cvaplaintiffs.com.

5. All plaintiff's counsel must subscribe to nycplc@cvaplaintiffs.com in order to receive communications from Plaintiffs' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court. The members of this email address shall be limited to plaintiff's counsel, their staff, their associates, and their co-counsel.

6. Any counsel who needs to communicate with Defendants' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court, shall email cvasteering@defendantliaison.com. The members of this email address shall be limited to Defendants' Liaison Counsel, their staff, and their associates or co-counsel.

7. If the Court needs to communicate with Defendants' Liaison Counsel the Court will email cvasteering@defendantliaison.com.

## XII. Effective Date and Future Orders

1. The effective date of this Order shall be the date it is uploaded to the Court's Docket on NYSCEF.

   a. The disclosure requests contemplated by this Order and identified as Exhibits A through E at section IX.C.1-5 will be uploaded to the Court's Docket on NYSCEF.

2. Any pre-trial discovery procedures and proceedings not addressed by this Order, such as depositions, may be addressed in future Orders of this Court.

Dated: February 24, 2020

George J. Silver

HON. GEORGE J. SILVER

8

# Exhibit G



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 07/29/2019)

### New York Supreme COURT, COUNTY OF New York

Index No: _____  Date Index Issued: _____

| | **For Court Use Only:** |
|---|---|

**IAS Entry Date**

| **CAPTION** | Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet. |
|---|---|

ANTHONY RAPP, C.D. .

**Judge Assigned**

Plaintiff(s)/Petitioner(s)

-against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY

**RJI Filed Date**

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING: Check only one box and specify where indicated.

### COMMERCIAL
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

### REAL PROPERTY:  Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify):  ☐ Residential   ☐ Commercial
  Property Address: _____

  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*

- ☐ Tax Certiorari - Section:       Block:       Lot:
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

### OTHER MATTERS
- ☐ Certificate of Incorporation/Dissolution  [see NOTE in COMMERCIAL section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

### MATRIMONIAL
- ☐ Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*
  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

### TORTS
- ☐ Asbestos
- ☒ Child Victims Act
- ☐ Environmental (specify): _____
- ☐ Medical, Dental, or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☐ Other Tort (specify): _____

### SPECIAL PROCEEDINGS
- ☐ CPLR Article 75 (Arbitration)   [see NOTE in COMMERCIAL section]
- ☐ CPLR Article 78 (Body or Officer)
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 (Kendra's Law)
- ☐ MHL Article 10 (Sex Offender Confinement-Initial)
- ☐ MHL Article 10 (Sex Offender Confinement-Review)
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

## STATUS OF ACTION OR PROCEEDING:  Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION:  Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental, or Podiatric Malpractice   Date Issue Joined: _____
- ☐ Notice of Motion   Relief Requested: _____   Return Date: _____
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☒ Order to Show Cause   Relief Requested: **Leave to File**   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

**RELATED CASES:** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**PARTIES:** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties (List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant; 3rd party plaintiff, etc.)) | Attorneys and/or Unrepresented Litigants (For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email.) | Issue Joined (For each defendant, indicate if issue has been joined.) | Insurance (For each defendant, indicate insurance carrier, if applicable.) |
|---|---|---|---|---|
| ☐ | Name: RAPP, ANTHONY<br><br>Role(s): Plaintiff/Petitioner | PETER SAGHIR, Gair Gair Conason Rubinowitz Bloom Hershenhorn Steigman & Mackauf, 80 Pine Street 34th Floor, NEW YORK, NY 10005, (212) 943-1090, psaghir@gairgair.com | ☐ YES ☒ NO | |
| ☐ | Name: ., C.D.<br><br>Role(s): Plaintiff/Petitioner | PETER SAGHIR, Gair Gair Conason Rubinowitz Bloom Hershenhorn Steigman & Mackauf, 80 Pine Street 34th Floor, NEW YORK, NY 10005, (212) 943-1090, psaghir@gairgair.com | ☐ YES ☒ NO | |
| ☒ | Name: KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY<br>Role(s): Defendant/Respondent | 622 Ponte Villas North #1, Baltimore, MD 21230 | ☐ YES ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated: ___09/09/2020___                                      PETER JAMES SAGHIR
                                                         _____
                                                                    Signature

___4313284___                                            PETER JAMES SAGHIR
Attorney Registration Number                                     Print Name

*This form was generated by NYSCEF*

# Exhibit H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND

_____

In re: CHILD VICTIMS ACT NYC LITIGATION          CASE MANAGEMENT
                                                 ORDER No. 1

_____

### I.    Applicability of Order.

1.    This Case Management Order ("CMO") applies to all actions filed or
hereafter filed in the Supreme Courts in and for the counties of Bronx,
Kings, New York, Queens, and Richmond pursuant to the Child Victims
Act (the "CVA Actions"), including any such matters filed before the one-
year window commenced on August 14, 2019, and which were then
stayed pending the opening of the window on August 14, 2019.

2.    This CMO applies to all pre-trial procedures and proceedings in the CVA
Actions, except as otherwise directed by the Court upon good cause shown
by the party seeking such relief.

### II.   Rules of Procedure.

1.    The Civil Practice Law and Rules, the Uniform Civil Rules for Supreme
and County Courts together with the express provisions of this CMO and
further orders issued by this Court, shall govern all pre-trial proceedings.

### III.  Anonymity.

1.    If consented to by all defendants to an action, a plaintiff may initiate an
action and file a complaint by initials or pseudonym, rather than the
person's legal name, and proceed on the Court's public docket by initials
or pseudonym. If all defendants do not consent, then, together with the
filing of the complaint, a plaintiff must file an application by order to
show cause seeking permission to proceed by initials or pseudonym.

2.    If a defendant consents to anonymity, it retains all rights to conduct full
discovery, investigate, and otherwise prepare its defenses that would exist
in the absence of this order, including without limitation the right to
disclose a plaintiff's legal name and information described below in
paragraph III.3 (including to its insurers and agencies) in providing notice
of the claim and seeking and obtaining discovery and information from
third parties and in providing information to any expert witnesses or
consultant, so long as such persons provided with this information agree to

maintain the confidentiality of the information and be subject to the Confidentiality Order discussed at paragraph IX.A.1 below.

3.    Within 14 days of receiving an appearance by a defendant in the matter, a plaintiff who files a complaint using initials or a pseudonym must provide to defense counsel or, if the defendant appears *pro se*, the defendant, the plaintiff's name (including maiden name, if any), plaintiff's name at the time of the alleged abuse, date of birth, social security number, parents and/or guardian's names at the time of the alleged abuse, current address, and address at the time of the alleged abuse, if known. A plaintiff's identification information shall be considered Confidential Personal Information only to the extent provided by Section 202.5(e) of the Uniform Civil Rule of the Supreme Court and shall be omitted or redacted in any filings on the Court's public docket. The filing party shall serve unredacted copies of any such filings on all parties to the action.

4.    The Court's authorization for a plaintiff to proceed on the docket by initials or pseudonym is the result of party agreement or Court Order. The Court's Order permitting such agreement is not intended to reflect any modification to existing law on the issue.

## IV.   Conferences.

1.    The Court shall hold a General Status Conference on the first Tuesday of each month at 2:00 p.m. at 111 Centre Street, Courtroom 1227, unless otherwise designated by the Court.

2.    The Plaintiffs' Liaison Committee ("PLC") and Defendants' Liaison Committee ("DLC") (collectively, "Liaison Committees") shall confer as necessary ten business days prior to each General Status Conference and provide an agenda of items to the Court no later than 3:00 p.m. three business days prior to a General Status Conference. The PLC and DLC may, but are not required to, file separate letter submissions with the Court of no more than 3 pages in connection with *each* agenda item, *i.e.* a liaison committee may file multiple letter submissions depending on the number of agenda items. Any letter submissions must be filed three business days prior to a scheduled conference.

3.    Immediately following the General Status Conference, the Court will conduct conferences in individual CVA Actions to address case-specific matters as necessary. Parties wishing to raise an issue in any individual action to the Court shall file a letter not exceeding three pages in the applicable individual action no later than 3:00 p.m. seven business days prior to the General Status Conference. The opposing party may file a letter response not exceeding three pages in the same action no later than 3:00 p.m. three business days prior to the General Status Conference.

2

Letters filed with the Court pursuant to this paragraph shall be emailed to each Liaison Committee at the time of filing at the email addresses set forth in section XI.

4.  Working copies of the letter submissions described in this section shall be delivered to chambers.

5.  Nothing in this Order forecloses a party from seeking relief by appropriate motion.

## V.  Individual Actions.

1.  The parties may meet and confer on any CVA Action that has been filed by, or on behalf of, multiple plaintiffs as of the date of this Order to discuss the severance, without prejudice, into new and independent individual actions for each plaintiff.

2.  If the parties agree to the severance, the parties may enter into a stipulation reflecting such agreement, and each severed plaintiff will file a new action (using the same pleading) under a separate index number. Each re-filed complaint shall be deemed filed as of the date the initial action was filed. If the Complaint has previously been served, each re-filed action may be served pursuant to CPLR §2103(b). Each individual action shall be assigned to the Hon. George J. Silver, Deputy Chief Administrative Judge for the New York City Courts, for all pretrial matters.

3.  If the parties cannot resolve the issue of severance after a good faith attempt to do so, a motion may be filed with the Court seeking to sever the action into new and independent individual actions.

4.  Any previous orders regarding proceeding on the docket by pseudonym or initials entered in an action shall be deemed to have been made in each severed individual action.

## VI.  Coordinated Motion Practice.

1.  To conserve resources and avoid burdening the Court with duplicative motion practice, the parties in separate actions may stipulate to address issues common to multiple CVA Actions through a coordinated motion, *i.e.*, one set of opening motion papers, one set of opposition papers, if any, and one set of reply papers, if any. The coordinated motion practice set forth herein may proceed only as stipulated between the parties to such stipulation. The parties may file motion papers in multiple actions under this section. By way of example, the parties may stipulate to filing one motion under CPLR §3211 or CPLR §3212 in multiple cases brought by the same plaintiff's counsel.

3

2.    Counsel shall make a good faith effort to resolve any coordinated motions to dismiss prior to filing, including by taking into consideration decisions that have been rendered by the Court and the existing body of law.

3.    Counsel shall provide courtesy copies of all papers related to coordinated motions to each Liaison Committee by email to the email addresses set forth in section XI within three days of filing or service.

## VII.    Procedures for Responses to Complaints.

1.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between August 14, 2019 through and including October 14, 2019, is extended until 35-days from the effective date of this Order.

2.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between October 15, 2019 through and including December 11, 2019, is extended until 45-days from the effective date of this Order.

