UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

ANTHONY RAPP and C.D.,                          Case No. 1.20-cv-09586 (LAK)

                        Plaintiffs,

          -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY

                        Defendant.

---------------------------------------------------------------------X

*Memorandum of Law in Support of Plaintiffs' Motion to Remand*

GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
By: Peter J. Saghir
80 Pine Street, 34th Floor
New York, NY 10005
Tel: (212) 943-1090
Fax: (212) 425-7513
Email: psaghir@gairgair.com

*Attorneys for Plaintiffs Anthony Rapp and C.D.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………....ii

PRELIMINIARY STATEMENT………………………………………………………1

STATEMENT OF FACTS………………………………………………………....2

    A.  Procedural History………………………………………………………....2

    B.  Background in New York State's Child Victims Act………………………………….2

    C.  Details of the Abuse Inflicted by Defendant Spacey on Mr. Rapp and C.D…………….3

    D.  Defendant Spacey's Domicile in London……………………………………….4

    E.  Defendant Spacey is Not Domiciled in Maryland…………………………………5

ARGUMENT………………………………………………………....7

    A.  Governing Law………………………………………………………7

        1.  Applicable Statutes………………………………………………………7

            i.   An American Citizen Domiciled in a Foreign Country May Not Remove an Action to Federal Court on Diversity Grounds…………………………….7

            ii.  There is a Strong Presumption Against Removal Jurisdiction…………………7

            iii.  Cases Lacking Diversity Jurisdiction Must be Remanded to State Court………..8

        2.  Federal Courts Are of Limited Jurisdiction, Creating a Presumption Against Removal………………………………………………………8

        3.  The Party Asserting Federal Jurisdiction Bears the Burden of Proof………………9

        4.  Domicile for Purposes of Diversity Jurisdiction…………………………….10

        5.  United States Citizens Living Abroad Cannot Claim Diversity Jurisdiction………..11

    B.  The Relevant Facts and Case Law Mandate Remand of this Action to State Court…….12

    C.  Plaintiffs are Entitled to Discovery on the Issue of Defendant Spacey's Domicile……..15

CONCLUSION………………………………………………………....17

i

# TABLE OF AUTHORITIES

## CASES

*ACS v. Malek*, No. 20-CV-7623 JMF, 2020 WL 6748476 (S.D.N.Y. Oct. 7, 2020)...............7

*Anwar v. Fairfield Greenwich, Ltd.*, 2009 U.S. Dist. LEXIS 37077 (S.D.N.Y. 2009)..........15, 16

*Bellido-Sullivan v. American Int'l Group*, 123 F. Supp. 2d 161 (S.D.N.Y 2000)...............10, 14

*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2nd Cir. 2011)............................................8

*Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152 (2d Cir. 1996).................................15, 16

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2nd Cir. 1990)......................................12

*Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006)...................8, 9, 14

*Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464 S.D.N.Y. 2005)........................................7

*Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07 Civ. 3848 WHP, 2008 WL 926583 (S.D.N.Y. Apr. 2, 2008).............................................................................................10, 11, 13

*Hallingby v. Hallingby*, 574 F.3d 51 (2nd Cir. 2009)....................................................7

*Herrick Co. v. SCS Communs., Inc.*, 251 F.3d 315 (2nd Cir. 2001)..................................12

*Hodges v. Demchuk*, 866 F. Supp. 730 (S.D.N.Y. 1994).............................................9, 14

*In re GOLDEN EAGLE LIBERIA, LTD.*, 1978 U.S. Dist. LEXIS 16925 (S.D.N.Y 1978)....15, 16

*Keene v. United States*, 508 U.S. 200, 113 S. Ct. 2035 (1993)..........................................8

*Kinsley v. Signorelli*, No. 92 CIV. 6421 LBS, 1993 WL 127965 (S.D.N.Y. Apr. 20, 1993)...............................................................................................10, 11, 12, 13

*Linardos v. Fortuna*, 157 F.3d 945 (2nd Cir. 1998)....................................9, 10, 12, 13, 14

*Lupo v. Human Affairs Int'l*, 28 F.3d 269 (2nd Cir. 1994)............................................8, 9

*Maitland v. Fishbein*, 712 Fed. Appx. 90 (2nd. Cir. 2018).........................................10, 11

*Monty v. Home Depot USA, Inc.* No. 1:11–CV–00446 LEK/DRH, 2011 WL 4810865 (N.D.N.Y. Oct. 11, 2011)...................................................................................................9

*Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224 (S.D.N.Y. 1991)..................10, 11, 15

*Netwolves Corp. v. Sullivan*, No. 00 CIV. 8943 AGS), 00 CIV. 9628 AGS, 2001 WL 492463 (S.D.N.Y. May 9, 2001)......................................................... .........................7

