**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANTHONY RAPP and C.D.,

                          Plaintiffs,

   -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                          Defendant.

---

Case No. 20-cv-09586 (LAK) (SDA)

# DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

KELLER / ANDERLE LLP
Jennifer L. Keller (*pro hac vice*
application pending)
Chase A. Scolnick
18300 Von Karman Ave., Suite 930
Irvine, California 92612
(949) 476-8700
cscolnick@kelleranderle.com

SHER TREMONTE LLP
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

      A.     Plaintiffs' Complaint.............................................................................. 3

      B.     Mr. Fowler Properly Removed This Case To Federal Court................................. 3

ARGUMENT ................................................................................................................... 3

      I.     Mr. Fowler Has Been Domiciled In Maryland At All Relevant Times.................. 3

      II.    Mr. Fowler Has Established Diversity Jurisdiction, And Removal Was Proper .... 8

CONCLUSION................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S. Ct. 547, 553 (2014) ................................................................................................................................ 4, 9

*Fax Telecomm., Inc. v. AT&T*, 138 F.3d 479 (2nd Cir. 1998) ....................................................... 4

*Finnegan v. Long Island Power Auth*., 409 F.Supp.3d 91 (E.D.N.Y. 2019) ................................. 4

*Greer v. Carlson*, 2020 WL 6064167 (S.D.N.Y. Oct. 14, 2020)................................................. 10

*In re Joe's Friendly Service & Son, Inc.*, 2020 WL 3120288, at \*9 (Bankr. E.D.N.Y. June 11, 2020) ............................................................................................................................................ 4

*Linardos v. Fortuna*, 157 F.3d 945 (2nd Cir. 1998) ..................................................................... 5

*Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219 (S.D.N.Y. 2013) ................................... 10

*New Hampshire v. Maine*, 532 U.S. 742, 749-751, 121 S. Ct. 1808, 1814-1815 (2001)4*Palazzo v. Corio*, 232 F.3d 38 (2nd Cir. 2000) ...................................................................................... 5, 8

*Philipbar v. Derby*, 85 F.2d 27 (2nd Cir. 1936) ........................................................................... 8

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009)........................................ 10

**Statutes**

28 U.S.C. § 1332................................................................................................................................ 3

28 U.S.C. § 1332(a) .......................................................................................................................... 9

28 U.S.C. § 1441................................................................................................................................ 3

28 U.S.C. § 1441(a) .......................................................................................................................... 3

28 U.S.C. § 1446........................................................................................................................... 3, 9

28 U.S.C.§ 1332(a) ........................................................................................................................... 8

**Rules**

NY CLPR § 308(4) ............................................................................................................................ 3

S.D.N.Y. L.R. 81-1 ........................................................................................................................... 9

Defendant Kevin Spacey Fowler ("Mr. Fowler"), by and through his counsel, respectfully submits this memorandum of law in opposition to the motion of plaintiffs Anthony Rapp and C.D. (collectively, "Plaintiffs") to remand the above-captioned action to state court (ECF No. 11) (the "Motion")).

## INTRODUCTION

Mr. Fowler timely and properly removed this case to federal court because this Court has original diversity jurisdiction over it. Complete diversity of citizenship exists between the parties, as Plaintiffs are citizens of New York and the lone defendant is a citizen of Maryland. Likewise, Plaintiffs' complaint seeks more than the $75,000 jurisdictional minimum required for diversity jurisdiction.

Plaintiffs claim Mr. Fowler's removal was improper, narrowly challenging only one aspect of this Court's diversity jurisdiction and Mr. Fowler's removal – Mr. Fowler's Maryland citizenship. Despite Plaintiffs' unfounded assertions they have "no doubt" Mr. Fowler is domiciled in London, England rather than Maryland, Plaintiffs' Motion offers nothing more than speculation, inadmissible hearsay, and guesswork. Plaintiffs present no evidence that Mr. Fowler surrendered and intended not to return to his longtime domicile in Maryland, which has been his permanent home since at least 2014.

Mr. Fowler lives and owns a home in Baltimore, Maryland, which is his primary residence and holds most of his personal belongings. Plaintiffs even served Mr. Fowler with the complaint and summons in this case at his Baltimore home, **which they then represented to the state court was Mr. Fowler's "actual place of residence."** Mr. Fowler has filed tax returns and paid state income taxes as a Maryland residence for many years. He purchased and uses vehicles registered in Maryland. He has worked to develop the arts and culture scene in Maryland, especially in his

home city of Baltimore.  He has planted roots in Maryland that extend far beyond his recent work on the Netflix television show *House of Cards*.  Maryland has been his home for many years and the place to which he always has intended to return when traveling elsewhere.

