UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY RAPP and C.D., <br><br>                                    Plaintiffs, <br><br>   -against- <br><br> KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY, <br><br>                                    Defendant. | Case No. 20-cv-09586 (LAK) (SDA) <br><br> **DECLARATION OF KEVIN SPACEY FOWLER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** |

Under 28 U.S.C. § 1746, I, Kevin Spacey Fowler a/k/a Kevin Spacey, declare under penalty of perjury as follows:

1.      I am the defendant in this action. I have personal knowledge of the information stated below and, if sworn, I could and would competently testify to it under oath.

2.      I am a citizen of the United States and have been since birth. Since at least 2014, I have been domiciled in, and a citizen of, the State of Maryland. During that entire time and through today, I have resided in Maryland with the intention to remain in Maryland indefinitely and to return to it whenever I leave it on a temporary basis. I consider Maryland my home and permanent residence. Since moving to Maryland, I have been physically present in Maryland more than in any other location. Since at least 2015, I have filed tax returns and paid state income taxes as a Maryland citizen.

3.      In 2012, I began to work on the Netflix television series *House of Cards*, which filmed primarily in Maryland. At that time, I moved to Maryland because the show was confirmed for two seasons even before filming began. By 2014, after two years of gradually discovering the charm and beauty of Maryland, I had fallen in love with the place and decided to make Maryland

1

my permanent home.  By that time, *House of Cards* was a success but I loved Maryland so much that I intended to live there regardless what happened with the show or how long it ran.

4. Consistent with my intention to make Maryland my permanent home, I purchased a house in Severna Park near Annapolis, Maryland in 2014.  I had rented and moved into that Severna Park home beginning in 2012 when I began filming *House of Cards*.  And the Severna Park home became my primary residence when I purchased it in 2014.  In 2017, I sold the Severna Park house and moved into a condominium in Baltimore at 622 Ponte Villas North ("Baltimore Home").  Initially, I rented the Baltimore Home.  But, shortly thereafter, in early 2017, I purchased it and have owned it ever since.  Any media reports to the contrary are not accurate.  I purchased the Baltimore Home with my own money, and the title is held in the name of a Maryland LLC of which I am the sole beneficial owner.

5. Since I moved into the Baltimore Home in 2016 and then purchased it in early 2017, the Baltimore Home has been my primary residence and home at all times.  When I purchased the Baltimore Home in 2017, I also secured a large warehouse in Baltimore and moved items previously located in storage facilities in other parts of the county into that Baltimore storage facility.  I still have and use that warehouse, which holds my belongings not located in my home.

6. I also purchased multiple vehicles registered in Maryland that I use.  While I have a now-expired California driver's license originally obtained before I moved to Maryland, I have been trying throughout this year to get a Maryland driver's license.  I originally went to the Maryland DMV in February 2020 for this purpose and then intended to return to finalize my application for a new Maryland driver's license after my trip to London and before my California license expired in July 2020.  Ultimately, as explained below, I remained in London longer than expected due to the travel complications arising from the COVID-19 pandemic.  Upon my return

to Baltimore, I again went to the DMV in mid-November 2020 to get my Maryland driver's license. I learned at that time that I did not have all paperwork necessary to obtain my license. I therefore rescheduled an appointment for January 2021 at which I expect to finalize my application for and obtain a Maryland's driver's license.

7. Since moving to Maryland, and especially after purchasing my Baltimore Home, I have put down many roots in the state due to my intention to live in Maryland indefinitely. For example, in early 2017, I contacted Kevin Plank, the CEO of Under Armour, which is based in Maryland near Baltimore. By that time, I had begun discussions with various influential people around Baltimore for nearly a year about doing my part to help the city by investing in its arts, education, and culture. In particular, I had a strong desire to build up the acting and performance arts community in Baltimore. I knew Under Armour had made tremendous contributions to the city in that regard and wanted to see where I could work with Mr. Plank or Under Armour to achieve our common goals of helping Baltimore reach its potential. One potential project we later discussed was the inclusion of a performing arts theater in the new campus headquarters Under Armour had planned. In 2019, I also began discussions with Johns Hopkins University in Baltimore about the potential for my charitable foundation to provide funds to help establish the Johns Hopkins Rehabilitation Program for Performing Artists as the premier leader in the evaluation and treatment of performance-related injuries and conditions. I also hope the program can care for the mental wellness of performance artists in addition to their physical rehabilitation. My discussions with Johns Hopkins on this matter were scheduled to continue in the spring of this year but were put on hold due to the COVID-19 pandemic.

