**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY RAPP and C.D., | Case No. 1:20-cv-09586 (LAK) (SDA) |
| Plaintiffs, | |
| -against- | |
| KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY, | |
| Defendant. | |

### DEFENDANT'S OPPOSITION TO PLAINTIFF C.D.'S
### MOTION FOR LEAVE TO PROCEED ANONYMOUSLY

**(*Redacted and Publicly Filed*)**

KELLER / ANDERLE LLP
Jennifer L. Keller (*pro hac vice*
application pending)
Chase A. Scolnick
18300 Von Karman Ave., Suite 930
Irvine, California 92612
(949) 476-8700
cscolnick@kelleranderle.com

SHER TREMONTE LLP
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey
Fowler a/k/a Kevin Spacey*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    A.    PLAINTIFF C.D. HAS NOT MET THE HIGH BAR TO PLEAD
ANONYMOUSLY .................................................................................. 3

    B.    THE *SEALED PLAINTIFF* FACTORS SHOW PLAINTIFF'S ANONYMITY IS
NOT JUSTIFIED OR WARRANTED ................................................................. 4

        1.    Whether Litigation Involves Highly Sensitive Matters (Factor 1) ............. 5

        2.    Risk Of Physical Retaliation or Mental Harm, and Likelihood and Severity
of the Harm (Factors 2 and 3) ........................................................ 6

            a.    C.D. Has Provided No Support For The Alleged Severe Mental
Harm He Would Suffer Without Anonymity................................... 6

            b.    C.D.'s Claims Of Harm Are Undermined Because He Already Has
Sought Out Media Attention Of His Claims................................. 10

        3.    Whether Plaintiff Is Particularly Vulnerable To Possible Harms Of
Disclosure, Particularly In Light Of His Age (Factor 4) ......................... 13

        4.    Whether The Action Is Challenging Action Of the Government Or That
Of Private Parties (Factor 5) ....................................................... 13

        5.    Whether Defendant Is Prejudiced By Allowing Plaintiff To Pursue Claims
Anonymously (Factor 6)............................................................. 14

        6.    Whether Plaintiff's Identity Has Been Kept Confidential (Factor 7) ....... 17

        7.    Whether The Public's Interest In The Litigation Is Furthered By Requiring
Plaintiff To Disclose His Identity (Factor 8) .......................................... 18

        8.    Whether There Is Any Atypically Weak Public Interest In Knowing
Identities Because Of A Purely Legal Nature Of An Action (Factor 9)... 19

        9.    Whether Alternative Means Exist To Protect Any Confidential
Information (Factor 10)............................................................... 19

        10.    The *Sealed Plaintiff* Factors Weigh Overwhelmingly Against Anonymity
................................................................................................ 20

    C.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO DELAY
RULING ON THE MOTION UNTIL AFTER ANY RENEWED MOTION TO
REMAND PLAINTIFFS MAY BRING ............................................................. 21

CONCLUSION.................................................................................................................. 22

# **TABLE OF AUTHORITIES**

**Cases**

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) .............................................. 6, 8

*Doe on behalf of Doe 1 v. Nygard*, No. 20-CV-6501, 2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020) ......................................................................................................................... 4, 6

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997) ....................................... 3

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006) .......................................... 3, 9, 15, 18

*Doe v. Delta Airlines, Inc.* 310 F.R.D. 222 (S.D.N.Y. 2015) ................................. 16, 17

*Doe v. Doe*, No. 20-CV-5329, 2020 WL 6900002 (E.D.N.Y. Nov. 24, 2020) ............................ 8

*Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) ................................................................ 4

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036 (9th Cir. 2010) 4, 18

*Doe v. MacFarland*, 66 Misc.3d 604 (2019) ............................................................... 21

*Doe v. McLellan*, No. CV 20-5997, 2020 WL 7321377 (E.D.N.Y. Dec. 10, 2020)....... 5, 7, 13, 17

*Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996) ................................................... passim

*Doe v. Skyline Automobiles, Inc*, 375 F. Supp. 3d 401 (S.D.N.Y. 2019) .......................... 5, 14, 19

*Doe v. Smith*, 105 F.Supp. 2d 40 (E.D.N.Y. 1999)........................................................ 9

*Doe v. Solera Capital LLC*, 18 Civ. 1769, 2019 WL 1437520,  (S.D.N.Y. March 31, 2019) .......................................................................................................................... passim

*Doe v. Texaco*, 2006 WL 2850035 (N.D. Cal. Oct. 5, 2006)........................................ 18

*Doe v. Townes*, No. 19-CV-8034, 2020 WL 2395159 (S.D.N.Y. May 12, 2020)................ passim

*Doe v. Weinstein*, No. 20-CV-6240, 2020 WL 5261243 (S.D.N.Y. Sept. 3, 2020) ............. passim

*Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)............................. 4

*Lawson v. Rubin*, 2019 WL 5291205 (E.D.N.Y. Oct. 18, 2019).................................... 16

*North Jersey Media Group, Inc. v. Doe Nos. 1-5*, N. 12-CV-6152, 2012 WL 5899331 (S.D.N.Y. No. 26, 2012) ................................................................................................... 19

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814 (1980)........................ 15

*Roe v. Aware Woman Ctr. For Choice, Inc.* 253 F.3d 678 (11th Cir. 2001) ................................. 4

*Roe v. Does 1-11*, No. 20-CV-3788, 2020 WL 6152174 (E.D.N.Y. Oct. 14, 2020) ............... 5, 15

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008)........................................... 3, 4

**Statutes**

Fed. R. Civ. P. 10(a) ...................................................................................................................... 3

Defendant Kevin Spacey Fowler ("Mr. Fowler"), by and through his counsel, respectfully submits this memorandum of law in opposition to plaintiff C.D.'s ("Plaintiff" or "C.D.") motion for leave to proceed anonymously in this action (ECF No. 31) (the "Motion").

