L2NPRAPO

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ANTHONY RAPP AND C.D.,

4                    Plaintiffs,

5              v.                         20 CV 9586 (LAK)
                                          Remote Oral Argument
6    KEVIN SPACEY FOWLER,

7                    Defendant.

8    ------------------------------x
                                          New York, N.Y.
9                                         February 23, 2021
                                          2:02 p.m.
10
     Before:
11
                        HON. LEWIS A. KAPLAN,
12
                                          District Judge
13
                      APPEARANCES VIA TELEPHONE
14
     GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM, HERSHENHORN, STEIGMAN
15        Attorneys for Plaintiffs
     BY:  RICHARD M. STEIGMAN
16        RACHEL LEVIN JACOBS

17   KELLER, ANDERLE, LLP
          Attorneys for Defendant
18   BY:  CHASE SCOLNICK
          JENNIFER KELLER
19             AND
     SHER TREMONTE, LLP
20   BY:  MICHAEL TREMONTE

21

22

23

24

25

L2NPRAPO

 1              (The Court and all parties appearing telephonically)

 2              (Case called)

 3              THE DEPUTY CLERK:  Counsel for plaintiffs, are you

 4     ready?

 5              MR. STEIGMAN:  I am.  Thank you.

 6              Good afternoon, your Honor.

 7              THE DEPUTY CLERK:  Counsel for defendant, are you

 8     ready?

 9              MR. SCOLNICK:  We are ready.  Good afternoon, your

10     Honor.

11              THE COURT:  Good afternoon.  I think this technically

12     is your application, Mr. Scolnick; is that right?

13              MR. SCOLNICK:  That's correct.

14              THE COURT:  And we, of course, are going to get into

15     the other motion also, but let's go ahead.

16              MR. SCOLNICK:  Yes, your Honor.  In plaintiff's reply

17     to the motion in limine, they submitted what we believe to be

18     an inappropriate piece of evidence, the declaration of

19     Dr. Block.  We believe that it should be stricken from the

20     record because it's untimely filed.  Rule 6 requires that

21     supporting evidence and declarations be filed with the initial

22     motion.  This wasn't.  It was filed for the first time in the

23     reply.  We believe there's no basis for it to be filed for the

24     first time in the reply.  It's something that should have been

25     available at the time the motion was filed.

L2NPRAPO

1          THE COURT:  How are you prejudiced?

2          MR. SCOLNICK:  How are we prejudiced?  Well, a couple

3     of reasons, your Honor.  One, we weren't able to address it in

4     our opposition, and it appears that -- it appears that it

5     suffers from the same problems as the initial declaration of

6     Mr. Bonavita.  So really, there are more questions than

7     answers.  Had we been able to flush this out and address it in

8     our opposition, then presumably plaintiffs would have been able

9     to, or should have been required to, provide additional

10    information in their reply and they still haven't done so yet,

11    your Honor.

12          This, objectively, the declaration of Dr. Block is

13    unreliable.  It appears that there's no information regarding

14    the context of the evaluation.  There's no information

15    regarding when the evaluation was conducted.  It is entirely

16    conclusionary.  It doesn't really address the issues that it

17    should.  It appears, based on our limited research, that

18    Dr. Block is not a treating physician.  Although, they did not

19    disclose it in the declaration or in their papers, it appears

20    that Dr. Block is a retained, forensic psychiatrist, who is

21    providing an expert opinion.  Although, that was not disclosed.

22          Further, it appears, just looking at the text of the

23    exhibit, that it's deliberately vague.  And what I mean by

24    that, your Honor, again, is that there's no information

25    regarding when the visits happened, what they addressed, what

L2NPRAPO

1    the discussions were, the context of the those and his

2    experience with CD.

3            And in addition, even if the Court does consider it,

4    it should be given little weight because, by its own admission,

5    Dr. Block's examination was limited to a handful of hours, and

6    there's no mention of the Vulture article.  CD's participation

7    in the Vulture article seems to directly undermine many of the

8    conclusions in his evaluation, saying that CD would be somehow

9    harmed if he is named by the press, or if his name is

10   disclosed.

11           While, obviously, as we know, CD deliberately sought

12   out the press, and he interviewed with Vulture; so the absence

13   of that information is telling and speaks volumes, your Honor.

