UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANTHONY RAPP and C.D.,

                    Plaintiffs,

          -against-                                              20-cv-9586 (LAK)

KEVIN SPACEY FOWLER a/k/a KEVIN
SPACEY,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

              Appearances:

                              Peter J. Saghir
                              GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
                              HERSHENHORN, STEIGMAN & MACKAUF
                              *Attorneys for Plaintiffs*

                              Chase Scolnick
                              KELLER/ANDERLE LLP
                              *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

              Plaintiffs C.D. and Anthony Rapp claim that defendant Kevin Spacey Fowler, better

known as Kevin Spacey, sexually assaulted them over 35 years ago.  Their claims regard separate

events that allegedly occurred when Spacey was in his twenties and plaintiffs were teenagers.  The

primary question now before the Court is whether the plaintiff currently known by the pseudonym

"C.D." should be permitted to litigate the case without publicly identifying himself.  For the

following reasons, his motion to proceed anonymously is denied.

2

*Facts*

I.      *The Allegations*

C.D. claims that he met Spacey in approximately 1981, when C.D. was a 12-year-old student in Spacey's acting class in Westchester County, New York.[1]   C.D. alleges that he ran into Spacey in New York City when C.D. was 14 and the two began a sexual relationship that involved C.D. "performing anal intercourse on [Spacey] and oral sex."[2]   After the relationship continued for some time, but while C.D. still was around 14 years old, C.D. claims that Spacey tried to penetrate him anally but that C.D. "resisted and said 'No' multiple times."[3]   C.D. allegedly "free[d] himself from [Spacey]" and fled.[4]

Rapp claims that he met Spacey in 1986, when Rapp was performing on Broadway.[5]   Some time that year, Spacey invited Rapp to a party at Spacey's home in Manhattan.[6]   Rapp alleges that, at the party, Spacey "grabbed . . . [Rapp's] . . . buttocks, lifted him onto a bed and laid on [his]

---

[1]      Compl. ¶ 31.

[2]      *Id.* ¶¶ 32-34.

[3]      *Id.* ¶ 35.

[4]      *Id.* ¶ 36.

[5]      *Id.* ¶ 4.

[6]      *Id.* ¶ 5.

body."[7]   Rapp allegedly "extricate[d] himself" and fled.[8]

## II.      *The* Vulture *Article*

The record as it relates to the events leading to this litigation is unusual.  Some of the key facts derive from an article posted on *a New York* magazine web site, *Vulture*, in November 2017.[9]  The *Vulture* article describes an interview with a "man" who "approached" the magazine and made allegations against Spacey that are virtually identical to C.D.'s allegations in the complaint.[10] Although the article does not disclose the man's name and states that he wishes to remain anonymous, the parties agree that the victim of the alleged assault described in the article was C.D. As both parties rely on the *Vulture* article – and neither contests the accuracy of its description of C.D.'s interview with the press – the Court assumes the article's accuracy for the purposes of this motion.

The genesis of the *Vulture* article was this.  In late 2017, after Rapp publicly accused Spacey of sexually assaulting him, C.D., "who was friendly with a member of the *New York* staff," "approached the magazine to talk about Spacey."[11]  Later, when *Vulture* reached out to "people close to" C.D. to verify his story, those individuals stated that C.D. had spoken to them "about his

---

[7]      *Id.* ¶ 7.

[8]      *Id.* ¶¶ 9-10.

[9]      *See* Scolnick Decl., Ex. 1 [Dkt. 43-2]  (Jung, E. Alex, "Man Comes Forward to Describe an Alleged Extended Sexual Relationship He Had at Age 14 with Kevin Spacey," *Vulture 3* (Nov. 2, 2017)).

[10]      *Id.*

[11]      *Id.*

4

relationship with Spacey as far back as the 1990s."[12]  Notably, though C.D. submitted a declaration under penalty of perjury in support of this motion in which he claimed fear of his name becoming known to the general public or on the internet, his declaration did not state that he had taken any concrete steps to ensure that those with whom he has discussed over the years his alleged experiences with Spacey would keep his name confidential.[13]  Nor did the declaration mention the *Vulture* article or C.D.'s role in precipitating it.[14]


III.    *The Litigation*

        In August 2019, the New York Legislature passed the Child Victims Act, which temporarily revived the limitations period for civil claims of child sexual abuse under New York law.[15]  By the start of 2020, two additional things had occurred.  First, C.D. had engaged his current counsel.[16]  Second, C.D. had approached Rapp – through a mutual friend – to see whether Rapp would be interested in bringing a civil suit against Spacey.[17]  The mutual friend provided Rapp with

---

[12]     *Id.* at 2.

