UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/13/21

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANTHONY RAPP, et ano.,

Plaintiffs,

-against-

20-cv-9586 (LAK)

KEVIN SPACEY FOWLER,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

This matter is before me on the motion of plaintiff Rapp to compel defendant primarily to produce 45 items withheld on privilege and work product grounds.[1] All of the items are emails between and among a combination of two or more of the defendant, two of his attorneys, his manager, and two public relations and/or media consultants. None is a communication between the defendant and his lawyers without one or more of the manager and the PR people at least copied on the email. Hence, the nub of the parties' dispute is Rapp's contention that the inclusion of either the manager or the PR consultants in any of the communications forecloses any sufficient privilege

---

[1]    Defendant has provided a privilege log that lists 45 individual emails. *In camera* inspection of the documents has revealed that 40 of the 45 emails are constituents of ten email chains and the other five are isolated emails. The ten email chains appear as Document Nos. 1, 2, 4 through 8, 11, 14 and 15, with each individual email in each group as to which protection is claimed bearing a letter sub-designation, *e.g.*, Doc. No. 1, Emails 1A through 1F, and so on. Each individual email in each chain was produced for *in camera* inspection along with the preceding emails in that chain. Accordingly, there was considerable duplication. It should be noted also that a few chains contain one or more emails from outside the defendant's group as to which protection from disclosure is not claimed.

claim because such communications were not lawyer-client communications made in confidence and/or generated for litigation.  Defendant rejoins that the manager and the PR consultants all were his agents and that they functioned in these circumstances on his behalf to facilitate his obtaining legal guidance.  He argues that the privilege is not defeated in light of *In re Grand Jury Subpoenas Dated March 24, 2003*.[2]

### Facts

Thirty-nine of the items at issue (Doc. Nos. 1-13) were created over a two-day period in October 2017.  On October 29, 2017, a reporter emailed one of the defendant's PR people and one of his lawyers to the effect that *Buzzfeed*, an Internet site, was about to run a story reporting Rapp's assertion that the defendant made a sexual advance on him in 1986 when Rapp was 14 years old.  The reporter solicited comment on the report.  As might be expected, the reporter's email triggered intensive consultations between and among the defendant, his manager, his two lawyers, and the two PR people concerning whether to respond and, if so, what to say.  These communications lasted until October 30, 2017.[3]

### Discussion

As this is a diversity case, the applicable law on the issue of attorney-client privilege

---

[2]

265 F. Supp.2d 321 (S.D.N.Y. 2003).

[3]

The last six items on the privilege log (Doc. Nos. 14-15) relate to emails exchanged later in 2018 between the defendant, his manager, his lawyer, and a PR consultant about Rapp's accusations.

is that of New York.[4]  In general, New York's attorney-client privilege jurisprudence is similar to the law applied by federal courts in, for example, federal question cases.[5]  Among other things, "[t]he proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client."[6]  Moreover, "[t]he communication itself must be primarily or predominantly of a legal character."[7]  "The critical inquiry is whether, viewing the . . . communication in its full content and context, it was made in order to render[, obtain, or communicate] legal advice or services to the client."[8]

In document numbers one through 13, the defendant was preparing to deal with the imminent publication of a story that threatened great harm to his reputation and career.  The reporter-author had sought comment from one of defendant's PR people and a lawyer known to have represented him in the past, the latter apparently as a means of getting the reporter's request for comment swiftly to the defendant.  The questions requiring immediate attention were whether to

---

[4]      *See* Fed. R. Evid. 501.  There is no claim that different rules of decision of another state apply.

[5]      *See, e.g., Pecile v. Titan Capital Group, LLC*, 119 A.D.3d 446, 446-47, 988 N.Y.S.2d 497 (1st Dep't 2014); *Gottwald v. Sebert*, 58 Misc.3d 625, 628-36, 63 N.Y.S.3d 818, 821-26 (Sup. Ct. N.Y. Cty. 2017).

[6]      *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.,* 191 Misc. 2d 154, 166, 738 N.Y.S.2d 179 (Sup. Ct. Monroe Cty. 2002); *accord People v. Mitchell,* 58 N.Y.2d 368, 373 (1983) (citing cases).

[7]      *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 378 (1991)

[8]      *Id.* at 379.

4

make any public comment and, if so, its substance.

