BEN B. RUBINOWITZ
JEFFREY B. BLOOM
ANTHONY H. GAIR
HOWARD S. HERSHENHORN*
RICHARD M. STEIGMAN
DIANA M. A. CARNEMOLLA*
PETER J. SAGHIR
MARIJO C. ADIMEY*
CHRISTOPHER J. DONADIO*
DANIEL L. BROOK, MD, JD
RACHEL L. JACOBS
JAMES S. RUBINOWITZ
DAVID H. LARKIN
MICHELLE L. LEVINE
ALLAN ZELIKOVIC
RICHARD SOLDANO*
ALEX R. BLOOM
CONOR D. CASSIDY

GAIR GAIR CONASON | RUBINOWITZ BLOOM HERSHENHORN STEIGMAN & MACKAUF

Counselors at Law
80 PINE STREET, 34TH FLOOR
NEW YORK, NY 10005
TEL: 212-943-1090
FAX: 212-425-7513
www.gairgair.com

New Jersey Office
ONE GATEWAY CENTER, STE. 2600
NEWARK, NJ 07102
TEL: 973-645-0581
FAX: 973-622-8160

* MEMBER OF N.Y. & N.J. BARS

February 16, 2022

BY ELECTRONIC FILING
Hon. Lewis A. Kaplan
United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: Anthony Rapp v. Kevin Spacey Fowler a/k/a Kevin Spacey
      Southern District of New York, Case No. 1.20-cv-09586 (LAK)

Dear Judge Kaplan,

  As Your Honor is aware, my office represents plaintiff, Anthony Rapp, in the above-referenced matter. I write concerning defendant Spacey's improperly withholding relevant discovery that is critical to Mr. Rapp's claims. The lack of discovery from Spacey is resulting in unfairness to Mr. Rapp.

  On November 22, 2021 a Petition to Confirm Arbitration Award (hereinafter "Arbitration Petition") was filed with the Superior Court of the State of California, County of Los Angeles, Central District, *see Ex. A*. With the filing of this Arbitration Petition, counsel for Mr. Rapp learned for the first time that the producer and distributor for the Netflix show *House of Cards*, Knight Takes King Productions, LLC and MRC II Distribution Company, L.P. (referred to as "MRC" in the Arbitration Petition), and Spacey had been engaged in a years-long arbitration proceeding. Therein, MRC asserted claims for breach of contract stemming from "dozens of explosive allegations…accusing Spacey of systematically preying upon, sexually harassing, and groping young men that he had worked with throughout his career on film, television, and theater projects," including on the set of *House of Cards*, *Ex A*. at ¶ 1-3. "Extensive" discovery was conducted, including more than twenty depositions, after which a neutral JAMS arbitrator "found entirely in favor of MRC," ordering Spacey to pay in excess of "$30 million in compensatory damages, attorneys' fees, and costs," *Id*. The neutral arbitrator,

> "found that Spacey—as a result of certain conduct in connection with several crew members in each of the five seasons that he starred in and executive produced *House of Cards*—had repeatedly breached his contractual obligations to provide his services 'in a professional manner' and 'consistent with [MRC's] reasonable directions, practices, and policies,' including MRC's Harassment Policy," *Id*. At ¶ 3.[1]

---

[1] Spacey appealed the arbitrator's finding, but a panel of three additional arbitrators affirmed it entirely, *Ex. A* at ¶ 5.

The public first learned about Spacey's sexually predatory behavior on the set of *House of Cards* in November 2017. An anonymous production assistant told the news site CNN that Spacey had sexually assaulted him. The details of the assault reflect similarities to Mr. Rapp's allegations. Spacey was driving the production assistant to set, when he "put his hands down the production assistant's pants," *see Ex. B*. The production assistant helped Spacey take his belongings to the trailer when "*Spacey cornered him, blocked his exit and made inappropriate contact with him*," *Id*. (emphasis added). Other crew members spoke with CNN about Spacey's inappropriate sexual behavior, alleging that "Spacey routinely harassed and touched," and would get into "play fights with [people] in order to touch them," *Id*.

