UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY RAPP and C.D.,                                    Case No. 1.20-cv-09586 (LAK)

                Plaintiffs,

       -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY

                Defendant.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
By: Peter J. Saghir
80 Pine Street, 34th Floor
New York, NY 10005
Tel: (212) 943-1090
Fax: (212) 425-7513
Email: psaghir@gairgair.com

*Attorneys for Plaintiffs Anthony Rapp and C.D*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..,……………………………………………………………………ii

PRELIMINARY STATEMENT…………………………………………………………………1

BACKGROUND INFORMATION………………………………………………………………2

   A. Procedural History…………………………………………………………………………2

   B. Factual Details Concerning Defendant's Sexual Abuse of Mr. Rapp………………...4

ARGUMENT…………………………………………………………………………………...7

   A. The Evidence of the Non-Moving Party Must Be Believed on a Motion for Summary
      Judgment…………………………………………………………………………………7

   B. Defendant's Unwanted Sexual Acts Toward Mr. Rapp Constitute a Violation of New
      York's Penal Law § 130……………………………………………………………………8

         1. Penal Law § 130 is Read Broadly by Courts…………………………………8

         2. Defendant Committed a Sexual Act Without Mr. Rapp's Consent…………9

         3. Defendant Forcibly Touched Mr. Rapp (Penal Law § 130.52)……………10

            i. Defendant Touched Mr. Rapp's Intimate Parts……………...………10

            ii. Defendant Touched Mr. Rapp's Intimate Parts for the Purpose of
              Sexual Gratification………………………………………………………12

            iii. Defendant's Unwanted Sexual Touching of Mr. Rapp's Intimate Parts
              was Forceful…………………………………………………………………15

         4. Defendant Sexually Abused Mr. Rapp (Penal Law § 130.55)………………16

   C. Defendant Came Dangerously Close to Achieving His Objectives …………………17

   D. Claims of Assault Are Revived by the Child Victims Act…………………………...19

   E. Conclusion……………………………………………………………………………...20

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505 (1986)……………………………...…7

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017)………………………………………………………………………………………….…7

*Chanko v. American Broadcasting Cos. Inc.*, 27 N.Y.3d 46 (2016)……………………………..3

*Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003)……………………………………..7

*Manion v. Pan American World Airways, Inc.*, 55 N.Y.2d 398 (1982)…………………………..4

*Okoli v. Paul Hastings LLP*, 117 A.D.3d 539 (1st Dep't 2014)……………………………3, 19

*People v. Anthinez (alexander)*, 2021 N.Y. Misc. LEXIS 1314 (1st Dep't 2021)………………18

*People v. Bracey*, 41 N.Y.2d 296 (1977)……………………………………………………...…18

*People v. Cassis*, 64 N.Y.S.3d 473 (Crim. Ct. NY County Sept. 12, 2017)……………………..16

*People v. Colon (Eladio*), 2017 N.Y. Misc. LEXIS 3654  (1st Dep't 2017)……………………17

*People v. Darryl M.*, 475 N.Y.S.2d 704 (Crim. Ct. NY County Jan. 25, 1984)…………………11

*People v. Ditta*, 52 N.Y. 2d 657 (1981)……………………………………………………8, 11

*People v. Graydon*, 492 N.Y.S.2d 903 (Crim. Ct. NY County Aug. 2, 1985)…………….8, 9, 11

*People v. Guaman*, 22 N.Y.3d 678 (2014)……………………………………………………..12, 15

*People v. Hatton*, 26 N.Y.3d 364 (2015)………………………………………………………...13

*People v. Helm*, 3 N.Y.S.3d 286 (2014)…………………………………………………………14

*People v. Kahl (Kristopher)*, 2017 N.Y. Misc. LEXIS 386 (2nd Dep't 2017)………...…………9

*People v. Kassebaum*, 131 N.Y.S.3d 675 (2d Dep't 2020)………………………………...……14

*People v. Lewis*, 901 N.Y.S.2d 909 (Crim. Ct. Kings County Sept. 17, 2009)…………………18

*People v. Michael H.*, 2021 N.Y. Misc. LEXIS 4789 (2nd Dep't 2021)…………………...……13

*People v. Miller*, 856 N.Y.S.2d 443 (Crim. Ct. Kings County Feb. 21, 2008)……………...…..19

*People v. Morbelli*, 544 N.Y.S.2d 442 (Crim. Ct. NY County June 29, 1989)…………...9, 11, 12

*People v. Perez (Miguel)*, 2020 N.Y. Misc. LEXIS 7265 (1st Dep't 2020)……………….…..17

*People v. Rivera*, 34 N.Y.3d 383 (2019)……………………………………………………..…..3

*People v. Victor P.*, 466 N.Y.S.2d 572 (Crim Ct. NY County Aug. 12, 1983)…………….…..11

*People v. Willis*, 79 A.D.3d 1739 (4th Dep't 2010)………………………………………....13

*Richardson v. City of New York*, No. 17 Civ. 8622 PAE/RWL, 2020 U.S. Dist. LEXIS 181491 (S.D.N.Y. Aug. 24, 2020)……………………………………………………………………….7

*Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163 (2d Cir. 2016)………………………….…..7

*United States v. Urena*, 73 F. Supp. 3d 291 (S.D.N.Y. Sept. 18, 2014)…………………………18

## STATUTES

N.Y. CPLR 214-g……………………………………………………………….…..2, 3, 8, 20

N.Y. Penal Law § 110.00……………………………………………………………….…17, 18

N.Y. Penal Law § 130.00(3)…………………………………………………………………..16

N.Y. Penal Law § 130.05(1)……………………………………………………………………9

N.Y. Penal Law § 130.05(2)(a)…………………………………………………………………9

N.Y. Penal Law § 130.05(2)(b)………………………………………………………………...9

N.Y. Penal Law § 130.05(2)(c)…………………………………………………………………9

N.Y. Penal Law § 130.05(3)(a)…………………………………………………………………9

N.Y. Penal Law § 130.52……………………………………………..………...…12, 17, 18, 19

N.Y. Penal Law § 130.52(1)…………………………………………………………...10, 12, 15

N.Y. Penal Law § 130.55……………………………………………………………16, 17, 18, 19

## COURT RULES

Fed. R. Civ. Proc. 56(a)………………………………………………………………………7

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in support of plaintiff, Anthony Rapp's ("Mr. Rapp"), opposition to Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and for such other relief as the Court deems just and proper.

