**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANTHONY RAPP and C.D.,

                          Plaintiffs,

    -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                          Defendant.

Case No. 1:20-cv-09586 (LAK) (SDA)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO

# PLAINTIFF'S RENEWED MOTION TO REMAND

KELLER / ANDERLE LLP
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick
Jay P. Barron (*pro hac vice*)
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
(949) 476-8700
jkeller@kelleranderle.com
cscolnick@kelleranderle.com
jbarron@kelleranderle.com

SHER TREMONTE LLP
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................- 1 -

BACKGROUND ......................................................................................................- 2 -

LEGAL STANDARDS ............................................................................................- 4 -

   A.  Mr. Fowler Properly Removed This Action To Federal Court Because It Has Original Jurisdiction Over This Case ................................................................................- 4 -

   B.  Mr. Fowler Must Show The Basis For Jurisdiction Only By Preponderance Of The Evidence , A Standard He Undoubtedly Has Met ..............................................- 6 -

   C.  The Governing Law Regarding Domicile.......................................................- 8 -

   D.  Plaintiff Should Be Judicially Estopped From Asserting Mr. Fowler's Actual Place Of Residence Was Anywhere Other Than His Baltimore Home................................- 9 -

THE EVIDENCE OVERWHELMINGLY SHOWS MR. FOWLER WAS DOMICILED IN MARYLAND WHEN THIS CASE WAS FILED .................................................- 11 -

   A.  Mr. Fowler Repeatedly Has Testified Under Oath About His Maryland Domicile And His Intent To Always Return To Maryland.................................................................- 11 -

   B.  Mr. Fowler Purchased A Home and Lived in Maryland ................................- 12 -

   C.  Mr. Fowler Has A Large Storage Facility In Baltimore For His Stored Personal Belongings ............................................................................................................- 16 -

   D.  Mr. Fowler Has Spent More Time In Maryland Than Anywhere Else .........- 17 -

   E.  Mr. Fowler Has Filed Taxes And Paid State Income Taxes As Maryland Resident Since At Least 2015 ........................................................................................................- 18 -

   F.  Mr. Fowler's Has Purchased And Uses Multiple Cars Registered in Maryland ...........- 19 -

   G.  Mr. Fowler Has Substantial Roots In The Baltimore Community ...............- 20 -

   H.  Plaintiff's Claim That Mr. Fowler Is Domiciled In England Is Unsubstantiated And False -21 -

   I.  Plaintiff's Other Claims Are Disingenuous and Belied By The Evidence ....................- 26 -

      1.  Plaintiff's Illegitimate Attacks On Mr. Fowler's Credibility......................- 26 -

      2.  Voting Record .............................................................................................- 26 -

      3.  Miscellaneous Items.....................................................................................- 26 -

J.    The Court Can And Should Deny Plaintiff's Motion Without An Evidentiary Hearing.- 28 -

CONCLUSION...........................................................................................................................- 28 -

## **TABLE OF AUTHORITIES**

**Cases**

*ACS v. Malek*, 2020 WL 6748476 (S.D.N.Y. Oct. 7, 2020) ............................................................ 5

*Barnes v. Aurelius*, 2013 WL 5548864 (S.D.N.Y. Sept. 27, 2013) ............................................. 18

*Chevalier v. USA Exp. Moving & Storage Inc.*, 2004 WL 1207874 (S.D.N.Y. June 2, 2004) ...... 9

*Chevalier v. USA Exp. Moving & Storage, Inc*., 2004 WL 1207874 (S.D.N.Y. June 2, 2004) ... 11

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547 (2014) ........ 4, 6

*Fax Telecomm. Inc. v. AT&T*, 138 F.3d 479 (2d Cir. 1998) .......................................................... 4

*Fed. Ins. Co. v. Tyco Int'l Ltd*., 422 F.Supp.2d 357 (S.D.N.Y. 2006) ............................................ 5

*Finnegan v. Long Island Power Auth*., 409 F.Supp.3d 91 (E.D.N.Y. 2019) .............................. 6, 8

*Greer v. Carlson*, 2020 WL 6064167 (S.D.N.Y. Oct. 14, 2020) .................................................... 8

*Herrick Co., Inc. v. SCS Comms., Inc.*, 251 F.3d 315 (2d Cir. 2001) ...................................... 8, 10

*In re Joe's Friendly Service & Son, Inc*., 2020 WL 3120288 (Bankr. E.D.N.Y. June 11, 2020). 10

*Katz v. Goodyear Tire & Rubber Co*., 737 F.2d 238 (2d Cir. 1984) .............................................. 7

*Kennedy v. Trs. Of Testamentary Tr. of Will of Kennedy*, 633 F.Supp.2d 77 (S.D.N.Y. 2009) ..... 9

*Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) ................................................................ 9

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002) ............................................................................... 8

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) ........................................... 28

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001) ............................. 10

*Pacho v. Enterprise Rent-A-Car*, 510 F.Supp.2d 331 (S.D.N.Y. 2007) ........................................ 8

*Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ......................................................................... 8

*Paul Revere Life Ins. Co. v. Segal*, 2000 WL 1448626 (S.D.N.Y. Sept. 28, 2000) ...................... 7

*Quakenbush v. Allstate Ins. Co*., 517 U.S. 706, 116 S.Ct. 1712 (1996) ........................................ 5

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941) ...................................... 5

*Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 123 S.Ct. 366 (2002) ...................................... 5

*Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S. Ct. 584 (1976) ............................. 5

**Statutes**

28 U.S.C. § 1332(a) ................................................................................................................ 5, 6

28 U.S.C. § 1441 ....................................................................................................................... 6

28 U.S.C. § 1441(a) ............................................................................................................ 4, 5, 6

N.Y. CPLR § 308(4) .................................................................................................................. 9

Defendant Kevin Spacey Fowler ("Mr. Fowler"), by and through his counsel, respectfully submits this opposition to Plaintiff Anthony Rapp's ("Plaintiff") Renewed Motion to Remand.  *See* ECF Nos. 172, 174.

## **INTRODUCTION**

Plaintiff's renewed motion to remand this case to state court is a Hail Mary pass.  After nearly a full year of discovery, over twenty depositions, and the parties' joint submission of pretrial documents confirming this case is ready for trial, Plaintiff seeks to strip this Court of jurisdiction over the matter, relying on the same unsupported conjecture this Court soundly rejected when it denied Plaintiff's initial motion to remand in January 2021.  Now, over a month after Mr. Fowler filed a motion for summary judgment, and several weeks after the Court issued its Pretrial Order and set this case for trial, Plaintiff has resuscitated his meritless claim that this Court lacks subject matter jurisdiction because he claims Mr. Fowler is not domiciled in Maryland and instead has been domiciled in England.  In his renewed motion, Plaintiff shows he will blatantly misrepresent the record and misstate the legal standard in a desperate effort to avoid facing an imminent jury trial or a ruling on Mr. Fowler's dispositive motion.

Here, there is no legitimate dispute that Mr. Fowler was domiciled in Maryland when this case was filed (and for many years before).  Mr. Fowler has lived in and called Maryland his home since at least 2014.  While he has traveled for work and vacation, Mr. Fowler always returns home to Maryland, where he owns his residence, keeps most of his belongings, pays state tax, and has developed roots in the community.

Despite Plaintiff's spurious attacks and unsubstantiated speculation, Plaintiff's extensive jurisdictional discovery only confirmed Mr. Fowler's Maryland domicile.  Among his many career endeavors, Mr. Fowler worked as the artistic director of the Old Vic theatre.  But that role – which

was far from his exclusive work – ended in 2015.  He continues to license a flat in London and visits occasionally, albeit increasingly infrequently.  But none of that means he is domiciled abroad.  Mr. Fowler is an American citizen who since 2012 has lived, worked, owned residences, and spent more time in Maryland than anywhere else.  And by no later than 2014, he has called Maryland his home and intended to stay in the state indefinitely.  He has verified in investment materials, on his taxes, and in a prior federal case that he is domiciled in Maryland.  And his actions have backed up those assertions.

