UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANTHONY RAPP, et ano.,

                              Plaintiffs,

            -against-                                            20-cv-9586 (LAK)

KEVIN SPACEY FOWLER,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____        │
│ DATE FILED: 6 | 6 | 2022         │
└─────────────────────────────────┘
```

## MEMORANDUM OPINION ON PLAINTIFF
## RAPP'S RENEWED MOTION TO REMAND

            Appearances:

                        Peter J. Saghir
                        GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
                        HERSHENHORN, STEIGMAN & MACKAUF
                        *Attorneys for Plaintiffs*

                        Chase A. Scolnick
                        KELLER/ANDERLE LLP
                        *Attorneys for Defendant*

            The matter is before the Court on plaintiff Anthony Rapp's renewed motion to

remand this action to state court for lack of removal jurisdiction. Mr. Rapp[1] disputes the availability

of diversity removal jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441 on the theory that Mr.

Fowler is domiciled in the United Kingdom and not, as Mr. Fowler claims, in Maryland. In essence,

he suggests that Mr. Fowler was present in Maryland only to the extent necessary to film the

---

[1]     Mr. Rapp does not dispute Mr. Fowler's allegation that Mr. Rapp is and, at the times relevant
to this motion, was a New York citizen.

television series *House of Cards* and that he had no intention of remaining in or returning to Maryland after his role on that show ended.  He claims that new information obtained through jurisdictional discovery "clearly reveals" that Mr. Fowler "became a domiciliary of the United Kingdom [the "UK"] as early as 2003."  He maintains that Mr. Fowler's submissions "fall far short of meeting his heavy burden of demonstrating that his domicile had shifted to Maryland when this action was commenced"[2] and that he was not a citizen of a state different than the plaintiff's.

The Court has considered extensive motions papers including affidavits, declarations and deposition testimony.  In addition, it conducted a targeted evidentiary hearing at which the defendant testified.  While it reserved decision on the ultimate issue, the Court, at the conclusion of that hearing, "f[ound] as a fact, on the basis of the entire record, including, but not limited to, [Mr. Fowler's] testimony, that his true fixed home and principal establishment, and the place to which whenever he is absent, he has had the intention of returning, is Maryland, and that was true on the date the action was filed and the date on which it was removed."[3]  The Court writes now to supplement its reasoning in concluding that subject matter jurisdiction exists and that removal was proper in this case.

## *Legal Standard*

A civil action initially filed in state court may be removed by a defendant to federal court Pursuant to 28 U.S.C. § 1441, provided the district court has original subject-matter

---

[2]

       Dkt. 172-1, at 1.

[3]

       Hearing Transcript (May 26, 2022) (hereinafter "Tr.") at 94-95.

jurisdiction over the plaintiff's claim.[4]   Federal district courts have original subject matter

jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action

is between "citizens of different states."[5]   In order to be a citizen of a particular state within the

meaning of that statute, "a natural person must be both a citizen of the United States *and* be

domiciled within the State."[6]   A person's domicile, in turn, is "the place where a person has his true

fixed home and principal establishment, and to which, whenever he is absent, he has the intention

of returning."[7]   A United States citizen who is not domiciled in any state is considered "stateless"

for the purposes of Section 1332 and thus cannot trigger the diversity predicate in Section

1332(a)(1).[8]   If at any time, including after removal of a case from state to federal court, "it appears

that the district court lacks subject matter jurisdiction, the case shall be remanded."[9]

       The usual rule is that the jurisdictional basis for removal is determined as of the time

the removal petition is filed; however, removal predicated on diversity requires complete diversity

of citizenship both at the time action was filed in state court and at time of removal.[10]   The party

---

[4]     *See, e.g.*, *Vilayvanh v. East 111th St. Props., LLC*, 20-CV-7226 (VEC), 2020 WL 6364871 at *2 (S.D.N.Y. Oct. 29, 2020).

[5]     28 U.S.C. § 1332(a).

[6]     *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (emphasis in original).

[7]     *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (quoting 13B C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3612 (2d ed.1984)).

[8]     *Id.* at 828-29.

[9]     28 U.S.C. § 1447(c).