3.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between December 12, 2019 through and including February 11, 2020, is extended until 55-days from the effective date of this Order.

4.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant on February 12, 2020 and later shall be 60-days from the date of service upon the responding defendant.

5.    In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant prior to December 12, 2019, is extended 25-days from the effective date of this Order.

6.    In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between December 12, 2019 through and including February 11, 2020, is extended 30-days from the effective date of this Order.

7.    In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant on February 12, 2020 and later shall be 30-days from the date of service upon the individual defendant.

4

8.    Where a complaint or amended complaint is re-filed pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action before the effective date of this Order, the time to answer, move against, or otherwise respond to such re-filed complaint or amended complaint shall be 45-days from the date the complaint is refiled.

9.    The deadlines set forth in this section supersede any deadlines for answering or otherwise responding to a complaint or amended complaint that were previously stipulated by the parties or ordered by this Court.

10.   Absent agreement by the parties or Order of this Court, no motion to dismiss shall stay discovery unless the moving party seeks to dismiss the complaint in its entirety. In the event that a party moves to dismiss the complaint in its entirety, discovery shall be stayed only as to that moving defendant and shall proceed as against the remaining defendants.

## VIII.  Procedures for Responses to Pending Motions.

1.    The time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §§3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served prior to Administrative Order #40 dated February 4, 2020, is extended to 30-days from the effective date of this Order.

2.    Should the motion(s) not be resolved and withdrawn by the parties as of the date proscribed by paragraph 1 of this section, the Court will set any additional due dates as necessary for reply papers, return date, and oral argument.

3.    The deadlines set forth in this section supersede any deadlines for the service of opposition papers and the filing of working copies of motion papers that were previously stipulated by the parties or ordered by this Court.

## IX.  Disclosure.

A.    Confidentiality Order.

1.    Within 21 days of the effective date of this Order, Plaintiffs' and Defendants' Liaison Counsel shall jointly submit a proposed Confidentiality Order (or alternate proposals) that will apply to disclosure in all CVA Actions. No disclosure (other than disclosure of plaintiffs' identifying information pursuant to section III.3 above) in any CVA Action may take place prior to entry by the Court of a Confidentiality Order.

5

B.     Disclosure Requests.

    1.     Plaintiffs shall serve responses and/or objections to Standard Automatic Disclosures and Common Demand for Verified Bill of Particulars in an individual action upon the answering defendant no later than 30 days from defendant filing an answer, motion or other response to the complaint or amended complaint, except as provided in section VII.10.

    2.     Each defendant shall serve responses and/or objections to Standard Automatic Disclosures in each individual action no later than 30 days after receiving plaintiff's responses and objections described above in paragraph IX.B.1.

    3.     Each plaintiff and defendant shall serve responses and/or objections to Standard Combined Demands/Notices to Produce no later than 40 days after service of the responding defendant's responses and/or objections described above in paragraph IX.B.2.

    4.     Unless otherwise agreed by the parties to a CVA Action, responses and/or objections to any disclosure demands are to be served by U.S. Mail or its equivalent, and/or by email where agreed to by the parties, and will not be e-filed by any party on the Court's docket. However, subject to the Court's forthcoming Confidentiality Order, excerpts of such responses may be e-filed if they are pertinent exhibits to a motion, *e.g.* in a motion to compel.

    5.     Any party may serve supplemental, non-repetitive disclosure requests in accordance with the CPLR and applicable discovery submission schedule for that action. Counsel shall exercise good faith, in determining the need for such further requests.

    6.     None of the requests attached to this Order shall be construed to be interrogatories for purposes of CPLR §3130. No party may avoid sitting for a deposition by reason of responding to the discovery requests contained in this Order.

    7.     To the extent a defendant has filed an answer before the effective date of this Order, the time for a plaintiff to serve responses and/or objections to Standard Automatic Disclosures and Common Demand for Verified Bill of Particulars shall be 50 days from the effective date of this Order. All other discovery deadlines shall follow the provisions of this section as set forth herein.

C.     Standard Plaintiff Disclosures and Authorizations.

    1.     Standard Automatic Disclosures directed at Plaintiffs shall be provided to the Court and shall become Exhibit A to this Order.

2.  Common Demand for Verified Bill of Particulars directed at Plaintiffs shall be provided to the Court and shall become Exhibit B to this Order.

3.  Standard Automatic Disclosures directed at Defendants shall be provided to the Court and shall become Exhibit C to this Order.

4.  Standard Combined Demands directed at Plaintiffs shall be provided to the Court and shall become Exhibit D to this Order.

5.  Standard Combined Demands directed at Defendants shall be provided to the Court and shall become Exhibit E to this Order.

6.  All disclosure requests listed in this section are deemed served as of the date of the response to the complaint.

## X.  Stay of Actions for Settlement Discussions.

1.  If the parties to any CVA Action wish to discuss settlement without litigating the action simultaneously, the parties may jointly notify the Court by letter of their intention to do so. The parties' notification shall automatically adjourn all case deadlines (*e.g.*, discovery, motion practice, etc.) by 45 days from the date of the parties' letter notification. The parties' letter notification shall set forth an amended schedule for any court deadlines reflecting this adjournment. Upon further agreement by the parties, the amended schedule shall be automatically effective for the action without further order of the Court for a maximum of two 45-day adjournments for a total of 90 days. Any further adjournments must be so-ordered by the Court.

## XI.  Cooperation.

1.  The Court recognizes that cooperation among counsel and parties is essential for the orderly and expeditious resolution of this litigation. The communication of information among the plaintiffs' counsel, among defendants' counsel, and among defendants or other necessary participants shall not be deemed a waiver of the attorney-client privilege, the protection afforded by the attorney work-product doctrine, or any other privilege to which a party may be entitled. Any cooperative efforts described above shall not, in any way, be used against any of the parties and shall not be communicated to the jury.

2.  In the interests of justice and cooperation, the parties may stipulate to a two-week extension of any of the deadlines set forth in this Order without further Order of this Court.

3.  Any counsel or party who needs to communicate with Plaintiffs' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court, shall email nycplc@cvaplaintiffs.com. The

7

members of this email address shall be limited to Plaintiffs' Liaison Counsel, their staff, and their associates or co-counsel.

4.     If the Court needs to communicate with Plaintiffs' Liaison Counsel the Court will email nycplc@cvaplaintiffs.com.

5.     All plaintiff's counsel must subscribe to nycplc@cvaplaintiffs.com in order to receive communications from Plaintiffs' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court. The members of this email address shall be limited to plaintiff's counsel, their staff, their associates, and their co-counsel.

6.     Any counsel who needs to communicate with Defendants' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court, shall email cvasteering@defendantliaison.com. The members of this email address shall be limited to Defendants' Liaison Counsel, their staff, and their associates or co-counsel.

7.     If the Court needs to communicate with Defendants' Liaison Counsel the Court will email cvasteering@defendantliaison.com.

## XII.  Effective Date and Future Orders

1.     The effective date of this Order shall be the date it is uploaded to the Court's Docket on NYSCEF.

a.     The disclosure requests contemplated by this Order and identified as Exhibits A through E at section IX.C.1-5 will be uploaded to the Court's Docket on NYSCEF.

2.     Any pre-trial discovery procedures and proceedings not addressed by this Order, such as depositions, may be addressed in future Orders of this Court.

Dated: February 24, 2020

George J. Silver

HON. GEORGE J. SILVER

8

# Exhibit I

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND

In re: CHILD VICTIMS ACT LITIGATION

CASE MANAGEMENT
ORDER No. 2

This Case Management Order No. 2 ("CMO 2") applies to all actions filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the Child Victims Act (the "CVA Actions").

CMO 2 modifies the deadlines set forth in §§ VII, VIII, and IX of Case Management Order No. 1, issued and made effective on February 24, 2020 ("CMO 1"), pursuant to the authority of this Court and the tolling provisions of Executive Order 202.8 as extended by subsequent Executive Orders, including Executive Order 202.38. Pursuant to Executive Order 202.38 the tolling period is set to expire on July 6, 2020. Accordingly,

**IT IS HEREBY ORDERED** that the following supersede and replace sections VII, VIII, and IX of CMO 1, and that those sections are hereby amended to direct, as follows:

**VII.   Procedures for Responses to Complaints.**

1.   The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between August 14, 2019 through and including October 14, 2019, is extended until **July 22, 2020**.

2.   The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between October 15, 2019 through and including December 11, 2019, is extended until **August 3, 2020**.

3.   The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between December 12, 2019 through and including February 11, 2020, is extended until **August 12, 2020**.

4.   The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between February 12, 2020 through and including May 24, 2020, is extended until **August 21, 2020**.

5.   The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between May 25, 2020 through and including June 26, 2020, is extended until **August 31, 2020**.

6.  The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant on June 27, 2020 and later shall be **65-days** from the date of service upon the responding defendant.

7.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant prior to December 12, 2019, is extended until **July 13, 2020**.

8.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between December 12, 2019 through and including February 11, 2020, is extended until **July 17, 2020**.

9.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between February 12, 2020 through and including May 24, 2020, is extended until **July 22, 2020**.

10. In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between May 25, 2020 through and including June 26, 2020, is extended until **July 27, 2020**.

11. In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant on June 27, 2020 and later shall be **35-days** from the date of service upon the individual defendant.

12. The time to answer, move against, or otherwise respond to any complaint or amended complaint that was re-filed and served upon the responding defendant before June 19, 2020 pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action, is extended until **August 3, 2020**.

13. The time to answer, move against, or otherwise respond to any complaint or amended complaint that was re-filed and served upon the responding defendant on June 20, 2020 or later pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action shall be 45-days from

2

the date the complaint or amended complaint is served upon the responding defendant.

14.    The deadlines set forth in this section supersede any deadlines for answering or otherwise responding to a complaint or amended complaint that were **provided by CMO 1**. In the event the parties stipulated to longer deadlines than those set forth above, the stipulation will control.

15.    Absent agreement by the parties or Order of this Court, no motion to dismiss shall stay discovery unless the moving party seeks to dismiss the complaint in its entirety. In the event that a party moves to dismiss the complaint in its entirety, discovery shall be stayed only as to that moving defendant and shall proceed as against the remaining defendants.

## VIII.    Procedures for Responses to Pending Motions.

1.    **In the absence of a briefing schedule consented to by the parties and/or ordered by the Court**, the time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR 3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served prior to this Court's Administrative Order #40 dated February 4, 2020, is extended to **July 17, 2020**.

2.    **In the absence of a briefing schedule consented to by the parties and/or ordered by the Court**, the time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR 3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served between February 4, 2020 through and including May 4, 2020, is extended to **August 3, 2020**.