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 109 S. Ct. 2218 (1989)...................11

*N.J. Carpenters Vacation Fund v. Harborview Mortg. Loan Trust 2006-4*, 581 F. Supp. 2d 581 (S.D.N.Y. 2008)...........................................................................................9

*Palazzo v. Corio*, 232 F.3d 38 (2nd Cir. 2000).....................................................10, 13

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613 (2nd Cir. 2019)...................................................................................8, 12, 15, 16

*Shamrock Oil & Gas Corp. v. Sheets*, 313. U.S. 100, 61 S. Ct. 868 (1941)...........................8

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177 (S.D.N.Y. 2003)....9, 14

*Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 123 S. Ct. 366 (2002)............................7

*United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298 (2nd Cir. 1994)...................................................................9

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579 (2nd Cir. 2002).......9, 10, 14

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613 (S.D.N.Y. 2013)....8, 9, 14

*Vilayvanh v. East 111th St. Props., LLC*, 20-CV-7226 VEC, 2020 WL 6364871 [S.D.N.Y. Oct. 29, 2020...................................................................................................7, 8

## COURT RULES

Fed. R. Civ. P. 4(f)(1)...................................................................................4

## STATUTES

28 U.S.C. 1332...........................................................1,2, 7, 10, 11, 12, 14, 17

28 U.S.C. 1441.............................................................................2, 7, 12

28 U.S.C. 1446............................................................................................2

28 U.S.C. 1447...........................................................................1, 8, 12, 17

CPLR 214-g.................................................................................................3

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of a motion by plaintiffs Anthony Rapp and C.D. for an order (1) remanding this action to New York State Supreme Court pursuant to 28 U.S.C. § 1447(c) on the grounds that the district court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) inasmuch as defendant Spacey is a domiciliary of England, or in the alternative (2) permitting discovery on the issue of defendant, KEVIN SPACEY's, domicile at the time the underlying state action, *Anthony Rapp and C.D. v. Kevin Spacey Fowler a/k/a Kevin Spacey*, New York Supreme Index No. 950648/2020, was commenced; and (3) for such other and further relief as this Court may deem appropriate.

The underlying action in this case was filed in New York State Supreme Court, New York County but was removed by defendant Spacey, on the purported basis of diversity jurisdiction. As set forth below, however, diversity jurisdiction does not exist and this Court does not have subject matter jurisdiction over this case. Defendant Spacey is an American citizen who is domiciled in England, United Kingdom. The applicable statutes and case law are clear that American citizens who are domiciled in a foreign country cannot remove an action to federal court on diversity grounds.

As the party seeking removal, defendant Spacey bears the heavy burden of proving that this Court has jurisdiction with respect to this matter. He must overcome several barriers, including the presumption against removal and the limited jurisdiction of federal courts, to assert facts establishing that federal jurisdiction is appropriate. Here, no doubt can exist that defendant Spacey will be unable to surmount this hurdle as the facts are clear that he is a domiciliary of England. As a result, this Court can and must rule that this case be remanded back to New York State Supreme Court.

Alternatively, if additional information is needed to assess defendant Spacey's domicile at the time this action was commenced, plaintiffs respectfully request this Court order jurisdictional discovery be exchanged with respect to this narrow issue.

## STATEMENT OF FACTS

### A. *Procedural History*

This action was commenced in New York State court with the filing of a Summons and Verified Complaint in New York State Supreme Court, New York County on September 9, 2020 (Saghir Decl., Ex. H). Concurrently filed with the Summons and Verified Complaint was a proposed Order to Show Cause for Leave to File a Civil Action Under the Child Victims Act Using a Pseudonym (Saghir Decl., Ex. K). On November 13, 2020, counsel for defendant Spacey filed a Notice to State Court of Filing Notice of Removal in New York State Supreme Court and a Notice of Removal with the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §§ 1332(a), 1441(b), and 1446 (Saghir Decl., Ex.W).

### B. *Background on New York State's Child Victims Act*

Defendant Kevin Spacey is a two-time Academy Award winner who used to be one of Hollywood's top actors (Saghir Decl., Ex. A). His career was derailed in October 2017 when his pattern of conduct as a sexual predator was revealed. Initially, plaintiff and fellow actor Anthony Rapp came forward with allegations that, when Mr. Rapp was only fourteen years old, Spacey made an unwanted sexual advance at him (Saghir Decl., Ex. B). Following Mr. Rapp's disclosure, more than thirty other individuals came forward alleging that Spacey had sexually harassed or assaulted them (Saghir Decl., Ex. C). Upon information and belief, Mr. Spacey has not worked as an actor in the United States since his heinous conduct was uncovered.