To mask their inability to make any legally cognizable challenge to this Court's jurisdiction, and in a transparent attempt to stoke prejudice against Mr. Fowler, Plaintiffs stuff their filing with a slew of media articles reciting various unproven allegations irrelevant to any issue in this case.  And they attach outdated articles about Mr. Fowler's connections to England through his work at the Old Vic theater that ended many years ago and are immaterial to Mr. Fowler's current domicile in Maryland.  Nor do generalized platitudes Mr. Fowler may have given to British media many years ago about his appreciation for England somehow disprove his Maryland domicile.  The only recent "evidence" of Mr. Fowler's purported British domicile is a paparazzi photograph of Mr. Fowler in London in September 2020 that proves nothing.  While Mr. Fowler did travel to London earlier this year on a temporary tourist visa and his planned six-week trip was extended due to travel complications arising from the COVID-19 pandemic, he always intended to, and ultimately did, return to his home in Baltimore, Maryland.

Plaintiffs' Motion also makes no credible showing that would justify jurisdictional discovery into Mr. Fowler's domicile.  Such discovery would be futile and wasteful, as Mr. Fowler's domicile in Maryland is uncontroverted and cannot reasonably be disputed.  Plaintiffs seek such discovery only to pry into private details of Mr. Fowler's personal life that do not pertain to Plaintiffs' claims about alleged incidents nearly four decades ago, and cannot undermine this Court's original jurisdiction.[1]  Plaintiff's Motion should be denied.

---

[1]     Mr. Fowler filed an Answer shortly after removal in which he denies all material allegations of Plaintiffs' complaint; the merits of the claims will be addressed at the proper time. (ECF No. 7.)

## BACKGROUND

### A.      Plaintiffs' Complaint

Plaintiffs filed a Verified Complaint in New York state court on September 9, 2020, alleging six causes of action (three by each plaintiff).  In October 2020, Plaintiffs served Mr. Fowler with the Summons and Verified Complaint under NY CPLR § 308(4), sometimes called "nail and mail" or "affix and mail" service.  Plaintiffs accomplished this by affixing the documents to the door of Mr. Fowler's residence at 622 Ponte Villas North in Baltimore, Maryland and then mailing those documents to the same address.  **Plaintiffs filed an Affidavit of Service with the state court on October 5, 2020 attesting that the documents were affixed to the door of and mailed to Mr. Fowler's "actual place of residence."**  *See* Saghir Decl., Ex. BB (ECF No. 11-30).  Under NY CLPR § 308(4), Plaintiffs' service of the Summons and Verified Complaint was completed ten days after that affidavit of service was filed, *i.e.*, October 15, 2020.

### B.      Mr. Fowler Properly Removed This Case To Federal Court

On November 13, 2020, Mr. Fowler timely removed this case to federal court under 28 U.S.C. §§ 1332, 1441, and 1446.  (ECF Nos. 1, 6.)  The Notice of Removal asserted a "short and plain statement of the grounds for removal," attached "all process, pleadings, and orders" filed in state court before removal, and otherwise complied with all procedural requirements in 28 U.S.C. § 1446.  Mr. Fowler also provided proper notice of the removal to the other parties and state court. (ECF No. 4.)

## ARGUMENT

### I.      MR. FOWLER HAS BEEN DOMICILED IN MARYLAND AT ALL RELEVANT TIMES

A case initially filed in state court is properly removed to federal court when the district court has original subject matter jurisdiction.  28 U.S.C. § 1441(a); *Fax Telecomm., Inc. v. AT&T,*

138 F.3d 479, 486 (2nd Cir. 1998).  The notice of removal need only set forth a "short and plain statement" of the grounds for removal, and "courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'"  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S. Ct. 547, 553 (2014) (citation omitted).  When removal is challenged, the party invoking federal jurisdiction must show the factual basis for such jurisdiction only by a preponderance of the evidence.  *Finnegan v. Long Island Power Auth*., 409 F.Supp.3d 91, 97 (E.D.N.Y. 2019).  As to diversity, "the party asserting diversity must first establish his domicile" and then "the challenger assume[s] the burden of proving that there has been a change in that situation."  *Id*.