8. Also, in 2017, I entered into a contract to purchase a historic building in Baltimore which I intended to renovate into a 300-seat theater and an office for my charitable foundation.

By that time, I had been looking for years for a way to bring a film festival to Baltimore among my other efforts to support the arts and culture scene in Baltimore. I viewed this as a step in that direction. Unfortunately, while the purchase was under contract, a representative of a small college with prior rights to the property challenged the receiver's authority to sell it. Caught in the middle of their dispute, and with the prospect of a lengthy appeals process that would indefinitely delay the closing of the sale, I decided to surrender my deposit and walk away from the deal. But I continue to look for ways to promote the arts and culture in my home city.

9. I understand Plaintiffs claim I am domiciled in London. This is not true. I have not been domiciled in England, nor have I resided in England for a long time. I am not a British citizen, nor have I applied to become one. I have not paid taxes as a UK resident for many years, and the British government does not recognize me as a resident. I do not have a British passport. While I have historical connections to England through my work at the Old Vic theater, that work ended in 2015 and, since at least 2014 when I made Maryland my home, I have never intended to stay or live in England indefinitely. And on each visit to England or elsewhere, I always have intended to return to my home in Maryland.

10. I did travel to London in February 2020. The purpose of my trip was personal and recreational. I intended merely to visit London and use the city as a hub to visit other locations in Europe. I had no intention to move there or stay indefinitely. My trip was planned to last only approximately six weeks. My plane ticket was roundtrip, leaving February 27, 2020 and scheduled to return to the United States on April 12, 2020. (My return flight was into Los Angeles, where I had planned to stay for a few days to attend to an unrelated matter scheduled there before returning to Baltimore.) My travel to London was on a temporary tourist visa, not a resident or other visa that would have allowed me to stay in the country longer. I made no efforts or attempts while in

London to change my residence or move there permanently. Attached as **Exhibit 1** to this declaration is a true and correct copy of my itinerary and receipt (with some redactions of financial information) as originally purchased and planned.

11. After I arrived in London in late February, the COVID-19 pandemic led to a series of travel restrictions that delayed and thwarted my return home. My return flight set for April 12th was cancelled, and various travel restrictions imposed by the United States and other countries made it difficult to reschedule. I also was advised not to travel unless absolutely necessary due to the health risks and uncertainties of COVID-19. Unable to return home, and with the pandemic worsening in the United States, I had little choice but to extend my visit to London. At all times, I intended to return to my Baltimore Home. I continued to own the Baltimore Home and did not try to sell it or rent it out. And most of my personal belongings remained there or in my Baltimore storage warehouse. Ultimately, my tourist visa expired in late September (after being extended by three months due to the pandemic), and I left the country. After a few stops elsewhere in Europe and north Africa, I returned to Baltimore and my Baltimore Home in early November.

12. Before my trip to England this year that was unexpectedly extended, I have only occasionally visited England in recent years. In fact, I did not travel to the United Kingdom at all from the summer of 2017 to the summer of 2019. And before my unexpectedly extended trip this year, I have not stayed in England for more than approximately a month during any recent calendar year.

13. Attached as **Exhibit 2** to this declaration is a true and correct copy of a declaration I signed on January 30, 2019, in connection with my removal to federal court of the lawsuit styled *Doe v. Fowler*, United States District Court, Central District of California, Case No. 2:19-cv-

00750-RSWL-SS. In the declaration, I verified I was and had been domiciled in Maryland since at least 2014. The court accepted the removal of that matter based on diversity jurisdiction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20th, 2020

_____
Kevin Spacey Fowler

6

**CERTIFICATE OF SERVICE**

      In accordance with Local Rule 5.2, I, Chase A. Scolnick, hereby certify that on December 28, 2020 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Chase A. Scolnick*