## **INTRODUCTION**

Plaintiff C.D. seeks the "extraordinary" relief of obtaining leave from the Court to prosecute his claims against Mr. Fowler – and continue to publicize them in the media – under the cloak of a pseudonym.  To justify this request, C.D. points to his purported "fragile psychological condition" (Mot. at 1) and the hypothetical harm he would suffer if his true identity were disclosed as required under Federal Rule of Civil Procedure 10.  But the requirement a party litigate in his own name cannot be easily discarded.  C.D. attempts to substantiate his request with nothing more than his own assertions and the conclusory statements of a licensed social worker with no medical degree whom Plaintiff C.D. sees a handful of times per year.  And while he has hidden behind a pseudonym, C.D. and his counsel have sought media attention, including by attacking Mr. Fowler during an extensive interview about his claims published in a prominent New York magazine.

Plaintiff fails to show his continued anonymity would not severely prejudice Mr. Fowler.  Besides the fundamental unfairness of litigating against a masked accuser, Mr. Fowler's ability to investigate and conduct discovery of C.D.'s claims and prepare for trial would be severely inhibited if C.D. were permitted to remain anonymous.  Mr. Fowler cannot speak with or take discovery from third-party witnesses without disclosing C.D.'s real name, and such witnesses will likely be deterred from providing fulsome and accurate discovery if C.D. is permitted to remain anonymous.  C.D.'s anonymity would necessarily place unreasonable restrictions or obligations on the witness's participation.  And unknown witnesses who may have key information and knowledge about C.D.'s claims and Mr. Fowler's defenses may never come forward if C.D.'s

1

identity is concealed.

This case may proceed to trial in a matter of months.  C.D.'s anonymity has delayed Mr. Fowler's ability to prepare for trial when there is no time to spare.  The prejudice to Mr. Fowler cannot be justified, especially given that C.D.'s anonymity cannot last long under any circumstances.  His true name must be disclosed and used at trial; otherwise, Mr. Fowler's ability to receive a fair trial would be compromised.  Mr. Fowler does not seek any special treatment.  He merely wants Plaintiff to play by the same rules that apply to all litigants, including Mr. Fowler.

Plaintiff's Motion fails to establish that the need for anonymity outweighs the public's interest in open judicial proceedings, and the unfairness and prejudice to Mr. Fowler.  None of the factors considered by the Second Circuit support anonymity here.  Plaintiff is an adult man in his early 50s who has chosen to file this case and seeks damages of $40 million.  There have been no threats of harm or retaliation by anyone, nor has C.D. claimed otherwise.  His and his therapist's alleged concerns about C.D.'s psychic trauma if his name were released are speculative and uncertain; even if credited, they do not warrant the extraordinary remedy he seeks.  Neither C.D. nor his therapist explain how the use of his real name during discovery will cause the trauma about which they speculate.  C.D. is an active participant in this case.  He will be deposed and respond to discovery.  Those in his life with knowledge will be questioned and deposed about what they know.  The media and public will give this case and C.D.'s allegations as much attention as they deem appropriate.  Those inevitable consequences of C.D.'s choice to file a lawsuit cannot be avoided, and he makes no showing that the use of his real name would be the specific cause of any alleged psychological harm..

The generalized and speculative injuries C.D. purports to fear are no different from the risks inherent with any lawsuit alleging sexual abuse.  If Plaintiff's showing could justify using a

pseudonym, **every** plaintiff alleging sexual assault charges or claims under New York's Child Victims Act would qualify for anonymous pleading. But that is not the law in this Circuit, and the Court should reject the low threshold for anonymity C.D. asks this Court to endorse. The Motion should be denied, and the Court should order C.D. to file an amended complaint using his true identity.

## **ARGUMENT**

### A.  **PLAINTIFF C.D. HAS NOT MET THE HIGH BAR TO PLEAD ANONYMOUSLY**

Plaintiff glosses over the high burden he must establish to warrant pleading anonymously, and instead urges that the Court "must" exercise its discretion to permit him to do so simply because of the nature of his claims. But his request to remain anonymous is anything but routine. Allowing a party to plead anonymously violates longstanding and constitutional norms, and can be permitted only in unique circumstances described as "special," "extraordinary," "limited," or "exceptional." Courts commonly deny such requests, including in many of the cases Plaintiff relies upon.

Federal Rule of Civil Procedure 10 requires that the "title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). As the Second Circuit has recognized, this rule "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-189 (2d Cir. 2008). "The people have a right to know who is using their courts." *Id.* at 189, quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997). Using a pseudonym "runs afoul of the public's common law right of access to judicial proceedings . . . , a right that is supported by the First Amendment." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006). Civil lawsuits between private parties "advance the public's interest in enforcing legal and social norms," and in such

cases, "open proceedings serve the judiciary's interest in a fair and accurate fact-finding adjudication." *Doe v. Townes*, No. 19-CV-8034, 2020 WL 2395159, at *2 (S.D.N.Y. May 12, 2020). Besides the public interest, "basic fairness" requires a plaintiff to disclose his real name in a civil case involving potentially damaging allegations about a defendant's conduct. *See, e.g., Doe on behalf of Doe 1 v. Nygard*, No. 20-CV-6501, 2020 WL 4890427, at *1 (S.D.N.Y. Aug. 20, 2020).