14   It means one of two things, either CD and his attorney did not

15   tell Dr. Block that he deliberately sought out the press and

16   chose to make his allegations public and chose to provide the

17   press with many details regarding his own personal life,

18   including his allegations, including other allegations of his

19   sexual activity, and including additional people that Vulture

20   can go out and verify the information with; or that doctor was

21   told not to include that in his report.

22           Either way, it should undermine the credibility of the

23   declaration.  And in addition, there's really nothing in the

24   declaration that goes to the doctor's reasoning or the basis

25   for his conclusionary statements.  There's nothing in the

L2NPRAPO

1    declaration that would differentiate or distinguish any of the

2    alleged impact the doctor believes the disclosure would have

3    versus the alleged problem that would go along with

4    participating in a case of this type, including being deposed,

5    including going to trial, including going through discovery.

6         All of these things are necessary in the case, and my

7    understanding is that, based on my conversations with

8    plaintiffs' counsel, they're not going to seek to have CD's

9    name -- CD remain anonymous throughout the trial.  So that

10   means what we're dealing with here is a question of not when

11   the name is disclosed -- if the name will be disclosed,

12   whether, but when.

13        So given all of those factors, your Honor, given

14   what's missing from the declaration itself, given how the

15   declaration is suspect, and more to the heart of the motion,

16   given that it's untimely filed, we don't believe the

17   declaration should be considered.  It should be stricken, and

18   if it is considered, we believe it should be given very little

19   weight.

20        THE COURT:  Okay.  Thank you.

21        Now, Mr. Steigman, is the last thing that Mr. Skolnik

22   said accurate, that is to say, that you do not expect or intend

23   to have the identity of CD remain confidential throughout the

24   proceedings in this court?

25        MR. STEIGMAN:  It is not, your Honor.  It is not

L2NPRAPO

1    and --

2                (Pause)

3                MR. STEIGMAN:  I have the volume turned up to a

4    hundred.  So I apologize to the Court.  I conducted a five-hour

5    deposition yesterday and we were okay.  So I'm not sure why

6    things are not working today, but can the Court hear me at all

7    now?

8                THE COURT:  Well, I'm hearing you right this minute.

9                MR. STEIGMAN:  All right.  I'm going to keep my voice

10   up as best I can.  The court reporter and your Honor, please

11   tell me if you can't hear anything.  And again, I apologize.

12               But, no, what Mr. Scolnick said does not, in fact,

13   comport with my understanding.  We do believe that his identity

14   should be kept confidential throughout the entire proceeding.

15   And, in fact, you know, I'm old enough to remember when, for

16   example, the William Kennedy Smith rape trial was televised on

17   national television, and the victim in that case testified on

18   television and her identity -- her appearance, were kept

19   confidential at that point by the Court and the media.

20               So as we move forward, if the Court would grant our

21   application, the Court can always revisit the circumstances of

22   the confidentiality.  But, no, it is not plaintiff's intention

23   that that confidentiality ever be lifted.

24               And, in fact, what Mr. Scolnick says really does, I

25   think, when the Court were to think of it that way, it really

L2NPRAPO

1   does suggest at this point all of the factors really weigh in

2   favor of protecting this person, who has come forward to claim,

3   as this Court knows, that he was a victim of this man as a

4   minor.  I can certainly understand if this case goes to trial,

5   and you will hear his testimony, and if you said to yourself,

6   you know, this is all phony, I don't think this ever happened,

7   he's not really victimized, this is a very popular defendant,

8   and the world has a right to know the kind of person he is to

9   have come forward and done a thing like this, and even after a

10  verdict, to reveal his identity.  Under those circumstances, I

11  can see that being a very appropriate thing.

12          On the other hand, for the Court to hear this case and

13  hear about statutory rape that became repressible and violent

14  and to hear how it has affected this man's life for many years,

15  and continues to effect his life, and says perhaps until we

16  walk in his shoes, we can't totally understand how it affects

17  him emotionally.  And the Court would (indiscernible) -- in

18  fact, the Court might well be persuaded that just because this

19  man came forward and syndicated his rights as a victim, that

20  doesn't mean the whole world has to know his identity.

21          So I do not agree with Mr. Scolnick's point that, at

22  some point, his name should be out there.