[13]     Saghir Decl., Ex. D [Dkt. 31-5].

[14]     *Id.*

[15]     Press Release, Brad Hoylman, Senator, New York State Senate, Senate Majority Announces Opening Of The 'Lookback Window' For Child Sex Abuse Survivors (Aug. 14, 2019), https://www.nysenate.gov/newsroom/press-releases/brad-hoylman/senate-majority-announces-opening-lookback-window-child-sex.; *see also* C.P.L.R. § 214-g (2020); *Doe v. Indyke*, 457 F. Supp. 3d 278, 286 (S.D.N.Y. 2020); *Quinio v. Aala*, No. 19-cv-4686-PKC-SJB, 2020 WL 7381933, at *1 (E.D.N.Y. Dec. 14, 2020).

[16]     Scolnick Supp. Decl., Ex. 10 [Dkt. 52-1] at 7-9.

[17]     *Id.* at 2-3, 5-9.

5

C.D.'s real name and contact information.[18]  Shortly afterward, Rapp connected with both C.D. –

who informed Rapp about the New York Child Victims Act – and C.D.'s counsel.[19]

On September 9, 2020, C.D. and Rapp filed the complaint in this action against

Spacey in the Supreme Court of the State of New York, County of New York.  The complaint

alleges claims for assault, battery, and intentional infliction of emotional distress.  Plaintiffs applied

also for an order requiring Spacey to show cause why C.D. should not be granted leave to litigate

the case anonymously, and the state court granted interim relief pending litigation of the motion.[20]

Before Spacey was required to respond to the order to show cause, however, he removed the action

to this Court on the basis of alleged diversity of citizenship.[21]

At this Court's directive, plaintiffs provided Spacey with C.D.'s real name and other

identifying information on the condition that it be kept confidential until the parties reached a

mutually satisfactory agreement as to whether and to what extent C.D.'s identity would be kept from

the public as the action proceeded or, in the event no agreement were reached, until the Court

decided this motion.[22]  No agreement was reached.

C.D.'s motion is accompanied by a declaration from Neil Bonavita, a licensed

---

[18]

Scolnick Supp. Decl., Ex. 11 [Dkt. 52-2] at 1-2.

[19]

Dkt. 52-1 at 7-10

[20]

Saghir Decl., Ex. C [Dkt. 30-5].

[21]

*Id.*; Pl.'s Mot. for Leave to Proceed Anonymously [Dkt. 31-1] at 6.  This Court found removal proper but granted plaintiffs leave to file a new motion to remand upon the completion of jurisdictional discovery regarding Spacey's domicile.  Memorandum Endorsement Denying Pls.' Mot. for Remand [Dkt. 17].

[22]

Jan. 15, 2021 Letter from P. Saghir [Dkt. 26] at 2.

clinical social worker who has seen C.D. since 2015.[23]   C.D.'s reply papers include a declaration

from Dr. Seymour Block, a forensic psychiatrist who evaluated C.D. via Facetime –  after this

motion was filed – at C.D.'s counsel's request.[24]   Spacey moved to strike Dr. Block's declaration

on the ground that it had not been served with C.D.'s motion.[25]

The Court heard oral argument on both motions.   In response to assertions by

Spacey's counsel that C.D. used the mutual friend to reach out to Rapp and "push[] him to file this

case," the Court requested that Spacey file excerpts of Rapp's deposition transcript in which Rapp

discussed his initial contact with C.D.[26]   Once Spacey filed the deposition excerpts, plaintiffs'

counsel filed a supplemental declaration – purportedly in response to the deposition excerpts – that

attached a series of Instagram comments in which users harassed Rapp for going public with his

accusations against Spacey. [27]   Spacey moved to strike the supplemental declaration as filed

improperly.[28]  His counsel submitted evidence also that the overwhelming response to Rapp's filing

of this action against Spacey had been extremely favorable.[29]

---

[23] Saghir Decl., Ex. E [Dkt. 31-6].