Having reviewed *in camera* all of the items listed on the defendant's privilege log and considered the declarations submitted by the defendant, I find the following:

1.      The predominant roles in these deliberations and in the drafting of the statement that the defendant ultimately issued were those of the defendant's manager and PR consultants informed by facts communicated to them by the defendant. That is clear both from the emails themselves and from other objective data. The lawyers originated only 13 of the 39 emails, and only one of those was addressed (as opposed to copied) to the defendant. The defendant sent only eight of the communications. Of those eight, only one was addressed in the first instance (as opposed to copied) to either of the lawyers; all of the others went to his manager and PR people.

2.      This is not to say that the defendant and at least his manager were unconcerned with the potential for their efforts having legal implications. The situation inherently raised legal concerns. But my overall assessment is that the defendant and his manager and PR consultants , first and foremost, were seeking and providing the business and reputational advice that those experts long had provided to the defendant with respect to his career. The lawyers were involved principally to raise the alarm if the lay advisers or the defendant proposed going down a path that might expose the defendant to, or increase already existing, legal exposure.

These circumstances in my view distinguish *In re Grand Jury Subpoenas Dated March 24, 2003*, cited above, as do the facts that the non-lawyers involved in these communications were not hired by the lawyers to assist the lawyers in performing the lawyers' role in attempting to prevent an indictment of their client. They were the defendant's regular people performing their regular roles for the defendant. They were not assisting the lawyers in performing

the lawyers' role of counseling the defendant with respect to legal matters.  Their communications therefore are not protected by attorney-client privilege.

3.     For similar reasons, the vast majority of these communications are not protected under the work product doctrine.  It is clear that they were not generated primarily for litigation but instead reflect a discussion of public relations strategy.[9]

4.     There are instances in these emails in which the lawyers suggested specific changes to drafts prepared by others or provided legal advice.  In the circumstances, those communications are protected from disclosure, either under the attorney-client privilege or work product doctrine, and properly may be redacted.

*Document Request 12*

5.     As a final matter, Rapp has moved to compel also materials that the defendant received from London's Metropolitan Police Force (the "Met") concerning its criminal investigation into the defendant for claims of sexual assault.  The defendant has not asserted that these materials are privileged. Instead, he asserts that disclosing such materials would violate the United Kingdom's Criminal Procedure and Investigations Act of 1996, which the Court understands generally

---

[9]     *See Gottwald v. Sebert*, 161 A.D.3d 679, 680, 79 N.Y.S.3d 7, 8 (1st Dep't 2018); *Gottwald*, 63 N.Y.S.3d 818; *see also People v. Kozlowski*, 11 N.Y.3d 223, 244-46 (2008) (work product privilege protects from disclosure "attorney work product" – *i.e.*, "such things as private consultations between attorney and client and memoranda of them" – and "trial preparation materials" that were "generated for litigation") (quotation marks omitted); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55-56 (S.D.N.Y. 2000) ("general . . . public relations advice, even if it bears on anticipated litigation," is not protected under work product privilege " because the purpose of the [work product] rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally").

6

proscribes the disclosure of materials related to investigations into sexual offenses in the U.K.[10]

        Since Rapp's motion, the Court has received a letter on behalf of the Commissioner of Police of the Met about the materials, which has been filed under seal.[11]  In these circumstances, the Court concludes that the U.K.'s interest in maintaining the confidentiality of the materials related to the Met's investigation of the defendant outweighs the interests of this Court and Rapp in obtaining the materials.[12]  It accordingly denies Rapp's motion to compel as it relates to Document Request 12.

        [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[10]
    Rapp does not dispute that the defendant's disclosure of the materials he received from the Met would violate U.K. law.

[11]
    *See* Dkt. 105. The Court relies also on an action of a foreign court filed under seal. *See* Dkt. 113.

[12]
    *See, e.g.*, *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 543-47 (1987); *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 198-204 (S.D.N.Y. 2013).

*Conclusion*

Plaintiff Rapp's motion to compel is granted to the extent that (1) Doc. Nos. 1 through 4, 5C, and 9 through 12 on defendant's privilege log shall be produced, and (2) if the defendant wishes to assert that protection, he shall submit for *in camera* review by October 18, 2021 copies of Doc. Nos. 5A, 5B, 6A through 8F redacted in accordance with paragraph 4 above and, upon court approval of the redactions, produce redacted copies of those documents. The motion is denied in the remaining respects.

SO ORDERED.

Dated:          October 13, 2021

                                                    _____
                                                    Lewis A. Kaplan
                                                    United States District Judge