When counsel for Mr. Rapp learned about the arbitration, he served a Second Notice to Produce, which requested information pertaining to the arbitration, including deposition transcripts, the Arbitrator's decision, and records documenting complaints of inappropriate sexual contact by Spacey in connection with *House of Cards*, *see Ex. C*. Spacey objected to each requested item in the Notice to Produce on the grounds that providing responsive documents would violate this Court's December 13, 2021 Order and the confidentiality provision from the JAMS arbitration, and that Mr. Rapp could "depose Mr. Fowler in this case on any subjects within the scope of legitimate discovery," *see Ex. D* at pgs. 6-7. However, Spacey's attorney did not let him answer any substantive questions about the arbitration, *see Ex. G*.

Your Honor's December 13, 2021 Order does not limit Mr. Rapp's ability to pursue discovery pertaining to Spacey's sexually inappropriate behavior on the set of *House of Cards*, *see Ex. E*. As Your Honor subsequently clarified, this "order explicitly and expressly dealt solely with examination by the plaintiff "*of the defendant concerning his prior sexual and romantic experiences and encounters*," *see Ex. F* (emphasis in original). The clear language of the December 13, 2021 and January 26, 2022 Orders makes clear that Your Honor's ruling only applied to Mr. Rapp's ability to question Spacey about his sexual and romantic experiences. In the context of these Orders, there is a distinct difference between a sexual and romantic encounter on the one hand, and workplace sexual harassment, groping, and assault on the other.

Additionally, the December 13, 2021 Order only applied to claims that had not "otherwise become public, in either case in connection with a claim, published report in mainstream media, or public allegation that any such sexual or romantic experience was not in all respects consensual," *see Ex. E*. The sexual assault and harassment allegations underlying the arbitration were first made public when eight accusers went to CNN with their accounts. As Your Honor has previously noted, even when an accuser's account is anonymously published, disclosure of one's identity to the news media, and verification of the account by the news outlet, creates "the risk that any of these individuals at one point or another would reveal his true identity in a manner that would bring that identity to wide attention, particularly given Spacey's celebrity, *Rapp v. Fowler*, 537 F.Supp.3d 521, 529 (S.D.N.Y. May 3, 2021). The CNN article specifically states that the accusers disclosed their accounts to them and that they were able to "corroborate the story," *see Ex. B*. This published claim in a mainstream media source, where anonymity was not guaranteed, does not fall under the December 13, 2021 Order. Therefore, defendant's objections to plaintiff's demands for the materials underlying the *House of Cards* arbitration is improper.

Spacey's objections that the "confidentiality order" makes it "burdensome and oppressive" for him to provide the requested information ring equally hollow. Spacey appears to be referring to a Stipulated Protective Order that all parties to the arbitration willingly entered, *see Ex. A* at ¶ 7, not a court promised confidentiality order. While district courts in the Second Circuit, "have in the past disagreed as to whether discovery of settlement agreements requires a heightened showing of relevance, the majority view is now that no such heightened showing is required," *Small v. Nobel Biocare USA, LLC*, 808 F. Supp 2d 583, 587 (S.D.N.Y. July 19, 2011); *see also King County v. IKB Deutsche Industriebank AG*, No. 09-CV-8387 SAS, 2012 U.S. Dist. LEXIS 116583 (S.D.N.Y. Aug. 17, 2012). Now, courts in the Southern District regularly recognize "that the 'good cause' standard of Rule 26(c) of the Federal Rules of Civil Procedure is the proper test to govern discovery disputes involving the disclosure of settlement discussions and settlement agreements where there was no promise of confidentiality *by a court*," *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F.Supp.3d 461, 464 (S.D.N.Y. Aug. 16, 2019) (emphasis added). Since "settlement agreements are not privileged," Mr. Rapp may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 BCM, 2020 U.S. Dist. LEXIS 116074 at *15 (July 1, 2020), citing to F.R.C.P. 26(b).

There is no doubt the materials sought by Mr. Rapp in his Second Notice to Produce are reasonable, relevant, and proportional to the needs of his case, *McCutcheon v. Colgate-Palmolive Co.*, No. 16-CV-4170 LGD/KNF, 2017 U.S. Dist. LEXIS 19628 at *16 (S.D.N.Y. Oct. 19, 2017). The requested discovery will likely include the names of potential F.R.E. 404(b) and 415 witnesses, impeachment witnesses, as well as other potential impeachment material. Given the important nature of this discovery, permitting discovery of these materials falls well within the liberal discovery standards set by courts in the Second Circuit, *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods*, No. 1:19-CV-3766 GHW, 2020 U.S. Dist. LEXIS 234361 at *10-11 (S.D.N.Y. Dec. 11, 2020).