There is a fundamental and material issue of fact in this case – whether Kevin Spacey ("Defendant") sexually abused Mr. Rapp in 1986.  Defendant, of course, denies that the abuse ever happened.  However, Mr. Rapp has given extensive testimony that details exactly what Defendant did to him.  When Mr. Rapp was a fourteen-year-old child, he found himself alone in a bedroom with Defendant, who was visibly intoxicated.  Without Mr. Rapp's consent, which he was legally incapable of giving due to his age, Defendant picked up Mr. Rapp and touched his buttocks and legs.  Defendant then laid Mr. Rapp down on his back on top of a bed and pressed his body into Mr. Rapp – Defendant's pelvis was pressed into Mr. Rapp's hip, his chest was pressed into Mr. Rapp's chest, and his legs and groin were pressed into the side of Mr. Rapp's body.  In addition to pressing his body into Mr. Rapp's, Defendant wrapped his arms around Mr. Rapp's back and clutched his shoulders.  These actions by Defendant were unwanted and shocking, and caused Mr. Rapp to completely freeze.  Mr. Rapp was finally able to free himself from Defendant's clutches.  As Mr. Rapp tried to leave the apartment they were in, Defendant stood in the doorway and said, "Are you sure you want to go?"

While denying Mr. Rapp's claims, Defendant also attempts to minimize the acts of sexual abuse.  According to the Defendant, a grown man who picks up a minor child, lays him down on a bed, and presses his groin into the child is not evidence that a touching occurred and that the acts were performed for sexual gratification pursuant to Article 130 of New York's Penal Law. Under Defendant's sanitized version of the facts, Defendant argues Mr. Rapp's claims against

him do not constitute a violation of Penal Law § 130 and are therefore not revived by the Child Victims Act.

One thing is clear in this case – Mr. Rapp and Defendant have two very different versions of the facts.  Not only do they disagree on whether the sexual abuse occurred at all, but there is also a dispute as to whether: (1) Defendant's touching of Mr. Rapp was forcible and forceful; (2) Defendant touched Mr. Rapp's intimate parts; (3) Defendant touched Mr. Rapp for the purposes of sexually gratifying himself; and (4) the nature of the touching was of a sexual contact.  In essence, the parties dispute both the actual facts themselves and whether the facts, as claimed by Mr. Rapp, constitute a violation of Penal Law § 130.

Though there is a genuine dispute as to multiple material facts in this case, Defendant asks the Court to decide, as a matter of law, that Mr. Rapp's claims are not revived by the Child Victims Act.  Believing all of the evidence proffered by Mr. Rapp, resolving all factual inferences in his favor, and reviewing the evidence in the light most favorable to him, whether Mr. Rapp's claims against Defendant constitute a violation of Penal Law § 130 and are therefore revived by the CVA, is a question of fact to be left to the jury.

## BACKGROUND INFORMATION

### A.    *Procedural History*

Mr. Rapp commenced this action against Defendant with the filing of a Summons and Complaint on September 9, 2020, pursuant to the Child Victims Act ("CVA"), *See* Scolnick Decl. ¶ 4.  As this Court knows, the CVA was codified in CPLR 214-g.  The CVA opened a two-year look back window – beginning on August 14, 2019 – that allowed people who were sexually abused as minors to commence a civil action against the institutions and individuals

responsible for their sexual abuse, regardless of when the sexual abuse occurred, *See* CPLR 214-g.  In relevant part, the CVA revives,

> "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age… which is barred as of the effective date of this section because the applicable period of limitation has expired…"

> *Id*.

Mr. Rapp's Complaint contains allegations that Defendant's actions violated Penal Law § 130, and thus gave rise to Mr. Rapp's claims for assault, battery, and intentional infliction of emotional distress, *See* Scolnick Decl. ¶ 4.  Defendant filed an Answer to the Complaint on November 20, 2020, alleging as an affirmative defense that all of Mr. Rapp's claims are time-barred by the statute of limitations, *See* Scolnick Decl. ¶ 5.

For Mr. Rapp to successfully prove his claims of assault, battery, and intentional infliction of emotional distress, he merely needs to prove the elements of each of his claims.  For assault, that Defendant's actions toward Mr. Rapp constituted "conduct that may give rise to a reasonable apprehension of imminent harmful conduct," *Okoli v. Paul Hastings LLP*, 117 A.D.3d 539, 540 (1st Dep't 2014).  To prove battery, there must be "the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonably prudent person would find offensive," *People v. Rivera*, 34 N.Y.3d 383, 389 (2019).  And to establish a claim for intentional infliction of emotional distress there must be: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress," *Chanko v. American Broadcasting Cos. Inc*., 27 N.Y.3d 46, 56 (2016).