Mr. Fowler respectfully requests the Court find (again) what is abundantly clear from the evidence – he is a Maryland domicile.  As a result, complete diversity exists, and Plaintiff's sole basis for challenging this Court's jurisdiction lacks merit.  Plaintiff's motion should be denied.

## **BACKGROUND**

Plaintiff filed this case in New York state court on September 9, 2020.  *See* ECF No. 6-1.  On October 5, 2020, Plaintiff filed an Affidavit of Service asserting Mr. Fowler had been served under New York law with the Summons and Verified Complaint at Mr. Fowler's Baltimore, Maryland residence.  *See* ECF No. 6-11.

On November 13, 2020, Mr. Fowler timely and properly removed the case to this Court under 28 U.S.C. §§ 1332, 1441, and 1446.  *See* ECF Nos. 1, 4, 6.  On December 14, 2020, Plaintiff filed his original motion to remand to state court.  *See* ECF No. 11.  Plaintiff's challenge to subject matter jurisdiction was limited to his claim that Mr. Fowler was domiciled abroad in England rather than in Maryland such that complete diversity did not exist.  Mr. Fowler opposed that motion on December 28, 2020, and submitted a sworn declaration regarding his Maryland domicile.  *See* ECF Nos. 15, 15-1.

On January 5, 2021, the Court denied Plaintiff's motion to remand.  *See* ECF No. 17.  The

Court's order permitted Plaintiff to conduct jurisdictional discovery, however, directing that "[d]uring the course of discovery, plaintiffs are entitled to seek evidence bearing on the domicile question, but examination of that question must be proportional to the needs of resolving the jurisdictional issue." *Id*. The Court also permitted Plaintiff to renew his motion to remand "[s]hould the jurisdictional issue remain unresolved after the completion of such jurisdictional discovery." *Id*.

During discovery, Plaintiff served document requests on Mr. Fowler about jurisdictional issues, typically seeking documents "sufficient to show" certain aspects of Mr. Fowler's claimed Maryland domicile. Scolnick Decl., ¶ 4, Ex. 17. Mr. Fowler responded to that discovery and produced documents consistent with those responses. *Id*., Ex. 18. Plaintiff raised no dispute with Mr. Fowler's responses except as to eight requests, for which he filed a letter motion to compel further responses on August 24, 2021. *See* ECF No. 81. Mr. Fowler opposed that motion because: (1) Plaintiff failed to show the need for Mr. Fowler's entire tax returns (as opposed to the selected pages he had produced showing he paid taxes as a Maryland resident); (2) Plaintiff's requests for documents about Mr. Fowler's doctors, attorneys, and accountants was intrusive, sought private information, and was not proportional; and (3) Plaintiff's requests about Mr. Fowler's storage facility and his charitable connections with Under Armour and Johns Hopkins had been sufficiently responded to and any follow up questions could be explored at deposition. *See* ECF No. 83. On August 24, 2021, the Court issued an order denying Plaintiff's motion in all respects except that Mr. Fowler was to provide the initials of his doctors, accountants, and other professionals in Maryland and England, which Mr. Fowler promptly did. *See* ECF No. 88. The Court also recognized that Plaintiff could inquire at depositions about the subjects of certain other requests. *Id*.

Mr. Fowler was deposed on January 17, 2022, and he was questioned extensively by Plaintiff's counsel about jurisdiction issues. *See, e.g.,* Scolnick Decl., ¶ 2, Ex. 16. As detailed below, Mr. Fowler's Maryland domicile was only further confirmed by this jurisdictional discovery.

Discovery closed on January 18, 2022.[1]  *See* ECF No. 118. On March 4, 2022, Mr. Fowler moved for summary judgment, and that motion has been fully briefed. *See* ECF Nos. 159, 176. On that same day, the parties submitted the proposed Joint Pretrial Order. *See* ECF No. 156. On March 7, 2022, the Court signed the Joint Pretrial Order. *See* ECF No. 164. On March 10, 2022, the Court issued an order setting trial for October 4, 2022. *See* ECF No. 165. Plaintiff filed his renewed motion to remand nearly a month later, on April 6, 2022. *See* ECF Nos. 172, 173.

## LEGAL STANDARDS

### A.    Mr. Fowler Properly Removed This Action To Federal Court Because It Has Original Jurisdiction Over This Case

A case filed in state court is properly removed to federal court when the district court has original subject matter jurisdiction. 28 U.S.C. § 1441(a); *Fax Telecomm. Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998). The notice of removal need set only forth a "short and plain statement" of the grounds for removal, and "courts should apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S. Ct. 547, 553 (2014) (citation and internal quotation omitted).

---

[1]    Plaintiff belatedly served three sets of written document requests – his third, fourth, and fifth notices to produce – that demanded responses after the close of discovery. Scolnick Decl., ¶ 5. Mr. Fowler objected to those requests on numerous grounds, including their untimeliness. *Id*. Plaintiff filed a letter motion to compel as to the third notice to produce, which the Court denied in all respects on February 24, 2022. *See* ECF No. 151. Plaintiff did not seek to compel further responses to his later-served fourth and fifth notices to produce, which included some requests apparently aimed at jurisdictional discovery. Scolnick Decl., ¶ 5. The fourth and fifth notices to produce were substantively objectionable and even more untimely.

As an initial matter, Plaintiff mischaracterizes the applicable legal standard when he claims removal jurisdiction is to be "strictly construed." The cases Plaintiff relies on are inapposite and readily distinguishable. In *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 123 S.Ct. 366 (2002), the issue was whether the All Writs Act permitted removal of a state action to federal court. The Supreme Court held the removal was improper because 28 U.S.C. § 1441 permitted removal only of actions over which the federal court had original jurisdiction, but the All Writs Act did not provide "any federal subject-matter jurisdiction in its own right." *Id.* at 31, 34. Likewise, in *ACS v. Malek*, 2020 WL 6748476, at *2-3 (S.D.N.Y. Oct. 7, 2020), the notice of removal contained numerous defects not present here, including failing to make any allegation suggesting diversity or federal question jurisdiction and failing to show subject matter jurisdiction based on a federal statute.

Here, unlike *Syngenta* and *ACS*, Mr. Fowler properly removed this case under 28 U.S.C. § 1441(a), because this Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a). A court cannot remand a case back to state court when the case properly was removed to federal court. *See, e.g., Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336, 344-345, 96 S. Ct. 584, 590 (1976), abrogated on other grounds by *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712 (1996). Plaintiff's claim that the right to removal must be "strictly construed" applies only to circumstances where the removing party has not asserted a proper statutory basis for the removal.[2] It does not mean that a removing party's proper invocation of jurisdiction under 28

---

[2]     Likewise, Plaintiff's claims that Congress intended to restrict federal court jurisdiction and that the removal statutes should be construed narrowly are immaterial, because Mr. Fowler's Notice of Removal set forth an expressly authorized basis for removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941) is inapposite. There, the court found removal was not permissible by a plaintiff on the basis of a counterclaim filed against that plaintiff because the applicable removal statute was expressly limited to "defendant or defendants." Likewise, in *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 367 (S.D.N.Y. 2006), the issue was whether a third-

U.S.C. § 1441 can be disregarded or subjected to a heightened evidentiary bar.