[10]     *See Wright v. Musanti*, 887 F.3d 577, 584 (2d Cir. 2018); *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298,

4

asserting federal jurisdiction bears the burden of establishing it by competent proof.[11]  The manner in which the issue of domicile is resolved is left to the discretion of the district court.[12]

## Discussion

### Defendant's Evidentiary Burden

The parties disagree as to Mr. Fowler's burden on this motion.  Mr. Rapp insists that "[i]t is beyond question, that since at least 2003, Mr. Spacey was a domiciliary of the United Kingdom" and that Mr. Fowler therefore must meet a "heightened burden of proof" to establish domicile in Maryland.  Mr. Rapp argues that "[i]t is well established that a long-term domicile is presumed to continue, and any change must be proved by *clear and convincing evidence*."[13]  For this he cites two cases, both of which are inapposite because they concern domicile as it relates to the availability of personal jurisdiction under New York state law, not subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).[14]  Mr. Fowler rejoins that his burden is only to establish by a preponderance of the evidence that he was domiciled in Maryland at the legally relevant times.  He maintains that

---

[11]
301 (2d Cir. 1994).

[12]
*See Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2nd Cir. 2002).

[13]
*E.g.,* 13E C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3612 (3d ed.).

[14]
Dkt. 172-1, at 24 (emphasis in original).

*See Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 (2d Cir. 1984)*; Paul Revere Life Ins. Co. v. Segal*, No. 99-cv-3022 (MBM), 2000 WL 1448626, at *2 (S.D.N.Y. Sept. 28, 2000).

5

once he has made such a showing, it is the party challenging jurisdiction who "assume[s] the burden of proving that there has been a change . . . ."[15]

The Second Circuit has made clear that the party with the burden of establishing subject matter jurisdiction ordinarily must do so by a preponderance of the evidence.[16] It has indicated also that "[a]s a general matter," the party invoking federal subject matter jurisdiction must "prove complete diversity by a preponderance of the evidence, but a change in domicile by clear and convincing evidence"[17] and, further, that "[o]ne acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs."[18]

As the Court indicated at the conclusion of the evidentiary hearing, it need not reach a definitive conclusion as to the proper evidentiary standard on these facts, since – as discussed below – Mr. Fowler has satisfied his burden under either standard. However, the Court observes that Mr. Rapp's argument that the defendant faces a "heightened burden" on the specific theory that "[i]t is beyond question, that since at least 2003, Mr. Spacey was a domiciliary of the United Kingdom" fundamentally begs the question. Whether this motion presents the matter of a "change in domicile" necessarily turns on whether the Court has itself made or somehow is bound to some factual determination as to the relevant party's domicile immediately prior to the asserted change, neither of which is the case. The Court's jurisdictional inquiry does not begin with whether Mr.

---

[15] See *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 97 (E.D.N.Y. 2019).

[16] See *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[17] *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 56 n.3 (2d Cir. 2019).

[18] *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).

Rapp has shown that Mr. Fowler was domiciled in the United Kingdom ("UK") at some time prior to the commencement of this action.  Rather, it begins – and, in this case, ends – with whether *Mr. Fowler* has established the existence of subject matter jurisdiction at the legally relevant times: that is, on September 9, 2020 and on November 13, 2020.  And, as a substantive matter, any assertion that Mr. Fowler *ever* has been a domiciliary of the UK would be undercut substantially by the lack of any evidence indicating that Mr. Fowler ever received – or even sought – permission to reside in the UK for more than a temporary period.[19]  Accordingly, there is little doubt that the appropriate standard here is a preponderance of the evidence.  In any case, he has established Maryland domicile by clear and convincing evidence.

*Defendant Has Met His Burden Under Either Standard*

Mr. Fowler has offered a range of objective facts and subjective statements supporting his assertion that he was domiciled in Maryland at the legally relevant times.

The Court's findings as to domicile are supported first and foremost by the defendant's testimony at the May 26 hearing, which the Court credits.  Mr. Fowler testified that although he was physically present in Maryland more than any other place beginning as early as 2012, it was in 2014 that he decided "[he] was going to make Maryland [his] home."[20]  That year, Mr. Fowler purchased the home he had been renting in the town of Severna Park, where, according to his testimony, he had been residing since he began  work on *House of Cards*.[21]  He testified also

---

[19]      *See* Tr. at 77-79, 88-89.

[20]      *Id*. at 42-43.

[21]      *Id.* at 43.