3.    Should the motion(s) not be resolved or withdrawn by the parties as of the date prescribed by **paragraphs 1 or 2** of this section, the Court will set any additional due dates as necessary for reply papers, return date, and oral argument.

4.    The deadlines set forth in this section supersede the deadlines for the service of opposition papers and the filing of working copies of motion papers that were **provided by CMO 1**. In the event the parties stipulated to longer deadlines than those set forth above, the stipulation will control.

## IX.    Disclosure.

A.    Confidentiality Order.

1.    **On or before June 22, 2020**, Plaintiffs' and Defendants' Liaison Counsel shall jointly submit a proposed Confidentiality Order (or alternate

3

proposals) that will apply to disclosure in all CVA Actions. Defendants' disclosure in any CVA Action shall not take place prior to entry by the Court of a Confidentiality Order.

B.    Disclosure Requests.

1.    Plaintiffs shall serve responses and/or objections to Standard Automatic Disclosures and Common Demand for Verified Bill of Particulars in an individual action upon the answering defendant **within 30 days of a** defendant filing an answer, motion or other response to the complaint or amended complaint, except as provided in **section VII.13.**

2.    Each defendant shall serve responses and/or objections to Standard Automatic Disclosures in each individual action no later than 30 days after receiving plaintiff's responses and objections described above in paragraph IX.B.1, or within 25 days of entry by the Court of a Confidentiality Order, whichever date is later.

3.    Each plaintiff and defendant shall serve responses and/or objections to Standard Combined Demands/Notices to Produce no later than 40 days after service of the responding defendant's responses and/or objections described above in paragraph IX.B.2.

4.    Unless otherwise agreed by the parties to a CVA Action, responses and/or objections to any disclosure demands are to be served by U.S. Mail or its equivalent, and/or electronically where consented to by the parties. Consent to electronic service shall not be unreasonably withheld. Responses and/or objections will not be e-filed on the Court's docket by any party. However, subject to the Court's forthcoming Confidentiality Order, excerpts of such responses may be e-filed if they are pertinent exhibits to a motion, *e.g.* in a motion to compel.

5.    Any party may serve supplemental, non-repetitive disclosure requests in accordance with the CPLR and applicable discovery submission schedule for that action. Counsel shall exercise good faith in determining the need for such further requests.

6.    None of the requests attached to this Order shall be construed to be interrogatories for purposes of CPLR § 3130. No party may avoid sitting for a deposition by reason of responding to the discovery requests contained in this Order.

7.    To the extent a defendant has filed an answer before the effective date of this Order, the time for a plaintiff to serve responses and/or objections to Standard Automatic Disclosures and Common Demand for Verified Bill of Particulars shall be **30 days after the response date to the complaint that would be applicable to the matter pursuant to section VII or 30 days from entry by the Court of a Confidentiality Order, whichever is**

4

**later.** All other discovery deadlines shall follow the provisions of this section as set forth herein.

C.   Standard Plaintiff Disclosures and Authorizations.

1.   Standard Automatic Disclosures directed at Plaintiffs are attached hereto as Exhibit A to this Order.

2.   Common Demand for Verified Bill of Particulars directed at Plaintiffs is attached hereto as Exhibit B to this Order.

3.   Standard Automatic Disclosures directed at Defendants are attached hereto as Exhibit C to this Order.

4.   Proposed Standard Combined Demands directed at Plaintiffs shall be provided to the Court within 20 days of the effective date of this Order and shall become Exhibit D to this Order.

5.   Proposed Standard Combined Demands directed at Defendants shall be provided to the Court within 20 days of the effective date of this Order days and shall become Exhibit E to this Order.

6.   All disclosure requests listed in this section are deemed served as of the date of the response to the complaint.

7.   All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

**IT IS HEREBY ORDERED** that sections I-VI, and X-XII of CMO 1 remain unchanged; and

**IT IS FURTHER HEREBY ORDERED** that the effective date of this Order shall be the date it is uploaded to the Court's Docket on NYSCEF.

DATED:      June *16*, 2020

SO ORDERED ·

*George J. Silver*

HON. GEORGE J. SILVER
DEPUTY CHIEF ADMINISTRATIVE JUDGE
NEW YORK CITY COURTS

5          GEORGE J. SILVER

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 78 of 126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
————————————————————————————

In re:  CHILD VICTIMS ACT LITIGATION          EXHIBIT A to CASE MANAGEMENT
                                              ORDER No. 2, Sec. IX.C.1


————————————————————————————

**STANDARD AUTOMATIC DISCLOSURES DIRECTED AT PLAINTIFFS**


Plaintiffs' response to Automatic Disclosures:  Absent good cause shown and pursuant to Section IX of Case Management Order No. 2, and any subsequent Case Management Order issued by the Court, within 30 days of the filing of an Answer in a CVA action, plaintiff shall serve upon the answering defendant a response to the following:

1. Response to this Standard Automatic Disclosures directed at Plaintiffs and Common Demand for Verified Bill of Particulars.

2. Duly executed HIPAA-compliant authorizations[1] together with the name and last known address for the medical provider and/or facility for the following:


**Item 1.  Medical Records:**

(a) each pediatrician, physician, specialist and/or medical, mental health or other health care provider (e.g. nurse practitioner) or health care screener (i) that treated plaintiff with respect to any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that treated plaintiff with respect to any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

(b) each hospital, emergency room, walk-in clinic and/or urgent care clinic (i) that treated plaintiff for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that treated plaintiff with respect to any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

---

[1]  In processing authorizations provided by plaintiff during the course of the CVA litigation, defendants will make best efforts not to disclose the caption of the subject litigation or the fact that plaintiff is a party to litigation. In the event an authorization is insufficient to obtain the records sought in this and any subsequent demands, defendants reserve their rights and will not be precluded from issuing subpoenas or filing motions for the production of documents from third-parties pursuant to the CPLR and existing case law.

(c) each pharmacy (i) that has provided prescription medications to plaintiff for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that provided prescription medications to plaintiff at any time during the two (2) years prior to the first date of the alleged abuse to the present;

(d) each and every hospital or radiology practice where plaintiff has received x-rays; CT scans, MR images, and/or PET scans or any other diagnostic test (i) with respect to any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) with respect to any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

(e) each infirmary, health center or medical division, department or office within any jail, juvenile detention center or penitentiary (i) that provided medical care and treatment for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that provided medical care and treatment to plaintiff for any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

(f) each school, college or university health services (i) that provided medical care and treatment for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that provided medical care and treatment to plaintiff for any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse.

**Item 2.  Mental Health Records:**

(a) each mental health professional or provider, who has ever treated plaintiff or with whom plaintiff has ever consulted in any capacity at any time in plaintiff's life;

(b) each psychiatric treatment facility, hospital, clinic and/or center where plaintiff has received treatment and/or has been admitted at any time in plaintiff's life;

(c) each infirmary, health center or medical division, department or office within any jail, juvenile detention center or penitentiary where plaintiff has ever been housed at any time in plaintiff's life;

2

(d) each school, college or university mental health or counseling services at any time in plaintiff's life;

(e) each alcohol, drug and/or addiction clinic and/or treatment center providing emotional, psychiatric or psychological or neuropsychiatric services where plaintiff has ever received treatment and/or has been admitted at any time in plaintiff's life.

### Item 3.  Marriage/Couples' Counseling:

(a) Where plaintiff alleges damage to his/her marriage or ability to form or maintain romantic and/or sexual relationships, or where plaintiff's spouse or domestic partner asserts a cause of action for loss of services, each plaintiff shall provide an authorization for each provider, practice, group, institution, center, and/or individual practitioner where plaintiff has sought marriage counseling, marriage therapy, couples' counseling and/or couples' therapy at any time in plaintiff's life subject to appropriate redactions where the spouse has not placed his/her condition in controversy.

### Item 4.  Employment Records:

(a) To the extent plaintiff asserts a claim for loss of earnings, plaintiff shall provide a fully executed authorization[2] allowing defendants to obtain plaintiff's employment file(s), personnel file(s), human resources file(s), performance file(s), earnings file(s), benefits file(s), and disciplinary file(s) from plaintiff's current employer.

(b) For any period during which plaintiff asserts a claim for loss of earnings and for five years prior to that period, if a claim for loss of earnings is asserted, plaintiff shall provide with respect to any employers, specifically excluding any current employer, a fully executed authorization allowing defendants to obtain plaintiffs employment file(s), personnel file(s), human resources file(s), performance file(s), benefits file(s), and disciplinary file(s).

### Item 5.  Educational Records:

Fully executed authorizations and waivers of confidentiality, including appropriate HIPAA-compliant and/or FERPA-compliant language allowing for and directing release to defendants of any documents and statements from each elementary, junior high/middle school, and high school or institution of

---

[2]  See fn. 1.

3

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 81 of 126

higher learning (college, university, graduate school, professional school, etc.,) that plaintiff attended, including but not limited to documents relating to:

(a) grades, and or academic performance;
(b) parent-administration conferences;
(c) attendance records;
(d) standardized testing records;
(e) student transcripts;
(f) disciplinary records; and
(g) student health or mental health or counselling records.

**Item 6.  Law Enforcement/Children's Services/Prior Claims:**

(a) Fully executed and unlimited HIPAA-compliant authorizations executed by plaintiff affording defendants unlimited access to any documents and statements relating to any past and/or ongoing or current investigation including all files, documents, referrals and investigations into plaintiff and/or plaintiff's family, including foster family, and the household or foster household in which plaintiff was residing at the time of the alleged abuse and at any time in plaintiff's life before or since the abuse alleged in the Complaint took place, by each private, non-profit or governmental entity that protects and promotes the well-being of children including but not limited to the NYS Office of Children and Family Services, NYC Administration for Children's Services ("ACS") or any child welfare agency or organization or victims' advocacy or counseling organization relating to the allegations in the Complaint;

(b) Fully executed and unlimited HIPAA-compliant authorizations and New York Civil Rights Law 50-b waiver executed by plaintiff affording defendants unlimited access to any documents and statements, including but not limited to complaints, files, documents, referrals and investigations by each law enforcement entity, including but not limited to any police department and any Office of the District Attorney, U.S. Attorney's Office, State Attorneys General or relevant public prosecutor, relating to:

    i.   the allegations of sexual abuse of plaintiff as asserted in the Complaint and Verified Bill of Particulars; and
    ii.  any other allegation of abuse that plaintiff has ever alleged or asserted against any other entity, individual, institution, employer, school, or organization that is not a party to the CVA action;

(c) All records of any complaint of alleged sexual abuse or assault or physical abuse or assault, including any prior claim, complaint, statement, allegation, and/or sworn statement of plaintiff against any entity or person, including:

4

INDEX NO. 950648/2020
RECEIVED NYSCEF: 09/16/2020

        i.    a waiver of any confidentiality which may otherwise preclude disclosure of the underlying facts of such claims; and

       ii.    a waiver of any confidentiality which may otherwise preclude disclosure of plaintiff's allegations, statements and testimony;

(d) Fully executed, HIPAA-compliant authorizations and New York Civil Rights Law 50-b waivers for all items identified in response to paragraph (c) and (d);

(e) Fully executed, HIPAA-compliant authorizations, unsealing authorizations, and New York Civil Rights Law 50-b waivers for all Family Court records relating to plaintiff in the CVA action and/or to plaintiff's family of origin, household in which plaintiff resided at the time of the alleged abuse, or foster placement family(ies), if relevant, including HIPAA-compliant and unsealing authorizations for records of neglect, removal, PINS records, or juvenile delinquency proceedings.