2

At the time Mr. Rapp came forward, the applicable statute of limitations had long since passed and he was unable to pursue any legal action against Spacey. However, on February 14, 2019, approximately fourteen months after Mr. Rapp publicly disclosed Spacey's inappropriate sexual conduct, Governor Andrew M. Cuomo signed the Child Victims Act ("CVA"; codified as CPLR §214-g) into law which, among other things, opened a one-year window – beginning on August 14, 2019 – that allowed persons to commence a civil action arising from sexual assault of minors regardless of when the sexual abuse occurred (Saghir Decl., Ex. D). Thereafter, Governor Cuomo signed legislation extending the look-back window an additional year to August 14, 2021 (Saghir Decl., Ex. F). Because of this bold legislation, thousands of survivors of child sexual abuse initiated civil lawsuits against the often-powerful individuals and institutions that both perpetrated and condoned this horrific abuse. Indeed, as of August 11, 2020, nearly 4,000 cases had been filed in New York State (Saghir Decl., Ex. G). In fact, 851 cases alone were filed in New York County, where this underlying action was commenced (Saghir Decl., Ex. G).

## C. *Details of the Abuse Inflicted by Defendant Spacey on Mr. Rapp and C.D.*

Two of the brave individuals who started lawsuits pursuant to the CVA are the plaintiffs in the case presently before this Court, Anthony Rapp and C.D. Mr. Rapp and C.D. filed a Summons and Verified Complaint in New York County on September 9, 2020 (Saghir Decl., Ex. H).[1] The abuse perpetrated by defendant Spacey is detailed in their Verified Complaint. As to

---

[1] Plaintiff C.D. elected to proceed in his case anonymously, due to the sensitive nature of his claims and the intense media attention this case is expected to garner due to the defendant's former status as a Hollywood celebrity. This is permissible pursuant to Orders issued by justices managing the CVA cases in New York State. Specifically, all CVA cases filed in the five boroughs of New York City are in front of the Hon. George J. Silver, the Deputy Chief Administrative Judge for the New York City Courts, for all pretrial proceedings (Saghir Decl., Ex. I). In this role, Justice Silver promulgated Case Management Order ("CMO") No. 1 (Saghir Decl., Ex. J). Pursuant to Para III. 1 of CMO No. 1, "a plaintiff may initiate an action and file a complaint by initials or pseudonym, rather than the person's legal name…[i]f all defendants do not consent, then together with the filing of the complaint, a plaintiff must file an application by order to show cause seeking permission to proceed by initials or pseudonym." In accordance with

Mr. Rapp, defendant Spacey made "an unwanted sexual advance...and grabbed the then infant

plaintiff, ANTHONY RAPP's, buttocks, lifted him onto a bed and laid on plaintiff's body"

(Saghir Decl., Ex. H at Para. 7) when Mr. Rapp was only fourteen years old. C.D. was viciously

sexually assaulted by Spacey. With C.D., who was also only fourteen years old at the time of the

assault, defendant Spacey engaged in an inappropriate sexual relationship with C.D. and

attempted to anally sodomize C.D. (Saghir Decl., Ex H at Para. 33).

## D. _Defendant Spacey's Domicile in London_

Following the filing of the Summons and Verified Complaint, counsel for plaintiff began

the process of serving defendant Spacey. Upon information and belief, based on research

conducted by counsel for Mr. Rapp and C.D., defendant Spacey was domiciled in England,

United Kingdom at the time the action was commenced.[2] Indeed, defendant Spacey's ties to

London date back almost twenty-five years, when he became involved with an independent not-

for-profit theater in London called The Old Vic in 1998, both as a trustee and an actor (Saghir

Decl., Ex R). Defendant Spacey's dedication to London theater continued from there. From

2004 to 2015, defendant Spacey worked in London, serving as the Artistic Director of The Old

Vic (Saghir Decl., Ex M). Over this ten-year period as Artistic Director, defendant Spacey

starred in and produced multiple shows for the theater (Saghir Decl., Ex. N).[3] Defendant Spacey

became so tied to London during this time that he purchased a permanent home a short walk

away from The Old Vic, a home which, upon information and belief, he still maintains today

---

CMO No. 1, C.D. filed a proposed Order to Show Cause for Leave to File a Civil Action Under the _Child Victims Act_ Using a Pseudonym on September 9, 2020 concurrently with the filing of his Summons and Verified Complaint (Saghir Decl., Ex. K). The Order to Show Cause was signed by the Hon. Deborah A. Kaplan, J.S.C. (Saghir Decl., Ex. L)

[2] Since defendant Spacey was domiciled in London, counsel for Mr. Rapp and C.D. began the process of serving defendant Spacey pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Fed. R. Civ. P. 4(f)(1).

[3] Indeed, more than twenty allegations of "sexual harassment and predatory behaviour" have been raised against defendant Spacey connected to his work at The Old Vic (Saghir Decl., Ex. P).