Here, Plaintiffs' challenge to Mr. Fowler's removal based on this Court's diversity jurisdiction is limited to Mr. Fowler's being domiciled in the State of Maryland.  Plaintiffs claim – with no evidence and only speculative assertions – that Mr. Fowler instead is domiciled abroad in London.  Not so.  Mr. Fowler's domicile in Maryland was properly alleged in the Notice of Removal and evidenced by his declaration filed with this Opposition.

Plaintiffs' recent challenge is particularly galling given that Plaintiffs acknowledged Mr. Fowler as a Maryland domiciliary just two months ago when they served their complaint and summons on Mr. Fowler at his longtime Maryland residence.   After effecting that service, Plaintiffs filed an affidavit of service under penalty of perjury representing to the state court that the Maryland condominium at which they served Mr. Fowler was his actual place of residence.  Plaintiffs therefore should be estopped from now taking a contrary position simply because their interests have changed.  *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749-751, 121 S. Ct. 1808, 1814-1815 (2001); *In re Joe's Friendly Service & Son, Inc.*, 2020 WL 3120288, at *9 (Bankr. E.D.N.Y. June 11, 2020) ("While judicial estoppel does not apply to positions taken on questions

of law and cannot be used to confer subject matter jurisdiction as a matter of law, it may be applied to the factual representations that support a legal conclusion that subject matter jurisdiction exists.").

Plaintiffs' newfound claims about Mr. Fowler's alleged change in domicile have no merit, are belied by their own conduct and representations to the state court, and cannot operate to remand this case given the Court has original jurisdiction over it. A person has only one domicile at any given time. *Palazzo v. Corio*, 232 F.3d 38, 42 (2nd Cir. 2000). A person's domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2nd Cir. 1998) (citation omitted). Mr. Fowler was domiciled in Maryland when this case was filed in state court in September 2020, when it was removed to federal court in November 2020, and indeed for years dating back to 2014. The subjective and objective evidence of Mr. Fowler's Maryland domicile is overwhelming.

First, Mr. Fowler is a United States citizen domiciled in Maryland since at least 2014. Fowler Decl., ¶ 2. At that time, he had been living in Maryland for two years working on the Netflix television series *House of Cards*, which filmed primarily in Maryland. *Id*., ¶ 3. By 2014, after two years of living in and discovering the state, Mr. Fowler fell in love with the place and decided to make it his permanent home. *Id*. Although the television show was a success by that time, Mr. Fowler decided he would stay and live in Maryland no matter how long the show ran. *Id*.

Second, consistent with his Maryland domicile, Mr. Fowler has filed tax returns and paid state income tax as a Maryland citizen since at least 2015. *Id*., ¶ 2.

Third, Mr. Fowler's intention to live and remain in Maryland is shown by his repeated purchase of homes there.  In 2014, Mr. Fowler bought the home in Severna Park near Annapolis, Maryland, which he had been renting and living in for two years during the initial years of filming *House of Cards*.  *Id*., ¶ 4.  That Severna Park home became Mr. Fowler's primary residence when he purchased it.  *Id*.  In early 2017, Mr. Fowler sold that home and bought a condominium in Baltimore, Maryland.  *Id*.  The Baltimore condominium was purchased with Mr. Fowler's money, and the title owner is a Maryland LLC of which Mr. Fowler is the sole beneficial owner.  *Id*.  Mr. Fowler has owned that Baltimore condominium since early 2017, and it has been his primary residence ever since.  *Id*., ¶¶ 4-5.

In 2017, Mr. Fowler also secured a large storage warehouse in Baltimore and moved his items from storage facilities in other parts of the country into that Baltimore warehouse, which holds his personal belongings that are not kept in his Baltimore home.  *Id*., ¶ 5.

Fourth, Mr. Fowler has purchased and uses multiple cars registered in Maryland.  He  has been trying since early this year to obtain a Maryland driver's license to replace his now-expired California license obtained before he moved to Maryland.  *Id*., ¶ 6.