The Second Circuit's strong presumption that a party must plead in his own name aligns with other circuits, which likewise have held a party may maintain anonymity only where the need to do so outweighs the prejudice to the opposing party and the "constitutionally-embedded presumption of openness in judicial proceedings." *Sealed Plaintiff*, 537 F.3d at 189 (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.* 253 F.3d 678, 685 (11th Cir. 2001), and surveying opinions of other circuits); *see also Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("The normal presumption in litigation is that parties must use their real names. . . . In this circuit, the common law rights of access to the courts and judicial records are not taken lightly."); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (anonymity may be preserved only in "special circumstances"); *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) ("It is the exceptional case in which a plaintiff may proceed under a fictitious name").

## B.   THE *SEALED PLAINTIFF* FACTORS SHOW PLAINTIFF'S ANONYMITY IS NOT JUSTIFIED OR WARRANTED

In *Sealed Plaintiff*, the Second Circuit identified ten factors for a court to consider when evaluating a plaintiff's request to proceed anonymously. For each factor, the plaintiff bears the burden of establishing it militates towards anonymity. When the plaintiff "has not sufficiently shown that a factor weighs in favor of proceeding anonymously, the Court will deem that factor

as weighing against him." *Roe v. Does 1-11*, No. 20-CV-3788, 2020 WL 6152174, at *2 (E.D.N.Y. Oct. 14, 2020).  Here, Plaintiff has not and cannot show use of a pseudonym is warranted.  The Court should deny the Motion and order Plaintiff to file an amended complaint using his real name.

### 1.    Whether Litigation Involves Highly Sensitive Matters (Factor 1)

Courts consistently conclude "that allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym." *Doe v. McLellan*, No. CV 20-5997, 2020 WL 7321377, at *1 (E.D.N.Y. Dec. 10, 2020); *see also Doe v. Weinstein*, No. 20-CV-6240, 2020 WL 5261243, at *3 (S.D.N.Y. Sept. 3, 2020).  Even a plaintiff with "very legitimate privacy concerns" who alleges a "brutal sexual assault" is not entitled to use a pseudonym.  *Doe v. Shakur*, 164 F.R.D. 359, 361-362 (S.D.N.Y. 1996) (collecting cases).  And even if this factor supports anonymity, it is not dispositive.  Indeed, "[i]nformation and allegations that are highly sensitive and of a personal nature can flow both ways," thereby augmenting the prejudice a defendant suffers from a concealed accuser.  *Doe v. Skyline Auto. Inc*., 375 F.Supp.3d 401, 407 (S.D.N.Y. 2019).  Courts often have denied anonymity even where finding the litigation involves highly sensitive matters.  *See, e.g., Townes,* 2020 WL 2395159, at *3; *Skyline Auto. Inc.*, 375 F.Supp.3d at 40.

Here, C.D.'s claims pertain to alleged incidents over 37 years ago..  Mr. Fowler vehemently denies these allegations and looks forward to defending against them at trial to clear his name.  But, contrary to C.D.'s suggestion, C.D. does not get to remain anonymous simply because he alleges to have been victimized when he was a minor.  C.D. now is an adult in his early 50s.  And far from guarding against disclosure of matters he claims to be highly sensitive, C.D. gave a lengthy interview with a prominent magazine that disclosed not only C.D.'s allegations against Mr. Fowler, but gave colorful accounts of C.D.'s other sexual relationships and past.  *See* Scolnick Decl., Ex. 1.

Plaintiff C.D.'s reliance on *Doe v. Nygard*, 2020 WL 4890427, at *3, is misplaced.  There, the alleged sexual assaults had occurred in the relatively recent past, including just two years earlier against one of the anonymous plaintiffs, who was still a minor.  Other factors not applicable here also supported anonymity.  And in *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) – a case decided before *Sealed Plaintiff* – the plaintiff had demonstrated psychological harm that was accentuated by the "very tight-knit religious community" to which plaintiff belonged, and the corresponding prospect of physical retaliation.  (*Id*. at 197.)  Such factors are not present here.

Regardless of the nature of his allegations, C.D. may not hide behind a pseudonym.  He "has made serious charges and has put [his] credibility in issue.  Fairness requires that [he] be prepared to stand behind [his] charges publicly."  *Doe v. Shakur*, 164 F.R.D. at 361.

### 2. Risk Of Physical Retaliation or Mental Harm, and Likelihood and Severity of the Harm (Factors 2 and 3)

For the second and third factors, courts evaluate whether identification poses the risk of physical retaliation or severe mental harm to the party seeking to remain anonymous or, "more critically," to third parties, and the likelihood and severity of those claimed harms.  *Sealed Plaintiff*, 537 F.3d at 190.  The claimed risks "must be more than speculative claims of physical or mental harms."  *Townes*, 2020 WL 2395159, at *4.  The potential injury must be more than embarrassment, "social stigmatization," or economic harm.  *Weinstein*, 2020 WL 5261243, at *3; *Doe v. Solera Capital LLC*, 18 Civ. 1769, 2019 WL 1437520, at *4 (S.D.N.Y. March 31, 2019).

### a. C.D. Has Provided No Support For The Alleged Severe Mental Harm He Would Suffer Without Anonymity

As an initial matter, C.D. does not assert there is a risk of physical harm or retaliation by Mr. Fowler, the public, or anyone else.  Nor does C.D. claim his identification would cause harm to any third party.  Instead, C.D. relies exclusively on an assertion that disclosure of his identity in

compliance with Federal Rule of Civil Procedure 10 would cause psychological trauma to him.

To support this, C.D. submits his own declaration that merely describes █████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *See* C.D. Decl., ¶¶ 3-

4. ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id*., ¶¶ 5-6.  Courts

routinely disregard generalized statements of mental harm such as those in C.D.'s declaration.  *See, e.g., McLellan*, 2020 WL 7321377, at *2 ("Plaintiff simply projects generalized harm, and more is required for her to satisfy her burden.")