23          THE COURT:  Well, Mr. Steigman, you know, you've given

24  me precious little to work with here.  This declaration of

25  Dr. Block is subject to all of the questions that Mr. Scolnick

L2NPRAPO

1    adverted to, both orally and in his letter.  And, although to

2    perhaps a lesser degree, the same could be said for

3    Mr. Bonavita's declaration.

4         If either of these people were to be proffered as a

5    trial witness, there would have to be a lot more disclosure

6    about who they are, what they do, the basis for reaching any

7    conclusions, whether they've testified in other cases in the

8    past, their compensation.  You know what it is, just as well as

9    I.

10        And you are asking me to make a decision, which is not

11   as momentous as liability or no liability, but it is pretty

12   important in a nation that values public trials the way ours

13   does and where the veil of secrecy you want to draw over this

14   is potentially handicapping to the defense, which I think it

15   is.  It's not certain, but it surely is potentially.

16        In addition, you have what to me is a unique

17   circumstance, and the unique circumstance is that this person

18   did not just choose to file a lawsuit about what he claims

19   happens, which is his right -- and if it happened, it was

20   awful, no doubt about that -- he decided to go to the press

21   with it in advance and long before he filed the lawsuit, years

22   before he filed the lawsuit.

23        And the people he talked to at the magazine, they know

24   who he is.  They, obviously, disclosed who he is to other

25   people to whom they spoke to try to verify, to the extent they

L2NPRAPO

1    could, his story, and that's hard to reconcile with the

2    opinions I'm being asked to take on very little disclosure.

3            MR. STEIGMAN:  If I could, your Honor, let me take the

4    last part first.  I understand that a Court typically would

5    find it inconsequential to say that a plaintiff went to the

6    press and is now seeking anonymity.  This is a very specific

7    unusual circumstance.  And when my client went forward and gave

8    that interview, at that time, he (indiscernible) --

9            THE COURT:  We're losing you again.

10           MR. STEIGMAN:  Okay.  I apologize.  The only thing I

11   can do is call in, if that would be better.

12           THE COURT:  Well, you were doing all right there for a

13   bit, but as you move away from the microphone, it gets worse.

14           MR. STEIGMAN:  I'll stay on top of it.  Again, I

15   apologize.  Please let me know -- if I can't wait --

16           THE COURT:  Nobody is faulting you.  This is tough for

17   everybody.

18           MR. STEIGMAN:  I can't wait until we're all in the

19   same room.

20           But let me make this point, your Honor.  I think, for

21   the most part, I would think a Court would be most concerned

22   about parties going to the press when they're trying to

23   influence the outcome of a case, when they try to influence

24   potential jurors.  That seems, to me, the biggest harm in

25   parties talking to the press.

L2NPRAPO

1          This is such a unique circumstance because at the time

2     he gave that interview, this case was time barred.  He wasn't

3     doing it to settle litigation or to influence jurors.  The

4     statute of limitations, at that point, had been gone for many

5     years and --

6          THE COURT:  That really isn't the point.  The point is

7     that if disclosure of his identity would cause him the grievous

8     harms you say -- and I don't know, maybe it would, maybe it

9     wouldn't -- how do you reconcile that with his voluntarily

10     having gone to the press?

11          MR. STEIGMAN:  But they did not reveal his name.

12          THE COURT:  He had no assurance going in that that

13     would be the outcome of his going to the press.

14          MR. STEIGMAN:  Well, he was given that assurance, and

15     they kept their word.  His name was not publicly revealed.

16          THE COURT:  Yes, but in the article they wrote, they

17     said they spoke with people close to him, who said that he had

18     spoken about the relationship with Spacey as far back as the

19     1990s.  Now, they couldn't have done that without saying to

20     these people, allegedly close to him, who he was.

21          MR. STEIGMAN:  That's true.  But, your Honor, I don't

22     think it follows that the people close to him, who know this

23     happened, equates to, well, therefore, it's not so important to

24     him if the entire world hears about it.  I just don't think

25     that follows.