[24] Saghir Decl., Ex. H [Dkt. 45-9]; Dr. Block Expert Report at 1.  Dr. Block "examined [C.D.] on four separate occasions for a total of four and 3/4 hours." *Id.* at ¶ 3.

[25] Feb. 12, 2021 Letter from C. Scolnick [Dkt.  46].

[26] Feb. 23, 2021 Oral Argument Tr. at 20-23.

[27] Saghir Supp. Decl., Ex. K [Dkt. 53-1].

[28] Feb. 25, 2021 Letter from C. Scolnick [Dkt. 54].

[29] Feb. 25, 2021 Letter from C. Scolnick, Ex. 12 [Dkt. 54-2].

Also at the Court's request, plaintiffs provided it with Dr. Block's expert disclosures. Spacey objected to Dr. Block's expert report on the grounds that it was untimely and substantively deficient.[30]

## Discussion

As a preliminary matter, the Court will consider all of the papers it has received for purposes of these motions without regard to whether all parts of them would be admissible on summary judgment or at trial. Accordingly, Spacey's motions to strike are denied and his objection to Dr. Block's expert report is overruled. The Court turns to the merits of C.D.'s motion.

Openness long has been a central tenet of our legal system. Federal court proceedings and records presumptively are public absent a showing of exceptional circumstances.[31] To this end, Rule 10(a) of the Federal Rules of Civil Procedure requires that "[e]very pleading . . . . contain a caption setting forth the . . . title of the action," which must "include the names of all the parties." "[T]hough seemingly pedestrian," Rule 10(a) "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."[32]

District courts have discretion to grant an exception to Rule 10(a) only where the litigant seeking to proceed anonymously has a substantial privacy interest that outweighs any prejudice to the opposing party and "the customary and constitutionally-embedded presumption of

---

[30]  Def.'s Objections to Pl. C.D.'s Submission of Dr. Seymour Block's Expert Report [Dkt. 55].

[31]  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008); *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

[32]  *Sealed Plaintiff*, 537 F.3d at 188-89.

openness in judicial proceedings."[33] In *Sealed Plaintiff v. Sealed Defendant*,[34] the Second Circuit identified a "non-exhaustive" list of ten factors that district courts should consider in balancing these interests:

(1) whether the litigation involves matters that are highly sensitive and of a personal nature,

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties,

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity,

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age,

(5) whether the suit is challenging the actions of the government or that of private parties,

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court,

(7) whether the plaintiff's identity has thus far been kept confidential,

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity,

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and

(10) whether there are any alternative mechanisms for protecting the

---

[33]

*Sealed Plaintiff*, 537 F.3d at 189 (quoting *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001)).

[34]

537 F.3d 185.

confidentiality of the plaintiff.[35]

This "factor-driven balancing inquiry" does not require a district court "to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion."[36]

At the outset, it bears mentioning that the digital age has adversely affected the privacy of litigants.[37] The days when court records of litigation largely escaped public notice as they languished in countless file rooms largely ended with the advent of electronic case files, the internet, search engines, and other aspects of the information age. And the loss of the earlier practical obscurity of court files no doubt is compounded when a litigant like C.D. brings a claim against someone in the public eye, especially if the substance of the claim makes it likely to attract significant media attention. But the threat of significant media attention – however exacerbated by the modern era – alone does not entitle a plaintiff to the exceptional remedy of anonymity under Rule 10.[38] Here, only one *Sealed Plaintiff* factor supports C.D.'s motion to proceed anonymously.

---

[35]

    *Id.* at 189-90.

[36]

    *Id.* at 189, 191 n.4.

[37]

    *See generally* Lewis A. Kaplan, *Litigation, Privacy and the Electronic Age,* 4 YALE SYMP. ON LAW AND SOC'Y 1 (2001); *see also Doe v. City of New York,* 201 F.R.D. 100, 101 (S.D.N.Y. 2001).

[38]

    "[C]laims of public humiliation and embarrassment" due to "significant media attention . . . . are not sufficient grounds for allowing a plaintiff in a civil suit to proceed anonymously." *Doe v. Shakur,* 164 F.R.D. 359, 361-62 (S.D.N.Y. 1996) (denying motion to proceed by pseudonym brought by woman who alleged that rapper Tupac Shakur assaulted her despite the media attention the case likely was to attract); *see also Doe v. Weinstein,* 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) (denying motion to proceed by pseudonym brought by woman who alleged that movie producer Harvey Weinstein assaulted her despite that Weinstein's "notoriety" was likely to cause significant media attention) .