It should be noted that some courts have found that parties must show a "special need" to access confidential mediation materials, *see Dandong v. Pinnacle Performance Ltd.*, No. 10-CV-8086 LBS, 2012 U.S. Dist. LEXIS 145454 (S.D.N.Y. Oct. 9, 2021); *see also Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp 3d 281 (S.D.N.Y. Dec. 8, 2020). For example, the Court in *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. May 5, 2011) held that, in the limited context of protective orders issued as part of a court-ordered mediation, parties seeking materials from the confidential mediation must show, "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality," *Id*. at 58. The *Dandong* Court adopted this standard and applied it to all confidential mediations, whether or not they were private or court ordered (as was the case in *In re Teligent*). Mr. Rapp respectfully urges this Court to reject the *Dandong* court's conclusion and instead adopt the standard set forth by *Rocky Mountain Mgmt. 204 LLC*, 394 F.2d at 463-466, which found that the heightened *In re Teligent* test only "applies to situations in which there has been a prior *court promise* of confidentiality," *Id*. (emphasis added). Here, the *House of Cards* arbitration was not subject to a court promise of confidentiality, but was a Stipulated Protective Order entered into by all parties, *Ex. A* at ¶ 7. Moreover, it is manifestly unfair for a defendant to be able to hide otherwise discoverable information by privately designating information as confidential. As such, the heightened *In re Teligent* test does not

3

apply, *see Contship Containerlines, Ltd. v. PPG Indus., Inc.*, No. 00-CV-0194 RCC/HBP, 2003 U.S. Dist. LEXIS 6857 (S.D.N.Y. Apr. 17, 2003) (requiring the disclosure of confidential arbitration materials).

However, should Your Honor find that the *In re Teligent* test applies, Mr. Rapp's need for the discovery materials overcomes the purportedly confidential nature of the subject arbitration proceedings. First, Mr. Rapp has a special need for the discovery. As discussed *supra*, the requested information will contain the names of potential witnesses. Mr. Rapp has no other way of discovering the names of these potential F.R.E. 404(b) and 415 witnesses. In this case, where defendant Spacey has issued a blanket denial that he has ever engaged in any sexual misconduct, the existence of these witnesses may prove to be critical.

Additionally, the resulting unfairness to Mr. Rapp if he is denied access to this discovery is monumental. Spacey is privy to all the information from the arbitration proceedings, including the names of witnesses, deposition transcripts, and documents showing complaints made against Spacey while Mr. Rapp is left in the dark. While Spacey is permitted access to these materials, Mr. Rapp is unable to find potentially key witnesses who are relevant to the prosecution of his case.

Finally, Mr. Rapp's need for the evidence outweighs the interest in maintaining the confidentiality stipulated to by Spacey and MRC. The individuals whose complaints form the basis for the arbitration proceedings already compromised their anonymity by speaking to CNN and disclosing their allegations to other individuals (with whom CNN corroborated their accounts). The fact that the arbitration happened, and that there was an adverse finding against defendant Spacey, became a matter of public record upon the filing of the Arbitration Petition. Under these circumstances, any meaningful reason to maintain the confidentiality of the requested arbitration documents has evaporated.

The documents requested by Mr. Rapp contain information that is critically important to his case. Under both the liberal discovery standards in the Second Circuit, and the heightened standards followed by select courts in the Southern District, this Court is well within its discretion to permit discovery of the purportedly confidential arbitration materials. Therefore, I respectfully request Your Honor compel defendant Spacey to provide documents responsive to Mr. Rapp's Second Notice to Produce. In conjunction with this, Mr. Rapp requests a further deposition of defendant Spacey, *see* F.R.C.P. 30(a)(2)(A)(ii) (permitting a second deposition of a witness with leave of court). This second deposition, not to exceed two hours, is necessary to permit Mr. Rapp to inquire about the information contained in the improperly withheld documents.

                                                  Respectfully submitted,
                                                  GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
                                                  HERSHENHORN, STEIGMAN & MACKAUF

                                                  Peter J. Saghir

cc: Erica A. Wolff, Esq.
    Jennifer Keller, Esq.
    Jay P. Barron, Esq.
    Chase A. Scolnick, Esq.