Whether or not Mr. Rapp can prove these claims is not the subject of this motion (though Mr. Rapp will prove that Defendant committed an assault and battery toward him, and intentionally inflicted emotional distress).  The sole issue in this motion is whether Defendant has demonstrated that he is entitled to judgment as a matter of law on the purported basis that Mr. Rapp has not adequately claimed a violation of Penal Law § 130.  It must be noted that Mr. Rapp – nor any other plaintiff bringing suit under the CVA – does not need to prove a violation of Penal Law § 130 as a condition precedent for his claims of assault, battery, and intentional infliction of emotional distress.  The relevance of violations under Penal Law § 130 only arise in the context of Defendant's affirmative defense that Mr. Rapp's claims are barred by the statute of limitations, *See* Scolnick Decl. ¶ 5.  And it is Defendant's burden to prove that Mr. Rapp's claims are time-barred, *See Manion v. Pan American World Airways, Inc.*, 55 N.Y.2d 398, 405 (1982) ("The party asserting an affirmative defense generally bears the burden of proof on that issue").  Viewing the evidence in the light most favorable to Mr. Rapp, and recognizing that Defendant has the burden of proving that Mr. Rapp's claims were not revived by the CVA, Defendant simply cannot show, as a matter of law, that his sexual acts toward Mr. Rapp did not violate any section of Penal Law § 130.

### B.      *Factual Details Concerning Defendant's Sexual Abuse of Mr. Rapp*

In 1986, when Mr. Rapp was only fourteen years old, Defendant invited him "to a gathering at his home."  *See* Mr. Rapp's Statement of Material Facts ("SMF"), ¶¶ 32, 35, 50. Though Defendant was a grown man at the age of twenty-six, Mr. Rapp "looked like a kid."  *Id*. at ¶ 33-34; *see* Saghir Decl. ¶12.  Mr. Rapp did not even look like he might be 18 years old.  *Id*. at 33.  Mr. Rapp did not recognize anyone he knew at the party and became bored, so he went into a bedroom in Defendant's home to watch television.  *Id*. at ¶ 36.  While Mr. Rapp "was

sitting on the edge of the bed watching television," Defendant entered the room and approached Mr. Rapp. *Id*. at ¶¶ 36, 37. At this point in time, the only people left in the apartment were Mr. Rapp and Defendant. *Id*. at ¶ 38. When Defendant approached Mr. Rapp, Defendant was visibly intoxicated – he was "drunk," "swaying a little bit and not quite steady on his feet," and "his eyes seemed glassy or unfocused." *Id*. at ¶ 39.

Without any warning, Defendant picked Mr. Rapp up off the bed, "like a groom picks up a bride over the threshold." *Id.* at ¶ 40. As Defendant picked up Mr. Rapp, Defendant's hand touched and grazed Mr. Rapp's buttocks and legs. *Id*. at 41. Defendant then "turned to the bed and laid [Mr. Rapp] down and laid on top of [him]." *Id* at ¶ 42. When Defendant laid Mr. Rapp down on the bed, Mr. Rapp's body was fully on the bed – his "head was toward the headboard, close to the headboard so that [his] body was on the bed as opposed to sitting on the edge of the bed." *Id*. at ¶ 43. Once Defendant had fully laid Mr. Rapp's body down on the bed, with Mr. Rapp laying on his back, Defendant "fully pressed" his body into Mr. Rapp. *Id*. at 44. While Mr. Rapp was still laying on his back on the bed, Defendant's "pelvis was pressing into" Mr. Rapp's hips, "the side of [his] hip." *Id*. At this point, Defendant's body was "angled, not directly on top but angled" on Mr. Rapp's fourteen-year-old body. *Id*. at 44. Defendant's body covered Mr. Rapp's body. Mr. Rapp was able to feel the pressure of Defendant's chest on his chest, Defendant's hands on his body, and Defendant's legs and groin pressing into the side of his body. *Id*. at ¶ 45. While pressing into Mr. Rapp's body, Defendant's "hands were around [Mr. Rapp's] shoulders holding [him,]" "up behind" Mr. Rapp's back, "clutching" Mr. Rapp's shoulders. *Id*. at ¶ 46.

Mr. Rapp was "completely frozen" and "shocked" on the bed after Defendant picked him up, laid him on the bed, and pressed into him. *Id*. at ¶ 47. Though initially frozen and in shock,

Mr. Rapp was finally able to extricate himself out from underneath Defendant's body and leave the apartment. *Id*. at ¶ 48.  As Mr. Rapp left the apartment, Defendant followed him to the door, stood in the doorway, and asked Mr. Rapp, "Are you sure you want to go?"  *Id*. at ¶ 48.  The entire sexual interaction between Mr. Rapp and Defendant was "utterly shocking and unwanted" and "extraordinarily upsetting" to Mr. Rapp.  *Id*. at ¶ 49.

Defendant's unwanted and unconsented to sexual acts toward Mr. Rapp were not an isolated incident.  In the summer of 1981, Andrew Holtzman ("Mr. Holtzman") was working at the New York Shakespeare Festival Public Theater ("the Public Theater").  *Id*. at ¶ 52.  While working in his office at the Public Theater, Defendant, with a fully erect penis, approached Mr. Holtzman, *Id*. at 51.  Without Mr. Holtzman's consent, Defendant reached down to Mr. Holtzman's "crotch, around the scrotum area, and pulled" Mr. Holtzman up onto the desk, placed himself somewhat on top of Mr. Holtzman and began "rubbing, grinding his erection" on Mr. Holtzman.  *Id*. at ¶ 53.

Then, in 1988, Defendant made a sexual advance on Justin Dawes ("Mr. Dawes"), a minor.  Defendant Spacey served Mr. Dawes alcoholic drinks and showed him gay pornography.  *Id*. at ¶ 54.  Without Mr. Dawes' consent, Defendant put his hand on Mr. Dawes' leg in a sexual nature in a way that made Mr. Dawes freeze and feel uncomfortable.  *Id*. at ¶ 55.