Mr. Fowler's Notice of Removal properly asserted this Court has original jurisdiction under 28 U.S.C. § 1332(a) over this matter because: (1) complete diversity exists between Plaintiff and Mr. Fowler; and (2) the amount in controversy exceeds $75,000.[3]

**B.**     **Mr. Fowler Must Show The Basis For Jurisdiction Only By Preponderance Of The Evidence , A Standard He Undoubtedly Has Met**

When removal is challenged, the party invoking federal jurisdiction must show the factual basis for such jurisdiction only by a preponderance of the evidence.  *Finnegan v. Long Island Power Auth.*, 409 F.Supp.3d 91, 97 (E.D.N.Y. 2019).  For cases removed on diversity grounds, "the party asserting diversity must first establish his domicile" and then "the challenger assume[s] the burden of proving that there has been a change in that situation." *Id.*

Plaintiff wrongly asserts Mr. Fowler has a higher burden of establishing his Maryland domicile by clear and convincing evidence.  That is not the law.  And it would violate the statutory intent and plain meaning of 28 U.S.C. § 1441 if a court applied a higher burden on parties invoking a federal court's jurisdiction.

---

party defendant was a "defendant" which could remove under 28 U.S.C. § 1441(a).  Here, there is no question about the statutory authority for removal that requires or warrants closer judicial scrutiny.  Mr. Fowler indisputably is a defendant covered by 28 U.S.C. § 1441 with a right to remove to federal court.

[3]     Plaintiff has not disputed, and does not dispute, Mr. Fowler's allegation that Plaintiff is a New York citizen. *See* ECF Nos. 1, 6 (Notice of Removal) at ¶¶ 6, 8.  If Plaintiff wanted to dispute this allegation, he was required to supply that information to the Clerk within twenty-one (21) days after removal. *See* S.D.N.Y. Local Rule 81-1.  He did not do so.

Likewise, Plaintiff has not disputed, and does not dispute, that the amount in controversy exceeds $75,000, exclusive of interests and costs. *See* ECF Nos. 1, 6 at ¶¶ 9-10.  Mr. Fowler's allegation that the jurisdictional minimum has been met should be accepted by the Court. *See, e.g., Dart Cherokee Basin Operating Co., LLC v. Owen*s, 574 U.S. 81, 87, 135 S. Ct. 547, 553 (2014).  Moreover, Plaintiff testified he seeks $40 million in damages in this case. *See* Scolnick Decl., Ex. 17 (Plaintiff Depo. RT) at 312:10-22.  Thus, absent Plaintiff's spurious challenge to Mr. Fowler's Maryland domicile, this Court's diversity jurisdiction is undisputed.

Plaintiff's relies on *Paul Revere Life Ins. Co. v. Segal*, 2000 WL 1448626, at *1-2 (S.D.N.Y. Sept. 28, 2000) to claim a heightened burden exists here. But the issue in *Paul Revere* was not a party's domicile for diversity jurisdiction but the defendant's *personal jurisdiction* challenge which required an examination of defendant's domicile under a provision of New York state law. Further, the plaintiff – as the proponent of federal jurisdiction – met its initial burden of establishing the defendant's longtime domicile was in New York, which the defendant acknowledged. *Id*. at *2. It was then the defendant – as the party opposing jurisdiction – which had to establish that the plaintiff's domicile changed shortly before the lawsuit was filed. *Id*.

Likewise, *Katz v. Goodyear Tire & Rubber Co*., 737 F.2d 238 (2d Cir. 1984) is inapposite because it did not address a party's domicile for purposes of removal or diversity jurisdiction. The issue of domicile arose in *Katz* because a dispute existed about whether the plaintiff was a New York domiciliary who could invoke the state's borrowing statute and get the benefit of a longer statute of limitations for his claims. *Id.* at 240-241. The parties agreed the plaintiff had been domiciled in New York for several decades. *Id*. But the defendant moved for summary judgment, arguing the borrowing statute did not apply because plaintiff allegedly had moved to Florida. *Id*. Under these circumstances, the defendant – as the party moving for summary judgment and asserting a change in domicile – had to show plaintiff's domicile had changed by clear and convincing evidence. *Id*. at 243-244. The court found factual disputes precluded summary judgment on defendant's motion.

The procedural and factual circumstances of these cases make clear they have no applicability here.[4] Plaintiff cites to no case holding that a party invoking federal jurisdiction (such

---

[4]     Unlike the cases cited by Plaintiff, Mr. Fowler has not agreed or conceded that he previously established his domicile in England such that any change from that domicile would be necessary. Indeed, Plaintiff's counsel questioned Mr. Fowler extensively on this topic, and Mr.

as a removing defendant) who provides competent evidence of his domicile as of the time of filing must meet a heightened burden because of an opponent's contention that an earlier domicile applies. Rather, the case law is straightforward: a party invoking the federal court's jurisdiction must show subject matter jurisdiction only by the preponderance of the evidence. *See, e.g., Luckett v. Bure*, 290 F.3d 493, 496-497 (2d Cir. 2002) (party asserting subject matter jurisdiction has burden of proving it by preponderance of the evidence); *Finnegan*, 409 F.Supp. 3d at 97 ("The party asserting subject matter jurisdiction . . . bears the burden of showing a factual basis for jurisdiction by a preponderance of the evidence." (internal quotation omitted)).

If anything, the heightened "clear and convincing" standard Plaintiff attempts to impose on Mr. Fowler would apply to *Plaintiff*, as the party challenging jurisdiction by asserting a different domicile. *Cf. Herrick Co., Inc. v. SCS Comms., Inc.*, 251 F.3d 315 (2d Cir. 2001) (finding party invoking jurisdiction has the initial burden of establishing a diverse domicile and the party opposing jurisdiction has burden of showing some other domicile); *Pacho v. Enterprise Rent-A-Car*, 510 F.Supp.2d 331, 335 (S.D.N.Y. 2007) (same).

## C.    The Governing Law Regarding Domicile

A person has only one domicile at any given time. *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). A person's domicile is "the place where a person has his true fixed home and principal

---

Fowler repeatedly clarified that even while he worked for the Old Vic theater, he only viewed London as a "temporary home." *See, e.g.*, Scolnick Decl., Ex 16 (Fowler Depo. RT) at 128:23-129:9 ("I have not said at any time in this testimony that I considered London my home. I have said it was a temporary place for me because I had a job there, and when that job was over I no longer looked at London as a temporary home."); *id*., Ex. 16 at 115:7-17 (". . . I set up as a resident, but not a citizen, of the United Kingdom."); *id*., Ex. 16 at 126:23-128:22. Mr. Fowler never applied to become a UK citizen. *Id*., Ex. 16 (Fowler Depo. RT) at 127:8-10. Courts have recognized that "[i]t is not uncommon for U.S. citizens who are living abroad to intend to return to the United States." *Greer v. Carlson*, 2020 WL 6064167, at *6 (S.D.N.Y. Oct. 14, 2020). And Mr. Fowler has met his burden of showing he had been domiciled in Maryland at the time this lawsuit was filed in September 2020 (and for many years before that).

establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (citation omitted).  Although residence alone does not establish one's domicile, "[a]n individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of his domicile." *Willis v. Westin Hotel Co*., 651 F.Supp. 598, 601 (S.D.N.Y. 1986).  Further, "[t]he general rule in the Second Circuit has been that a sworn statement regarding citizenship will be a strong factor in favor of a similar judicial finding." *Chevalier v. USA Exp. Moving & Storage Inc.*, 2004 WL 1207874, at *2 (S.D.N.Y. June 2, 2004) (internal quotations omitted).

Courts also consider other factors in evaluating a party's intent for purpose of domicile, including the party's residence, whether individual owns or rents the residence, how permanent the living arrangement appears, the payment of taxes, and other associations to the claimed domicile.  *See, e.g., Kennedy v. Trs. Of Testamentary Tr. of Will of Kennedy*, 633 F.Supp.2d 77, 81 (S.D.N.Y. 2009).  No single factor is determinative, and courts look to the totality of the evidence to determine intent.  *Id*.[5]

### D.   Plaintiff Should Be Judicially Estopped From Asserting Mr. Fowler's Actual Place Of Residence Was Anywhere Other Than His Baltimore Home

Although a party's residence does not establish one's domicile, it is an important factor in the determination and has been found to be prima facie evidence of domicile.  *See, e.g., Willis*, 651 F.Supp. at 601.  Here, Plaintiff previously represented in his filings in this action he agrees Mr. Fowler's "actual place of residence" is Mr. Fowler's Baltimore home.  After suing in New York state court, Plaintiff claimed Mr. Fowler was properly served with the complaint and summons through the "affix and mail" method authorized under N.Y. CPLR § 308(4).  *See* ECF No. 6-11.