that the purchase was wholly unrelated to the prospect of future work on that show: "I made a decision in 2014, which strengthened as the years went on, that if House of Cards continued, I was going to live in Maryland; if House of Cards didn't continue, I as going to live in Maryland."[22]

Then, in early 2017, Mr. Fowler purchased another Maryland home, in Baltimore. He testified that the Baltimore home is now and has been his primary residence since the time of purchase.[23] Contemporaneous emails between Mr. Fowler and a business associate indicate that Mr. Fowler was uncertain of whether *House of Cards* would be renewed for a sixth season – the season from which Mr. Fowler would later be fired – at the time he purchased the Baltimore home.  He testified that he used his own funds to purchase that home and closed on the property shortly after selling a Los Angeles-area residence, which he had owned since 1997.[24]

The remainder of the extensive record in this case coheres with Mr. Fowler's account of his ties to Maryland.  Among the evidence reinforcing Mr. Fowler's Maryland domicile are several years of state tax returns indicating that he paid taxes as a Maryland resident[25] and a veterinary record for his dog showing a consistent course of treatment at a Baltimore animal hospital from 2017 to 2021, which encompasses the entire period between Mr. Fowler's departure from *House of Cards* and the commencement of this litigation.[26]  Thus, even as the "general rule in the

---

[22]     *Id.* at 43.

[23]     *Id.* at 50; Fowler Supp. Decl. ¶ 5

[24]     Tr. at 43.

[25]     Dkt. 175, Ex. O.

[26]     Dkt. 194, Ex. 9.

Second Circuit has been that a sworn statement regarding citizenship" is, by itself, "a strong factor in favor of a similar judicial finding," additional evidence supports such a finding on the basis of other factors upon which courts of this Circuit routinely rely, including residence, ownership, taxpaying, living arrangements, and other associations with the jurisdiction.[27]  Plaintiff's assertion that there is "nothing outside of [Mr. Fowler's] subjective assurances that evince [sic] an intent to remain in Maryland indefinitely or return to it when he is away" flatly ignores the record.[28]

Meanwhile, plaintiff's suggestion that Mr. Fowler was domiciled in the United Kingdom – and, perhaps less explicitly, that Mr. Fowler's ties to Maryland extended only as far as his contract with *House of Cards* – is largely without substance.  As the Court has noted already, his assertion that Mr. Fowler was domiciled in the United Kingdom at the times relevant to this motion is severely undermined by the lack of any evidence suggesting that Mr. Fowler ever has had or sought permission to remain there for more than the temporary period linked to his term contract with the Old Vic theatre.  Even on the assumption that Mr. Fowler could have been a UK domiciliary without ever having sought or obtained legal authorization to remain there on more than a temporary basis, the remaining evidence on which Mr. Rapp relies in an effort to establish the defendant's UK ties is entirely consistent with Mr. Fowler's account of his activities in London and his intent to return to and remain in Maryland upon concluding them.  Mr. Fowler's "consistent travel to the United Kingdom," his ownership of a "renovated apartment in London," and regular "physical presence in the United Kingdom" cohere entirely with Mr. Fowler's testimony regarding

---

[27]     *See, e.g., Corbishley v. Napolitano*, No. 20-cv-7445 (VSB), 2020 WL 6157103 (S.D.N.Y. Oct. 21, 2020).

[28]     Dkt. 172-1, at 29.

9

his then-worldwide professional activities and frequent international travel in connection with his business affairs.[29]  While plaintiff argues that these facts support the conclusion that Mr. Fowler "became a domiciliary of the United Kingdom as early as 2003," in reality Mr. Rapp could have made identical arguments with respect to California, where Mr. Fowler also owned a home and had regular business dealings and repeated travel during the years of his involvement in *House of Cards*.

Neither do Mr. Fowler's one-off comments, reported in British media, suggesting that he considered London to be his home – namely in 2006 and 2013 – undermine his competent proof of Maryland domicile in fall 2020.  The Court credits Mr. Fowler's testimony that those comments were motivated by public scrutiny attributable to his unusual position as an American actor running a noted British arts institution.  As Mr. Fowler put it, it was "extremely important to me that I endear myself to the British public, that I let it be known that I was serious about my commitment there . . . because they're the ones that if they didn't buy our tickets, we would be dead."[30]  This was especially true in the wake of "calls for his resignation" among the British public following a "dismal second season" at the Old Vic and a "disastrous" 2005 staging of an Arthur Miller work.[31]  The self-evident puffery in these comments is underscored also – and ironically – by another argument Mr. Rapp advances on this motion, namely that Mr. Fowler has embellished various aspects of his purported civic and charitable engagement with the Baltimore community.[32]

---

[29]
      *Id.* at 27.