3. Copies of all written statements, tape recordings, videotapes or any transcripts or notes thereof, electronic or otherwise made by or on behalf of the above-named defendant(s) whether signed or unsigned, or the transcript of any electronically recorded statement in accordance with CPLR 3101(e).

4. The names and addresses of all eyewitnesses and notice witnesses to the allegations set forth in the complaint and/or bill of particulars.

Objections to discovery based on privilege, confidentiality or immunity shall state with some specificity that the documents in each category are entitled to protected status; expressly justify the privilege asserted for each category; and describe the nature of the documents to be protected in a manner that will enable the other parties to assess the claim without revealing the privileged information. No documents or information subject to a claim of privilege, confidentiality or immunity from disclosure shall be produced until the claim of privilege, confidentiality or immunity is resolved by the Court.

Nothing contained in these automatic disclosures shall be considered a waiver of any party's rights to pursue any further discovery including, but not limited to, discovery requested above, but for a different time frame.

These demands shall be deemed to continue during the pendency of the CVA action, including the trial thereof.

All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
_____

In re:  CHILD VICTIMS ACT LITIGATION                    EXHIBIT B to CASE MANAGEMENT
                                                        ORDER No. 2, Sec. IX.C.2


_____


**COMMON DEMAND FOR VERIFIED BILL OF PARTICULARS
DIRECTED AT PLAINTIFFS**


PLEASE TAKE NOTICE that each Plaintiff is hereby required, pursuant to Civil
Practice Law and Rules § 3041 *et seq.* and Section IX of Case Management Order No. 2, and any
applicable subsequent Case Management Order issued by the Court, to serve upon attorneys for
Defendants a Verified Bill of Particulars responding to the below demands within the time period
specified by the Court pursuant to Case Management Order No. 2.

**I.  Plaintiff's Background Information.**

1.      Set forth Plaintiff's full name including all prior legal names, maiden
names, and any aliases used throughout Plaintiff's life, and the approximate period(s) of time
over which such names were used.

2.      If not previously provided, set forth Plaintiff's name at the time of the
alleged abuse, date of birth, social security number, parents and/or guardian's names at the time
of the alleged abuse, current address, and address at the time of the alleged abuse, if known.
(Date of birth and social security number may be provided in a document separate from
Plaintiff's other responses to this demand for particulars).

**II.  Alleged Conduct.**

3.      With respect to the alleged sexual abuse claimed in the Complaint
("alleged abuse"), state:

    a.   the name of each person who Plaintiff alleges committed the alleged
       abuse;
    b.   each act of alleged abuse
    c.   the date and approximate time of day of the occurrence; and
    d.   the location(s) of the alleged abuse and, if known, the address(es) of the
       locations.

4.       If Plaintiff claims that the individual(s) identified in response to Demand
No. 3.a violated any statute, law, rule, ordinance or regulation, provide the citation, including
specific subdivision, of each statute, law, rule, ordinance, or regulation allegedly violated and the

alleged acts or omissions giving rise to the alleged violation.  (Plaintiff is required to identify the specific subdivision of New York's penal law on which his or her claims are brought under the Child Victims Act.)

5.      If Plaintiff claims that any Defendant violated any statute, law, rule, ordinance or regulation, for each Defendant set forth the specific (including subdivision) statute, law, rule, ordinance(s), or regulation allegedly violated and the alleged acts or omissions giving rise to the alleged violation.

6.      Identify each cause of action and/or theory of liability alleged in the Complaint, and, for each, separately describe in detail all alleged acts or omissions of each Defendant (for institutional Defendants, if known, identify the agents, servants, or employees who allegedly committed the alleged acts or omissions), the date of each act or omission and the basis for any contention that an alleged act or omission was (a) negligent, (b) grossly negligent or reckless and/or (c) intentional.

7.      Describe in detail each action which Plaintiff contends should have been undertaken by each Defendants, specify when the action should have been taken, and the authority under which such action could have been taken.

8.      If Plaintiff claims that any Defendant is vicariously liable for the alleged acts or omissions of another person or entity, identify the person or entity for which each Defendant is alleged to be vicariously liable.

## III.  Alleged Notice.

9.      If Plaintiff, or any person on Plaintiff's behalf, reported at any time the alleged abuse to any person, including without limitation, any Defendant, law enforcement agency, or officer, identify:

     a.  to whom (specific individual or, if unknown, title) the report was allegedly made;
     b.  when and how the report was allegedly communicated; and
     c.  the information that was allegedly reported.

10.      If Plaintiff alleges that any Defendant had *actual* notice, awareness and/or knowledge of (a) the alleged abuse; (b) an alleged propensity of the individual(s) identified in response to Demand No. 3.a to engage in the type of conduct that caused the alleged injury and/or (c) any other alleged notice, for each Defendant identify:

     a.  the information that Plaintiff alleges Defendant had;
     b.  when Plaintiff alleges Defendant first acquired the information;
     c.  how and from whom Plaintiff alleges Defendant acquired such information (for institutional Defendants, identify Defendant's agent, servant, or employee who allegedly acquired the alleged information); and
     d.  any response(s) by each Defendant to such information.

11.    If Plaintiff alleges that any Defendant had *constructive* notice, awareness and/or knowledge of (a) the alleged abuse; (b) an alleged propensity of the individual(s) identified in response to Demand No. 3.a to engage in the type of conduct that caused the alleged injury and/or (c) any other alleged notice, for each Defendant identify:

    a.   the information that Plaintiff alleges Defendant should have had;

    b.   when Plaintiff alleges Defendant should have first acquired the information; and

    c.   how and from whom Plaintiff alleges Defendant should have acquired such information (for institutional Defendants, identify Defendant's agent, servant, or employee who allegedly should have acquired the alleged information).

## IV. Alleged Injuries.

12.    Identify each and every physical, emotional, psychological and psychiatric injury, disease, diagnosis, condition or syndrome (collectively, "injury") that Plaintiff alleges resulted from the alleged abuse, including:

    a.   when the alleged injury first occurred or manifested;

    b.   when, where and by whom (name and address) each alleged injury was first diagnosed;

    c.   when, where, and by whom (name and address) treatment was sought (indicate all dates of examination and treatment) for each alleged injury;

    d.   the dates and length of time of any confinement to bed and/or home allegedly resulting from each alleged injury;

    e.   if Plaintiff was confined to hospital or any other treatment facility, provide for each alleged injury the (i) names of each such hospital and/or facility and (ii) the approximate dates of admission and discharge;

    f.   the dates and length of time of any incapacitation from activities of daily living allegedly resulting from each alleged injury; and

    g.   whether each alleged injury identified is claimed to be permanent in nature, and if not permanent, when it resolved.

13.    If Plaintiff alleges that the alleged abuse activated, exacerbated or aggravated any preexisting injury, identify each physical, emotional, psychological and/or psychiatric injury which affected Plaintiff before the alleged abuse that Plaintiff alleges was activated, exacerbated or aggravated as an alleged result of the alleged abuse, including:

    a.   when the alleged activation, exacerbation or aggravation first occurred or manifested;

    b.   when, where and by whom (name and address) each (i) alleged injury was first diagnosed and (ii) activation, aggravation or exacerbation was first diagnosed;

    c.  when, where, and by whom (name and address) treatment for (i) the preexisting injury was sought and (ii) the subsequent activation, aggravation or exacerbation was sought (indicate all dates of examination and treatment) for each alleged injury;

    d.  the dates and length of time of any confinement to bed and/or home allegedly resulting from each alleged preexisting injury and subsequent activation, aggravation or exacerbation;

    e.  if Plaintiff was confined to hospital or any other treatment facility allegedly resulting from each alleged preexisting injury and subsequent activation, aggravation or exacerbation, provide for each alleged injury the (i) names of each such hospital and/or facility and (ii) the approximate dates of admission and discharge;

    f.  the dates and length of time of any incapacitation from activities of daily living allegedly resulting from each alleged preexisting injury and subsequent activation, aggravation or exacerbation; and

    g.  whether each alleged injury identified is claimed to be permanent in nature, and if not permanent, when it resolved.

14.    If Plaintiff has ever seen, consulted with, or received assistance of any sort from any federal, state, or local social welfare, vocational, rehabilitation or service agency, provide:

    a.  The name and address of each such agency;

    b.  The dates Plaintiff was seen by or was a client of the agency;

    c.  The person or persons who worked with Plaintiff; and

    d.  The nature of the services provided by that agency.

## V.  Alleged Damages.

15.    If Plaintiff claims to have been incapacitated from employment (or self-employment) or to have suffered impaired earnings capacity as an alleged result of the alleged abuse, identify:

    a.  the dates that Plaintiff was incapacitated or impaired from employment;

    b.  the name of Plaintiff's employer and supervisor(s) during each alleged period of incapacity or impairment;

    c.  Plaintiff's position/title during each period of alleged incapacity or impairment;

    d.  the reasons for leaving any position during a period of alleged incapacity or impairment;

    e.  Plaintiff's wages during each period of alleged incapacity or impairment and for the three years preceding and following each such period;

    f.  whether Plaintiff's loss of income was indemnified or compensated by any source(s) and, if so, the source and amount;

    g.  the amount and categories of lost earnings claimed;

    h.  each of Plaintiff's employers from three years before the first date of alleged abuse through the present, including the time period of each

employment and a description of Plaintiff's job title(s) and duties over time at each employer; and

i.   if unemployment or loss of employment is alleged, the duration of unemployment, efforts to find other employment following the last day of employment, and any offers of employment since the last date of employment.

16.    If Plaintiff claims any *future* impairment of earnings capacity or loss of future earnings as an alleged result of the alleged abuse, provide the amount and categories of each such alleged impairment or loss.