4

(Saghir Decl., Ex. O).  Spacey has returned to this home in London time and time again.  Indeed, he was spotted in London in September 2020 – the month Mr. Rapp and C.D. filed their Summons and Verified Complaint in New York State Supreme Court (Saghir Decl., Ex. AA).

Defendant Spacey's intent to remain in London is clear.  When defendant Spacey's tenure as Artistic Director of The Old Vic came to an end, he declared, "Pretty much my whole life I've been coming back and forth and so **London has become my home for all intents and purposes**.  It's 11 years I've been living here and by the time I leave the Vic it will be about 18 years" (Saghir Decl., Ex. Q., emphasis added).  Moreover, defendant Spacey has indicated that he considers London to be his "permanent home" and that he is a "resident of Great Britain" (Saghir Decl., Ex. S; Saghir Decl., Ex. T).  Indeed, defendant Spacey has even indicated that he has plans to become a British citizen in the future (Saghir Decl., Ex. S).  Even the British monarch recognized defendant Spacey's dedication to Britain:  In 2010 defendant Spacey was made an honorary Commander of the Most Excellent Order of the British Empire (CBE); this was followed by an honorary knighthood (KBE) in 2015 "for his services to British theater" (Saghir Decl. Ex. U; Saghir Decl. Ex. V).  After receiving his honorary knighthood, defendant Spacey stated he felt like "an adopted son" of Britain (Saghir Decl. Ex. V).

E.    *Defendant Spacey is Not Domiciled in Maryland*

In his Notice of Removal, defendant Spacey's counsel claims that, "Since at least 2014, Defendant has been domiciled in, and a citizen of, the State of Maryland.  Throughout that time, Defendant has resided in Maryland with the intention to remain in Maryland indefinitely and to return to that state whenever he has left it on a temporary basis.  At all relevant times, Defendant has filed tax returns and paid state income taxes as a Maryland citizen" (Saghir Decl., Ex. W at

Paras. 7-8). However, other than these bare bone and conclusory allegations, there is nothing that indicates defendant Spacey is domiciled in Maryland.

For a few years, from 2013 to 2017, defendant Spacey was one of the stars of the television show *House of Cards* (Saghir Decl., Ex. X). This television show was filmed in the suburbs of Maryland (Saghir Decl., Ex. Y).[4] However, there is no evidence that defendant Spacey ever purchased a home in Maryland during the time he filmed *House of Cards*. Defendant Spacey has been tied to a condominium in Maryland, located at 622 Ponte Villas North #1, Baltimore, Maryland. His own manager, Evan Lowenstein, however, told reporters that he was the owner of the condominium, not Spacey (Saghir Decl., Ex. Z). Beyond filming *House of Cards* in Maryland, defendant has no apparent ties to that state.

Out of an abundance of caution, since defendant Spacey's exact whereabouts were unknown at the time the case was commenced in New York State Supreme Court, counsel for Mr. Rapp and C.D. did attempt service of the Summons and Verified Complaint and Proposed Order to Show Cause on defendant Spacey at the 622 Ponte Villas North address (Saghir Decl., Ex. BB). However, at no point when service was attempted were there ever any indications of movement or activity inside the home or that defendant Spacey was domiciled at that address (Saghir Decl., Ex. BB). At all times while attempts at service in Maryland were being made, counsel for Mr. Rapp and C.D. diligently pursued service of the Summons and Complaint and Proposed Order to Show Cause on defendant Spacey at his domicile in England.

---

[4] Defendant Spacey was fired from *House of Cards* in 2017 when multiple allegations of sexual assault surfaced against him (Saghir Decl., Ex. CC; Saghir Decl., Ex. DD). Indeed, upon information and belief, defendant Spacey has not worked as an actor since these allegations surfaced (Saghir Decl., Ex. DD).

**ARGUMENT**

**A.** ***Governing Law***

*1.* *Applicable Statutes*

<u>i.</u>   <u>An American Citizen Domiciled in a Foreign Country May Not Remove an Action to Federal Court on Diversity Grounds</u>

     Defendant Spacey filed a Notice of Removal, claiming that this Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because there is diverse citizenship between the parties (Saghir Decl., Ex W at Paras. 5 and 8). Pursuant to 28 U.S.C. § 1332(a)(1), "federal district courts have original subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states…Whether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced" (*Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 470 [S.D.N.Y. 2005] [internal quotations and citations omitted]; *see also Hallingby v. Hallingby*, 574 F.3d 51, 56 [2nd Cir. 2009]; *Netwolves Corp. v. Sullivan*, No. 00 CIV. 8943 AGS, 00 CIV. 9628 AGS, 2001 WL 492463 at *4 [S.D.N.Y. May 9, 2001]). To be clear, pursuant to 28 U.S.C. § 1332(a)(1), federal diversity jurisdiction only occurs if the parties are domiciliaries of different states.