Fifth, Mr. Fowler has planted substantial roots within the community of Baltimore and the surrounding area, especially since purchasing his Baltimore home in 2017.  He has contacted Maryland businesses and universities about providing assistance to community development projects, especially in cultivating performing arts in Baltimore.  *Id*., ¶¶ 7-8.  For example, Mr. Fowler entered into a contract in 2017 to buy a historic building in Baltimore, intending to renovate it into a 300-seat theater and home for his charitable foundation.  *Id*., ¶ 8.  The attempted purchase aimed to further one of his longtime goals for the city of Baltimore by creating a stronger acting community, and Mr. Fowler ultimately hopes to start a film festival in the city.  *Id*.  And while the

deal fell through for reasons beyond his control, Mr. Fowler remains invested in his home city.  He has always aimed to promote the arts and culture in Baltimore and continues to do so.  *Id*.

Sixth, Plaintiffs' claim that Mr. Fowler changed his domicile to London, England because he was physically present there for a portion of this year is unavailing.  Mr. Fowler traveled to London in late February 2020 on a tourist visa for what was planned as a six-week trip.  *Id*. ¶¶ 9-11, Ex. 1.  He had a return ticket for mid-April 2020.  *Id*.  But, due to the COVID-19 pandemic, Mr. Fowler's return flight was cancelled, and various travel restrictions imposed by the United States and other countries frustrated his ability to reschedule it.  *Id*., ¶ 11.  He was advised not to travel unless absolutely necessary due to the health risks and uncertainties of COVID-19.  *Id*.  Unable to return home, and with the pandemic worsening in the United States, Mr. Fowler had little choice but to extend his stay in London.  *Id*.  But at all times, he intended to return to his home in Baltimore, which continues to hold most of his personal belongings, and which he did not sell or rent out.  *Id*.  When his tourist visa expired in September, Mr. Fowler left England and, after a few stops elsewhere, returned to his Baltimore home in November 2020.  *Id*.

Mr. Fowler's travel to London was on a temporary tourist visa, not a resident or other visa that would have allowed him to stay in the country longer.  *Id*., ¶ 10.  He made no attempt while in London to change his residence or move there permanently.  He is not a British citizen, nor has he applied to become one.  He has not paid taxes as a United Kingdom resident for many years, and the British government does not recognize him as a resident.  *Id*.  He does not have a British passport.  *Id*., ¶ 9.  While he has historical connections to England through his work at the Old Vic theater, Mr. Fowler's engagement there ended in 2015 and, since at least 2014 when he made Baltimore his home, Mr. Fowler has never intended to stay or live in England indefinitely.  *Id*.  His visits to England have been infrequent and for relatively brief durations in recent years, apart from

his unexpectedly extended trip this year.  *Id*., ¶ 12.  On each visit to England or elsewhere, Mr. Fowler always has intended to return to his home in Maryland.  *Id*., ¶¶ 2, 9-12.

Mr. Fowler's longtime domicile in Maryland is uncontroverted and beyond question.  He lives there.  He pays taxes there.  He owns property and keeps his belongings there.  He has roots in the community there.  Nor is his being domiciled in Maryland a secret.  He submitted a declaration in January 2019 in connection with a federal action in the Central District of California verifying he was a Maryland resident, and that court maintained federal diversity jurisdiction.  *Id*., ¶ 13, Ex. 2.

To the extent Plaintiffs falsely assert Mr. Fowler somehow intended to change his domicile to London during a trip that was unexpectedly extended due to travel complications arising from the pandemic, they must establish that change of domicile by clear and convincing evidence.  *Palazzo*, 232 F.3d at 42.  They cannot do so.  Mr. Fowler has remained domiciled in Maryland since 2014 despite any temporary trips to England or elsewhere.

## II.   MR. FOWLER HAS ESTABLISHED DIVERSITY JURISDICTION, AND REMOVAL WAS PROPER

The Notice of Removal asserts this Court has original jurisdiction under 28 U.S.C.§ 1332(a) over this matter because: (1) complete diversity exists between Plaintiffs and Mr. Fowler; and (2) the amount in controversy exceeds $75,000.  (ECF No. 1 at ¶ 11.)

As stated, Plaintiffs' challenge to Mr. Fowler's domicile is baseless.  Their attempt to defeat removal is filled with speculation, inflammatory flotsam, and inadmissible hearsay.  *See Philipbar v. Derby*, 85 F.2d 27, 29-30 (2nd Cir. 1936) (affirming district court's refusal to consider hearsay statements in an affidavit submitted in support of a motion to remand).  The overwhelming and uncontroverted evidence supports Mr. Fowler's contention he is domiciled in the State of Maryland.  As for Plaintiffs, Mr. Fowler asserts in the Notice of Removal that he believes Plaintiffs

are both citizens of New York given the nature of the allegations in their Complaint. (ECF No. 1 at ¶ 6.) In their Motion, Plaintiffs do not contest or dispute that they are New York citizens.[2] Complete diversity therefore exists between citizens of different states – *i.e.*, Plaintiffs (citizens of New York) and Mr. Fowler (a citizen of Maryland).