C.D. attempts to obscure the insufficiency of his own declaration by submitting a declaration from a licensed social worker, a Mr. Bonavita, whom C.D. currently sees a mere three to six times per year.  Bonavita Decl., ¶ 4.  C.D. suggests – wrongly – that this declaration necessitates the Motion be granted.  Not so.  First, C.D. misrepresents the law, citing *Doe v. Weinstein* for his incorrect assertion that "when a party submits documentation from a medical professional . . ., motions to proceed anonymously are routinely granted."  Mot. at 8.  Neither *Weinstein* nor any other case holds that providing "medical documentation" inoculates a plaintiff from his high burden of showing the need for anonymity, or even satisfies a plaintiff's burden on the factor of the likelihood of severe mental harm.  In the portion of *Weinstein* misconstrued by Plaintiff, the court – in describing the decision in *Doe v. Solera Capital LLC* – noted only that a party there had submitted no "medical corroboration" to verify the claims of severe emotional distress likely to result from identification.  And in *Doe v. Doe*, No. 20-CV-5329, 2020 WL 6900002, at *2 (E.D.N.Y. Nov. 24, 2020), also relied upon by Plaintiff, the defendant did not

oppose the plaintiff's motion to proceed anonymously, and the note from the plaintiff's therapist was not dispositive.

The Bonavita declaration does not provide the type of "medical" corroboration claimed by C.D.[1]  Neither C.D. nor Mr. Bonavita provides any "medical documentation" at all – there are no medical records or reports from therapy sessions predating Bonavita's conclusory declaration. There is nothing in the Bonavita declaration suggesting he and C.D. have even discussed this lawsuit, let alone the prospect of his name being disclosed in it.[2]  While Mr. Bonavita may provide occasional therapeutic services to C.D., there is no evidence he is capable of opining on the possibility or likelihood of psychological harm to C.D. if his name were disclosed.

Nor does Bonavita's declaration show psychological harm other than the very type found in other cases to be insufficient – *i.e.*, the "shame" of allegedly "having been [a] victim[] of sexual harassment and assault."  *Townes*, 2020 WL 2395159, at *4.  The type of medical corroboration that weighs these factors toward anonymity must be "specific evidence from medical professionals" showing that disclosing the plaintiff's identity "*would likely cause psychological and emotional pain so intense that it would threaten [his] stability, [his] safety, and even [his] life.*"  *Doe v. Solera Capital LLC*, 2019 WL 1437520, at *4 (emphasis supplied).  Plaintiff presents no such evidence here.  Generalized fears of a setback in one's progress from post-traumatic stress disorder ("PTSD"), severe anxiety, or emotional distress cannot warrant use of a pseudonym.  *Doe v. Townes*, 2020 WL 2395159, at *4.  Indeed, "[a]llowing Plaintiff to proceed anonymously for

---

[1]     Mr. Bonavita has no medical degree or license, unlike the psychologist in *Doe No. 2 v. Kolko*, 242 F.R.D. at 196.

[2]     C.D.'s initial disclosures include a report from Mr. Bonavita dated the day after the Motion was filed, ███████████████████████████████████████████████████████ ████████████████████████ especially given that the Bonavita declaration still makes no mention of C.D.'s participation in media publicity of his claims.

these reasons would be to hold nearly any plaintiff alleging sexual harassment and assault could proceed anonymously," and courts reject such a blanket rule.  *Id.*

The opinion in *Doe v. Del Rio* is instructive.  There, the plaintiffs sought to remain anonymous in their lawsuit alleging a brutal attack and sexual assault against them by police officers.  To show an alleged risk of psychological harm, plaintiffs submitted a letter from a social worker who treated one of the plaintiffs for PTSD and depression.  *Del Rio*, 241 F.R.D. at 161. But the court found plaintiff's submission inadequate for several reasons.  First, the *Del Rio* court distinguished the level of potential harm from that which had been shown in *Doe v. Smith*, 105 F.Supp. 2d 40 (E.D.N.Y. 1999) (upon which C.D. relies) where plaintiff had shown proceeding in her name would result in a "severe risk to her safety and to her survival."  *Del Rio*, 241 F.R.D. at 161.  Further, the social worker hypothesized about a potential re-occurrence of the plaintiff's PTSD and other psychological trauma from being "re-exposed to the perceived threat," but did not make a specific showing such psychological harm would result from plaintiff's identification.  *Id.* The court observed that "[b]eing 're-exposed' to the perceived wrong" was "an inevitable consequence of the litigation itself."  *Id.*  The plaintiff would be deposed, need to testify in a public courtroom, and face cross-examination about the details of the events that lie at the heart of her claim.  *Id.*  "These procedures would occur whether or not the pleadings disclosed Jane Doe's true name.  There is simply no way to conclude that granting plaintiffs permission to proceed under pseudonyms will prevent Jane Doe from having to revisit the traumatic events."  *Id.*

Likewise, here, C.D. will be deposed, respond to discovery, testify at trial, and be exposed to whatever media attention this case garners even if he were permitted to remain anonymous.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████  Bonavita Decl., ¶ 9.   But, again, there was no showing in Bonavita's

declaration that Mr. Bonavita and C.D. had even discussed the existence of this lawsuit before the

Motion was filed or that such claimed trauma would not still result from the "inevitable

consequences of the litigation itself."