L2NPRAPO

```
1           THE COURT:  But he took that chance by talking.

2           MR. STEIGMAN:  It hasn't happened.  There hasn't been

3   a public revelation.  Now, the statute of limitations changed,

4   and he came forward to make this accusation, to say what

5   happened to him.  You know, your Honor, all I can tell you, as

6   an officer of the court, most of the time I'm (indiscernible)

7   -- I'm normally arguing something that has a litigation

8   advantage.

9           I am telling you that is not our purpose here.  I do

10  not believe that this actually hamstrings the defendant's

11  ability to defend the case.  They have the identity.  They can

12  perform appropriate investigations and share it with anyone

13  with whom they need to tell to properly defend the allegations

14  in this case.

15          And I can tell you, this means everything to this man.

16  There is a shame that goes to the -- I'm not going to get --

17  they can defend it.  They can say it didn't happen, but for the

18  purposes of this motion, I would ask the Court to accept that

19  these are our claims, that he was raped as a teenager, that

20  there is a self-loathing and shame that goes with that that.

21          As I said, perhaps unless you've experienced it, you

22  can't quite walk in that person's shoes, and I know what it

23  means to him.  I know what it means to him.  And all we're

24  saying, at this stage of the litigation, is allow him to

25  proceed with these claims without the world knowing his
```

L2NPRAPO

1   identity, not so we can get an edge in the case but because of

2   what effect it will have on him and how much it means.

3         You say there's precious little to work with.  We

4   provided the declaration of a treater, who has seen him over

5   the years, and declaration of the plaintiff himself, who talked

6   about how devastating this public revelation would be.

7         When the defendant raised the issue that this licensed

8   social worker who, under Pennsylvania law, is permitted to

9   provide psychotherapy and form such opinions, and we believe a

10  perfectly adequate declaration, and when defendant and the

11  Court as well raised the issue as well, this is not a medical

12  doctor, we did, in reply, in response to that issue, raise in

13  opposition, submit an affidavit from a retained psychiatrist.

14        This is a retained expert, Dr. Block.  And by the way,

15  expert disclosures are not even required yet.  I believe

16  they're due on Friday, but we submitted the affidavit to say he

17  concurs with the opinion.  So I really do believe the Court has

18  an adequate record.  I do think the Court can take note of the

19  precedent and note of what we're talking about here.  It just

20  doesn't seem to me very far flung to suggest that the world

21  knowing his identity would have an impact on him.

22        I do not believe that with the defendant having his

23  name and their ability to use it to question people or to

24  gather information, they really are prejudiced.  They haven't

25  specifically suggested any.  The Court can always revisit it,

L2NPRAPO

1  and I tell you, this is so important.  Not that it's going to

2  help us win, but it's going to do damage to a human being if

3  the Court decides that the public interest in knowing who this

4  is is more important than his confidentiality.

5          THE COURT:  The expert disclosure you're going to make

6  this week, will that include opinions on this subject and from

7  both witnesses?

8          MR. STEIGMAN:  I'd rather not answer that, Judge.  I

9  don't know -- I don't know the answer to that.  If the Court

10  would find that instructive with respect to this motion, then

11  my answer is, yes, we certainly can do that, but I hadn't

12  discussed or thought about that.

13          THE COURT:  All right.  Mr. Scolnick?

14          MR. SCOLNICK:  Thank you, your Honor.  I'd like to

15  make a few points in response, and first, it's just to

16  underscore the importance and significance of CD going forward

17  and making the choice to speak to the press, making the choice

18  to reveal his name to the press, making the choice to have the

19  press go out and speak with people in his life, a number of

20  people.

21          And he took that chance, and he took the chance that

22  his name could be disclosed because he wanted to go public,

23  because he wanted to avail himself of the press.  And he

24  shouldn't be able to use the press as a sword and a shield to

25  make these very damaging allegations behind the cloak of

L2NPRAPO

1   anonymity so that we can't adequately respond or defend

2   ourselves.

3           Now, to address the second point, which is there is no

4   litigation advantage, I strongly disagree.  I couldn't disagree

5   any more, your Honor.  The case law itself demonstrates that

6   there is an overwhelming prejudice to someone in Mr. Fowler's

7   position, to someone who is trying to defend themselves against

8   an anonymous accuser.

9           While it's true that we have CD's information, the

10  point is any other potential witnesses, any other potential

11  witnesses who could aid our defense, who could contradict CD's

12  allegations that we believe and we are confident are not

13  accurate and are false, we don't have access to those people.