Accordingly, C.D.'s privacy interest – despite the publicity that this case may generate – does not outweigh the prejudice to Spacey and the presumption of open judicial proceedings.

I.    *Factor 1: Whether the Case Involves Highly Sensitive and Personal Claims*

The first *Sealed Plaintiff* factor, which looks to whether the case involves claims that are "highly sensitive and of a personal nature,"[39] weighs in favor of allowing C.D. to proceed anonymously.  Allegations of sexual assault are "paradigmatic example[s]" of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym.[40]  Likewise, allegations of sexual abuse of minors typically weigh significantly in favor of a plaintiff's interest.[41]  Importantly, however, "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym."[42]

II.   *Factors 2, 3, and 7: Harm to C.D. or Others; Whether C.D.'s Identity Has Been Kept Confidential*

The second, third, and seventh *Sealed Plaintiff* factors, which in this case appropriately may be considered together, do not favor C.D.'s use of a pseudonym.  The second and third factors broadly require courts to take into account whether disclosure of the plaintiff's name

---

[39]   *Sealed Plaintiff*, 537 F.3d at 190 (quotation marks omitted).

[40]   *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *see also Weinstein*, 2020 WL 5261243, at *3 (citing *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405-06 (S.D.N.Y. 2019); *Doe v. Townes*, No. 19-cv-8034 (ALC) (OTW), 2020 WL 2395159, at *3 (S.D.N.Y. May 12, 2020)).

[41]   *Doe on behalf of Doe No. 1 v. Nygard*, No. 20-cv-6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020); *Kolko*, 242 F.R.D. at 195.

[42]   *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 405-06 (citing *Doe v. Shakur*, 164 F.R.D. 359, 361-62 (S.D.N.Y. 1996) (collecting cases)).

would result in harm, including "retaliatory physical or mental harm" to the plaintiff or, "even more critically, to innocent non-parties."[43]  The seventh factor asks whether the plaintiff's identity thus far has been kept confidential.[44]

The harm that C.D. claims would result from the public disclosure of his name would be the "re-trigger[ing]" of his post-traumatic stress disorder ("PTSD"), which he allegedly developed as a consequence of the assault.[45]  With regard to "allegations of mental harm," "plaintiffs must base their allegations . . . on more than just mere speculation."[46]  When a plaintiff claims that disclosing his or her name would "retrigger" symptoms of PTSD, courts have required a "link between public disclosure of plaintiff's name and the described psychological risk" otherwise "[t]here is simply no way to conclude that granting . . . permission to proceed under [a] pseudonym[] will prevent [plaintiff] from having to revisit the traumatic events."[47]

The Court takes C.D.'s claim of threatened psychological injury seriously.  Sexual assault can have lasting, damaging consequences on a person's emotional or mental health.  But whether the alleged sexual assault caused C.D. to have PTSD or other psychological injuries is not the question before the Court.  Rather, the questions are whether the public disclosure of C.D.'s name in the course of this lawsuit in fact uniquely would "retrigger" the PTSD that is said to have

---

43    *Sealed Plaintiff*, 537 F.3d at 190 (quotation marks omitted).

44    *Id.*

45    Dkt. 31-6 ¶¶ 1, 4, 9; Dkt. 45-9 ¶ 4.

46    *See, e.g.*, *Weinstein*, 484 F. Supp. 3d at 94-95.

47    *Doe v. Del Rio*, 241 F.R.D. 154, 161 (S.D.N.Y. 2006).

12

resulted from the alleged sexual assault and, if so, how grave the resultant harm would prove to be.

C.D.'s prior actions undercut his position on the rather unusual facts of this case.

C.D. has spoken since the 1990s to an unknown number of people about his "relationship" with Spacey. He does not claim that he received assurances of confidentiality from any of them. Then, in 2017, C.D. approached a person with whom he was "friendly" to facilitate the publication of his claims against Spacey. He disclosed his identity to *Vulture*. *Vulture* in turn sought to verify aspects of C.D.'s assertions with friends or acquaintances of C.D. That necessarily would have required *Vulture* to identify C.D., by his true identity, to those persons and, at least to some extent, to connect C.D. to the allegations against Spacey. And after the New York Child Victims Act was passed, C.D. (1) hired a lawyer, (2) reached out again to a friend – who is not alleged to have agreed to keep C.D.'s identity confidential – for the purpose of contacting Rapp, and (3) then recruited Rapp to join him in this lawsuit. Thus, the evidence suggests that C.D. knowingly and repeatedly took the risk that any of these individuals at one point or another would reveal his true identity in a manner that would bring that identity to wide public attention, particularly given Spacey's celebrity.