Defendant flat out denies that each of these unwanted sexual interactions occurred. *Id*. at ¶¶ 28, 56, and 57.  These denials in and of themselves create a factual dispute that lies at the heart of this case – whether Defendant sexually abused Mr. Rapp.  Even Defendant concedes that he "does not ask the Court to resolve competing factual disputes" that exist in this case, *See* Def. Memorandum of Law ("Def. Memo.") at pg. 5.  Instead, Defendant argues that Mr. Rapp's claims against him are not revived by the Child Victims Act.  Viewing the evidence in the light

6

most favorable to Mr. Rapp, as the non-moving party, the relevant facts and case law show that Defendant is not entitled to judgment as a matter of law, and his motion should be denied in its entirety.

## ARGUMENT

**A.**  ***The Evidence of the Non-Moving Party Must Be Believed on a Motion for Summary Judgment***

In assessing a motion for summary judgment, a court must, "view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of that party, and eschew credibility assessments, *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016. In viewing the evidence in the light most favorable to the non-moving party, the court must also "resolve all ambiguities and draw all factual inferences in favor of the non-moving party," *Richardson v. City of New York*, No. 17 Civ. 8622 PAE/RWL, 2020 U.S. Dist. LEXIS 181491 at * 9 (S.D.N.Y. Aug. 24, 2020). Simply put, "the evidence of the nonmovant is to be believed," *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

Additionally, a motion for summary judgment must be denied if the movant fails to show, "that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (emphasis added). In fact, "the burden of showing that [a party] is entitled to judgment as a matter of law" lies squarely with the party seeking summary judgment, *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). It is improper to grant summary judgment if the movant does not demonstrate they are entitled to judgment as a matter of law*, Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017).

There are undeniable issues of fact that exist in the case presently before the Court. Because of these issues of fact, Defendant, as the movant, cannot demonstrate he is entitled to judgment as a matter of law.

**B.      *Defendant's Unwanted Sexual Acts Toward Mr. Rapp Constitute a Violation of New York's Penal Law § 130***

Mr. Rapp's claims against the Defendant are brought pursuant to CPLR 214-g, colloquially known as the Child Victims Act ("CVA").  The CVA opened a two-year window that allowed persons to commence a civil actions arising from sexual assault of minors, regardless of when the sexual abuse occurred.  As part of the CVA, an individual's cause of action is revived if the alleged sexual assault "would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age," CPLR 214-g.  Defendant argues that Mr. Rapp's claims against him are not revived by the CVA because they purportedly do not fall under any subsection of Penal Law § 130.  However, Defendant's sexual assault of Mr. Rapp violated multiple sections of Penal Law § 130.  As a result, Mr. Rapp's claims are properly revived by the CVA, are not time-barred, and do not fail as a matter of law.

*1.      Penal Law § 130 is Read Broadly by Courts*

When analyzing whether a defendant's conduct has violated any section of the Penal Law, including the sexual abuse provisions of section 130, the New York State Court of Appeals has, "emphasized that the common-law policy of strictly construing a penal code no longer obtains in this State." *People v. Ditta*, 52 N.Y.2d 657, 660 (1981). Specifically, courts should "dispense with hypertechnical or strained interpretations," and focus on punishing conduct that naturally falls within the language of the statute, *Id*.  The substantive sections of Penal Law § 130 are of a "broad nature," *People v. Graydon*, 492 N.Y.S.2d 903, 905 (Crim. Ct. NY County

Aug. 2, 1985), and should be read "according to the fair import of its terms to promote justice and effect the objects of the law," *People v. Morbelli*, 544 N.Y.S.2d 442, 445 (Crim. Ct. NY County June 29, 1989). For example, the court in *People v. Graydon* looked to "general social mores" to determine whether there was a violation of Penal Law § 130.60, *Graydon* at 905. A broad reading of Penal Law § 130.55 was also adopted by the court in *People v. Morbelli*, which noted that "some aspects of the prohibited conduct may be left to the commonly accepted community sense of decency, propriety, and morality," *Morbelli* at 446.

2.   *Defendant Committed a Sexual Act Without Mr. Rapp's Consent*

To successfully prove a violation of any sexual offense defined in Penal Law § 130, the underlying sexual act must have been committed without the consent of the victim, *See* Penal Law § 130.05(1). Mr. Rapp was fourteen years old when Defendant sexually abused him, *See* SMF at ¶ 32. A person "is deemed legally incapable of consent when he or she is: (a) less then seventeen years old," *See* Penal Law §§ 130.05(2)(b), 130.05(3)(a). Given Mr. Rapp's young age, he was not capable of consenting to Defendant's sexual acts in any way, shape, or form. A lack of consent also arises from forcible compulsion, *See* Penal Law § 130.05(2)(a). Mr. Rapp did "not expressly or impliedly acquiesce" to Defendant's conduct, *See* Penal Law § 130.05(2)(c). At all times, Defendant's sexual actions toward Mr. Rapp were "utterly shocking and unwanted" and "extraordinarily upsetting" to Mr. Rapp, *See* SMF at ¶ 49.

The fact that Mr. Rapp did not expressly say anything to Defendant to stop the sexual abuse, *See* Def. SMF at ¶ 15, does not mean Mr. Rapp consented to the unwanted sexual contact. Lack of verbal protest by a victim does not mean that a person "impliedly acquiesced in the sexual contact" forced upon them, *People v. Kahl (Kristopher)*, 2017 N.Y. Misc. LEXIS 386 at *7 (2nd Dep't 2017).