---

[5]      The court's factual findings as to a party's domicile can be overturned on appeal only if they are "clearly erroneous."  *See, e.g.*, Fed. R. Civ. P. 52(a).

That service method requires the serving party to affix the summons and complaint to the door of the "actual place of business, dwelling place, or usual place of abode" and then to mail the documents to the last known residence or actual place of business.  On October 5, 2020, Plaintiff filed an Affidavit of Service asserting the summons and complaint were served on Mr. Fowler by affixing and mailing those documents to Mr. Fowler's "actual place of residence," and listing Mr. Fowler's Baltimore home's address as that "actual place of residence."  *See* ECF No. 6-11. Plaintiff's filing triggered Mr. Fowler's deadline to respond to the complaint, which Mr. Fowler timely and properly did by filing his Notice of Removal.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001).  "While judicial estoppel does not apply to positions taken on questions of law and cannot be used to confer subject matter jurisdiction as a matter of law, it may be applied to the factual representations that support a legal conclusion that subject matter jurisdiction exists."  *In re Joe's Friendly Service & Son, Inc.*, 2020 WL 3120288, at *9 (Bankr. E.D.N.Y. June 11, 2020); *cf. Herrick*, 251 F.3d at 324 (stating a party's pre-trial admission that diversity jurisdiction existed was strong factor favoring similar finding).

Here, Plaintiff successfully represented to the Court that Mr. Fowler's actual place of residence was Mr. Fowler's Baltimore home, which Mr. Fowler relied on in appearing and responding to the complaint.  But in his renewed motion to remand, Plaintiff now claims Mr. Fowler's actual place of residence was in London.  Besides that contention being plainly contrary to the evidence, Plaintiff should be judicially estopped from taking that contrary factual position as to Mr. Fowler's residence, and the Court should conclusively establish that Mr. Fowler's actual

residence was in Baltimore.  Mr. Fowler's residence in Maryland is strong evidence of his Maryland domicile.

## THE EVIDENCE OVERWHELMINGLY SHOWS MR. FOWLER WAS DOMICILED IN MARYLAND WHEN THIS CASE WAS FILED

Both with his opposition to Plaintiff's initial remand motion and in opposing Plaintiff's renewed motion, Mr. Fowler provided competent evidence that overwhelmingly establishes he was domiciled in Maryland when this action was filed.  Mr. Fowler's showing confirms this Court's diversity jurisdiction, regardless of the burden to which he is held.

**A.**     **Mr. Fowler Repeatedly Has Testified Under Oath About His Maryland Domicile And His Intent To Always Return To Maryland**

As stated, a party's sworn statement of domicile is a strong factor in the determination. *See, e.g., Chevalier v. USA Exp. Moving & Storage, Inc*., 2004 WL 1207874, at *2 (S.D.N.Y. June 2, 2004).  This Court recognized that in its order denying Plaintiff's first motion to remand.  *See, e.g.*, ECF No. 17.  The Court rejected Plaintiff's claim that Mr. Fowler's declaration could be disregarded "on the theory that it is 'self serving' and not 'competent,'" finding such proposition to be "entirely inappropriate." *Id*.  The Court recognized that "[c]ertainly Spacey is the only person who is competent to testify on the basis of personal knowledge with respect to whether 'he has the intention of returning' to Maryland 'whenever he is absent,'" although other evidence also may bear on the issue *Id*.

Mr. Fowler repeatedly asserted he has resided in Maryland since at least 2014 and that, during that entire time, he intended to remain in Maryland indefinitely and always return to Maryland whenever he has traveled.  *See* Fowler Decl. (ECF No. 15-1) at ¶ 2.  Maryland is Mr. Fowler's home and permanent residence.  *Id*.  Mr. Fowler's sworn assertions in this case are consistent with representations he has made in his important financial matters.  In September 2014

– years before Plaintiff sued or made his allegations public – Mr. Fowler submitted an investor statement with Rothberg Ventures fund certifying his state of domicile or residence as Maryland. *See* Fowler Supp. Decl., ¶ 10, Ex. 8.   Mr. Fowler's testimony also is consistent with his representations in 2019 to another federal court.   In January 2019 – also before Plaintiff sued – Mr. Fowler submitted a sworn declaration in connection with a lawsuit in the United States District Court for the Central District of California.   *See* ECF No. 15-1 at ¶ 13; *see also* ECF No. 15-3.   As he has done here, Mr. Fowler verified under oath he has been domiciled in Maryland since at least 2014.   *Id*.   Mr. Fowler's longtime Maryland domicile is not a new or recent development.

**B.**   <u>**Mr. Fowler Purchased A Home and Lived in Maryland**</u>

Mr. Fowler is a United States citizen domiciled in Maryland since at least 2014.   *See* Fowler Decl. (ECF No. 15-1) at ¶ 2.   By 2014, Mr. Fowler had already been living in Maryland for two years working on the Netflix television series *House of Cards*, which filmed primarily in Maryland.   *Id*., ¶ 3.   After two years of living in and discovering the state, Mr. Fowler became enamored with the place and made it his permanent home.   *Id*.   Although the television show was a success by that time, Mr. Fowler decided he would stay and live in Maryland no matter how long the show ran.   *Id*.   His intention was borne out by subsequent events.   Even after his association with *House of Cards* ended in 2017, Mr. Fowler kept living in Baltimore and continues to live there to this day.   *Id*., ¶¶ 4-5.   Indeed, Plaintiff already admitted in this case that Mr. Fowler's Baltimore home is his "actual place of residence," and he should be bound by that admission.

In July 2014, Mr. Fowler bought a home in Severna Park near Annapolis, Maryland, which he had been renting and living in for two years during the initial years of filming *House of Cards*. Fowler Supp. Decl., ¶ 4.   That Severna Park home became Mr. Fowler's primary residence.   *Id*. The title of the Severna Park home was held in the name of the Greybeard Industries Trust, which

was established to hold title to the Severna Park home.  *Id*., ¶ 4, Exs. 2-3.  Mr. Fowler was the

grantor and beneficiary of that trust, and his then-business manager's husband William Shea, was

the trustee.  *Id*., Exs. 2-3.  By its explicit terms, the Greybeard Industries Trust was a "directional

holding trust" under which the duties "assumed by the Trustee are exercisable only pursuant to the

directions of the Grantor [*i.e.*, Mr. Fowler]."  *Id*., Ex. 3.   The trust expressly permits Mr. Fowler

to reside in the Severna Park property, and provided that Mr. Fowler had sole authority to direct

the sale of the property, with any proceeds to be used as Mr. Fowler wished.  *See, e.g., id*., Ex. 3

at §§ 1.1, 6.1, 6.4.  Mr. Fowler structured the transaction in this manner to protect his privacy and

safety, as is typical for high profile celebrities.  *See* Ruiz-Hoffman Decl., ¶¶ 3-4; Fowler Supp.

Decl., ¶ 3.  There is no legitimate dispute that Mr. Fowler was the beneficial owner of the Severna

Park home, that it was purchased with Mr. Fowler's funds, or that he resided there after purchasing

it.  *Id*.

In late 2016, Mr. Fowler looked to move from his Severna Park home closer to Baltimore.