[30]
      Tr. at 62-64.

[31]
      *Id.* at 62.

[32]
      Dkt. 127-1, at 16-18.

As to the substance of proof offered by Mr. Fowler, Mr. Rapp challenges the probative value of Mr. Fowler's Maryland real estate transactions and his filing of Maryland resident state income tax returns. He contests Mr. Fowler's ability to establish domicile based on those real estate transactions on the ground that Mr. Fowler typically bought or rented real estate using limited liability companies, trusts, partnerships, nominees or other entities, rather than in his own name. Simply stated, Mr. Rapp argues that these are "properties . . . [Fowler] does not actually own."[33] Mr. Rapp's counsel, however, wisely sidestepped this argument at the evidentiary hearing, as it is obvious that Mr. Fowler is a very prominent individual with numerous legitimate privacy-related and other reasons for structuring real estate transactions using those entities which, as Mr. Fowler said, hold title to properties purchased with his personal funds and of which he is the beneficial owner. And Mr. Rapp's arguments concerning the defendant's tax returns also are unpersuasive. He does not contest that Mr. Fowler paid Maryland income taxes as a resident of Maryland during the relevant period. Rather, Mr. Rapp takes issue with what he characterizes as "misrepresentations" attributable to Mr. Fowler on Maryland Form 502, which was submitted using Mr. Fowler's business manager's Maryland address, which was in a county different than Mr. Fowler's actual county of residence. At the conclusion of considerable colloquy with counsel at the hearing, the Court found no reason to suppose that Mr. Fowler – if he even prepared any of these returns himself – had the slightest idea that listing a County of Baltimore address, as opposed to a City of Baltimore address, was in any way significant.

The remainder of plaintiff's argument focuses on Mr. Fowler's failure to produce specific types of records that, in Mr. Rapp's view, would tend to prove domicile. Mr. Rapp

---

[33] *Id.* at 28.

maintains that "anyone who truly lives in Maryland, particularly in the modern era, would have ample opportunity to provide documentary evidence . . . such as a Maryland driver's license, restaurant receipts, supermarket receipts, receipt of mail, credit card statements, ATM transactions, photographs of social outings, or a gym membership bill that would tend to show an actual physical presence . . . ."[34]

Of course, it is quite possible that Mr. Fowler may have had such documents indicating his physical location in between seasons of *House of Cards*.  But plaintiff's emphasis on Mr. Fowler's failure to produce such material is misplaced.  The short of the matter is that Mr. Rapp's laundry list of hypothetical "credit card statements, restaurant or supermarket receipts, [] proof relating to visits to doctors, dentists, accountants, business managers, bank accounts, receipts of mail, [or] gym membership[s]" that might have been submitted, assuming *arguendo* that they still exist or could be retrieved, merely reinforces the proposition that there are innumerable paths to establishing one's domicile for the purposes of diversity jurisdiction.  The defendant certainly was not obligated to follow any of those selectively illuminated by Mr. Rapp's papers.

Finally, the plaintiff's judicial estoppel argument is entirely without merit, since plaintiff has failed to show how any of the representations made in connection with Mr. Fowler's Maryland tax filings actually was inconsistent with his assertion of Maryland domicile.  Nor is there any evidence of any express or implied judicial adoption of any such prior position – an essential element of judicial estoppel.[35]  Accordingly, on the basis of the entire record, including but not limited to Mr. Fowler's testimony, the Court finds that the defendant's true fixed home and principal

---

[34]

       *Id.* at 4.

[35]

       *See, e.g., Avail Holding LLC v. Ramos*, 820 F. App'x 83, 85 (2d Cir. 2020).

establishment, and the place to which he intended to return, at all relevant times has been Maryland. That was true on the date the action was filed and the date on which it was removed to federal court. Removal therefore was proper pursuant to 28 U.S.C. § 1441.

*Conclusion*

For the foregoing reasons, the defendant's renewed motion to remand this action to state court [Dkt. 171] is DENIED in all respects.  The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

Dated:       June 6, 2022

_____
Lewis A. Kaplan
United States District Judge