17.    State the amount(s), if any, Plaintiff claims as special damages for:

a.   physician's services;
b.   mental health expenses;
c.   psychiatric expenses;
d.   psychological expenses;
e.   social worker expenses;
f.   therapy expenses;
g.   medication;
h.   medical supplies;
i.   hospital expenses;
j.   x-rays and all similar diagnostic tests;
k.   nursing expenses; and
l.   amount and nature of any other special damages claimed.

18.    If Plaintiff claims *future* special damages, identify the categories (enumerated in Demand No. 17) and amounts claimed.

19.    If the Complaint alleges loss of services, society, companionship and/or consortium, state for whom the claim for loss of services is made, that person's relationship to Plaintiff, and the nature, extent and duration of the alleged loss.

20.    If it is alleged in the Complaint that Article 16 of the CPLR does not apply to this action, state the basis for such claim and identify any alleged applicable exception.

21.    If Plaintiff claims punitive damages, describe the basis for such claim.

22.    Other than the alleged abuse, if Plaintiff has at any time (as a minor or as an adult) been a victim of any form of sexual abuse or assault, identify:

a.   the individual(s) who caused and/or committed such acts;
b.   when and where each act occurred;
c.   each act of sexual abuse or assault;
d.   to whom such act(s) were reported; and

e. any related claim, cause of action, lawsuit or proceeding filed by or on behalf of Plaintiff or in which Plaintiff participated as a witness, including criminal proceedings, and the outcome of each identified lawsuit or proceeding, to the extent known.

23. If Plaintiff has at any time (as a minor or as an adult) been a victim of any form of sexual abuse or assault other than the alleged abuse, identify each and every physical, emotional, psychological and psychiatric injury sustained as a result of such conduct, including:

a. when the alleged injury first occurred or manifested;
b. when, where and by whom (name and address) each alleged injury was first diagnosed;
c. when, where, and by whom (name and address) treatment was sought (indicate all dates of examination and treatment);
d. the dates and length of time of any confinement to bed and/or home allegedly resulting from the alleged injuries;
e. if Plaintiff was confined to hospital or any other treatment facility, provide the (i) names of each such hospital and/or facility and (ii) the approximate dates of admission and discharge;
f. the dates and length of time of any incapacitation from activities of daily living allegedly resulting from the alleged injuries; and
g. whether each alleged physical, emotional, psychological and/or psychiatric injury, disease, diagnosis, condition or syndrome identified is claimed to be permanent in nature, and if not permanent, when it resolved.

## VI. Demands Specific for Certain Institutional Defendants.

24. Complete the additional demands contained in the applicable appendix as appropriate for the named Defendants.

All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

**Appendix of Additional Demands for Particulars**
**Roman Catholic Institutions**

1.    With respect to the alleged abuse identified in Demand No. 3 identify:

   a.   the relationship of each person identified in response to Demand No. 3.a to each diocesan and/or archdiocesan and/or parish and/or parochial school Defendant;

   b.   whether the person(s) identified in response to Demand No. 3.a was a member of a religious order, religious institute, religious congregation, or religious society, the name of such order, institute, congregation, or society;

   c.   whether the person(s) identified in response to Demand No. 3.a was a lay employee or volunteer at a parish or school within the territorial confines of a diocese or archdiocese, and provide the name of such parish and/or school;

   d.   whether the person(s) identified in response to Demand No. 3.a was a lay employee or volunteer of a religious order, religious institute, religious congregation, or religious society, and provide the name of such religious order, institute, congregation, or society.

**Appendix of Additional Demands for Particulars**
**City of New York and New York City Department of Education**

     1.     If the City of New York is a named Defendant, identify the agency(ies) involved.

     2.     If the Department of Education is a named Defendant, identify the school(s) Plaintiff attended at the time of the alleged sexual abuse.

     3.     If Plaintiff claims that Plaintiff missed school as a result of the injuries sustained from the incident, state the approximate number of days lost from school.

     4.     If Plaintiff alleges negligent supervision of Plaintiff, so state.

     5.     If Plaintiff alleges negligent supervision of any other individual, agency, organization, or other entity, identify each such individual, agency, organization, or other entity who Plaintiff alleges the municipal Defendant negligently supervised.  If the action names more than one municipal Defendant, provide the requested information for each such Defendant.  If you cannot identify an individual by name, please provide the individual's title, role, or other information sufficient to reasonably identify that individual.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 91 of 126

## Appendix of Additional Demands for Particulars
### Private Educational Institutions

       1.      If Plaintiff claims that Plaintiff missed school as a result of the injuries sustained from the incident, state the number of days lost from school.

       2.      If Plaintiff alleges negligent supervision, the following items are additionally demanded:

      a.  For every individual who allegedly failed to provide adequate supervision, state (i) the name of the individual; (ii) the address and phone number of the individual; (iii) the name of the entity who employs(ed) the individual; (iv) the title of the individual; and (v) when the individual allegedly failed to provide adequate supervision. If more than one individual allegedly failed to provide adequate supervision, please respond to this demand, including all subparts, as to each individual.  If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each individual. This demand includes all individuals, even if employed by any of the parties.

      b.  If it is alleged that an agency, organization, and/or other entity failed to provide adequate supervision, state (i) the name of the agency, organization, and/or other entity (ii) the address and phone number of the agency, organization, and/or other entity; (iii) the personnel within the agency(ies), organization(s) and/or other entity(ies) allegedly responsible for the supervision of the person(s), agency(ies), organization(s), and/or other entity(ies) identified in item 4(c), below; (iv) the title(s) of the personnel within the agency, organization and/or other entity allegedly responsible for the supervision of the person, agency, organization, and/or other entity identified in item 4(c), below; and (v) when the agency, organization, and/or other entity allegedly failed to provide adequate supervision.  If more than one person, agency, organization, and/or other entity allegedly failed to provide adequate supervision, respond to this demand, including all subparts, as to each agency, organization and/or other entity.  If you are unable to provide any of the above information, provide a description reasonably sufficient to identify each individual, agency, organization, and/or other entity. This demand includes all individuals, agencies, organizations, and/or other entities, even if employed by or an agency, related entity, or subdivision of any of the parties.

9

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 92 of 126

      c.   Identify the name or names of the person(s), agency(ies), organization(s), and/or other entity(ies) it is alleged received inadequate supervision.

      d.   Identify what conduct, if undertaken, would have removed the risk of harm to Plaintiff.

3.      If Plaintiff allege negligent hiring or retention of an individual, the following items are also additionally demanded:

      a.   For every individual who allegedly was negligent as to the hiring or retention state (i) the name of the individual; (ii) the address and phone number of the individual; (iii) the name of the entity that employs(ed) the individual; and (iv) the title of the individual. If more than one person allegedly was negligent as to the hiring or retention, please respond to this demand, including all subparts, as to each individual. If you are unable to provide any of the above information, provide a description reasonably sufficient to identify each individual.  This demand includes all individuals, even if employed by any of the parties.

      b.   For every agency, organization, and/or other entity that  allegedly was negligent as to hiring or retention state (i) the name of the agency, organization, and/or other entity; (ii) the address and phone number of the agency, organization, and/or other entity; (iii) when the agency, organization, and/or other entity allegedly was negligent; and (iv) the personnel (including title(s)) within the agency(ies), organization(s) and/or other entity(ies) responsible for the allegedly negligent hiring or retention. If more than one person, agency, organization, and/or other entity allegedly was negligent as to hiring or retention, please respond to this demand, including all subparts, as to each agency, organization and/or other entity. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each individual, agency, organization, and/or other entity.  This demand includes all agencies, organizations, and/or other entities, even if employed by an agency, related entity, or subdivision of any of the parties.

      c.   State what conduct, if undertaken, would have removed the risk of harm to Plaintiff.

      d.   State in what manner the individual(s) was(were) unfit for employment prior to being hired and what information would have been disclosed by reasonable inquiry or investigation that would have shown a propensity for the individual to engage in the conduct alleged in the Complaint.

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 93 of 126

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
_____

In re:  CHILD VICTIMS ACT LITIGATION          EXHIBIT C to CASE MANAGEMENT
                                              ORDER No. 2, Sec. IX.C.3


_____


## STANDARD AUTOMATIC DISCLOSURES DIRECTED AT DEFENDANTS


Defendants' response to Automatic Disclosures:  Absent good cause shown and pursuant to Section IX of Case Management Order No. 2, and any subsequent Case Management Order issued by the Court, within 30 days of plaintiff's service of responses to the Standard Automatic Disclosures Directed at Plaintiffs and the Common Demand for a Verified Bill of Particulars in a CVA action, defendant shall serve upon plaintiff the following:

1. All documents in the possession of the responding defendant prior to and up to one full year after the last date of abuse as alleged in the complaint and bill of particulars relating to any allegations of sexual abuse against the alleged perpetrator arising from conduct that occurred prior to and during the abuse alleged including, but not limited to, statements, written reports, audio recordings, video recordings, correspondence, emails, memoranda, and notes, and materials transmitted to any police department, any Office of the District Attorney, U.S. Attorney's Office, State Attorneys General or relevant public prosecutor.

2. If it is alleged that a priest or clergy member abused plaintiff, please provide all personnel files of the alleged perpetrator maintained by the responding religious organization defendant.  To the extent not included in the personnel file of the alleged perpetrator, defendants shall also provide (i) all records pertaining to the assignment changes of the priest or clergy member between parishes and/or schools; (ii) a list of all parishes where the priest or clergy member was assigned inclusive of the start and end dates; and (iii) all alleged "confidential" or "secret" files.

3. If it is alleged that a (i) physician or other medical professional, or (ii) teacher or other school employee, (iii) troop or group leader (iv) non-catholic religious leader or employee, or (v) other alleged perpetrator sexually abused plaintiff, defendants shall provide all personnel files of the alleged perpetrator. To the extent not included in the personnel file of the alleged perpetrator, defendants shall also provide (i) all records pertaining to the transfer of the alleged perpetrator between non-catholic religious entities, medical institutions/departments, schools, troops or other locations; (ii) a list of all non-catholic religious entities, medical institutions, schools, troops or other locations where the alleged perpetrator was assigned inclusive of the start and end dates;

and (iii) all alleged "confidential," "secret," "ineligible volunteer," "perversion," human resources or similar files.

4. If it is alleged that a foster parent or individual residing within the foster home or placement sexually abused plaintiff during the time period alleged in the complaint and bill of particulars, defendant shall provide, for a period of two years prior to and including the earliest date of sexual abuse as alleged in the complaint and bill of particulars, the alleged perpetrator's file and the file for each home or placement where plaintiff alleges such sexual abuse occurred, to the extent such files exist and are within the custody and control of the responding defendant.