<u>ii.</u>   <u>There is a Strong Presumption Against Removal Jurisdiction</u>

     A case that is initially filed in state court may be removed by a defendant to federal court, but only if "the district court has original subject-matter jurisdiction over the plaintiff's claim" (*Vilayvanh v. East 111th St. Props., LLC*, 20-CV-7226 VEC, 2020 WL 6364871 at *2 [S.D.N.Y. Oct. 29, 2020]). This proposition is codified in 28 U.S.C. § 1441 and is the basis for which defendant Spacey claims this case is removable to federal court. This right of removal is purely statutory and must be "strictly construed" (*Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32

7

[2002]; *see also ACS v. Malek*, No. 20-CV-7623 JMF, 2020 WL 6748476 at 1-2 [S.D.N.Y. Oct. 7, 2020]).

<u>iii.</u>    <u>Cases Lacking Complete Diversity Jurisdiction Must be Remanded to State Court</u>

Courts must always have subject matter jurisdiction over the cases before them.  If at any time, including after removal of a case from state to federal court, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" (28 U.S.C. § 1447[c]).  In the context of removal to federal court on the grounds of diversity jurisdiction, a "plaintiff who believes a case has been improperly removed may seek remand under the provisions of 28 U.S.C.S. § 1447(c)" (*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 [2nd Cir. 2011]).  Upon a finding that there is a lack of complete diversity between the parties, the district court must remand the case back to state court (*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 618 [2nd Cir. 2019]).

2.    *Federal Courts Are of Limited Jurisdiction, Creating a Presumption Against Removal*

Federal courts only have jurisdiction when it is conferred upon them by Congress (*see Keene v. United States*, 508 U.S. 200, 207 [1993]; *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 618 [S.D.N.Y. 2013]).  Indeed, it is Congress' "intent to restrict federal court jurisdiction" (*see Lupo v. Human Affairs Int'l*, 28 F.3d 269 [2nd Cir. 1994], quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313. U.S. 100, 108 [1941]).  This proposition is particularly important in the context of a removal from state to federal court (*see Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 [S.D.N.Y. 2006]; *Veneruso*, 933 F. 2d at 618; *Vilayvanh* 2020 WL 6364871 at *2).

There are several reasons why "[j]udicial scrutiny is especially important in the context of removal" (*Veneruso*, 933 F. 2d at 618).  Specifically, any federal court reviewing the propriety

8

of a removal must respect the ideals of comity and the independence of state courts, conserve

federal judicial resources, and the specific federal intent to restrict the jurisdiction of federal

courts (*see Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,* 314 F. Supp. 2d 177, 179

[S.D.N.Y. 2003]; *Veneruso*, 933 F. 2d at 618; *Fed. Ins. Co.* 422 F. 2d at 367; *Lupo*, 28 F.3d at

274). Because federal courts are courts of limited jurisdiction, the courts are required to

"construe the removal statute narrowly, resolving any doubts about removability" (*Veneruso*,

933 F. 2d at 618; *Lupo*, 28 F.3d at 274). This narrow construction has created "a presumption

against removal jurisdiction" of a case from state to federal court (*N.J. Carpenters Vacation*

*Fund v. Harborview Mortg. Loan Trust 2006-4*, 581 F. Supp. 2d 581, 583 [S.D.N.Y. 2008]; *see*

*also Monty v. Home Depot USA, Inc.* No. 1:11–CV–00446 LEK/DRH, 2011 WL 4810865 at * 2

[N.D.N.Y. Oct. 11, 2011] [noting that any removal statute is to be construed "in favor of

remand"]).

3.     *The Party Asserting Federal Jurisdiction Bears the Burden of Proof*

       Courts in the Second Circuit are clear that the party who asserts federal jurisdiction must

bear the burden of establishing that a federal forum is appropriate. Indeed, it is literally

"hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to

establish that jurisdiction" (*Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579,

581 [2nd Cir. 2002]; *see also Linardos v. Fortuna*, 157 F.3d 945, 947 [2nd Cir. 1998]; *Veneruso*,

933 F. 2d at 618). More particularly, when a case is removed with the filing of a removal

petition, the removing party must submit "competent proof" that it is appropriate for the case to

be heard in federal court (*Stan Winston*, 314 F. 2d. at 179; *see also Fed. Ins. Co.* 422 F. 2d at

367; *Hodges v. Demchuk*, 866 F. Supp. 730, 731 [S.D.N.Y. 1994]).