Likewise, Plaintiffs do not dispute Mr. Fowler's allegation in the Notice of Removal that the amount in controversy exceeds $75,000, exclusive of interest and costs. (ECF No. 1 at ¶¶ 9-10.) Mr. Fowler's allegation that the amount in controversy exceeds the jurisdictional minimum has been properly asserted and should be accepted by the Court. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 87, 135 S. Ct. at 553 ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. . . . Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.").[3]

Because removal was timely and proper, and this Court has original jurisdiction over this matter under 28 U.S.C. 1332(a), Plaintiffs' Motion fails and this case should proceed in federal court.

## III. NO JURISDICTIONAL DISCOVERY IS WARRANTED

Despite the clear evidence that Mr. Fowler is domiciled in Maryland, Plaintiffs ask this Court for permission to conduct jurisdictional discovery. But jurisdictional discovery is unjustified and would be futile. Plaintiffs are not entitled to jurisdictional discovery merely because they groundlessly question Mr. Fowler's domicile. "To obtain jurisdictional discovery, a plaintiff must

---

[2]  To the extent Plaintiffs are not citizens of New York as asserted in the Notice of Removal, they were obligated to supply that information to the Clerk within twenty-one (21) days after removal. (S.D.N.Y. L.R. 81-1.) Mr. Fowler is unaware of Plaintiffs having done so.

[3]  Nor do Plaintiffs assert any procedural defect in the removal process. Mr. Fowler complied with 28 U.S.C. § 1446 and other applicable law.

show that the discovery is 'likely to produce facts needed to withstand a Rule 12(b)(1) motion.'" *Greer v. Carlson*, 2020 WL 6064167, at * 5 (S.D.N.Y. Oct. 14, 2020); *cf. Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) (finding jurisdictional discovery is appropriate only where there has been a "threshold showing" of "facts that would support a colorable claim of jurisdiction"). A court should not permit discovery that would be a "fishing expedition for jurisdictional facts." *Greer v. Carlson*, 2020 WL6064167, at *5; *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009).

Mr. Fowler's substantial evidentiary showing verifying his Maryland domicile cannot reasonably be refuted. Nor have Plaintiffs raised any legitimate question regarding Mr. Fowler's domicile that would be illuminated by such invasive and unnecessary discovery. Plaintiffs' speculation and unsubstantiated assertions based on Mr. Fowler's work at the Old Vic theater many years ago, and a paparazzi photograph showing him on a bicycle in London earlier this year, do not provide cause to delve into jurisdictional discovery about a matter not reasonably in dispute – *i.e.*, Mr. Fowler's domicile. *See, e.g.,* Saghir Decl., Exs. V, AA (ECF Nos. 11-24, 11-29).[4] Plaintiffs have provided no admissible facts supporting their claim Mr. Fowler is domiciled in London, nor that jurisdictional discovery would provide facts substantiating their assertion. Plaintiffs' own actions in serving Mr. Fowler in Maryland and representing to the state court under oath that the Maryland home was Mr. Fowler's actual place of residence belie their Motion and reinforce Mr. Fowler's contention and evidence that he is, in fact, a Maryland domiciliary.

## CONCLUSION

Mr. Fowler respectfully requests that the Court deny Plaintiffs' Motion in its entirety and

---

[4] Mr. Saghir's declaration and the exhibits attached to it lack foundation, constitute hearsay, and are irrelevant to any issue on Motion.

maintain jurisdiction over this case.

Dated: December 28, 2020                      Respectfully submitted,
       Irvine, California.

*/s/ Chase A. Scolnick*
Chase A. Scolnick
Keller/Anderle LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Phone: (949) 476-8700
Fax: (949) 476-0900
E-mail: cscolnick@kelleranderle.com

Michael Tremonte
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Phone: (212) 202-2600
E-mail: mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

11

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2, I, Chase A. Scolnick, hereby certify that on December 28, 2020 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent  to those indicated as non-registered participants.

*/s/ Chase A. Scolnick*