        And, critically, C.D.'s own conduct belies Mr. Bonavita's statements.  ████████████████

████████████████████████████████████████████████████████████████████████

████████  Bonavita Decl., ¶ 7.   But C.D. actively sought media attention by contacting *New York*

magazine and providing a detailed interview.  Scolnick Decl., Ex. 1.   Mr. Bonavita's opinion that

████████████████████████████████████████████████████████████████████████

████████ (Bonavita Decl., ¶ 9) is undermined by C.D.'s voluntarily disclosing his name to *New*

*York* magazine and supplying its reporters and staff with names of his friends, family and even his

therapist to discuss the allegations.   The Bonavita declaration's silence on C.D.'s active

cooperation for this article shows this information either was withheld from Mr. Bonavita or

known to him but not disclosed in his declaration.   Either way, the veracity of the Bonavita

declaration is compromised as a result.

        b.     C.D.'s Claims Of Harm Are Undermined Because He Already Has
               Sought Out Media Attention Of His Claims

        Plaintiff C.D.'s claims of harm if his name were to be publicly disclosed ring hollow,

because he already has spoken with and disclosed his name to the media.   In 2017, C.D. approached

*New York* magazine and its *Vulture* website for a face-to-face interview that became a featured

article centered on C.D.'s allegations.   Scolnick Decl., Ex. 1.   While C.D.'s name is not disclosed

in the article, a comparison of the article's content and the allegations in the complaint show C.D.

was the one who gave the interview.   In the article, the then-48-year-old man is described as first

meeting Mr. Fowler in 1981 when he was 12 years old and a student at a weekend acting class in

Westchester County, New York at which Fowler was a guest teacher.  *Id.*  Plaintiff makes the same allegations in the Complaint.  *See* Complaint (ECF No. 6-1), ¶ 31.)  The man in the article also claims he met Mr. Fowler again two years later when he was 14 years old and Mr. Fowler invited him to his apartment, after which they began a sexual relationship.  Scolnick Decl., Ex. 1.  The Complaint includes the same allegations.  Complaint, ¶¶ 32-34.  And the man in the article claimed the relationship ended after Mr. Fowler allegedly attempted to sodomize him for the first time, which matches C.D.'s allegations in the Complaint.  *Compare* Scolnick Decl., Ex. 1 *with* Complaint, ¶¶ 35-36.

While Mr. Fowler adamantly denies these allegations, the parallels between the article and complaint unequivocally demonstrate plaintiff C.D. had already publicized his claims in the media in November 2017.  Contrary to his assertions now, Plaintiff C.D. has not tried to avoid media attention; he has sought it out.  He asserts he has guarded against "the public scrutiny that comes with standing up and making a claim against a celebrity such as Kevin Spacey," (C.D. Decl., ¶ 6), and that he "has not gone public and revealed his name to any media outlets."  *See* ECF No. 31-3 (C.D.'s petition in New York state court in support of anonymity), ¶ 10.  But these claims are belied not only by his public filing of a lawsuit seeking $40 million dollars in damages, but by his seeking publicity to further attack and prejudice Mr. Fowler.  The *New York* magazine article would not have existed unless C.D. had contacted the magazine and expressed a desire to levy his own public accusations against Mr. Fowler.  *See, e.g.*, Scolnick Decl., Ex. 1 (stating "a man who was friendly with a member of the New York staff approached the magazine to talk about Spacey").  And the article's author also contacted "people close" to C.D. to discuss the allegations, showing that C.D.'s allegations are far from a secret to those in his life, or to reporters and fact-checkers for the magazine.  *Id.*

Plaintiff C.D. is not the only one publicizing the claims and trying to litigate them in the media. The same online magazine ran an article on September 9, 2020, featuring excerpts from the complaint and a press release from C.D.'s lawyers, Peter J. Saghir and Ben Rubinowitz. Quoting from that press release, the Vulture article states:

> "Kevin Spacey sexually abused Mr. Rapp and another gentleman, who needs to remain anonymous, when they were 14 years old. Spacey's conduct was not only improper and abusive, but it was a crime."
>
> **"This lawsuit sends a strong message that no matter how wealthy, powerful or famous you may be you are not above the law. Our clients are looking forward to their day in Court and to obtaining justice for a crime that never should have happened," the statement also said.**

Scolnick Dec., Ex. 9 (emphasis in original).

While C.D. hides behind his pseudonym, his counsel's media campaign has sought as wide an audience as possible. The firm profile for Peter Saghir, counsel for Plaintiffs, prominently displays and provides links to six media articles about this lawsuit and its allegations. Scolnick Dec., ¶¶ 4-10, Exs. 2-8. **Most of those articles are dated September 9, 2020 – the same day the complaint was filed – thereby suggesting a planned media strategy**. *Id.* And many of those articles quote from a statement issued by Plaintiffs' counsel aimed to slander Mr. Fowler before he had a chance to defend himself. Mr. Rubinowitz, counsel for Plaintiffs, labeled Mr. Fowler "a pedophile for years on end" and stated "[t]he truth is he raped these children." *See, e.g.*, Scolnick Dec., Ex. 8. Mr. Saghir stated the alleged conduct "was a crime," despite acknowledging he was unaware of any police investigations involving Plaintiffs. *Id.*, Exs. 3-4. And, ignoring the fact Mr. Fowler was a young, unknown actor just beginning his career at the time of the alleged incidents, Mr. Saghir also asserted the "lawsuit sends a strong message that no matter how wealthy, powerful or famous you may be you are not above the law." *See, e.g.*, *id.*, Ex. 3.

Regardless of his allegations or his perceived mental state, C.D. has not shown he is likely

to suffer severe mental harm if his name were disclosed.  C.D. "has chosen to bring this lawsuit." *Shakur*, 164 F.R.D. at 361.  He "has made serious charges and has put [his] credibility in issue. Fairness requires that [he] be prepared to stand behind [his] charged publicly."  *Id.*; *see also Weinstein*, 2020 WL 5261243, at *4.  And "[e]ven when a defendant's notoriety will likely cause a case to attract significant media attention, a plaintiff's concerns about public humiliation and embarrassment generally are not sufficient grounds for allowing [him] to proceed anonymously." *Weinstein*, 2020 WL 5261243, at *4 (internal quotations omitted).