14  We don't have access to those people because they don't know

15  about the case, because CD is continuing to plead anonymously,

16  to hide his identity, while he continues to make these hurtful,

17  damaging and false allegations against Mr. Fowler.

18          And, your Honor, we don't need to look past the

19  Southern District case law that says, and I quote, concealing

20  the name of a party can deprive a litigant and the Court of a

21  chance that a yet-unknown witness that upon learning the facts

22  about the case, knows to step forward with valuable information

23  about the events or the credibility of witnesses.  And that's

24  not --

25          THE COURT:  What's the case you're quoting?

L2NPRAPO

1          MR. SCOLNICK:  *Doe v. Del Rio*, which is 241 F.R.D.

2     154, 159, that's Southern District of New York 2006.  But

3     there's also another quote from *Richmond Newspapers, Inc. v.*

4     *Virginia*, which is a Supreme Court case, 448 U.S. 555 at 596,

5     and that was Justice Brennan stating, and I quote:  Public

6     trials come to the attention of key witnesses unknown to the

7     parties.

8          And there are more cases, if the Court would like, but

9     the point is is that this is not speculative, your Honor.  This

10     is real.  CD made a choice to bring this case.  He made a

11     choice to go to the press.  He made a choice to file a public

12     case.  We have a due process right and a need to defend

13     ourselves.  Mr. Fowler has that right, and he cannot do that

14     adequately, completely consistent with due process while CD

15     maintains anonymity and hides from potential witnesses.  And,

16     your Honor, the cases I cited, by the way, are in our

17     opposition, along with others.

18          THE COURT:  You're not suggesting that there's a due

19     process right to the identity irrespective of other

20     considerations, are you?  That is to say, to have the identity

21     public as opposed to available to you?

22          MR. SCOLNICK:  I think it does infringe on our due

23     process rights, your Honor, to not be able to adequately defend

24     ourselves, to have someone plead anonymously so we don't have

25     access, full access, to the available evidence and witnesses,

L2NPRAPO

1    the witnesses who would be available if this were public.  And

2    I can --

3                THE COURT:  Isn't it very well established that, on a

4    proper showing, the pleadings need not contain the name of a

5    party?

6                MR. SCOLNICK:  I believe there is case law to that

7    effect, your Honor, but again, it is the exception.  It's the

8    exception that the party who is trying to proceed anonymously

9    must prove, and there are the Doe factors that are in the

10   Second Circuit.  And we've analyzed those Doe factors, and

11   clearly, clearly CD has not met his burden with respect to any

12   of them.  And I think we've provided the case law and the

13   argument.  And I'd be happy to recite some of that today, but

14   again, it is the exception not the rule for a variety of

15   reasons.

16               The public's need to access the information, that's a

17   very important right.  The First Amendment right of the press

18   and the people and also, your Honor, more importantly, the

19   right to Mr. Fowler, which is what we've been discussing so

20   far, all of those rights are infringed.  All of those interests

21   are undermined when a litigant is permitted to proceed

22   anonymously.

23               And again, we've addressed those factors.  I'd be

24   happy to address them all again, the anonymity factors, your

25   Honor.  But again, it is plaintiff's burden to prove each and

L2NPRAPO

1   every one of those, and if he hasn't provided sufficient

2   evidence, which he hasn't, then those factors must weigh

3   against anonymity.

4           And, your Honor, what we have here is -- they have

5   several ways of making the allegations, and what I hear from

6   the plaintiffs is that they're beating the drum again and

7   again, assuming that this abuse happened, and then asking you,

8   based on that assumption, to adopt the rest of their argument.

9   But again, that issue is in dispute.  We strongly dispute the

10  allegations, and we should have the ability to defend

11  ourselves.  And again, that is necessary.  And as I said

12  before, your Honor, I'd be happy to address the law.  I'm

13  prepared to do so today, the defense factors.

14          THE COURT:  That's not necessary.

15          Okay.  Any closing words, Mr. Steigman?

16          MR. STEIGMAN:  Thank you, Judge.  You know, there is a

17  case, *Doe v. Colgate* in which the plaintiff did go to the

18  press, and the Court did find that disclosure of his name was

19  still inappropriate.