In this context, Mr. Bonavita's and Dr. Block's declarations do not carry the day for C.D on either of the pertinent questions, let alone both. Both say substantially the same thing: that "[C.D.'s] name being made public to the media, friends or on the internet . . . will trigger his post-traumatic stress disorder" causing "anxiety, anxiety attacks, nightmares, and depression."[48] But C.D. already has revealed the alleged facts to friends, revealed his identity to *Vulture*, and quite likely identified to *Vulture* people to whom he already had told his story for the purpose of enabling

---

[48] Dkt. 31-6 ¶ 9; Dkt. 45-9 ¶ 4.

*Vulture* to try to confirm what he had told it. Yet there is no suggestion in either declaration that any of those disclosures "to the media [and] friends" retriggered C.D.'s PTSD or, if they did not, why further disclosure would yield a different outcome. And it would be no satisfactory answer to say that one should infer that there was no "retriggering" because C.D. trusted, or assumed that he could trust, those to whom he repeated his story not to reveal C.D.'s identity. As media coverage of the allegations against Spacey grows, as would be very likely as this litigation proceeds and a trial approaches or takes place, it is only common sense to say that the risk of disclosure would grow. Moreover, even assuming there were no "leak" of C.D.'s identity as the case proceeded, "[b]eing 're-exposed' to the perceived wrong [of which he complains] is an inevitable consequence of litigation itself. If the case goes forward, [plaintiff] will be deposed, no doubt in the presence of the accused defendant; in the less certain event of trial, []he will presumably testify in a public courtroom and be subjected to cross-examination."[49]  Neither of the declarations suggests that proceeding with the case anonymously would protect C.D. from those consequences.

The declarations, no matter how sincere, ultimately are insufficiently persuasive for another reason. Neither gives any sense of the severity of any consequences of a "retriggering" of the alleged PTSD by future disclosure of C.D.'s identity beyond the conclusory statements that it would entail anxiety, nightmares, and depression. Any of these consequences of course would be regrettable. But the frequency, seriousness, clinical significance and treatability of feelings of anxiety and depression and of nightmares doubtless cover broad spectra. The declarations' conclusory statements are of limited utility.

---

[49]  *Del Rio*, 241 F.R.D. at 161.

14

In sum factors two, three, and seven do not lend much support to C.D.'s position.[50]

III.     *Factor 4: C.D.'s Vulnerability*

The fourth factor, which looks to whether a plaintiff is particularly vulnerable to

possible harms of disclosure, does not weigh in favor of C.D.'s use of a pseudonym either. "The

plaintiff's age is a critical factor" in the determination of the fourth factor, "as courts have been

readier to protect the privacy interest of minors in legal proceedings than of adults."[51] "If a plaintiff

is not a child, this factor weighs against a finding for anonymity."[52] Though C.D. brings allegations

relating to alleged sexual abuse as a minor, he now is an adult in his 50s who has chosen to level

serious charges against a defendant in the public eye.[53]   This factor weighs in favor of his

---

[50]

This remains true despite the harassing Instagram comments that Rapp received after he went public with his allegations against Spacey, which C.D. implies that he will receive if he discloses his name.  But his implication cannot be credited for two reasons.

First, Rapp admitted in text messages that "98% of what's coming my way" as a result of his suing Spacey is "overwhelming support" and "the other 2% is random trolling on the web, which I was fully anticipating."  Dkt. 54-2, at pp. 2-4.  There is no reason to conclude that C.D.'s experience, were he identified, would differ.

Second, while online harassment of any kind is repugnant, it is an unfortunate consequence of the social media age.  Many who make accusations against public figures are forced to endure it.  Without a specific threat of harm and a privacy interest that outweighs the prejudice to the defendant and the public's right to open courts, however, C.D.'s allegation that he would be subjected to online harassment if he were identified, even if it proved accurate, would not alone entitle him to proceed by anonymously. *See, e.g.*, *Weinstein*, 484 F. Supp. 3d at 94-95.