Given Mr. Rapp's incapacity to consent to the sexual acts due to his young age (fourteen years old) and the fact Mr. Rapp did not expressly or impliedly acquiesce to the sexual acts, it is uncontroverted that Defendant's sexual acts were committed without Mr. Rapp's consent.

3.   *Defendant Forcibly Touched Mr. Rapp (Penal Law § 130.52)*

Defendant forcibly performed the following sexual acts on Mr. Rapp: picking Mr. Rapp up; touching Mr. Rapp's buttocks and legs; laying Mr. Rapp down on a bed; laying on top of Mr. Rapp and pressing his entire body into Mr. Rapp; pressing his pelvis, legs, and groin into Mr. Rapp's hips; wrapping his hands up around Mr. Rapp's back and clutching Mr. Rapp's shoulders; and, at the end of the sexual interaction, asking Mr. Rapp, "Are you sure you want to go?" *See* SMF at ¶¶ 40-42, 44-46, and 48.  Forcible touching occurs when a "person intentionally, and for no legitimate purpose: (1) forcibly touches the sexual or intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire," *See* Penal Law § 130.52(1).  Defendant's actions, when taken separately and together, in the context in which they occurred, constitute forcible touching.

i.   Defendant Touched Mr. Rapp's Intimate Parts

When questioned about the sexual abuse, Mr. Rapp clearly stated that the Defendant's hand grazed and touched his buttocks and legs, *See* SMF at ¶ 41. The case law is clear that a person's buttock is considered an "intimate part" under Penal Law § 130.52(1).  For example, in *People v. Thomas*, the defendant contended that the buttock was not an "intimate part" because it was not located in the genital area, and was not a reproductive organ or female breast, *See People v. Thomas*, 398 N.Y.S.2d 821, 822 (Crim. Ct. NY County Oct. 17, 1977).  The *Thomas* Court rejected the defendant's contention, ruling that "it is very apparent that 'sexual contact' is no longer restricted to the reproductive organs, and that the buttocks may be considered an

intimate part under the sexual abuse statute," *Id*. at 824.  The court in *People v. Darryl M.*
reached an identical conclusion, "that the buttocks of a person is indeed an 'intimate part,'"
*People v. Darryl M.*, 475 N.Y.S.2d 704, 714 (Crim. Ct. NY County Jan. 25, 1984).

 Since the Penal Law is not to be strictly construed, *See Ditta* at 660, it is no surprise that
courts have taken a broad definition of what constitutes an "intimate part" under section 130.
Rather than limiting "intimate parts" to the genitals, breast, or buttock area, courts determine the
"intimate nature" of a body part by "look[ing] beyond the mere anatomical location of the part to
consider in what way the acts were proscribed by general social mores," *See Graydon* at 905.  A
part of a person is deemed "'intimate' when social mores proscribe a certain type of conduct
towards that person," *Id*.  The *Graydon* Court examined three factors to determine whether a part
is intimate: what part of the body was touched, the manner of the touching, and the
circumstances of the touching, *Id*. at 906.  Similarly, the Court in *Morbelli*, found that "[w]hat is
'intimate' cannot be determined independently of the circumstances of the alleged behavior,"
*Morbelli* at 446.

 Viewing the evidence in the light most favorable to Mr. Rapp as the non-moving party,
and drawing all reasonable inferences in favor of Mr. Rapp, Defendant's acts toward Mr. Rapp
turned Mr. Rapp's entire body into an intimate part under the sexual abuse statute.  For sure, a
"reasonable man in this society would consider the acts alleged herein [by Mr. Rapp] to be
proscribed behavior," *People v. Victor P.*, 466 N.Y.S.2d 572, 574 (Crim Ct. NY County Aug. 12,
1983).  Specifically, looking at the parts of Mr. Rapp's body that Defendant touched (his
buttocks, legs, hips, chest, and shoulders, *See SMF* at ¶ 41, 44-46); the manner in which
Defendant touched Mr. Rapp (touching Mr. Rapp's buttock and legs while picking him up,
pressing his body, including his groin, into Mr. Rapp's chest, body, and hips, and clutching Mr.

Rapp's shoulders, *See* SMF at ¶ 41, 44-46); and the circumstances of the touching (Defendant and Mr. Rapp were alone, in a bedroom, on a bed, *See* SMF ¶ 36, 38, 42), the acts alleged make clear that Defendant had knowledge that Mr. Rapp's buttocks, legs, hips, chest, and shoulders were "intimate parts." For sure, "a person of reasonable intelligence would have sufficient notice that [Defendant's] alleged conduct is prohibited," *Morbelli* at 446. Here, the manner and circumstances of Defendant's touching turned Mr. Rapp's buttocks, legs, hips, chest, and shoulders into "intimate parts" for the purposes of Penal Law § 130.52.

It is also important to note that a forcible touching can occur when a defendant uses parts of his body other than his hand to touch his victim. For example, in *People v. Guaman*, 22 N.Y.3d 678 (2014), the defendant pled guilty to forcible touching under Penal Law § 130.52 after rubbing his groin area and exposed penis against the victim's buttocks. The Court of Appeals upheld the defendant's conviction, holding that, "*any* bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts qualifies as a forcible touch within the meaning of Penal Law § 130.52," *Id*. at 684 (emphasis added). Since forcible contact with any part of the body falls under Penal Law § 130.52, the pressing of Defendant's chest, legs, pelvis, and groin into Mr. Rapp's body, and Defendant "clutching" Mr. Rapp's shoulders qualifies as a forcible touch, *See* SMF at ⸿ 44-46.

ii.    <u>Defendant Touched Mr. Rapp's Intimate Parts for the Purpose of Sexual Gratification</u>