In October 2016, Mr. Fowler leased a residence at 622 Ponte Villas, Baltimore, Maryland ("Pier

Home") by directing his business manager, Evan Lowenstein, to enter into a six-month lease.[6]

Fowler Supp. Decl., ¶ 5; Ruiz-Hoffman Decl., ¶ 5.  Again, to protect Mr. Fowler's privacy and

ensure his safety, Mr. Lowenstein's name was on the lease agreement, although he was reimbursed

with Mr. Fowler's funds.  *See* Scolnick Decl., Ex. 16 (Fowler Depo. RT) at 152:23-154:7; Ruiz-

Hoffman Decl., ¶ 5; Lowenstein Decl., ¶¶ 3-4, Exs. 11-12.  There can be no legitimate dispute that

the lease of the Pier Home was for Mr. Fowler, as contemporaneous communications show.  *Id*.

---

[6]     Showing no regard for Mr. Fowler's privacy, Plaintiff publicly filed documents in this case disclosing the address of the Pier Home, including on the Affidavit of Service and in his initial motion to remand.  As a result, Mr. Fowler's residence became a matter of public record without his approval or prior knowledge, and it is impossible to "unring" this bell.

Shortly after initiating that lease, Mr. Fowler moved into the Pier Home.  Fowler Supp. Decl., ¶ 5; Lowenstein Decl., ¶ 4.  Mr. Fowler determined that he wanted to make the Pier Home his long-term home.  *See* Fowler Supp. Decl., ¶ 5.  In February 2017 (before the lease expired), Mr. Fowler purchased it.  *Id*., ¶ 5, Ex. 4; *see also* Ruiz-Hoffman Decl., ¶¶ 6-7, Ex. A.  As with his other transactions, this purchase was made in a manner to protect Mr. Fowler's privacy.  *Id*.  The title owner of the Pier Home was and is an entity called Clear Toaster, LLC, which is a Maryland limited liability company formed on February 1, 2017, specifically to hold the Pier Home asset. *See* Ruiz-Hoffman Decl., ¶ 6-7; Fowler Supp. Decl., ¶ 6, Ex. 5.  The sole member of Clear Toaster, LLC at the time of formation was a trust set up for this transaction, The 12472 Trust Under Trust Agreement Dated January 25, 2017 ("12472 Trust").  Fowler Supp. Decl., ¶ 6, Ex. 5.  Mr. Fowler was and is the sole beneficiary of the 12472 Trust, and his business manager David Bolno was the trustee.  *Id*., ¶ 6, Ex. 6.

The purchase of the Pier Home closed on or about February 10, 2017.  *Id*., ¶ 5, Ex. 4. To purchase the Pier Home, Mr. Fowler first obtained a bridge loan for $6 million, with approximately $300,000 in other funds from one of Mr. Fowler's trusts for the balance of the purchase price and closing costs.  Ruiz-Hoffman Decl., ¶ 6.  Shortly thereafter, Clear Toaster LLC secured a loan for $4,237,500 to pay off the bridge loan used to purchase the Pier Home.  *Id*., ¶ 7.  Mr. Fowler provided a personal guaranty for that loan.  *Id*., ¶ 7, Ex. A.  Mr. Fowler's trust also paid the $1,784,488 balance on the bridge loan.  *Id*., ¶ 7.  The funds to purchase the Pier Home came from and belonged to Mr. Fowler.  *Id*.; Fowler Supp. Decl., ¶ 6.

Plaintiff's suggestion that Mr. Fowler did not own the Pier Home because of how title was

held is false and disingenuous.[7]  Mr. Fowler is the trustor and beneficiary of the 12472 Trust.

Fowler Supp. Decl., ¶ 6, Ex. 6.  The trustee was Mr. Fowler's business manager.  *Id*.  The 12472

Trust was revocable at any time, and the terms of the trust required the trustee to act at Mr. Fowler's

direction as to the ultimate asset of the trust, *i.e.*, the Pier Home.  *Id*.  And the 12472 Trust expressly

permits Mr. Fowler to use the Pier Home as his residence with no rent or payment obligation,

which Mr. Fowler did.  *Id*.[8]

Plaintiff also insinuates an impropriety because the membership in Clear Toaster, LLC was

transferred from the 12472 Trust to another of Mr. Fowler's trusts, the K Speaks Trust dated

November 2, 2017 ("K Speaks Trust"), in late 2020.  Mr. Fowler executed the assignment of that

membership interest on November 10, 2020, and Mr. Bolno signed it the following month.  Fowler

Supp. Decl., ¶ 7, Ex. 7; Weintraub Decl., ¶ 3.  The purpose of that assignment had nothing to do

with any change in Mr. Fowler's domicile or living arrangement and had nothing to do with this

case.  *Id*.  Instead, it resulted from Mr. Fowler's global estate planning changes that consolidated

several beneficial interests from other trusts to the K Speaks Trust.  *Id*.  This estate planning change

had been discussed beginning in 2018 but was not implemented until late 2020.  *Id*.  It did not

change Mr. Fowler's assets or his Maryland domicile – he remained the beneficial owner of the

Pier Home both before and after the change.  *Id*.  And the timing of the estate planning changes

---

[7]    Plaintiff's assertion that "[t]he only property disclosed by Mr. Spacey in the entirety of this jurisdictional discovery that bears his own name is the London apartment . . ." is also false.  *See* ECF No. 174 at 5.  Mr. Fowler explained in his deposition that "the apartment itself is owned by a trust."  Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 117:11-13.  Indeed, the very document Plaintiff relied upon to make this argument (Ex. Q to Plaintiff's Renewed Motion) is a license agreement outlining Mr. Fowler's ability to use the London apartment as Licensee.

[8]    Plaintiff makes the absurd claim that Mr. Fowler is somehow denying the trust's separate existence.  Mr. Fowler is doing no such thing.  The fact Mr. Fowler owns his Maryland home (and his prior Maryland home) through a trust which he created, effectively controls, can revoke at any time, and is the beneficiary does not mean he somehow does not own the property for purposes of determining his domicile and domiciliary intent.

had nothing to do with this case.  *Id*.

Plaintiff also suggests Mr. Fowler only purchased the Pier Home due to, and for the period of, his work on *House of Cards*.  Plaintiff provides no substantiation for this assertion besides his only baseless speculation, and Plaintiff's speculation is incorrect.  Plaintiff wrongly suggests Mr. Fowler's internal communications inquiring as to the approval for the final season of *House of Cards* during the discussions about the purchase of the Pier Home show his Baltimore ties were limited only to *House of Cards*.  But as repeatedly confirmed at his deposition, and as is clear from a plain reading of the communication Plaintiff relies on, Mr. Fowler was hoping the *House of Cards* season was going forward to ensure he had an income stream that would help him afford the Pier Home.  *See* Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 224:6-226:9, 229:17-232:4. Mr. Fowler unambiguously testified he "was concerned about money" and "simply looking for a little more security and it would be great if we knew we had a season 6," especially given the expenses of his staff and with the prospect of carrying another mortgage on top of the expenses and carrying costs for the Severna Park and California houses.  *Id*.; *see also* Lowenstein Decl., ¶ 5, Ex. 13.  Plaintiff's assertion also is undermined by the undisputed fact Mr. Fowler has continued to reside at and live in the Pier Home even after his employment on *House of Cards* ended in 2017. *See* Fowler Decl. (ECF No. 15-1) at ¶ 5; Fowler Supp. Decl., ¶ 6; Lowenstein Decl., ¶¶ 2-3.  Mr. Fowler's continuing to live in Baltimore even after *House of Cards* ended only reinforces his Maryland citizenship.

C.    <u>Mr. Fowler Has A Large Storage Facility In Baltimore For His Stored Personal</u> <u>Belongings</u>

In November 2017, Mr. Fowler also secured a large storage warehouse in Baltimore.  He then moved his items from storage facilities in other parts of the country and consolidated them into that Baltimore warehouse, which holds his personal belongings not kept in his Pier Home.