5. If a background check(s) was(were) conducted of the alleged perpetrator:

   a. All records documenting the background check(s) including the background check results and date(s) the background check(s) were performed;
   b. The name of the person or entity that performed the background check(s);
   c. The name(s), address(es) and phone number(s) of any references that were allegedly checked.

6. All written statements, tape recordings, videotapes or any transcripts or notes thereof, made by or on behalf of plaintiff by any person, regarding the allegations set forth in the complaint and bill of particulars in accordance with CPLR 3101 (e).

7. With respect to allegations against a school, upon presentation of an executed authorization from plaintiff:

   a. complete copy of all school records pertaining to plaintiff;
   b. academic transcripts and report cards;
   c. medical records;
   d. counseling records, student health or mental health records; and
   e. disciplinary records.

8. With respect to allegations of sexual abuse by a foster parent or by an individual residing within the foster home or placement, or to allegations against a foster placement entity, upon presentation of an executed authorization from plaintiff, the responding defendant shall provide a complete copy of records pertaining to plaintiff's placement to the extent such records exist and are within the custody and control of the responding defendant.

9. All names and aliases used by the alleged perpetrator to the extent known by the responding defendant.

10. The names and/or last known addresses of witnesses who possess information of the claimed abuse against plaintiff as alleged in the complaint and bill of particulars.

2

11. All documents in existence at the time of the alleged abuse setting forth any of the responding defendant's policies, procedures, protocols, guidelines, rules and/or regulations concerning the protection of minors from sexual abuse, the reporting of sexual abuse of children, and the protocols for receiving allegations of sexual abuse and investigating such complaints.

12. The complete and full insurance agreements, including all additional, concurrent, excess or umbrella coverage that may be applicable under which the insurers of the responding defendant may be liable to satisfy part or all of a judgement that may be entered in the above-entitled action to indemnify or reimburse payments made to satisfy a judgment in the above-entitled action, or to comply with their duty to defend.

   a. In the event the responding defendant is unable to locate a copy of any policies that have been identified as possibly providing coverage for the above-entitled action, the responding defendant shall state: (i) the name(s) and address(es) of the insurance carrier(s), (ii) the applicable policy limits of coverage, (iii) the policy number or numbers and coverage amounts, and (iv) the effective dates thereof.

Objections to discovery based on privilege, confidentiality, immunity, or other protection from disclosure shall state with some specificity that the documents in each category are entitled to protected status; expressly justify the privilege asserted for each category; and describe the nature of the documents to be protected in a manner that will enable the other parties to assess the claim without revealing the privileged information. No documents or information subject to a claim of privilege, confidentiality or immunity from disclosure shall be produced until the claim of privilege, confidentiality or immunity is resolved by the Court.

Nothing contained in these automatic disclosures shall be considered a waiver of any party's rights to pursue any further discovery including, but not limited to, discovery requested above, but for a different time frame.

These demands shall be deemed to continue during the pendency of the CVA action, including the trial thereof.

All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

# Exhibit J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
---------------------------------------------------------- x
                    :
                    :
                    :    **CONFIDENTIALITY ORDER**
                    :
**In re: CHILD VICTIMS ACT LITIGATION** :
                    :    **CASE MANAGEMENT**
                    :    **ORDER ("CMO") No. 2**
                    :
                    :
---------------------------------------------------------- x

**CONFIDENTIALITY ORDER**
**Pursuant to Sec. IX of CMO 2**

        WHEREAS this court finds good cause exists for the issuance of this confidentiality order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and

        WHEREAS this confidentiality order shall remain in effect unless otherwise modified;

        IT IS HEREBY ORDERED that all persons and entities subject to this order – including without limitation the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

**I.    Applicability.**

        1.    The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

        2.    Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

        3.    Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this

1

order regardless of whether the non-party is or becomes bound by the terms of this order.

## II.     Use and Disclosure of Confidential Discovery Materials.

1.     No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim.  The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation.  Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation.  In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation.

2.     Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information.  Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order.  Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

3.     The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III.     Confidential Designation.

1.     Any party may designate all or portions of Discovery Materials as "Confidential Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

a.     "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically, medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. Gen. Bus.

2

Case 1:20-cv-09586-LAK    Document 1-1    Filed 11/13/20    Page 99 of 126

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b.    "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein. Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information. Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition. Where it would not be cost effective or would be burdensome, however, the Producing

3

Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2.   <u>Depositions</u>.  When a deposition includes the disclosure of Confidential Information:

    a.   Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation.  During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information.  The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

    b.   The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3.   <u>Documents</u>.  With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4.   <u>Electronically Stored Information</u>.  Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION."  If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

4

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 101 of 126

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## IV.    Disclosure of Confidential Information.

Confidential Information will not be disclosed by the Receiving Party except as permitted by this order.

1.    <u>Permissible Disclosures.</u>    A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

a.    the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers;

b.    such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

c.    the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

d.    the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

e.    the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms;

f.    a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

g.    any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

h.    this court, including any appellate court, its support and administrative personnel; and

5

Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 102 of 126

        i.     any court reporter and associated support staff employed in this litigation.

2.    <u>Authorized Disclosures.</u>  A Receiving Party may disclose Confidential Information if:  (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3.    <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates</u>.  Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4.    <u>Challenges to Designation as Confidential Information</u>.  A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection.  The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed.  If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer.  The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing.  In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later.  "Writing" and "written notice" shall include electronic communications.

## V.     Identities of Abuse Survivors.

1.     <u>Possible Abuse Survivors Who Are Plaintiffs and/or Who Are Otherwise Represented by Counsel</u>.

   a.     Where a document contains the name of a Plaintiff who has filed suit under a pseudonym, the Producing Party shall redact the name and replace it with the pseudonym.  The Producing Party shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by pseudonym and identify the attorneys representing each of them.  Any such list is Confidential Information.

   b.     Where a document references the name of a Plaintiff who has filed suit in his or her own name, the Producing Party shall produce the document without redaction but shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by their name and identify the attorneys representing each of them.  Any such list is Confidential Information.

   c.     Where a document references the name of a person who may be a survivor of child sex abuse, but the Producing Party is not aware that the person has filed suit, the Producing Party shall redact the person's name and replace it with a unique "Doe code" that allows the person to be tracked across documents.  However, if the Producing Party is on notice that such a person may be represented by counsel, the Producing Party will simultaneously produce to the Receiving Party's counsel a list of these individuals by Doe code and identify the attorneys representing them.  Any such list is Confidential Information.

   d.     No party or their counsel will contact a Plaintiff or a person identified by a "Doe code" who is represented by counsel unless permission to do so is given by that Plaintiff or person's counsel.  Rather, any party or their counsel who believes in good faith that contacting a Plaintiff or person identified by a "Doe code" is important to the party's claim or defenses may do so only through contact with the attorney representing that Plaintiff or person identified by a "Doe code."

   e.     If permission to speak with the Plaintiff or person identified by a "Doe code" is denied or not responded to within a reasonable time, a party or their counsel may ask the court and/or other designated personnel appointed by the court for such communication.

2.     <u>Possible Abuse Survivors Who Are Not Represented by Counsel</u>.

7

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

a.     If a Producing Party does not believe that a person identified by a "Doe code" is represented by counsel, the Producing Party will create a list of the "Doe codes" for such persons with a key that contains the true names and identifying information for these individuals (the "Unrepresented Survivors List").  Any such list is Confidential Information but shall not be shared with anyone other than the court and/or other designated personnel appointed by the court.

b.     A party or their counsel may seek to contact an Unrepresented Survivor on the Unrepresented Survivors List through the following procedure:

    i.     The party or their counsel must submit an email or letter to the court and/or other designated personnel appointed by the court that sets forth their good faith belief that an Unrepresented Survivor may have discoverable information for the party's case.  Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be copied on the email or letter to the court and/or other designated personnel appointed by the court.

    ii.     The court and/or other designated personnel appointed by the court, after conferring with Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to understand if there are other parties who wish to speak to the same person, shall contact the Unrepresented Survivor, explain that information is being sought to assist with a party's claims or defenses, and inquire if the Unrepresented Survivor has any objection to being contacted.

    iii.     If the Unrepresented Survivor agrees to be contacted, the court and/or other designated personnel appointed by the court shall so advise the requesting party or their counsel by email or letter, and copy Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel.  The court and/or other designated personnel appointed by the court shall also advise the requesting party or their counsel of the Unrepresented Survivor's preferred means of being contacted.

    iv.     If an Unrepresented Survivor advises the court and/or other designated personnel appointed by the court that he or she does <u>not</u> want to be contacted, the court and/or other designated personnel appointed by the court shall advise the party or their counsel who made the request, by email or letter, with a copy to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel.  Thereafter, the court and/or

8

other designated personnel appointed by the court shall provide the full name and last known address of the Unrepresented Survivor to the party or their counsel who made the request and to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Upon being provided with the identity of the Unrepresented Survivor, the parties in the action in which the relief is sought, Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel will coordinate the issuance and service of a subpoena on the Unrepresented Survivor in order to avoid duplicative subpoenas and to lessen any burden or hardship that such subpoena may cause to an Unrepresented Survivor.  Other than service of the subpoena, no party or their counsel, or anybody acting on their behalf, may contact the Unrepresented Survivor prior to the deposition pursuant to the subpoena.

v.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be charged with coordinating, to the extent practicable, all motions, subpoenas, and depositions concerning Unrepresented Survivors in order to avoid duplicative motions and to lessen any burden or hardship that such motions or subpoenas may cause to an Unrepresented Survivor.

vi.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be given at least 20 days' notice by email of any deposition that may be noticed of an Unrepresented Survivor for the purpose of coordinating attendance at the deposition by other parties who have claims or defenses where information possessed by the Unrepresented Survivor may be discoverable and minimizing, to the extent practicable, any burden on the Unrepresented Survivor.

vii.    The court and/or other designated personnel appointed by the court shall maintain a copy of deposition transcripts of Unrepresented Survivors so the transcripts may be used by other parties with claims or defenses where the transcript may contain discoverable information.

c.    Nothing contained herein shall prevent a party or their counsel from contacting a person where the identity of the person was learned through sources other than documents produced pursuant to this Section.

9

INDEX NO. 950648/2020
RECEIVED NYSCEF: 09/18/2020

## VI.    Procedures for Filing Confidential Discovery Materials with the Court.

1.   If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action.  The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2.   Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Party shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission.  If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer. Any party may use its portion of any such joint letter to request full briefing of the dispute.  The Moving Party shall be responsible for submitting the joint letter to the court.