In fact, if removal is challenged in any fashion, the party seeking federal jurisdiction "cannot be relieved of its burden [of proof] by any formal procedure" (*United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 301 [2nd Cir. 1994] [internal quotations removed]). As relates to actions when federal jurisdiction is based on diversity of citizenship between the parties, the party invoking federal jurisdiction must carry "the burden of proving facts to establish jurisdiction" (*Universal Licensing Corp.*, 293 3d at 581).

If the removing party fails to demonstrate removal was proper, then "the case must be remanded back to start court" (*Bellido-Sullivan v. American Int'l Group*, 123 F. Supp. 2d 161, 163 [S.D.N.Y 2000]). Importantly, "the party seeking the remand is presumed to be entitled to it unless the removing party can demonstrate otherwise" (*Bellido*, 123 2d. at 163).

4.    *Domicile for the Purposes of Diversity Jurisdiction*

Pursuant to 28 U.S.C. § 1332(a)(1), diversity of citizenship for purposes of federal subject matter jurisdiction exists when the amount in controversy exceeds $75,000 and is "between citizens of different states." To establish a party's citizenship for diversity jurisdiction, courts must determine where a party was domiciled at the time the action was commenced (*Maitland v. Fishbein*, 712 Fed. Appx. 90, 92 [2nd. Cir. 2018]; *see also Palazzo v. Corio*, 232 F.3d 38, 42 [2nd Cir. 2000]; *Linardos*, 157 3d at 948; *Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07 Civ. 3848 WHP, 2008 WL 926583 at *2 [S.D.N.Y. Apr. 2, 2008]; *Kinsley v. Signorelli*, 1993 WL 127965 at *2). Determining where a party is domiciled becomes "a mixed question of fact and law" (*Palazzo*, 232 3d at 948).

Traditionally speaking, domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning"

(*Linardos*, 157 3d at 948; *see also Palazzo*, 232 3d at 42; *Halbritter*, 2008 WL 926583 at *2).

Though an individual can have multiple residences, he can only have one domicile at any given time (*Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 [S.D.N.Y. 1991]). An individual's domicile is determined by several factors. When determining an individual's domicile, courts should look beyond subjective statements to objective facts (*see Kinsley*, 1993 WL 1279658 at * 2). There are several factors that the courts have used over the years to determine a party's domicile. They include, but are not limited to:

> "current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes. Courts also consider whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangements appears) and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc."

> (*Halbritter* 2008 WL 926583 at *3; *see also Kinsley*, 1993 WL 127965 at *2).

Courts must consider the "totality of the evidence" to determine domicile as no single factor is conclusive (*Halbritter*, 2008 WL 926583 at *3; *see also Kinsley*, 1993 WL 127965 at *2). In the event an individual has more than one residence, "the court should focus on the intent of the party" and the "entire course of a person's conduct" to determine domicile (*Nat'l Artists Mgmt. Co.*, 769 at 7).

5.    *United States Citizens Living Abroad Cannot Claim Diversity Jurisdiction*

The diversity statute relied upon by defendant Spacey, 28 U.S.C. § 1332(a)(1), only applies if the parties are "*citizens* of different states" (emphasis added). The Supreme Court of the United States has made clear that in "order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State" (*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 [1989] [emphasis in original]). Therefore, a United States citizen who is not domiciled in any state is "stateless"

11

pursuant to 28 U.S.C. § 1332, thereby destroying complete diversity (*Newman-Green, Inc.*, 490 U.S. at 828-29).

This "stateless" categorization specifically applies to United States citizens who are domiciled abroad. There is no doubt that United States citizens "domiciled abroad are neither citizens of any state of the United States nor citizens or subject of a foreign state, so that § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties" (*Herrick Co. v. SCS Communs., Inc.*, 251 F.3d 315, 322 [2nd Cir. 2001] [internal quotations removed]). Therefore, § 1332(a) specifically "requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity" (*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 [2nd Cir. 1990]).

**B.** **_The Relevant Facts and Case Law Mandate Remand of this Action to State Court_**

It is clear this case was improperly removed and must be remanded back to New York State Supreme Court pursuant to 28 U.S.C. § 1447(c) as there is a "complete lack of diversity between the parties" (*Platinum-Montaur Life Scis.*, 943 F. 3d at 618 [2nd Cir. 2019]). Though defendant Spacey filed a Notice of Removal alleging that he is domiciled in Maryland, neither the facts nor the law supports this conclusory allegation. As a result, the federal diversity jurisdiction claimed by defendant Spacey pursuant to 28 U.S.C. § 1332(a)(1) simply does not exist and this Court does not have original subject matter jurisdiction over Mr. Rapp and C.D's claims. It was, therefore, improper for defendant Spacey to remove this action under 28 U.S.C. § 1441 (a) and (b). Since this Court lacks subject matter jurisdiction, it must remand this case back to New York State Supreme Court in accordance with 28 U.S.C. § 1447(c).