### 3. Whether Plaintiff Is Particularly Vulnerable To Possible Harms Of Disclosure, Particularly In Light Of His Age (Factor 4)

The age of the plaintiff seeking to maintain anonymity is the "critical factor in this determination."  *Solera Capital LLC*, 2019 WL 1437520, at *6.  "If a plaintiff is not a child, this factor weighs against a finding for anonymity."  *Id.*

Here, C.D. is a grown adult in his early 50s.  His reliance on cases discussing courts' greater willingness to permit anonymity for a minor plaintiff is immaterial.  Nor has C.D. cited any case demonstrating this factor supports an adult plaintiff's proceeding pseudonymously because the allegations pertain to an incident while the plaintiff was a minor.  Instead, the plaintiff's **current** age is determinative of this factor.  And it weighs strongly against anonymity, because "Plaintiff is an adult who has chosen to pursue the litigation."  *Id.*; *see also Townes*, 2020 WL 239515, at *5 ("[B]ecause Plaintiff is an adult, the fourth factor weights against proceeding anonymously.")

### 4. Whether The Action Is Challenging Action Of the Government Or That Of Private Parties (Factor 5)

Courts are less inclined to permit a party to proceed anonymously when the dispute is between private parties, because such lawsuits "may cause damage to their good names and reputations."  *McLellan*, 2020 WL 7321377, at * 2 (internal quotations omitted).  And in lawsuits

between private parties, "there is a significant interest in open judicial proceedings since such suits do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms." *Solera Capital LLC*, 2019 WL 1437520, at *6 (internal citations omitted).

Here, C.D. attempts to minimize this factor by burying discussion of it in a footnote, but he admits – as he must – that it weighs against anonymity. *See* Opp. at 4 n. 1.

### 5.    Whether Defendant Is Prejudiced By Allowing Plaintiff To Pursue Claims Anonymously (Factor 6)

Courts repeatedly have recognized the inherent prejudice to a defendant when a plaintiff proceeds anonymously and "will examine the reputational damage to defendants, difficulties in conducting discovery, and fundamental fairness of proceeding anonymously." *Townes*, 2020 WL 2395159, at *5. As stated in *Shakur*, "[i]f plaintiff were permitted to prosecute this case anonymously, [defendant] would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity." 164 F.R.D. at 361.

A plaintiff who makes serious allegations but then hides behind a pseudonym not only creates reputational damage risk and unfairness to defendant, but also inhibits defense of the claims. As recognized in *Doe v. Skyline Automobiles, Inc*, 375 F. Supp. 3d 401 (S.D.N.Y. 2019):

> Allowing Plaintiff to proceed anonymously would disadvantage Defendants at all stages of litigation, including settlement, discovery, and trial. Plaintiff's anonymity would make it more difficult to obtain witnesses and witness testimony, Defendants would have less leverage in settlement negotiations, and Defendants would not be able to fully and adequately cross-examine the Plaintiff.

*Id*. at 407; see also *Townes*, 2020 WL 2395159, at *6.

Here, C.D.'s anonymity has prejudiced and would continue to prejudice Mr. Fowler's ability to prepare his defense for trial. Plaintiffs' counsel already insisted Mr. Fowler and his counsel cannot disclose C.D.'s true identity to anyone, not even to an investigator, experts, or

potential witnesses.  But Mr. Fowler "is entitled to investigate the background of someone who sues him."  *Weinstein*, 2020 WL 5261243, at *4.  That ability has been thwarted until the Court found on February 2, 2021 that C.D.'s name could be disclosed to Mr. Fowler's investigators.  But, still, Mr. Fowler and his counsel are unable to speak with or depose potential witnesses – even those identified in Plaintiffs' initial disclosures – if unable to even disclose foundational information like the name of the accuser.  *See, e.g., id*. at *5 (recognizing plaintiff had implicitly conceded her name would need to be disclosed to at least some third parties).  Here, with an approaching expert disclosure deadline and a discovery completion deadline just five months away, the harm created by C.D.'s continuing anonymity is exacerbated.

And while C.D. has shown no reluctance about publicizing his allegations to advance his own litigation positions, C.D.'s anonymity also may shield those with knowledge unhelpful to his case from coming forward.  "[C]oncealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses."  *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006), citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596-597, 100 S.Ct. 2814 (1980) (Brennan, J. concurring) ("Public trials come to the attention of key witnesses unknown to the parties."); *see also Roe v. Does 1-11*, 2020 WL 6152174, at *3 ("Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations.").  This unfairness runs only one way.  Because Mr. Fowler has been publicly named, "information about only one side may thus come to light."  *Del Rio*, 241 F.R.D. at 159.

C.D. also claims Mr. Fowler cannot suffer reputational damage because his reputation allegedly was "shattered" long ago.  But Plaintiffs point to no other pending lawsuit against Mr.

Fowler.  And the existence of any other scurrilous and untrue accusations perpetuated by the media does not give C.D. carte blanche to attack and slander Mr. Fowler in this litigation under the false premise it is immaterial due to the alleged damage to Mr. Fowler's reputation from preexisting allegations.  Unlike other nebulous accusers, C.D. has filed a lawsuit, giving Mr. Fowler the vehicle to defend himself and clear his name.

C.D. also claims Mr. Fowler will not be prejudiced because C.D.'s claims are asserted in the same lawsuit in which Plaintiff Rapp asserts his claim while using his real name.  This misses the mark.  Plaintiff Rapp's allegations are factually independent and distinct from those asserted by C.D., as Plaintiffs' counsel acknowledged in their press releases.  Scolnick Decl., Ex. 4 ("Mr. Saghir said that . . . Mr. Rapp and the anonymous plaintiff did not know each other.").  While Mr. Fowler can conduct discovery on, defend against, and challenge the credibility of Mr. Rapp's claims, that does not affect Mr. Fowler's ability to do the same as to C.D. and his claims.