20          And, of course, Judge, I'm not here asking for summary

21  judgment, and that this Court should decide today that the

22  plaintiff's allegations are true and the defendant has no right

23  to defend them.  He does, and that, I assume, may well be a

24  question of fact that gets determined at trial.  But when it

25  comes to anonymity, I certainly think that the Court should

18

L2NPRAPO

mostly heed what the plaintiff is saying (indiscernible) and

what both the treating social worker and the psychiatrist are

saying (indiscernible) the effect has had on him and what the

public revelation (indiscernible) have on him --

THE COURT:  Repeat the last part.

MR. STEIGMAN:  When you talk about this issue of

prejudice, these are things that happened behind closed doors

30 years ago.  They know the context of when they met, and the

classes that the plaintiff took, and all of the things and all

of the people that they need to talk to who might help them, if

they think they can find someone to provide relevant

information.

And the idea that, well, we need his name so we can

put it out there because now people will come out of the

woodwork, 30 years later, to help Kevin Spacey and provide

information against the plaintiff is farfetched.  It does not

outweigh, in any way, the plaintiff's need for confidentiality

here.

THE COURT:  Yes, but the whole premise here is there's

a need for confidentiality, and that's what I'm being asking to

decide, and you've given me not very much to work with, I must

say.  So I'm going to wait until you make your expert

disclosures.  You disclose what you want to disclose.

It would seem to me that if we were dealing with the

admissibility of the testimony of these witnesses at trial, it

L2NPRAPO

 1    would either be everything rule 26 requires, or possibly

 2    somewhat less but not much less, I'll let you be the judge.

 3    But I'm not going to simply assume that because you hired a

 4    psychiatrist, who has never treated this fellow, who said, oh,

 5    yes, I agree with the social worker, that that would even be

 6    admissible at a trial.  And I question whether I should rely on

 7    it here.

 8            I know nothing about the man, nothing, or the

 9    circumstances in which any of this happened, or the basis for

10    his opinion.  And as to the treating, well, that's a slightly

11    different situation, but it is pretty conclusionary.  And it

12    doesn't come to grips with the issue that is pre-eminent, in my

13    mind, which is how you can reconcile this position with what he

14    did in 2017, going to the press with this story at a time where

15    there was no litigation advantage.  I assume you're right about

16    that.  I haven't independently verified it, but I assume that.

17            That's a hard question for me.  So I'll wait and see

18    what you decide to say about it, and then we'll see where we

19    are.  But I appreciate the presentations.  I regard this as,

20    obviously, a very serious issue.  The misconduct that is

21    charged here is extremely serious, if it occurred, and if it

22    didn't, it's equally serious in a different way.  It's very

23    important that I not simply make an assumption here, at least

24    it is to me.

25            MR. SCOLNICK:  And, your Honor, if I can briefly

L2NPRAPO

1   respond?  I think that there is sufficient evidence in the

2   record for you to make your decision.  We have the information

3   that was submitted in connection with the motion, which we

4   believe is clearly insufficient.  We have the information that

5   was submitted in connection with the reply, which doesn't do

6   any more.

7           We believe that this has gone on quite a bit, and that

8   we've already been prejudiced by the inability to fully access

9   discovery and these witnesses.  And I note also, your Honor,

10  for the record, that there's no indication that CD has raised

11  this issue with any treater before the motion was filed.  And

12  there's really nothing in the declaration of Mr. Bonavita or of

13  Dr. Block that says any different.

14          And I understand that the Court is being very careful

15  and giving them every opportunity to meet the burden, but the

16  time has passed.  The motion is filed.  The reply is filed.

17          And, your Honor, just one more piece of information

18  that I can say that we've learned since the motions have been

19  filed, and this is through the deposition of Mr. Rapp, who is

20  the other plaintiff.  It appears that not only has CD gone out

21  publicly and made these public statements, but he's also

22  reached out to at least one other potential plaintiff

23  indirectly, because that was Mr. Rapp, and pushed him to file

24  this case.

25          So again, this is someone who is taking full advantage

L2NPRAPO

1  of his temporary anonymity, we hope temporary, and making these

2  harmful allegations and finding others to do the same.  This is

3  not consistent with someone who is going to be harmed by these

4  allegations going public, especially in light of what's going

5  to come in discovery, including the deposition, including at

6  trial.