[51]

*Del Rio*, 241 F.R.D. at 158.

[52]

*Doe v. Solera Cap. LLC*, No. 18-cv-1769 (ER), 2019 WL 1437520, at *6 (S.D.N.Y. Mar. 31, 2019), reconsideration denied, No. 18-cv-1769 (ER), 2019 WL 5485210 (S.D.N.Y. Oct. 25, 2019) (citing *Del Rio*, 241 F.R.D. at 158; *Doe v. Stegall*, 653 F.2d 180, 186 (4th Cir. 1981)).

[53]

Def.'s Opp. to Pl.'s Mot. for Leave to Proceed Anonymously [Dkt. 43] at 17.

shouldering the burden of such accusations.[54]

## IV.   Factor 6: Prejudice to Spacey

The sixth factor looks to whether the defendant would be prejudiced if the plaintiff were permitted to proceed under a pseudonym. In considering the sixth factor, courts have examined "difficulties in conducting discovery," the "reputational damage to defendants," and the "fundamental fairness of proceeding anonymously."[55] Spacey has shown that he would be threatened with prejudice in all three ways if C.D.'s motion were granted.

First, Spacey has shown that he would be prejudiced during discovery because C.D.'s use of a pseudonym likely would prevent persons with information about C.D. or his allegations that would be helpful to Spacey's defense, but that now are unknown to Spacey, from coming forward.[56] If they do not know who this accuser is, they likely would have no way of knowing that their information would be pertinent. Contrary to C.D.'s assertions, this asymmetry in fact-gathering would not be avoided by the fact that C.D. already has provided Spacey with his name. Nor would it be remedied fully by plaintiffs' proposed stipulation, which would allow Spacey to use and

---

54

See Weinstein, 2020 WL 5261243, at *4.

55

Doe v. Townes, No. 19-cv-8034 (ALC) (OTW), 2020 WL 2395159, at *5 (S.D.N.Y. May 12, 2020) (citing EW v. N.Y. Blood Ctr., 213 F.R.D. 108, 111 (E.D.N.Y. 2003)).

56

Del Rio, 241 F.R.D. at 159 ("[C]oncealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses." (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 596-597) (Brennan, J. concurring) ("Public trials come to the attention of key witnesses unknown to the parties")); see also Roe v. Does 1-11, 2020 WL 6152174, at *3 ("Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations.").

disclose C.D.'s name for discovery purposes on the condition that anyone who becomes privy to his identity would be obliged to keep it confidential.[57]  Highly publicized cases can cause unknown witnesses to surface.[58]  By keeping C.D.'s identity confidential, "information about only one side may thus come to light."[59]  This not only would prejudice Spacey, but would hinder "the judicial interest in accurate fact-finding and fair adjudication."[60]

Second, Spacey has suffered significant reputational damage from C.D.'s allegations. "Information and allegations that are highly sensitive and of a personal nature can flow both ways."[61]  In other words, C.D.'s "allegations and public comments embarrass [Spacey] and place him under the same stigma that concerns" C.D."[62]  It would be harder to mitigate against that stigma if C.D. were permitted to remain anonymous.

Lastly, fundamental fairness suggests that defendants are prejudiced when "required to defend [themselves] publicly before a jury while plaintiff[s] . . . make . . . accusations from

---

[57]

Saghir Decl., Ex. H [Dkt. 30-10].

[58]

*See, e.g.*, Jordain Carney and Brett Samuels, "Witnesses say Ford may have mistaken them for Kavanaugh," THE HILL (Sept. 27, 2018) https://thehill.com/regulation/court-battles/408678-witnesses-say-ford-may-have-mistaken-them-for-kavanaugh.

[59]

*Del Rio*, 241 F.R.D. at 159.

[60]

*Weinstein*, 2020WL5261243, at *6.

[61]

*Skyline Automobiles Inc.*, 375 F. Supp. 3d at 407 (citing *Anonymous v. Simon*, 13-cv-2927 2014 WL 819122, at *2 (S.D.N.Y. March 3, 2014)).