Defendant's actions clearly suggest he sought to gratify his sexual desire by sexually abusing Mr. Rapp. For Defendant to urge this Court to decide, as a matter of law, that his actions toward Mr. Rapp were not to gratify sexual desire is preposterous. A violation of Penal Law § 130.52 occurs when the act is done, "for the purpose of gratifying the actor's sexual desire," *See* Penal Law § 130.52(1). Defendant claims, "there is no evidence that the alleged

touching was done with the specific intent to gratify sexual desire," *See* Def. Mem. at pg. 13.  It is true that Defendant has never openly stated that he sexually abused Mr. Rapp to gratify his own sexual desire.  However, the courts in New York recognize that "the question of whether a person was seeking sexual gratification is generally a subjective inquiry," *People v. Willis*, 79 A.D.3d 1739, 1740 (4th Dep't 2010), and that there are "inherent challenges to demonstrating an actor's mental state," *People v. Hatton*, 26 N.Y.3d 364, 370 (2015).  As such, whether a person acted for the purpose of gratifying his sexual desire "can be inferred from the conduct of the perpetrator," *Willis* at 1740; *see also People v. Michael H.*, 2021 N.Y. Misc. LEXIS 4789 at *4 (2nd Dep't 2021).

Resolving all ambiguities and factual inferences in favor of Mr. Rapp, Defendant's "intent [to gratify his sexual desire] may be inferred from conduct as well as the surrounding circumstances," *Hatton* at 370.  While Defendant was alone with Mr. Rapp in a bedroom, he picked up Mr. Rapp and touched his buttocks, laid him on a bed, clutched Mr. Rapp's shoulders, and pressed his legs and groin into Mr. Rapp's hips and his chest into Mr. Rapp's chest, *See* SMF at ¶¶ 38, 40-46.  The inferred intent behind Defendant's sexual acts toward Mr. Rapp is made even more apparent considering the other unwanted and unconsented to sexual acts Defendant inflicted on other people.

A few years before Defendant sexually abused Mr. Rapp, Defendant sexually assaulted a man by the name of Andrew Holtzman.  In the summer of 1981, Mr. Holtzman was working in his office at the New York Shakespeare Festival Public Theater when Defendant approached him with a fully erect penis, *See* SMF ¶ 51-52.  Without Mr. Holtzman's consent, Defendant reached down to Mr. Holtzman's "crotch, around the scrotum area, and pulled" Mr. Holtzman up onto the desk, placed himself somewhat on top of Mr. Holtzman and began "rubbing, grinding his

erection" on Mr. Holtzman.  *Id*. at ¶ 53.  Then, in 1988, Defendant made a sexual advance on Justin Dawes, a minor like Mr. Rapp, *Id*. at 54.  Defendant Spacey served Mr. Dawes alcoholic drinks and showed him gay pornography. *Id*.  Without Mr. Dawes' consent, Defendant put his hand on Mr. Dawes' leg in a sexual nature in a way that made Mr. Dawes freeze and feel uncomfortable.  *Id*. at ¶ 55.  These other acts by Defendant show a pattern of Defendant forcing unwanted and unconsented to sexual acts onto other people in and around the time he did the same to Mr. Rapp.  The sexual acts by Defendant on Mr. Holtzman and Mr. Dawes allow a reasonable person to infer that Defendant's actions toward Mr. Rapp were to gratify Defendant's sexual desire.

Defendant alleges that forcible touching and sexual abuse in the third degree require "specific intent" to prove sexual gratification, *See* Def. Memo. at pg. 13, and cites to *People v. Helm, 3 N.Y.S.3d 286* (2014) in support of this proposition.  However, *Helm* specifically states that "intent, including this particular form of specific intent, can be inferred from the nature of the acts committed and the circumstances [under which] they occurred," *Id*. at 286.  Defendant points to *People v. Kassebaum*, 131 N.Y.S.3d 675 (2d Dep't 2020) for the same theory. However, nowhere does the *Kassebaum* Court talk about a requirement of "specific intent" to prove a violation of Penal Law §§ 130.52. or 130.55.  There, the Court overturned the defendant's conviction because the ambiguity of the alleged touching was "not clarified by the complainant's own testimony, which does not support a finding that the touch was sexual," *Kassebaum* at 679.  In essence, the People were not able to prove inferred intent.  Any suggestion by Defendant that his intent to gratify himself cannot be inferred from his conduct and the surrounding circumstances must be disregarded.

Giving the phrase "for the purpose of gratifying the actor's sexual desire" in Penal Law §130.52(1) a fair import and broad construction, and not viewing Defendant's acts toward Mr. Rapp in a silo, the only intent that can be fairly inferred from Defendant's behavior is that he acted to sexually gratify himself.  Certainly, at a minimum, the intent behind Defendant's sexual behavior toward Mr. Rapp is a disputed material fact for the jury.

iii.    Defendant's Unwanted Sexual Touching of Mr. Rapp's Intimate Parts was Forceful

Mr. Rapp was very specific when he described the amount of force Defendant used during the sexual abuse.  Mr. Rapp testified that after Defendant laid him down on the bed, Defendant "fully pressed" his body into him, while he was on his back.  Mr. Rapp further testified that the Defendant's "pelvis was pressing into" Mr. Rapp's hips, "the side of [his] hip," Defendant was "clutching Mr. Rapp's shoulders," and Defendant was putting pressure onto Mr. Rapp's chest, *See* SMF at ¶ 44-46.  Forcible touching under Penal Law § 130.52 occurs when there is "any bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts," *People v. Guaman*, 22 N.Y.3d 678, 684 (2014).