*See* Fowler Decl. (ECF No. 15-1) at ¶ 5; Scolnick Decl., Ex. 16 (Fowler Depo. RT) at 199:24-200:11, 238:7-17.   As was the intent when it was leased, the warehouse's location close to his residence permits easy and frequent access to his personal belonging stored there, as needed or desired.   *Id*.

**D.**   **Mr. Fowler Has Spent More Time In Maryland Than Anywhere Else**

Mr. Fowler has been physically present in Maryland more than in any other location. Fowler Decl. (ECF No. 15-1) at ¶ 2.   He has made Maryland his home.   *Id*.   And whenever he traveled, he has done so with the intention of returning to Maryland.   *Id*.   That Mr. Fowler has traveled considerably – both for vacation and as required as a working actor – does not negate his intention to always return to Maryland.   Fowler Supp. Decl., ¶ 8; Lowenstein Decl., ¶ 2.

Plaintiff's suggestion that Mr. Fowler only spent time in Maryland during the production of *House of Cards* is simply false.   *Id*.   While he traveled to shoot other films when *House of Cards* was on break and for vacation, he always intended to and did return to his Maryland home.   *Id*. And Mr. Fowler has continued to reside in Maryland even after his employment on *House of Cards* ended in late 2017.   *Id*.   When asked during his deposition for specific time periods many years ago when he was in Maryland, Mr. Fowler testified about details to the best of his recollection. *See, e.g*., Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 145:8-20, 150:3-19.   For example, Mr. Fowler testified he stayed in Maryland from the spring of 2018 to the spring of 2019, then went to Northern California to visit family and for a personal growth retreat, briefly went to Florida in July 2019, went backpacking through Europe from August to October 2019, and then returned to his Pier Home in Maryland.   *Id.*, Ex. 16 (Fowler Depo. RT) at 198:15-19, 202:3-19, 204:22-208:16. Mr. Fowler's inability at deposition to recall precise details of his whereabouts many years ago –

especially given his travel and work obligations before Plaintiff's public accusations – does not militate against his Maryland domicile.

**E.**    **Mr. Fowler Has Filed Taxes And Paid State Income Taxes As Maryland Resident Since At Least 2015**

Mr. Fowler has filed tax returns and paid state income tax as a Maryland citizen since at least 2015, which is consistent with and reinforces his Maryland domicile.  *See* Fowler Decl. (ECF No. 15-1) at ¶ 2; Ruiz-Hoffman Decl., ¶ 10; *see also Barnes v. Aurelius*, 2013 WL 5548864, at *4 (S.D.N.Y. Sept. 27, 2013) ("The state where an individual pays taxes is highly relevant to the question of an individual's domicile.").

Plaintiff cannot dispute Mr. Fowler has filed taxes as a Maryland resident since at least 2015 because that evidence is undisputed.  Instead, Plaintiff claims some malfeasance due to the address on his state tax returns being 801 Key Highway, Baltimore, Maryland ("Key Highway Apartment").  But that was done to comply with the standard practice of NKSFB, LLC, which is Mr. Fowler's business management firm that offers a variety of services to its clients, including tax planning, estate planning, and financial services.  *See* Ruiz-Hoffman Decl.,¶ 10; Fowler Supp. Decl., ¶ 9.  NKSFB's practice is to never put its client's personal residences on tax returns.  *Id.* Therefore, Mr. Fowler's federal tax returns list NKSFB's Los Angeles address for Mr. Fowler.  *Id*. Because the Maryland forms require a Maryland address, NKSFB listed the leased Key Highway Apartment, which is part of the Ritz Carlton Residences located less than one block away from the Pier Home.  *Id*.  Mr. Fowler used the Key Highway Apartment to hold business meetings and to allow his staff to stay when needed, and he paid for the lease on it.  *See* Fowler Supp. Decl., ¶ 9; Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 217:4-218:12.

**F.**      <u>**Mr. Fowler's Has Purchased And Uses Multiple Cars Registered in Maryland**</u>

Mr. Fowler has purchased and uses multiple cars registered in Maryland.  Since 2016, Mr. Fowler has had two vehicles – a Tesla and a Ford Mustang – in the name of a corporate entity, Trigger Street Productions.  *See* Ruiz-Hoffman Decl., ¶ 12, Ex. C; Scolnick Decl., Ex. 16 (Fowler Depo RT) at 251:9-254:3.  Mr. Fowler sold the Ford Mustang, but he still owns the Tesla.  *Id.* Both cars were registered in Maryland, and the Tesla continues to be registered in Maryland.  *Id.*

Mr. Fowler also has a Maryland driver's license.  *See* Fowler Decl. (ECF No. 15-1) at ¶ 6; Scolnick Decl., Ex. 16 (Fowler Depo RT) at 255:5-257:7.  With his California driver's license set to expire in July 2020, Mr. Fowler initially went to the Maryland Department of Motor Vehicles ("DMV") in February 2020 to obtain his Maryland license.  *Id.*  He was scheduled to return to the DMV to get his Maryland license after his trip to London and before his California license expired. *Id.*  But Mr. Fowler's travel plans were disrupted due to the travel complications arising from the COVID-19 pandemic.  *Id.*  When he finally returned to Maryland in November 2020, Mr. Fowler again went to the DMV and ultimately obtained his Maryland license in January 2021.  *Id.*  Plaintiff claims Mr. Fowler's perceived delay in obtaining a Maryland license somehow undermines his Maryland domicile.  But Mr. Fowler had a valid California license that had not expired until mid-2020, which obviated any urgency in obtaining a Maryland license earlier.  The uncontroverted evidence shows that when his then-current license was set to expire, Mr. Fowler sought out a Maryland license in February 2020 – several months before Plaintiff filed his lawsuit – which shows his intent to remain in Maryland.  And further showing the hollowness of Plaintiff's claim, Mr. Fowler does not have, and did not have, any UK driver's license.  *See* Fowler Supp. Decl., ¶ 12.

G.    **Mr. Fowler Has Substantial Roots In The Baltimore Community**

Mr. Fowler has planted substantial roots within Baltimore and the surrounding area, especially since purchasing the Pier Home in 2017.  He has contacted Maryland businesses and universities about assisting community development projects, especially in cultivating performing arts in Baltimore.  *See* Fowler Decl. (ECF No. 15-1) at ¶¶ 7-8; Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo RT) at 238:18-241:2, 243:13-144:8; Ruiz-Hoffman Decl., ¶ 11.  For example, Mr. Fowler entered into a contract in 2017 to buy a historic building in Baltimore, intending to renovate it into a 300-seat theater and home for his charitable foundation.  *Id.*, ¶ 8.  The attempted purchase aimed to further one of his longtime goals for the city of Baltimore by creating a stronger acting community, and Mr. Fowler ultimately hopes to start a film festival in the city.  *Id.*  Although the deal fell through for reasons beyond his control, Mr. Fowler remains invested in his home city.  He has always aimed to promote the arts and culture in Baltimore and continues to do so.[9]  *Id.*

Likewise, Mr. Fowler met with representatives from Under Armour and explored working together on a theater at the Port Covington campus Under Armour was developing.  Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 233:21-235:12.  The deal fell through after Plaintiff's public accusations.  *Id.*, Ex. 16 (Fowler Depo. RT) at 236:16-237:4.

---

[9]     Plaintiff's suggestion Mr. Fowler also considered building a theater in Connecticut is simply untrue, as Plaintiff's counsel well knows given his questions were answered during Mr. Fowler's deposition.  During the discussions of developing a theater in Baltimore, an e-mail from Evan Lowenstein referenced a comment from Mr. Fowler about attracting more talented teachers in Connecticut.  As Mr. Fowler testified, Mr. Fowler had discussions with the head of the O'Neill Center in Connecticut and their ability to attract talent there.  Mr. Fowler was wondering about being able to attract talent to Baltimore in the same manner as the O'Neill Theater attracted talent to Connecticut: "But I had never been discussing Connecticut with anyone.  I was in discussions with the head of the O'Neill Center in Connecticut about the program that they had because it was a program that I admired and I thought we could emulate in Baltimore."  *See* Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo RT) at 241:11-243:12.