3.   Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling.  If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4.   Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

## VII.    Inadvertent Disclosure.

a.   Confidential Information. If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation.  The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b.   Privileged Materials.  If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney

10

FILED: NEW YORK COUNTY CLERK 09/18/2020 03:41 PM    INDEX NO. 950648/2020
NYSCEF DOC. NO. 10    Case 1:20-cv-09586-LAK    Document 1-1    Filed 11/13/20    Page 107 of 126    RECEIVED NYSCEF: 09/18/2020

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

work product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.      Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure. In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.     Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii.    If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.      Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing

11

Party.  Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the privileged content during the course of this matter.

## VIII.  Additional Provisions

1.  <u>Prior Bad Acts, Subsequent Bad Acts and Corrective Measures</u>. Generally, consistent with the substance of this order, records of: 1) prior bad acts, not limited to previous accusations of sexual abuse, against an alleged sexual abuse perpetrator; or 2) subsequent bad acts, not limited to consequent accusations of sexual abuse, by an alleged sexual abuse perpetrator and corrective measures by an institution, are discoverable, and will be disclosed upon request.

2.  <u>Treatment of Discovery Materials Upon Termination of Action.</u>  Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until  sixty (60) days after all such claims are terminated, including any appeals.  Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action.  Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

3.  <u>No Waiver</u>.  Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of:  (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence.  In addition, nothing in this order

12

shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4.     <u>Non-Applicability of Order</u>. The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information has become public in violation of this order. No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5.     <u>Notices</u>. Transmission by electronic mail is acceptable for all notification purposes under this order.

6.     <u>Modification</u>. This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court. The court reserves the right to modify this order for any reason that the court deems appropriate.

7.     <u>Duration.</u> This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8.     <u>Survival</u>. After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

Dated: September 18, 2020

_George J. Silver_
**GEORGE J. SILVER, J.S.C.**

13

**Exhibit A**

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I, _____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order.  I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted. I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [                ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.

Dated:_____          Signature: _____
                                 Printed Name: _____

14

# Exhibit K

Attorney:
PETER J. SAGHIR
GAIR, GAIR, CONASON
80 PINE STREET 34TH FLOOR
NEW YORK NY 10005



512297

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ANTHONY RAPP AND C.D.
          Plaintiff

KEVIN SPACEY FOWLER A/K/A KEVIN SPACEY, ET AL
          Defendant

Index / case #: 950648/2020

**AFFIDAVIT OF SERVICE**

_ANNE ARNAR_ County, State of: _MARYLAND_   _PATRICK J. CORCORAN_ being sworn,
says: Deponent is not a party herein, is over the age of 18 years and resides in the State of: _Maryland_

On _09-21-2020_ at _9:21_ (am)/pm at: 622 PONTE VILLAS NORTH #1 BALTIMORE MD 21230

**Deponent served the within:** SUMMONS & VERIFIED COMPLAINT
NOTICE OF ELECTRONIC FILING

On which were set forth the Index No., herein, and date of filing

**On: KEVIN SPACEY FOWLER A/K/A KEVIN SPACEY**
      (herein after called the recipient) therein named.

| | | |
|---|---|---|
| ☐ | Individual | By delivering a true copy of each to said recipient personally; Deponent knew the person so served to be the person described in as said recipient therein |
| ☐ | Suitable Age person | By delivering thereat a true copy of each to:_____ a person of suitable age and discretion.Said premises is recipients [   ] Actual Place of Residence [   ] Actual Place of Business within the State. |
| ☒ | Affixing to Door | By affixing a true copy of each to the door of said premises which is recipients [☒] Actual Place of Residence [   ] Actual Place of Business, within the State Deponent was unable with due diligence to find recipient or person of suitable age and discretion thereat having called there _09-18-20 + 09-19-20 + 09-21-20_ |
| ☐ | Corporation or Partnership | By delivering thereat a true copy of each to:_____ personally.  Deponent knew said corporation / partnership so served to be the corporation / partnership described in said aforementioned document as said recipient and knew said individual to be _____ thereof. |
| ☒ | Mailing | Within 20 days of such delivery, or affixing, deponent enclosed a copy of same in a postpaid envelope  properly addressed to recipient at recipients last known [X] Actual Place of Residence [   ] Actual Place of Business at _622 Ponte Villas North #1, Baltimore, MD 21230_ on 9/21/20 and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "personal and confidential" and did not indicateon the outside, thereof by return address or otherwise that the communication was from an attorney or concerned an action against the defendant. |

| | Description | | | | | |
|---|---|---|---|---|---|---|
| ☐ | | [   ] Male | [   ] White skin | [   ] Black hair | [   ] 14-20 Yrs | [   ] Under 5' | [   ] Under 100 Lbs |
| | | [   ] Female | [   ] Black skin | [   ] Brown hair | [   ] 21-35 Yrs | [   ] 5'0"-5'3" | [   ] 100-130 Lbs |
| | | | [   ] Yellow skin | [   ] Gray hair | [   ] 36-50 Yrs | [   ] 5'4"-5'8" | [   ] 131-160 Lbs |
| | | | [   ] Brown skin | [   ] Blonde hair | [   ] 51-65 Yrs | [   ] 5'9"-6'0" | [   ] 161-200 Lbs |
| | | | [   ] Red skin | [   ] Red hair | [   ] Over 65 Yrs | [   ] Over 6' | [   ] Over 200 Lbs |
| | | Other Identifying Features _____ | | | | |

| | | |
|---|---|---|
| ☐ | Military Service | I asked the person spoken to whether recipient was in active military service of the United States or the State of New York in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated. |
| ☐ | | Subpoena Fee Tendered in the amount of_____ |
| ☐ | | |

Sworn to before me on   _9/21/2020_

_Susan M. Corcoran_

My Commission Expires

April 7, 2024

[Notary seal: SUSAN M. CORCORAN NOTARY PUBLIC ANNE ARUNDEL CO. MD]

_[signature]_ 09-21-20
(Print name below signature)
_PATRICK J. CORCORAN_

File No.   950648/2020

Work Order No.   512297

NYSCEF DOC. NO. 10          Case 1:20-cv-09586-LAK   Document 1-1   Filed 11/13/20   Page 113 of 126          RECEIVED NYSCEF: 10/05/2020

ANTHONY RAPP AND C.D.

,**Plaintiff(s)**

**– against –**

KEVIN SPACEY FOWLER A/K/A KEVIN SPACEY, ET AL

,**Defendant(s)**

PROOF OF DILIGENCE WITH SERVICE

I, THE UNDERSIGNED AM AND WAS ON THE DATES HEREIN MENTIONED, OVER THE AGE
OF EIGHTEEN YEARS AND NOT A PARTY TO THE ACTION, ATTEMPTED TO SERVE THE
FOLLOWING:

     SUMMONS & VERIFIED COMPLAINT
     NOTICE OF ELECTRONIC FILING

AND THAT AFTER DUE SEARCH, CAREFUL INQUIRY AND DILIGENT ATTEMPTS AT THE

     ADDRESS:  622 PONTE VILLAS NORTH
               #1
               BALTIMORE MD 21230

     ALTERNATE ADDRESS: UNKNOWN

AND IN ADDITION TO SERVING THE SUBJECT(S):

KEVIN SPACEY FOWLER A/K/A
KEVIN SPACEY

FURTHER ATTEMPTS AND DILIGENCE WERE MADE AND ARE DETAILED BELOW:

09/18/20 10:43AM  THE GIVEN ADDRESS IS LOCATED INSIDE A PRIVATE
                  COMMUNITY. THE SERVER WAS ABLE TO GAIN ACCESS
                  AND RECEIVED NO RESPONSE AT THE DOOR.
                  NO SIGNS OF ACTIVITY INSIDE.
                  NO SIGNS OF MOVEMENT INSIDE.
                  THE SERVER IS ABLE TO SEE INSIDE THE DOOR.
                  WILL CONTINUE TO ATTEMPT SERVICE.
09/19/20 09:20AM  THE SERVER ATTEMPTED AT THE GIVEN ADDRESS AND
                  RECEIVED NO RESPONSE AT THE DOOR.
                  NO SIGNS OF ACTIVITY INSIDE.
                  NEIGHBORS NOT AVAILABLE.
                  WILL CONTINUE TO ATTEMPT SERVICE.
09/21/20 09:21AM  THE SERVER ATTEMPTED AT THE GIVEN ADDRESS AND
                  RECEIVED NO RESPONSE.
                  NO SIGNS OF ACTIVITY INSIDE.
                  NO SIGNS OF MOVEMENT.
                  THE SERVER POSTED THE DOCUMENTS AS PER NY
                  RULES.
09/22/20 06:50PM  THE SERVER ATTEMPTED AT THE GIVEN ADDRESS AND
                  THE DOCUMENTS WERE STILL POSTED NEXT TO THE

Continued on next page

DGR Legal, Inc.
1359 Littleton Road, Morris Plains, NJ 07950-3000
**File #**  950648/2020     (973) 403-1700  Fax (973) 403-9222     **Work Order #**  512297

ANTHONY RAPP AND C.D.

**,Plaintiff(s)**

                                   – against –

KEVIN SPACEY FOWLER A/K/A KEVIN SPACEY, ET AL

**,Defendant(s)**

_____

                  DOOR.
                  NO SIGNS OF ACTIVITY INSIDE.

   PERSON SERVING: PATRICK CORCORAN

# Exhibit L

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

_____

**In re:  All Plaintiffs in CHILD VICTIMS ACT NYC**
**LITIGATION v. In re: All Defendants in CHILD VICTIMS**
**ACT NYC LITIGATION**

Index №.      950000/2020

_____

**GEORGE J. SILVER, J:**

Upon the court's own motion, it is hereby

ORDERED that the Clerk of Court, New York County, is directed to issue, without fee, a Master Index Number for the sole purpose of adjudicating a forthcoming Order to Show to Cause Issue challenging the contents of this court's Confidentiality Order dated September 18, 2020. The Master Index number will be used solely for the purpose of accepting the forthcoming Order to Show Cause and any responsive papers related thereto.  For management purposes, the Master Index Number, and pleadings and papers accompanying it, shall bear the caption "In re:  All Plaintiffs in CHILD VICTIMS ACT NYC LITIGATION v. In re: All Defendants in CHILD VICTIMS  ACT NYC LITIGATION." The Master Index number assigned to the forthcoming Order to Show Cause in New York County shall be "950000/2020," and shall be created in the New York State Courts Electronic Filing ("NYSCEF") system.  However, while the Master Index number relates to the general challenge to the court's Confidentiality Order, any papers or pleadings having specific application to an individual action shall be filed under the individual case caption and index number related to that action.

The court directs that only documents, applications and responsive papers related to the forthcoming Order to Show Cause be e-filed via NYSCEF under this Master Index number and any documents which do not apply or relate to such shall not be addressed and will be deleted.