Applying a narrow construction of the removal statute to this case, as this Court must, it is evident that defendant Spacey was domiciled in England at the time this action was

commenced. England is defendant Spacey's "fixed home and establishment, and to which, whenever is he is absent, he has the intention of returning" (*Linardos*, 157 3d at 948). Indeed, several "objective facts" point to England as defendant Spacey's domicile (*see Kinsley*, 1993 WL 127965 at *2). Though defendant Spacey was an "A-list" Hollywood actor before dozens of allegations of sexual assault were lodged against him, he returned to London time and time again. For example, defendant Spacey:

- Was living in London in September 2020, the month that Mr. Rapp and C.D. initiated this action in New York State Supreme Court (Saghir Decl., Ex. H; Saghir Decl., Ex. AA).

- Upon information and belief, owns a permanent, customized home in London that he still maintains today (Saghir Decl., Ex. O).

- Worked in London for almost twenty-five years, devoting copious amounts of his time and money to enhancing the London theater scene (Saghir Decl., Ex. R; Saghir Decl., Ex. M; Saghir Decl., Ex. N).

Moreover, defendant Spacey's public statements and actions speak volumes regarding his domicile. His intent to make London his true fixed home was never more evident than when he indicated his plans to become a British citizen in the future (Saghir Decl., Ex. S). Defendant Spacey went further and publicly stated that he considers himself a "resident of Great Britain," and has, in turn called London his "permanent home," and his "home for all intents and purposes" (Saghir Decl., Ex. Q; Saghir Decl. Ex. S). Looking at the totality of the evidence these objective facts establish that defendant Spacey was domiciled in London at the time this action was commenced.

A party's citizenship for the purposes of federal diversity jurisdiction is his domicile at the time the action was commenced (*Maitland v. Fishbein*, 712 Fed. Appx. 90, 92 [2nd. Cir. 2018]; *see also Palazzo v. Corio*, 232 F.3d 38, 42 [2nd Cir. 2000]; *Linardos*, 157 3d at 948; *Halbritter*, 2008 WL 926583 at *2 ; *Kinsley v. Signorelli*, 1993 WL 127965 at *2). Therefore,

since defendant Spacey was domiciled in England at the time this action was commenced, his citizenship for the purposes of federal diversity jurisdiction is England.

Inasmuch as defendant Spacey was domiciled in England when this action was commenced, he is "stateless" pursuant to 28 U.S.C. § 1332. Because defendant Spacey is "stateless" for the purposes of federal diversity jurisdiction, complete diversity pursuant to 28 USC § 1332(a)(1) – the statute under which defendant Spacey claims federal subject matter jurisdiction – is simply not present. As a result, this case must be remanded since this Court does not have subject matter jurisdiction.

Lastly, it is important to note that a party seeking remand is "presumed entitled to it unless the removing party can demonstrate otherwise" (*Bellido*, 123 2d. at 163). As a result, this Court must assume that remand of this case to New York State Supreme Court is appropriate unless defendant Spacey shows otherwise. As the party asserting federal jurisdiction, defendant Spacey must bear the burden of establishing, with competent proof, that a federal forum is appropriate (*see Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 [2nd Cir. 2002]; *Linardos v. Fortuna*, 157 F.3d 945, 947 [2nd Cir. 1998]; *Veneruso*, 933 F. 2d at 618); *Stan Winston*, 314 F. 2d. at 179; *Fed. Ins. Co.* 422 F. 2d at 367; *Hodges v. Demchuk*, 866 F. Supp. 730, 731 [S.D.N.Y. 1994]).

To date, defendant Spacey has not presented any competent proof that he is domiciled in Maryland. His Notice of Removal baldly claims that,

> "Since at least 2014, Defendant has been domiciled in, and a citizen of, the State of Maryland. Throughout that time, Defendant has resided in Maryland with the intention to remain in Maryland indefinitely and to return to that state whenever he has left it on a temporary basis. At all relevant times, Defendant has filed tax returns and paid state income taxes as a Maryland citizen" (Saghir Decl., Ex. W at Paras. 7-8).

14

However, there is no reason for defendant Spacey to be domiciled in Maryland as he no longer has any connections to the state. From 2013 to 2017, defendant Spacey was one of the stars of the television show *House of Cards*, which was filmed in Maryland (Saghir Decl., Ex. X; Saghir Decl. Ex. Y). But after sexual assault allegations surfaced against him, Spacey was fired from *House of Cards* (Saghir Decl. Ex. CC; Saghir Decl. Ex. DD). There is no objective or subjective evidence that defendant Spacey ever intended to make Maryland his true fixed home and principal establishment.[5] Therefore, looking at the totality of the evidence presented, this Court must conclude that defendant Spacey was domiciled in England, the place he calls home, for purposes of determining federal diversity jurisdiction.