Finally, Mr. Fowler will suffer extraordinary prejudice from C.D.'s anonymity if C.D. is permitted to remain anonymous at trial.  Courts rarely permit anonymity to be maintained at trial even if allowed earlier in a case: "[I]f trial is ultimately needed to resolve this dispute, then defendant's ability to receive a fair trial will likely be compromised if the Court allows plaintiff to continue using a pseudonym, as the jurors will likely construe the Court's permission for the plaintiff to conceal her true identity as a subliminal comment on the harm the alleged encounter with the defendant has caused the plaintiff." *Lawson v. Rubin*, 2019 WL 5291205, at *3 (E.D.N.Y. Oct. 18, 2019), quoting *Doe v. Cabrera*, 307 F.R.D. 1, 10 (D.D.C. 2014).  Further, a party who must use his real name "may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account."  *Id.* at *3, quoting *Doe v. Delta Airlines, Inc.* 310 F.R.D. 222, 225 (S.D.N.Y. 2015).  The jury will be asked to "resolve critical issues of credibility" but that

16

evaluation would be unfairly impact by anonymity, which "would run a risk of giving [C.D.'s] claims greater stature or dignity before, or otherwise confusing or distracting, the jury." *Delta Airlines, Inc.*, 310 F.R.D. at 225.  Mr. Fowler has an "interest in confronting an identified accuser." *Id.*

Because C.D.'s name will need to be disclosed in a matter of months under any circumstance, any perceived harm to C.D. would only be slightly delayed, not avoided, and any justification for anonymity is severely blunted given this inevitable result.  In contrast, the continued maintenance of C.D.'s anonymity at this stage would cause lasting damage to Mr. Fowler's reputation and ability to prepare his defense, as discovery proceeds and other pretrial deadlines pass.

Due to the severe prejudice C.D.'s use of a pseudonym has caused Mr. Fowler already, and the exacerbation of that prejudice that will result if it were to continue, this factor weighs strongly against C.D.'s requested anonymity.

### 6.    Whether Plaintiff's Identity Has Been Kept Confidential (Factor 7)

"Prior disclosure to the public of a plaintiff's identity effectively nullifies the shield of privacy provided by proceeding anonymously." *Solera Capital LLC*, 2019 WL 1437520, at *7. And "courts have swiftly rejected motions to proceed under a pseudonym where the plaintiff's identity was already known to the press." *Weinstein*, 2020 WL 526 1243, at *5; *see also Shakur*, 164 F.R.D. at 362 (rejecting anonymity in part because "plaintiff conceded that the press has known her name for some time" and "[h]ence, her identity is not unknown").  Also, this factor weighs against anonymity where the plaintiff's identity has been disclosed to the defendant, especially where there has been no showing of risk of harm or retaliation from the general public. *McLellan*, 2020 WL 7321377, at *3.

Here, C.D. disclosed his name to the staff of a major New York publication for a broadly disseminated Q and A interview, and either disclosed or allowed disclosure to those close to him of information tying him to these allegations.[3]  Scolnick Decl., Ex. 1.  This alone should disqualify him from proceeding anonymously.  Plaintiffs' Motion contends this factor supports anonymity by falsely claiming C.D.'s identity is not known to "the media."  Mot. at 15.  But, even disregarding his *New York* magazine interview, the disclosure of C.D.'s allegations within his circle of friends, family, or acquaintances results in this factor not supporting anonymity even had it not yet been publicly disclosed.  *See, e.g.*, *Townes*, 2020 WL 2395159, at *6 (finding this factor weighed neutrally in proceeding anonymously where plaintiff's name had been kept confidential to the public and in filings but was known to "Plaintiff's acquaintances").

### 7.    Whether The Public's Interest In The Litigation Is Furthered By Requiring Plaintiff To Disclose His Identity (Factor 8)

"[L]awsuits are public events and the public has a legitimate interest in knowing the facts involved in them.  Among those facts is the identity of the parties."  *Shakur*, 164 F.R.D. at 361; *see also Weinstein*, 2020 WL 5261243, at *6; *Del Rio*, 241 F.R.D. at 157 ("The press and public can hardly make an independent assessment of the facts underlying court cases, or even assess judicial impartiality or bias, without knowing who the litigants are.").  The public has "a right of access to the courts."  *Shakur*, 164 F.R.D. at 361.  "When anyone – local or foreign – invokes the potential power and authority of a United States District Court, the public has a legitimate right to know on whose behalf their institutions are being used, unless good cause to do otherwise is shown."  *Doe v. Texaco*, 2006 WL 2850035, at *6 (N.D. Cal. Oct. 5, 2006); *see also Kamehameha*

---

[3]    And far from being shy about invasion of his privacy, C.D. digresses into discussions about his sex life as a young man generally, including a continuing sexual relationship with an older cousin, also when C.D. was 14.  Scolnick Decl., Ex. 1.

*Schools/Bernice Pauahi Bishop Estate*, 596 F.3d at 1046 (finding privacy concerns of even minor plaintiffs cannot overcome "paramount importance of open courts").

C.D. provides no support for his assertion that media coverage surrounding Mr. Fowler "may discourage other victims of Spacey from coming forward."  Mot. at 16.  Such speculative claims of victims being deterred are routinely rejected by courts.  *Shakur*, 164 F.R.D. at 362; *Weinstein*, 2020 WL 5261243, at *6.  Plaintiff Rapp has for several years made his allegations publicly.  And, again, C.D. has presented no evidence of risk of retaliation by Mr. Fowler or anyone else if his true identity were used as required.  This factor weighs strongly towards rejecting C.D.'s request for leave to use a pseudonym.