7          And it's not reasonably likely, your Honor, that CD

8  would be able to maintain his anonymity through trial.  It just

9  doesn't happen.  I understand that opposing counsel raised what

10  I believe to be a criminal case, which was televised many years

11  ago, but unlike that case, again, CD has made the choice to

12  file this case and do so publicly and go to the press.

13          THE COURT:  Mr. Scolnick, you said he reached out to

14  Mr. Rapp.

15          MR. SCOLNICK:  Yes.

16          THE COURT:  Tell me about the circumstances, please.

17          MR. SCOLNICK:  Your Honor, I don't have the quote from

18  the text, but my recollection is that there was another actor,

19  and CD asked the actor to reach out to Mr. Rapp to see if he

20  was interested in joining him in litigation and filing a case,

21  a case for money.  That man was -- this was, I believe, was

22  earlier this year -- I'm sorry, earlier 2020 or late 2019.

23          THE COURT:  Before or after this case was filed?

24          MR. SCOLNICK:  Before the case was filed.  So before

25  the case -- I'm sorry.

L2NPRAPO

1          THE COURT:  And so this other actor knows who he is,

2     too?

3          MR. SCOLNICK:  Yes, your Honor.  So I think we're

4     finding there's a growing number of people who are aware of

5     this.  It's not that -- and remember where we started, on page

6     15 of plaintiff's motion.  They claim that the press was

7     unaware of his identity.  Now we know that not to be true, and

8     every time we keep digging, there are more and more people who

9     are aware of this man's identity.  Not only, as the Court

10     correctly noted, not only just the author of the article,

11     Mr. Jung, but also all the other witnesses.

12          And now we're finding out, through the deposition,

13     that there are even more witnesses from Mr. Rapp -- Mr. Rapp's

14     deposition, there are even more witnesses who are aware of CD's

15     allegations.  And CD is affirmatively reaching out, indirectly,

16     to find other plaintiffs.

17          And again, it's our argument, your Honor, that this

18     has gone on long enough.  And I assume that there will be more

19     people when we keep poking around.  But the bottom line is,

20     we're on a very short timeline here, and we need to prepare for

21     trial.  We need to find these witnesses.

22          THE COURT:  Is there a deposition transcript that

23     supports this reaching out to Mr. Rapp thing that you just

24     dropped into this?

25          MR. SCOLNICK:  I think we got the transcript maybe

L2NPRAPO

1    Friday night or Saturday, your Honor.

2           MR. STEIGMAN:  Jeff, my understanding is the other

3    actor is Mr. Rapp, the co-plaintiff, who we represent.

4           MR. SCOLNICK:  Just to clarify, Mr. Rapp is the

5    co-plaintiff, but the other person who CD reached out to was a

6    third party, not Mr. Rapp directly.  So that means there's, in

7    addition to Mr. Rapp, there's at least one other person who is

8    aware of this.

9           THE COURT:  You better file the relevant piece of the

10    deposition transcript.

11           MR. SCOLNICK:  Yes, your Honor.

12           THE COURT:  Any objection to that, Mr. Steigman?

13           MR. STEIGMAN:  No, your Honor.  It's worth noting, by

14    the way, Mr. -- when I said this was no litigation advantage,

15    Mr. Rapp is not proceeding anonymously, nor have we ever sought

16    that.  He has his own celebrity.  He has made his peace with

17    making these allegations public to him, and we haven't asked

18    the Court that.  So again, I just -- it's not a game.  You

19    know, it's something very important to our client.

20           THE COURT:  No, look, Mr. Steigman, I don't for a

21    second question the motives of counsel here, not for one

22    second.  You have a job to do, and I respect it.  And you're

23    doing what you feel your client needs and/or wants, and I'm

24    trying to get to the bottom of the question of needs.

25           MR. STEIGMAN:  Yes, your Honor.

L2NPRAPO

1          THE COURT:  Okay.

2          MR. SCOLNICK:  Your Honor, we will file the

3    supplemental evidence today.

4          THE COURT:  Okay.  Fine.  Anything else before we sign

5    off?

6          MR. STEIGMAN:  Not from me.  Thank you, your Honor.

7    Thank you for your time.

8          MR. SCOLNICK:  No, your Honor.  Thank you.

9          THE COURT:  Okay.  Thank you, counsel.  I appreciate

10   it.

11          (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25