[62]

*Simon*, 2014 WL 819122, at *2.

behind a cloak of anonymity."[63]  C.D. actively has pursued this lawsuit – including by recruiting his

co-plaintiff.  He seeks over $40 million in damages.[64]  He makes serious charges and, as a result,

has put his credibility in issue. "Fairness requires that [he] be prepared to stand behind [his] charges

publicly."[65]


V.      *Factors 5, 8, and 9: Factors Relating to the Public Interest in Open Court Proceedings*

Factors five, eight, and nine, all of which relate to the public's interest in knowing

the plaintiff's identity, weigh against C.D.'s use of a pseudonym.

The fifth factor looks to whether the suit challenges the actions of the government

or that of private parties.  "In private civil suits, courts recognize there is a significant interest in

open judicial proceedings since such suits 'do not only advance the parties' private interests, but also

further the public's interest in enforcing legal and social norms.'"[66]  C.D. brings allegations against

a private party so this factor weighs against his use of a pseudonym.

---

[63]

       *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015) (quotations omitted).

[64]

       Dkt. 54 at 2.

[65]

       *Shakur*, 164 F.R.D. at 361 (citing *Doe v. Bell Atlantic Business Sys. Servs., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995)).

[66]

       *Solera Cap.*, 2019 WL 1437520, at *6 (quoting *Del Rio*, 241 F.R.D. at 159).  On the other hand, where "'a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong.' That is because '[i]n such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization),'" and "'the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant.'" *Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264, 274-75 (E.D.N.Y. 2015) (quoting *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (citations omitted)).

The ninth factor looks to whether, because of the purely legal nature of the issues presented, there is an atypically weak public interest in knowing the litigants' identities. C.D.'s allegations are decidedly factual in nature, so this factor too weighs against his use of a pseudonym.

The eighth factor generally requires courts to look to whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity. As discussed above, the public "has a legitimate interest" in knowing the underlying facts of a litigation, including the identities of the litigants.[67] Here, that interest is magnified because C.D. has made his allegations against a public figure.[68]

C.D. argues that there is a competing public interest in keeping the identity of those who make sexual assault allegations anonymous so that they are not deterred from vindicating their rights. Along these lines, C.D.'s counsel in his latest letter stated that "C.D. has reluctantly decided" that "he is emotionally unable to proceed with the action and will discontinue his claims" if the Court denies his motion to proceed by pseudonym.[69] It would be inappropriate at this juncture for the Court to play any role in deciding whether C.D. persists in his claims against Spacey, which of course would be his right regardless of the outcome of this motion. The Court's role is to weigh C.D.'s privacy interest against the prejudice to Spacey and the public's interest in open judicial proceedings. Though C.D. is correct that the public generally has an interest in protecting those

---

[67]   *Id.* at 361.

[68]   *See Weinstein*, 2020 WL 5261243, at *6.

[69]   Mar. 2, 2021 Letter from P. Saghir [Dkt. 56] at 2.

who make sexual assault allegations so that they are not deterred from vindicating their rights,[70] it does not follow that the public has an interest in maintaining the anonymity of *every* person who alleges sexual assault or other misconduct of a highly personal nature.   For the foregoing reasons, C.D. has not shown that his privacy interest is sufficient to warrant allowing him to litigate his sexual assault allegations anonymously.   Accordingly, on balance, the public interest does not weigh in favor of C.D.'s use of an pseudonym.

VI.    *Factor 10: Alternative Mechanisms for Protecting Confidentiality*

Finally, the tenth factor, which looks to whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff, does not weigh in favor of C.D.'s use of a pseudonym.   C.D. "can seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information, or a protective order."[71]   And Spacey already has expressed his amenability to such an order.[72]

---

[70]

*Nygard*, 2020 WL 4890427, at *3.

[71]

*Weinstein*, 2020 WL 5261243, at *6 (citing *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 408; *Doe v. Berg*, 15-cv-9787, 2016 WL 11597923, at *3 (S.D.N.Y. Feb. 10, 2016)).

[72]

Dkt. 43 at 24.

*Conclusion*

Plaintiff C.D.'s motion to proceed by pseudonym [Dkt. 30] is denied in all respects. Plaintiff shall file an amended complaint containing his name no later than ten days after the date of this opinion.   Defendant's motions to strike [Dkts. 46, 54] are denied and his objection to Dr. Block's expert report [Dkt. 55] is overruled without prejudice.

SO ORDERED.

Dated: May 3, 2021

_____

Lewis A. Kaplan
United States District Judge