As discussed *supra*, the manner and circumstances surrounding Defendant's touching of Mr. Rapp's buttocks, legs, hips, chest, and shoulders turned those parts of the body into "intimate parts" for the purposes of Penal Law § 130.52.  The pressure Defendant applied to Mr. Rapp's shoulders when he clutched them; the pressure Defendant applied to Mr. Rapp's chest with his chest; and the pressure of Defendant's pelvis, legs, and groin on Mr. Rapp's hips are clear examples of Defendant inflicting bodily contact with some level of pressure to Mr. Rapp's intimate parts.  Drawing all reasonable inferences in Mr. Rapp's favor and believing Mr. Rapp's testimony and evidence, Defendant forcibly touched Mr. Rapp's intimate parts to gratify his own sexual desire.

4.      *Defendant Sexually Abused Mr. Rapp (Penal Law § 130.55)*

In addition to forcibly touching Mr. Rapp, Defendant also sexually abused Mr. Rapp pursuant to Penal Law § 130.55, Sexual Abuse in the third degree.  A violation of Penal Law § 130.55 occurs when someone "subjects another person to sexual contact without the latter's consent," *See* Penal Law § 130.55.  The elements of sexual abuse in the third degree and forcible touching are substantially similar, but there are a few differences between the two Penal Law violations, *See People v. Cassis*, 64 N.Y.S.3d 473, 477 (Crim. Ct. NY County Sept. 12, 2017).

First, forcible touching requires forceful touching, whereas "sexual abuse in the third degree criminalizes *any* sexual touching," *Id*.  Forcible touching also requires that the act occurred for the defendant's gratification, while sexual abuse in the third degree requires that the conduct occurred for either the sexual gratification of the victim or the defendant, *Id*.  And finally, forcible touching requires that the defendant either intend to degrade or abuse the victim, or for the purpose of gratifying the defendant's desire, and sexual abuse in the third degree only requires that the act occurred for purposes of sexual gratification, *Id*.  Therefore, a defendant commits sexual abuse in the third degree when "the defendant subjects another person to sexual contact" and "the defendant did so without the consent of the complainant in that he/she did not expressly or impliedly acquiesce to the defendant's contact," *Id*. at 476.  In relevant part, Penal Law § 130.00(3) defines sexual contact as "touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party.  It includes …the touching of the victim by the actor, whether directly or through clothing…"

Defendant alleges that his touching of Mr. Rapp's buttocks and leg while picking him up does not amount to sexual contact under Penal Law § 130.55/130.00(3), *see* Def. Mem at pg. 13.  However, even a mere graze of a person's buttocks constitutes "sexual contact."  For example,

the court in *People v. Colon (Eladio)*, 2017 N.Y. Misc. LEXIS 3654 at *2 (1st Dep't 2017), found that the element of sexual contact was satisfied when the defendant "approached a woman and touched her buttocks with his knuckles" and, in doing so, merely "brushed the victim's buttocks with the back of his hand," *Colon* at *1-2. The court in *People v. Perez (Miguel)*, 2020 N.Y. Misc. LEXIS 7265 at *1 (1st Dep't 2020), reached an identical conclusion, holding that the "trial court could rationally infer that defendant engaged in 'sexual contact'" when he "grazed her buttocks," *Id.* *1-2. Under this standard, and viewing the evidence in the light most favorable to Mr. Rapp as the non-moving party, Defendant's touching of Mr. Rapp's legs and buttocks constitute sexual contact under Penal Law § 130.55.

Defendant touched several of Mr. Rapp's intimate parts, namely, his buttocks, legs, hips, chest, and shoulders, *See* SMF at ¶ 41, 44-46; *see* discussion *supra* Part B.3.i. Defendant touched Mr. Rapp's intimate parts for the purpose of defendant's sexual gratification, *see* discussion *supra* Part B.3.ii. Mr. Rapp did not – and could not – consent to the sexual touching by Defendant, *see* discussion *supra* Part B.2. And Defendant's touching of Mr. Rapp's legs and buttocks constitutes sexual contact.[1] Accordingly, Defendant's unwanted and unconsented to sexual contact of Mr. Rapp is a violation of Penal Law § 130.55.

## C. *Defendant Came Dangerously Close to Achieving His Objectives*

Even if this Court were to find that Defendant's sexual acts did not violate either Penal Law § 130.52 (Forcible touching) or 130.55 (Sexual abuse in the third degree), at a minimum, Defendant's actions toward Mr. Rapp constitute an attempt under Penal Law § 110.00: "A person is guilty of an attempt to commit a crime, when, with intent to commit a crime, he

---

[1] Of course, Defendant's forcible (and forceful) touching of Mr. Rapp's other intimate parts (his hips, chest, and shoulders) is also sexual contact, as the force of Defendant pressing into those body parts exceeds the "graze" discussed in *Colon* and *Perez*.

engages in conduct which tends to effect the commission of such crime." For attempt, though a defendant may not have achieved his purpose, "his conduct is nevertheless culpable and if carried far enough causes a sufficient risk of harm to be treated as a crime in itself," *People v. Bracey*, 41 N.Y.2d 296, 300 (1977).  To be guilty of attempt to commit a crime, the defendant must have "intended to commit a specific crime…acted to carry out his intent" and carried "the project forward within dangerous proximity to the criminal end to be attained, *Id*.  The dangerously near standard is satisfied, even if the Defendant did not have to "take the final step to effectuate that crime," *United States v. Urena*, 73 F. Supp. 3d 291, 308 (S.D.N.Y. Sept. 18, 2014).  Even if Defendant did not achieve his purpose of forcibly touching and/or sexually abusing Mr. Rapp, there is no doubt Defendant came dangerously close to doing so.