H.     **Plaintiff's Claim That Mr. Fowler Is Domiciled In England Is Unsubstantiated And False**

There is no support for Plaintiffs' assertion that Mr. Fowler has been domiciled in London. In his first motion to remand, Plaintiff claimed Mr. Fowler changed his domicile to England because he was physically present there for a portion of 2020.  As set forth in Mr. Fowler's opposition to that motion, Mr. Fowler traveled to London in late February 2020 on a tourist visa for what was planned as a six-week trip.  *See* Fowler Decl. (ECF No. 15-1) at ¶¶ 9-11, Ex. 1.  He purchased a return ticket to the United States for mid-April 2020.  *Id*.  But, due to the COVID-19 pandemic, Mr. Fowler's return flight was cancelled, and various travel restrictions imposed by the United States and other countries frustrated his ability to reschedule it.  *Id*., ¶ 11.  He was advised not to travel due to the health risks and uncertainties of COVID-19.  *Id*.  Unable to return home, and with the pandemic worsening in the United States, Mr. Fowler had little choice but to extend his stay in London.  *Id*.  But at all times, he intended to return to his home in Baltimore, which continued to hold most of his personal belongings, and which he did not sell or rent out.  *Id*.

In his renewed motion, Plaintiff now claims Mr. Fowler has never been domiciled in Maryland and instead has been domiciled in England for decades.  This is false.  Since at least 2014, Mr. Fowler's travel to London was infrequent and brief, with the lone exception being the unexpectedly long stay due to the COVID-19 pandemic.  Mr. Fowler has had no intention to move or live in England or stay there indefinitely.  Mr. Fowler's travel to London has been on a temporary tourist visa, not a resident or other visa that would have allowed him to stay in the country longer.  *See* Fowler Decl. (ECF No. 15-1) at ¶ 10.  He did not try to change his residence to London or move there permanently.  *Id*.  He is not a British citizen, nor has he applied to become one.  *Id*.  He has not paid taxes as a United Kingdom resident for many years, and the British

government does not recognize him as a resident.  *Id*.  He does not have a British passport.  *Id*., ¶ 9.

Plaintiff bases his claim that Mr. Fowler is domiciled in England on three gross misrepresentations of the evidence.  None has any merit.

First, Plaintiff incorrectly asserts Mr. Fowler owns an apartment in London and argues this alleged ownership suggests he is domiciled there.  That Mr. Fowler has an apartment in London he uses when he visits England does not make his domicile there.  Plaintiff erroneously claims the London apartment is the "only property disclosed by Mr. Spacey in the entirety of this jurisdictional discovery that bears his own name."  *See* ECF No. 174 at 5.  As disclosed during discovery, the London apartment is owned by Tutti Investments Limited, which granted Mr. Fowler a "licence" to use the apartment during his lifetime.  Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 116:24-117:15; Fowler Supp. Decl., ¶ 13, Ex. 10.  The London apartment is therefore structured to protect Mr. Fowler's privacy in the same manner as Mr. Fowler's numerous Maryland properties.  And the overwhelming evidence shows Mr. Fowler resides in Maryland and spends more time in Maryland than anywhere else.

Notably, before Mr. Fowler unexpectedly stayed in the London apartment longer than planned due to the COVID-19 pandemic, Mr. Fowler had used the London apartment less and less over the years.  *See, e.g*., Fowler Decl. (ECF No. 15-1) at ¶ 12; Ruiz-Hoffman Decl., ¶ 13.  Because he was using it so infrequently, Mr. Fowler began to explore the possibility of selling it in 2018.  Fowler Supp. Decl., ¶ 13; Lowenstein Decl., ¶ 7, Exs. 14-15; Ruiz-Hoffman Decl., ¶ 13.  He engaged brokers to market the property discretely so it could be sold if the right price was offered.  *Id*.  This stands in stark contrast to his Pier Home in Baltimore, at which he has never attempted to sell and where he continues to reside.  *Id*.

<u>Second</u>, Plaintiff claims Mr. Fowler's historical connections to England through his work at the Old Vic theater show he is domiciled in England.  Again, this is false.  Mr. Fowler was appointed the artistic director of the Old Vic theater in 2003 as part of an effort to revitalize that historic venue.  Fowler Supp. Decl., ¶ 14.  In his first number of years in the role, Mr. Fowler committed to not be away from the theater for over eight weeks, because it was understood the rebuilding of the theater would take time and his high-profile status would aid in that effort.  *See* Scolnick Decl., Ex. 16 (Fowler Depo RT) at 136:18-137:15; Fowler Supp. Decl., ¶ 14.  Mr. Fowler ended his role with the Old Vic theater in 2015.  *Id.*  While he had a UK resident card during the time he worked there, that residence card expired many years ago and was not renewed because he no longer worked in England.  Fowler Supp. Decl., ¶ 14.  Further, throughout the time he worked at the Old Vic theater, Mr. Fowler was only a temporary resident – he was never a citizen and never applied for citizenship.  *Id.*; Scolnick Decl., Ex. 16 (Fowler Depo RT) at 127:8-10.  Although he visited England more frequently during that period he was working at the Old Vic than in the seven years since, Mr. Fowler was not domiciled in England.  Nor was his work for the Old Vic theater his exclusive means of work.  Fowler Supp. Decl., ¶ 14.  He continued to film numerous movies and television shows elsewhere throughout that time.  *Id.*  And he continued to own a home in the Los Angeles area, which he had purchased in 1997 and eventually sold in 2016 (a year before purchasing his Pier Home in Baltimore).  *See* Scolnick Decl., Ex. 16 (Fowler Depo. RT) at 114:14-25.

Plaintiff points to a single article from a UK publication in 2013 in which Mr. Fowler expresses his admiration for England.  Such publicity hardly can reflect Mr. Fowler's true intent as to his domicile.  As Mr. Fowler testified when asked about this article during his deposition, the article was intended to help continue the prestige and fund-raising of the Old Vic theater.  Scolnick

Decl., ¶ 2, Ex. 16 (Fowler Depo RT) at 130:6-133:14.   And claims by Mr. Fowler about how London "has become my home, for all intents and purposes" were designed to not minimize the work he had done in restoring the Old Vic theater at a time he was close to walking away from the project. *Id.* Such puffery has no evidentiary value for the issue here. The Court already recognized the immateriality of these press articles when Plaintiff submitted them in his initial remand motion. In denying Plaintiff's initial remand motion, the Court recognized "the question whether [Mr. Fowler] has his true fixed home and principal establishment in Maryland cannot be decided on the basis of newspaper and magazine clippings and other materials submitted by plaintiffs." *See* ECF No. 17. This remains true now.

Third, Plaintiff points to various stamps in Mr. Fowler's passport showing he entered the UK at various points between 2014 and 2017. Many of these passport stamps merely reflect when Mr. Fowler was passing through the UK on his way to other European vacation travel.  Fowler Supp. Decl., ¶ 15. Other stamps reflect impermanent stays of short duration.  *Id.* That Mr. Fowler entered the UK – either for relatively short trips to England or merely passing through to other destinations – proves nothing.  Likewise, Plaintiff's claim Mr. Fowler provided no documentary proof of the time he spent in Maryland ignores not only Mr. Fowler's sworn statements, but also the very material fact that Plaintiff did not timely ask for any such documentary proof in the nearly one year span when discovery was open and he was permitted to pursue jurisdictional discovery. Scolnick Decl., ¶¶ 4-5, Exs. 18-19.  Nor does the law require Mr. Fowler to document his week-by-week or month-by-month whereabouts since 2014 to prove his domicile.[10]

---

[10]   Although not requested by Plaintiff at any time, Mr. Fowler's veterinary bill for his dog shows a consistent course of treatment in Baltimore, further showing Mr. Fowler's Maryland domicile.  *See* Fowler Supp. Decl., ¶ 11, Ex. 9.