The foregoing constitutes the decision and order of this court.

**Dated**: October 14, 2020

**GEORGE J. SILVER, J.S.C.**

# Exhibit M

*Exparte Cus Paws*

At ~~Part~~ _____ of the Supreme Court
of the State of New York, held in
and for the County of New York,
held at the Courthouse, 60 Centre,
New York, NY 10007, on the
10th day of *Sept.*, 2020

Hon. Deborah A. Kaplan
J.S.C.

*Present:*
*Hon. _____*   *JSC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

ANTHONY RAPP and C.D.,

                Plaintiff,

        -against-

KEVIN SPACEY FOWLER, a/k/a, KEVIN SPACEY,

                Defendant.

-----------------------------------------------------------------X

Index No.: 950648 /2020

ORDER TO SHOW CAUSE
FOR LEAVE TO FILE A
CIVIL ACTION UNDER
THE *CHILD VICTIMS ACT*
USING A PSEUDONYM

Upon reading and filing the Affirmation of Peter J. Saghir, Esq., sworn to on the 8th day

of September 2020, it is hereby

      **ORDERED** that Defendants show cause ~~at a Special Term~~ *COMPARTED* of this Court to be held at

*111 Centre St., mnmy before Hon. George J. Silver*, on the 11th day of

*Dec.*, 2020, at 11:00 o'clock in the *forenoon* or as soon as counsel may be

*noa virtual conference*

heard, why an Order should not be made:

        1.     Deeming plaintiff's use of the pseudonym, "C.D.," and the caption "ANTHONY

RAPP and C.D. v. KEVIN SPACEY FOWLER, a/k/a, KEVIN SPACEY" to be proper;

        2.     Permitting Plaintiff to proceed in this action under the pseudonym "C.D." and

with the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN

SPACEY;"

        3.     Directing that the parties, their attorneys, and agents refrain from publishing

plaintiff's true identity; and

4.    Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to the plaintiff by the pseudonym, "C.D." and bear the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY" and directing the County Clerk to enter and record all papers in the action under the title "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY;" and

5.    Granting such other and further relief as may be just and proper; and it is further

**ORDERED** that Plaintiff is permitted as interim relief to maintain the above pseudonym caption pending a hearing on this Order to Show Cause; and it is further

**ORDERED** that sufficient cause appearing therefore, let service upon defendant of a copy of this Order, together with the papers upon which this Order is granted, and the Summons and Verified Complaint, on or before the _13th_ day of _Nov._ 2020, be deemed good and sufficient service. An affidavit or other proof of service shall be presented to this Court on the return date directed in this Order.

*OPPOSITION PAPERS BY NOV. 30th. REPLY, if any, TO BE SERVED ON OR BEFORE DEC. 9, 2020.*

Dated: New York, NY
September ___, 2020

ENTER:

_____
Hon. Hon. Deborah A. Kaplan J.S.C.
J.S.C.

Hon. Deborah A. Kaplan
J.S.C.

TO:
    KEVIN SPACEY FOWLER
    622 Ponte Villas North #1
    Baltimore, Maryland 21230

*The parties are directed to e-mail hkingo@nycourts.gov and jsamuel@nycourts.gov the names and e-mail addresses of all parties that will be participating in the virtual conference no later than November 25, 2020. If the parties are able to resolve the OSC by stipulation, the parties shall notify the court by the same date.

# Exhibit N



BEN B. RUBINOWITZ
JEFFREY B. BLOOM
ANTHONY H. GAIR
HOWARD S. HERSHENHORN*
STEPHEN H. MACKAUF
RICHARD M. STEIGMAN
DIANA M. A. CARNEMOLLA*
PETER J. SAGHIR
MARIJO C. ADIMEY*
CHRISTOPHER J. DONADIO*
DANIEL L. BROOK, MD, JD
RACHEL L. JACOBS
JAMES S. RUBINOWITZ
DAVID H. LARKIN
MICHELLE L. LEVINE
ALLAN ZELIKOVIC
_____
ROBERT D. SUNSHINE, MD, F.A.C.S.

**Counselors at Law**

80 Pine Street, 34th Floor
New York, NY 10005
Tel: 212-943-1090
Fax: 212-425-7513

**www.gairgair.com**

**New Jersey Office**

One Gateway Center, Ste. 2600
Newark, NJ 07102
Tel: 973-645-0581
Fax: 973-622-8160

\* MEMBER OF N.Y. & N.J. BARS

October 23, 2020

VIA NYSCEF

Hon. Deborah A. Kaplan, Administrative Justice
60 Centre Street, Room 609
New York, New York 10007

      Re:    <u>Anthony Rapp and C.D. v. Kevin Spacey Fowler, a/k/a Kevin Spacey</u>
             New York Supreme Index No. 950648/2020

Dear Justice Kaplan,

      As you are aware, my office represents plaintiffs, Anthony Rapp and C.D., in the above-referenced matter.  Our office filed an Order to Show Cause for Leave to File a Civil Action Under the *Child Victims Act* Using a Pseudonym, which your Honor signed and uploaded to NYSCEF on October 15, 2020.  A copy of the signed Order to Show Caused is annexed hereto for your reference.

      The signed Order to Show Cause indicates that our office is to serve a copy of the Order, together with the papers upon which the Order is granted, and the Summons and Verified Complaint, on defendant Spacey on or before November 13, 2020.  Upon information and belief, the defendant currently resides in London.  We retained an international process server who has begun the process of serving the defendant.  The process server advised us that service in London must be done through the Hague Convention and will take approximately four (4) months to complete.



Due to the lengthy amount of time it will take to complete service on the defendants, we respectfully ask for additional time to complete service on the defendant to mid-February, with a corresponding adjournment of the hearing date for the Order to Show Cause.

Thank you for your attention to this matter.

Very truly yours,
GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF

*Peter J. Saghir*

Peter J. Saghir

Encl.

*Exhibits Cut Paris*

At ~~Part~~ ____ of the Supreme Court
of the State of New York, held in
and for the County of New York,
held at the Courthouse, 60 Centre,
New York, NY 10007, on the
10 day of *Sept* , 2020

Hon. Deborah A. Kaplan
J.S.C.

*Present:*
*Hon.* _____    *JSC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------X

ANTHONY RAPP and C.D.,                        Index No.: 950648 /2020

                          Plaintiff,

            -against-                          ORDER TO SHOW CAUSE
                                              FOR LEAVE TO FILE A
KEVIN SPACEY FOWLER, a/k/a, KEVIN SPACEY,     CIVIL ACTION UNDER
                                              THE *CHILD VICTIMS ACT*
                                              USING A PSEUDONYM

                          Defendant.

--------------------------------------------------------------X

          Upon reading and filing the Affirmation of Peter J. Saghir, Esq., sworn to on the 8th day

of September 2020, it is hereby

          **ORDERED** that Defendants show cause ~~at a Special Term~~ *CUMPARED* of this Court to be held at

*M Centre St. , many before Hon. George J. Silver*, on the 11 day of

*Dec.* , 2020, at 11:00 o'clock in the *forenoon* or as soon as counsel may be

heard why an Order should not be made: *note virtual conference*

          1.     Deeming plaintiff's use of the pseudonym, "C.D.," and the caption "ANTHONY

RAPP and C.D. v. KEVIN SPACEY FOWLER, a/k/a, KEVIN SPACEY" to be proper;

          2.     Permitting Plaintiff to proceed in this action under the pseudonym "C.D." and

with the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN

SPACEY;"

          3.     Directing that the parties, their attorneys, and agents refrain from publishing

plaintiff's true identity; and

    4.    Directing that all papers filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to the plaintiff by the pseudonym, "C.D." and bear the caption "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY" and directing the County Clerk to enter and record all papers in the action under the title "ANTHONY RAPP and C.D. v. KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY;" and

    5.    Granting such other and further relief as may be just and proper; and it is further

    **ORDERED** that Plaintiff is permitted as interim relief to maintain the above pseudonym caption pending a hearing on this Order to Show Cause; and it is further

    **ORDERED** that sufficient cause appearing therefore, let service upon defendant of a copy of this Order, together with the papers upon which this Order is granted, and the Summons and Verified Complaint, on or before the _13th_ day of _Nov._ 2020, be deemed good and sufficient service. An affidavit or other proof of service shall be presented to this Court on the return date directed in this Order.

*[handwritten: OPPOSITION PAPERS BY NOV. 30. REPLY, if any, TO BE SERVED ON OR BEFORE DEC. 9, 2020.]*

Dated: New York, NY
    September ___, 2020

                    ENTER:

                    *[signature]*

                    Hon. Hon. Deborah A. Kaplan J.S.C.
                              J.S.C.

*[margin handwritten: Hon. Deborah A. Kaplan J.S.C.]*

TO:

    KEVIN SPACEY FOWLER
    622 Ponte Villas North #1
    Baltimore, Maryland 21230

*The parties are directed to e-mail hkingo@nycourts.gov and jsamuel@nycourts.gov the names and e-mail addresses of all parties that will be participating in the virtual conference no later than November 25, 2020. If the parties are able to resolve the OSC by stipulation, the parties shall notify the court by the same date.

# Exhibit O

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**
**PRESENT: <u>GEORGE J. SILVER</u>**
*Justice*

---

**ANTHONY RAPP and C.D.,**

|  |  |
|---|---|
| **- v -** | **Index No.  950648/2020** |
| **KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY** | **Hon. GEORGE J. SILVER**<br>Justice Supreme Court |

---

The following papers numbered 1 to 1 were read on this motion (Seq. No. **001**) for **<u>ANONYMOUS CAPTION</u>** (*see* CPLR §2219 [a]):

| | |
|---|---|
| Notice of Motion - Order to Show Cause - Exhibits and Affidavits Annexed | No(s).   1 |
| Answering Affidavit and Exhibits | No(s). |
| Replying Affidavit and Exhibits | No(s). |

Upon the foregoing papers, it is ordered that the instant Order to Show Cause is denied, with leave to renew.

**Dated:**  November 12, 2020                    **Hon.** _George J. Silver_
**GEORGE J. SILVER, J.S.C.**

---

1. CHECK ONE.................................................... ☐ CASE DISPOSED IN ITS ENTIRETY     ■ CASE STILL ACTIVE

2. MOTION IS.................................................... ☐ GRANTED     ■ DENIED     ☐ GRANTED IN PART     ☐ OTHER

3. CHECK IF APPROPRIATE........................... ☐ SETTLE ORDER       ☐ SUBMIT ORDER

☐ FIDUCIARY APPOINTMENT        ☐ REFEREE APPOINTMENT