## C. *Alternatively, Plaintiffs are Entitled to Discovery on the Issue of Defendant Spacey's Domicile*

In the event this Court is unable to determine the issue of defendant Spacey's domicile based solely upon the motion papers, plaintiffs respectfully request that the Court permit immediate discovery on the issue of subject matter jurisdiction to provide clarity.

District courts are empowered to order jurisdictional discovery in removal actions (*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 614, 616 [2ⁿᵈ Cir. 2019]). Indeed, a "district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence" (*Platinum-Montaur Life Scis., LLC*, 943 3d at 618). Given that a party's domicile may not be evident at the time of removal, a "district court may have to authorize discovery on the issue of subject matter jurisdiction" (*Anwar v. Fairfield Greenwich, Ltd.*, 2009 U.S. Dist. LEXIS 37077 at 11 [S.D.N.Y. 2009] [internal quotations omitted] [quoting *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 155

---

[5] Even if defendant Spacey did own a home in Maryland, which he himself has not even alleged, this Court must focus on the intent of [defendant Spacey]" and the "entire course of [Spacey's] conduct" to determine domicile (*Nat'l Artists Mgmt. Co.*, 769 at 7).

[2d Cir. 1996] [Saghir Decl., Ex. FF]; *see also In re GOLDEN EAGLE LIBERIA, LTD., 1978 U.S. Dist. LEXIS 16925* at 8 [S.D.N.Y 1978] [permitting parties to conduct discovery on the issue of diversity jurisdiction] [Saghir Decl., Ex. EE]). Therefore, allowing jurisdictional discovery allows district courts to scrutinize the propriety of the removal, and remand if necessary, to preserve judicial resources and respect the independence of state courts.

Because district courts cannot "assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence" there is no doubt that district courts may order discovery in removal actions (*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 614, 616, 618 [2nd Cir. 2019]). This is particularly true when a party's domicile is not clear at the time of removal (*Anwar v. Fairfield Greenwich, Ltd.*, 2009 U.S. Dist. LEXIS 37077 at 11 [S.D.N.Y. 2009] [internal quotations omitted] [quoting *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 155 [2d Cir. 1996] [Saghir Decl., Ex. FF]; *see also In re GOLDEN EAGLE LIBERIA, LTD., 1978 U.S. Dist. LEXIS 16925* at 8 [S.D.N.Y 1978] [permitting parties to conduct discovery on the issue of diversity jurisdiction]) [Saghir Decl., Ex. EE]).

Should the Court grant this request, counsel for Mr. Rapp and C.D. will seek discovery on the limited issue of defendant Spacey's domicile at the time the action was commenced. For example, requested information will likely include, but not be limited to, copies of defendant Spacey's passport, travel records, home ownership documentation, documentation concerning his current residence, driver's license and automobile registration, tax payments, and a deposition of defendant Spacey on this limited issue. If necessary, authorizing this limited discovery will allow this Court to properly scrutinize the propriety of removal.

## CONCLUSION

There is no doubt that defendant Spacey is a domiciliary of England, United Kingdom. In scrutinizing the facts closely, as this Court must do, it is clear that the objective facts point to one conclusion – England was defendant Spacey's true and fixed home and principal establishment at the time the underlying action was commenced. As a United States citizen living in England, defendant Spacey is "stateless" pursuant to the diversity statute. And it is this very stateless status that bars defendant Spacey from claiming federal diversity jurisdiction. Since complete diversity between the parties does not exist, and cannot exist, this Court lacks subject matter jurisdiction and therefore has no choice but to remand this action back to state court.

Accordingly, it is respectfully requested this Court grant plaintiffs' motion for an order (1) remanding this action to New York State Supreme Court pursuant to 28 U.S.C. § 1447(c) on the grounds that the district court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) inasmuch as defendant Spacey is a domiciliary of England, or in the alternative, (2) permitting discovery on the issue of defendant, KEVIN SPACEY's, domicile at the time the underlying state action, *Anthony Rapp and C.D. v. Kevin Spacey Fowler a/k/a Kevin Spacey*, New York Supreme Index No. 950648/2020, was commenced; and (3) for such other and further relief as this Court may deem appropriate.

Dated: New York, New York
      December 14, 2020

                                Respectfully submitted,

                                GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM, HERSHENHORN, STEIGMAN & MACKAUF

                                By: _____
                                  Peter J. Saghir (PJS4276)
                                  Attorneys for Plaintiffs
                                  ANTHONY RAPP and C.D.
                                  80 Pine Street, 34th Floor
                                  New York, NY 10005
                                  Tel: (212) 943-1090
                                  Fax: (212) 425-7513
                                  Email: psaghir@gairgair.com