### 8.    Whether There Is Any Atypically Weak Public Interest In Knowing Identities Because Of A Purely Legal Nature Of An Action (Factor 9)

Under this factor, the public interest in the disclosure of the litigants' names may be diminished if the issues are purely legal in nature.  *Townes*, 2020 WL 2395159, at *6.  But where the action involves not abstract questions of law but particular incidents or actions, the public's interest in open proceedings "serve the judicial interest in accurate fact-finding and fair adjudication."  *Id*., quoting *North Jersey Media Group, Inc. v. Doe Nos. 1-5*, N. 12-CV-6152, 2012 WL 5899331, at *8 (S.D.N.Y. No. 26, 2012).  And the public's interest in the factual claims of sexual assault cases "is very high."  *Skyline Auto., Inc*., 375 F.Supp.3d at 408.

Because the allegations here are not abstract legal questions but specific factual allegations about a certain alleged incidents, this factor weighs strongly against anonymity.

### 9.    Whether Alternative Means Exist To Protect Any Confidential Information (Factor 10)

Anonymity is not warranted where there are other mechanisms to protect any confidential information that may be disclosed during discovery or as part of the case, such as "redaction of

documents and/or sealing, protective orders, and confidentiality agreement." *Townes*, 2020 WL 2395159, at *6.  Here, Mr. Fowler is willing to enter into a stipulated confidentiality protective order under which each party can designate as "confidential" during pretrial proceedings any materials viewed as highly sensitive.  Such a protective order will adequately protect any legitimate privacy interest C.D. or any other party may have in documents or information exchanged in this case, such as private financial information or medical records.  But C.D. cannot conduct the entirety of these proceedings under the cloak of anonymity, with the resulting prejudice to the public interest and Mr. Fowler's ability to defend himself.  Because alternative means exist to protect any legitimate privacy interest, this factor weighs against anonymity.

### 10. The *Sealed Plaintiff* Factors Weigh Overwhelmingly Against Anonymity

An evaluation of the *Sealed Plaintiff* factors demands C.D. comply with the same rules and procedures applicable to all litigants in this forum.  He has failed to substantiate his generalized claims of psychological harm with evidence that he would suffer severe mental harm from his name's disclosure that outweighs the public's interest, and overcomes prejudice and unfairness to Mr. Fowler.  And he is a 50+ year old adult who already has disclosed his identity to the media and given an extensive and probing interview on his allegations and personal life.  His maintenance of a pseudonym would run counter to the well-established principle that the requirements of Federal Rule of Civil Procedure 10 cannot be cast aside lightly and hinder Mr. Fowler's ability to receive a fair trial.  The Motion should be denied, and the Court should order Plaintiffs to file an amended complaint disclosing C.D.'s true identity.[4]

---

[4]   Because the time to amend as of right has passed, and the deadline to bring any motion for leave to amend set by the Court's scheduling order also has passed, the amended complaint using C.D.'s real name should include no other changes to the allegations.

**C.**   **THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO DELAY RULING ON THE MOTION UNTIL AFTER ANY RENEWED MOTION TO REMAND PLAINTIFFS MAY BRING**

To further delay the required disclosure of his true identity, C.D. asks the Court to defer ruling on the Motion until such time as he may bring a renewed motion to remand this case to New York state court.  Besides the Court's having already denied Plaintiffs' Motion to Remand (ECF No. 17), and Plaintiffs' having no legitimate grounds to renew that jurisdictional challenge, such indefinite delay will only exacerbate the prejudice to Mr. Fowler, who will continue to be inhibited in his investigation and discovery of the claims during the interim.  Nor has C.D. provided any authority or justification for not complying with the rules of this Court simply because he may later bring another meritless jurisdictional challenge.

Finally, C.D.'s characterization of the ease with which New York state courts allegedly permit a plaintiff suing under the Child Victims Act to remain anonymous is vastly overstated.  In *Doe v. MacFarland*, 66 Misc.3d 604 (2019), the court emphasized that a court should not "*pro forma* approve an anonymous caption, but should exercise its discretion sparingly and then, only when unusual circumstances necessitate it."  *Id*. at 485 (internal quotations omitted).  That court further noted, contrary to C.D.'s suggestion, there is no presumption that a plaintiff be afforded the protection of anonymity for a claim under the Child Victims Act, and that courts instead should employ factors like those in *Sealed Plaintiff* to evaluate such requests.  *Id*. at 490-493.

While C.D. may desire a return to state court, his case appropriately has been removed to and is proceeding in this Court.  Allowing C.D. to proceed anonymously violates the well-established rules of this forum.  Finally, there is no reason the Court should defer entering an order denying the Motion and requiring C.D. to comply with the rules.

## **CONCLUSION**

Mr. Fowler respectfully requests that the Court deny the Motion, require C.D. to comply with Federal Rule of Civil Procedure 10, and order Plaintiffs to file an amended complaint disclosing C.D's true name.


Dated: February 4, 2021
     Irvine, California

Respectfully submitted,

*/s/ Chase A. Scolnick*
Chase A. Scolnick
Keller/Anderle LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Tel.: (949) 476-8700
Fax: (949) 476-0900
E-mail: cscolnick@kelleranderle.com

Jennifer L. Keller (*pro hac vice*
application pending)
Keller/Anderle LLP
18300 Von Karman Ave., Suite 930
Irvine, California 92612
Tel.: (949) 476-8700
Fax: (949) 476-0900
E-mail: jkeller@kelleranderle.com

Michael Tremonte
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
E-mail: mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2, I, Chase A. Scolnick, hereby certify that on February 4, 2021 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Chase A. Scolnick*
Chase A. Scolnick