Courts routinely convict defendants of attempted forcible touching (Penal Law §§ 110.00/130.52).  For example, in *People v. Anthinez (alexander)*, 2021 N.Y. Misc. LEXIS 1314 (1st Dep't 2021), the Appellate Term upheld the defendant's conviction for attempted forcible touching when the evidence "established that defendant grabbed the victim's buttocks, without consent, on a crowded subway train," *Id*. at *1.  Defendant intended to forcibly touch Mr. Rapp when he picked him up, laid him down on a bed, and pressed his body into Mr. Rapp's, *see* discussion *supra* Part B.3.i-iii.  Should this Court find that Defendant did not complete his forcible touching of Mr. Rapp, these steps taken by Defendant brought him within dangerous proximity of accomplishing his crime.

To establish that Defendant's actions constitute attempted sexual abuse in the third degree (Penal Law §§ 110.00/130.55), Mr. Rapp need only prove "a showing of attempt to subject [him] to sexual contact without consent," *People v. Lewis*, 901 N.Y.S.2d 909, 909 (Crim. Ct. Kings County Sept. 17, 2009).  For example, in *Lewis*, the Court denied defendant's motion

to dismiss the charge of attempted sexual abuse in the third degree when the facts alleged were that the defendant had attempted to kiss the complainant's mouth, but kissed her cheek instead when she turned her head, *Id*.  The fact that "complainant turned her head when defendant leaned toward her supports the element of lack of consent, which may be established directly or through circumstantial evidence," *Id*.  Indeed, the crime of attempted sexual abuse in the third degree does not even require contact between the defendant and the victim, *People v. Miller*, 856 N.Y.S.2d 443, 460 (Crim. Ct. Kings County Feb. 21, 2008).  Should this Court find that Defendant was unable to complete the act of sexual abuse in the third degree because Mr. Rapp was able to extricate himself from the situation, *See* SMF at ¶ 48, Defendant's actions leading up to the time Mr. Rapp left Defendant's apartment support a finding of attempted sexual abuse in the third degree.[2]

### D.  *Claims of Assault Are Revived by the Child Victims Act*

A claim for assault arises from "contact that may give rise to a reasonable apprehension of imminent harmful conduct," *Okoli v. Paul Hastings LLP*, 117 A.D.3d 539, 540 (1st Dep't 2014).  Mr. Rapp's claim for assault arises out of Defendant's conduct toward him that violates Penal Law ¶¶130.52 (Forcible touching) and 130.55 (Sexual abuse in the third degree).  The various elements of Defendant's sexual acts toward Mr. Rapp—drunkenly walking toward Mr. Rapp, picking him up, laying him down on a bed, pressing his groin into Mr. Rapp's body—all caused Mr. Rapp to fear that he was in imminent apprehension of harmful conduct.  As each act of Defendant's sexual abuse of Mr. Rapp occurs, it progresses from assault to battery, but the assault is ongoing, thereby intertwining Mr. Rapp's claims for assault and battery.  Throughout

---

[2] Any claim by Defendant that crimes of attempt are not revived by the CVA because the act of sexual touching was not completed must fail.  This is for the same reason that claims of assault are revived by the CVA, even if there is no touching, *see* discussion *infra* Part D.

the unwanted sexual interaction, Mr. Rapp remains apprehensive about what harmful conduct will come next.

Defendant asks this Court to find that claims for assault, across the board, are not revived by the Child Victims Act, because an assault does not include "touching," *See* Def. Memo. at pg. 16.  However, there is nothing in CPLR 214-g that suggests a claim is only revived if an offensive touching occurs.[3]  For example, CPLR 214-g also revives claims under Penal Law ¶ 263.05 (Use of a child in a sexual performance).  Yet there is no element of Penal Law ¶ 263.05 that requires touching.  Nothing in CPLR 214-g suggests that the Court should narrowly analyze claims brought pursuant to that statute.  Where a plaintiff properly alleges a violation of Penal Law § 130, all claims that naturally arise, such as assault, are revived by the Child Victims Act.

## CONCLUSION

Defendant asks this Court to step into the shoes of the factfinder to determine whether his conduct violated Penal Law § 130.  It is for the factfinder to resolve the dispute between Mr. Rapp and Defendant about whether the abuse occurred.  It is for the factfinder to decide whether, when Defendant picked up Mr. Rapp and laid him on a bed, and pressed his body into Mr. Rapp, that was a touching, forceful or otherwise, of Mr. Rapp's intimate parts.  And it is for the factfinder to make a determination as to whether Defendant touched Mr. Rapp on a bed, while alone in a bedroom, to sexually gratify himself.

In deciding this motion, the Court must accept Mr. Rapp's testimony and all reasonable inferences that from flow therefrom as true.  Viewing the evidence in the light most favorable to Mr. Rapp as the non-moving party, it becomes clear that Defendant's conduct, as claimed by Mr. Rapp, is a violation of Penal Law § 130, thereby reviving Mr. Rapp's claims for assault, battery,

---

[3] To be clear, as discussed throughout this Memorandum, Mr. Rapp alleges that Defendant did touch him in an offensive manner.

and intentional infliction of emotional distress under the Child Victims Act.  Defendant did not

meet his burden of proving that Mr. Rapp's claims are time-barred.  As such, Mr. Rapp

respectfully requests that Defendant's Motion for Summary Judgement be denied in all respects.

Dated: New York, NY
      March 18, 2022             Respectfully submitted,

Peter J. Saghir (PJS4276)
GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
Attorneys for Plaintiff
Anthony Rapp
80 Pine Street, 34th Floor
New York, NY 10005
Tel: (212) 943-1090
Email: psaghir@gairgair.com

21