And Mr. Fowler's unexpectedly longer stay in England in 2020 was detailed in his opposition to Plaintiff's initial remand motion.  His February 2020 trip to England was personal and recreational.  *See* Fowler Decl. (ECF No. 15-1) at ¶ 10.  The trip was scheduled to be for approximately six weeks; Mr. Fowler had no intention of staying longer.  The trip was on a temporary tourist visa.  *Id*.  His flights were booked as a roundtrip, with a scheduled return to the United States on April 12, 2020, as demonstrated by documentary proof produced by Mr. Fowler. *Id*., ¶ 10, Ex. 1.  Ultimately, due to the COVID-19 pandemic, Mr. Fowler stayed longer in England but he returned to his Baltimore home promptly after it was safe to travel.  *Id*., ¶ 11.

Plaintiff attempts to discredit this legitimate and truthful explanation by claiming Evan Lowenstein, who had traveled with Mr. Fowler, left England before he did.  As Mr. Fowler testified, Mr. Lowenstein left a few weeks earlier than him.  Scolnick Decl., Ex. 16 (Fowler Depo. RT) at 214:4-215:8.  But this proves nothing as to Mr. Fowler's intent, especially given the differing risks and risk tolerances of Mr. Lowenstein (who is younger and has children he had not seen for many months).

Plaintiff also speculates that Mr. Fowler's April 2020 return ticket being to Los Angeles rather than Baltimore somehow undermines his Maryland domicile.  But as Mr. Fowler testified, Mr. Fowler had been scheduled to be in Los Angeles for an uncertain amount of time due to the MRC arbitration.  *See* Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 212:19-214:3.  As a result, Mr. Fowler did not schedule his return trip from Los Angeles to Baltimore months in advance.  *Id*.

In short, Plaintiff's claim Mr. Fowler has been domiciled in England is pure fiction and a transparent attempt to obscure this Court's clear jurisdiction.

I.      **Plaintiff's Other Claims Are Disingenuous and Belied By The Evidence**

1.      **Plaintiff's Illegitimate Attacks On Mr. Fowler's Credibility**

Plaintiff's renewed motion repeatedly attacks Mr. Fowler's credibility and suggests his prior declaration contains numerous misrepresentations.  This is false, for all the reasons described above.  Mr. Fowler's prior declaration was not evasive or untruthful.  He accurately attested he was the beneficial owner of his Pier Home, which was owned through an LLC.  He accurately testified he leased that home briefly before purchasing it (regardless of the transaction structured in a way to protect Mr. Fowler's privacy).  He accurately attested that he has spent more time in Maryland than anywhere else.  He accurately attested to his connections to the Baltimore community.  He accurately testified to his Maryland domicile and intent to return to Maryland whenever he traveled elsewhere.  Plaintiff's attacks on Mr. Fowler's credibility reflect nothing more than Plaintiff's attempt to undermine the reality of Mr. Fowler's Maryland domicile.

2.      **Voting Record**

This factor is immaterial here, and the evidence does not support Plaintiff's position.  Mr. Fowler is not a UK citizen or resident.  Regardless whether he was registered to vote in California or Maryland, and regardless of whether he actually voted, there is no evidence Mr. Fowler voted in England at any time.  He did not.  *See* Fowler Supp. Decl., ¶ 12.

3.      **Miscellaneous Items**

Plaintiff attacks Mr. Fowler's claim of Maryland domicile by asserting Mr. Fowler did not provide "Federal Income Tax Returns, credit card statements, restaurant/supermarket receipts, or proof relating to visits to doctors, dentists, accountants, business manager, banks/ATMs, receipt of mail, gym membership, or anything else that proves Maryland is his home." *See* ECF No. 172-1, 174 at 3.  Plaintiff misrepresents the evidentiary record here.

Plaintiff does not dispute Mr. Fowler provided those portions of his tax returns showing he paid taxes as a Maryland resident, which this Court found was a sufficiently proportional response to Plaintiff's jurisdictional discovery request.  Likewise, Mr. Fowler complied with the Court's order by identifying by initials his doctors, lawyers, accountants, and other professionals in Maryland and England.  Further, in response to Plaintiff's counsel's questioning, Mr. Fowler testified at his deposition about a surgery Mr. Fowler had on his hand at Johns Hopkins in September 2018.  Scolnick Decl., Ex. 16 (Fowler Depo. RT) at 215:19-216:19.  That surgery required a six-to-eight week rehab and physical therapy, which Mr. Fowler also did at Johns Hopkins. *Id*.  That Mr. Fowler chose a Maryland hospital close to his home to conduct his surgery and follow up rehab and therapy further evidences his Maryland domicile.

Also, while Plaintiff attempts to fault Mr. Fowler for not providing credit card statements, restaurant or supermarket receipts, bank/ATM receipts, or gym membership in Maryland, *Plaintiff never timely sought such documents during discovery*.  Plaintiff was permitted to take proportional jurisdiction discovery.  He hardly can fault Mr. Fowler for not providing documents Plaintiff never timely asked for.  Nor would such intrusive financial and personal documents – showing granular details of Plaintiff's day-to-day movements – be proportional to the jurisdictional issue, as the Court found was necessary for any jurisdictional discovery Plaintiff could take.  Further, Plaintiff's counsel asked Mr. Fowler at his deposition about his gym membership, and Mr. Fowler testified he is a member of, and frequents, the Merritt gym in Baltimore which is a short bike ride from his Pier Home.  *See* Scolnick Decl., ¶ 2, Ex. 16 (Fowler Depo. RT) at 220:17-221:6.

Finally, Plaintiff's claim there is no evidence that Mr. Fowler received mail at his Baltimore Pier Home is particularly galling since Plaintiff served the summons and complaint in this case at that Baltimore home, which Plaintiff represented to the court (before removal) was Mr.

Fowler's "actual place of residence."  Regardless, the evidence shows that Mr. Fowler receives mail at the Pier Home, as any important correspondence or materials requiring his signature are sent to Mr. Fowler at his Pier Home in Baltimore.  *See* Ruiz-Hoffman Decl., ¶ 9.

**J.**      **The Court Can And Should Deny Plaintiff's Motion Without An Evidentiary Hearing**

Plaintiff has been given an opportunity to obtain discovery in support of his efforts to remand and has been unable to marshal any compelling evidence in his favor; accordingly, an evidentiary hearing on Mr. Fowler's Maryland domicile is not warranted.  Plaintiff's request for a hearing will only confirm Mr. Fowler's domicile information and the Court's subject matter jurisdiction, making such hearing unnecessary and unproductive.  *See, e.g., Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (noting that courts have "considerable procedural leeway" to decide a subject matter jurisdiction challenge via a hearing, jurisdictional discovery, or based solely on affidavits).  Mr. Fowler's Maryland domicile is not a close call. The overwhelming evidence shows Mr. Fowler's Maryland domicile and, in turn, this Court's diversity jurisdiction.

To the extent the Court intends to hold an evidentiary hearing, Mr. Fowler's position on the timing and parameters for such hearing are separately set forth in the report ordered by the Court.  *See* ECF No. 188.

## CONCLUSION

Mr. Fowler respectfully requests that the Court deny Plaintiff's renewed motion to remand in its entirety and maintain jurisdiction over this case.

Dated: April 20, 2022                                  Respectfully submitted,
       Irvine, California

                                              */s/ Chase A. Scolnick*
                                              Chase A. Scolnick
                                              Keller / Anderle LLP

18300 Von Karman Ave., Ste. 930
Irvine, California 92612
(949) 476-8700
cscolnick@kelleranderle.com

*Counsel for Defendant Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2, I, Chase A. Scolnick, hereby certify that on April 20, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Chase A. Scolnick*
Chase A. Scolnick
