UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY RAPP,<br><br>　　　　　　　　　　Plaintiff,<br><br>　-against-<br><br>KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,<br><br>　　　　　　　　　　Defendant. | Case No. 1:20-cv-09586 (LAK) (SDA) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE*
NO. 5 TO PRECLUDE PLAINTIFF FROM INTRODUCING OR REFERENCING
CERTAIN IRRELEVANT EVIDENCE UNDER FRE 402 OR, ALTERNATIVELY,
UNDER FRE 403 AND OTHER AUTHORITIES**

KELLER / ANDERLE LLP
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick
Jay P. Barron (*pro hac vice*)
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
(949) 476-8700
jkeller@kelleranderle.com
cscolnick@kelleranderle.com
jbarron@kelleranderle.com

SHER TREMONTE LLP
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey
Fowler a/k/a Kevin Spacey*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARD............................................................................................................... 4

ARGUMENT ............................................................................................................................ 4

    A.    The Court Should Preclude Plaintiff From Making Any Reference to Dismissed Plaintiff C.D. ................................................................................................... 5

    B.    The Court Should Preclude Any Pseudo-Expert Or Hearsay Statements From Fact Witness Sean Snow And Otherwise Preclude Any Reference To His Occupation As A Police Officer. ................................................................................................ 6

    C.    The Court Should Preclude Plaintiff From Testifying About What He Purportedly Will Do With Any Monetary Recovery He Receives From This Case .................. 8

    D.    The Court Should Preclude Christopher Denny From Testifying About Service Of A Deposition Subpoena In A Way He Found Distasteful ...................................... 9

    E.    The Court Should Preclude Plaintiff From Inquiring About Or Presenting Evidence of Evan Lowenstein's Divorce Or Spousal Support Proceedings......... 10

    F.    The Court Should Preclude Plaintiff From Inquiring About Or Referencing Mr. Fowler's Rehab And Medical Treatments Because They Are Irrelevant, Prejudicial, And Protected by HIPAA And Other Law........................................ 11

    G.    Any Testimony From Elizabeth Loftus, Ph.D, Should Not Include Questioning Her About Her Prior Engagements ........................................................................ 12

    H.    Plaintiff Should Be Precluded From Presenting Evidence About Mr. Fowler's Purported Financial Condition Or Other Evidence Related Only To The Issue Of Punitive Damages Absent Bifurcation Of That Issue From A First Trial Phase .. 13

CONCLUSION....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363 (2d Cir. 1988) .................................... 13

**Rules**

Fed. R. Civ. P. 26(a)(2)(A) ............................................................................................................ 6

Fed. R. Civ. P. 42(b) ................................................................................................................... 13

Fed. R. Evid. 401 .......................................................................................................................... 4

Fed. R. Evid. 402 .......................................................................................................................... 4

Fed. R. Evid. 403 .......................................................................................................................... 4

Defendant Kevin Spacey Fowler ("Mr. Fowler"), by and through his counsel, respectfully submits this memorandum of law in support of his Motion *in Limine* No. 5 to preclude Plaintiff from introducing or referencing certain irrelevant evidence under FRE 402 or, alternatively, under FRE 403 and other authorities.

**INTRODUCTION**

Defendant Kevin Spacey Fowler ("Mr. Fowler") brings this motion *in limine* to preclude plaintiff Anthony Rapp ("Plaintiff") and his counsel from presenting or referencing certain purported evidence entirely collateral and irrelevant to the issues to be decided. Even if the materials were perceived to have some marginal relevance, they should be precluded under Federal Rule of Evidence ("FRE") 403 and other authorities.

First, Plaintiff and his counsel should be precluded from referencing the existence or allegations of now-dismissed plaintiff C.D., whose claims were dismissed with prejudice and is no longer part of this case. Any reference to C.D. would be entirely gratuitous, irrelevant, prejudicial, and made only to inject unrelated allegations not part of this case and about which the jury will not hear evidence.

Second, Plaintiff and his counsel should be precluded from referencing testimony or evidence about statements from third-party fact witness Sean Snow that would be disguised expert testimony from an undesignated expert witness. Snow has been friends with Plaintiff for several decades, and Plaintiff intends to present testimony that Plaintiff told Snow in the 1990s about the alleged incident with Mr. Fowler. Snow since became a police officer who now specializes in child sexual abuse investigations. Plaintiff should not be able to reference Snow's profession as a child sexual abuse investigator, as it is irrelevant and prejudicial. It could give the impression Snow is testifying in his capacity as a police officer or investigator, and not simply as Plaintiff's

1

friend. Plaintiff also should not be permitted to present evidence from Snow that opines about Plaintiff's emotional or psychological symptoms or compares Plaintiff to victims he encounters as part of his job. Nor should Plaintiff be permitted to present evidence from Snow about various rumors he heard about Mr. Fowler while Snow worked as an actor.

Plaintiff intends to present Snow's testimony by deposition, and the Court already has sustained Mr. Fowler's objections to the testimony given directly by Snow which is encompassed by this motion. But this motion is necessary because Snow spoke with Plaintiff's expert witness, Lisa Rocchio, Ph.D., as part of her psychological evaluation of Plaintiff, and her report has various statements from Snow which are impermissible expert testimony or hearsay. Snow also spoke with Mr. Fowler's rebuttal expert. This testimony is irrelevant and prejudicial, and should be excluded.

Third, the Court should preclude Plaintiff from testifying or referencing what he would do with the money if he were to get a monetary recovery in this case. Plaintiff describes himself as a close ally of the #MeToo movement and may be incentivized at trial to suggest he would donate all or portion of a recovery to charitable or other social causes. Any such testimony would be entirely speculative. And it would be prejudicial because it could improperly influence or mislead the jury, especially given Plaintiff would get some reputational or other benefit if he were to use any recovery in a certain manner.

Fourth, the Court should preclude Plaintiff from presenting any testimony from third-party witness Christopher Denny about the method by which Denny was served with a deposition subpoena. After Denny initially refused to accept service, the process servers apparently did not immediately identify themselves when they went back to serve Denny, and Denny found the service effort distasteful and troubling. The issue is irrelevant to the case and would only be

presented to unfairly and inappropriately smear Mr. Fowler's counsel, who gave no specific instructions on how to serve Denny.

Fifth, the Court should preclude Plaintiff from presenting evidence about third-party witness Evan Lowenstein's divorce and spousal support proceedings. Lowenstein's ex-wife raised a concern in a filing in that action about their children being in Mr. Fowler's presence after Plaintiff publicly accused Mr. Fowler. The issue is irrelevant, prejudicial, misleading, and would require an inordinate amount of trial time, including Mr. Fowler potentially calling Lowenstein's ex-wife or other witnesses to rebut any negative implication raised by the issue.

Sixth, the Court should preclude Plaintiff and his counsel from referencing any rehab, medical, psychological, or other treatment Mr. Fowler received, including in the aftermath of Plaintiff's public accusations. Mr. Fowler's counsel objected throughout the discovery process to Plaintiff's attempts to pry into these protected (and irrelevant) issues. Likely recognizing the inappropriateness of such requests, Plaintiff has not pressed for disclosure or discovery of these protected materials at any time during this case. Plaintiff's counsel acknowledged during Mr. Fowler's deposition that the issue would not be raised at trial if Mr. Fowler did not raise it, which he does not intend to do. But, out of an abundance of caution, Mr. Fowler seeks an order confirming these issues will not be raised at trial.

Seventh, the Court should preclude any attempt by Plaintiff to introduce evidence or make reference to the prior engagements of Elizabeth Loftus, Ph.D, especially given Mr. Fowler does not intend to call her at trial. As a renowned memory expert, Dr. Loftus has been involved in hundreds of lawsuits, including some for high profile or notorious individuals. Plaintiff should not be permitted to suggest or imply Mr. Fowler is liable simply because Dr. Loftus has testified in other cases alleging wrongdoing.

3

Eighth, the Court should preclude Plaintiff from presenting any evidence at trial about Mr. Fowler's financial condition or other evidence related and relevant only to punitive damages. Plaintiff has not sought or developed any such evidence during discovery. And in the unlikely event punitive damages are found to be appropriate, the amount of such damages should be determined in a bifurcated, second phase trial.

To ensure an orderly and fair trial, Mr. Fowler respectfully requests that the Court grant this motion and order the issues raised below are not presented or referenced at trial by Plaintiff, his counsel, or any of his witnesses.

## LEGAL STANDARD

Federal Rule of Evidence ("FRE") 401 holds that evidence is relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Only relevant evidence is admissible at trial, while "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. And even relevant evidence may be excluded if its probative value is substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

Mr. Fowler seeks an order precluding Plaintiff and his counsel from asking questions, eliciting testimony, or otherwise referencing various issues entirely irrelevant to trial or having, at most, marginal relevance, which are substantially outweighed by the risk of prejudice, confusion of the issues, misleading the jury, unduly delaying trial, and wasting time.

A.     **The Court Should Preclude Plaintiff From Making Any Reference to Dismissed Plaintiff C.D.**

This case originally was filed by Plaintiff along with a plaintiff who used the pseudonym C.D. ("C.D."). The Court denied C.D.'s motion to plead anonymously and ordered him to refile his claims using his real name. C.D. elected not to do so. *See, e.g.*, ECF Nos. 64, 67. As a result, Mr. Fowler moved to dismiss C.D.'s claims and his allegations set forth in paragraphs 29 to 55 of the complaint. *See* ECF Nos. 67, 67-1. This Court granted that motion and dismissed C.D.'s claims with prejudice. *See* ECF No. 72.

Although C.D.'s claims were dismissed, a dispute arose during discovery of Plaintiff's claims regarding whether Plaintiff could inquire about C.D.'s allegations. Mr. Fowler moved for a protective order, which the Court granted in many respects. As to C.D., the Court ordered that "[d]uring discovery, plaintiff shall not inquire of the defendant concerning his prior sexual or romantic experiences or encounters, if any, with former plaintiff C.D. C.D. has dismissed his claim against the defendant with prejudice rather than publicly disclose his identity." *See* ECF No. 128 at 7. The Court further observed that if "plaintiff were to inject C.D.'s allegations into this case, fairness would require that defendant be permitted to conduct a full and fair investigation into C.D.'s allegations, which at least to some extent likely require or result in public disclosure of C.D.'s identity." *Id.*

C.D.'s claims and allegations are not part of this case or the upcoming trial. In his Motion *in Limine* No. 4, Mr. Fowler seeks an order precluding Plaintiff from referencing or questioning witnesses about any other allegations of sexual misconduct or abuse against Mr. Fowler, including those of C.D. As stated in that motion, Plaintiff has no admissible evidence of other alleged misconduct by Mr. Fowler, and Plaintiff's mention of any of these unproven allegations at trial

5

would serve only to unfairly prejudice Mr. Fowler about issues for which Plaintiff has no admissible evidence and invite a series of mini-trials about collateral, irrelevant issues.

Besides excluding any reference to C.D.'s allegations, the Court also should exclude all references to C.D. That Plaintiff originally filed his claims along with C.D. is irrelevant. Plaintiff should not be allowed to mention his claims about C.D. approaching him to join in a lawsuit together, that Plaintiff originally filed his claims in this case along with C.D., that Plaintiff was represented by the same attorneys who represented C.D., or reference C.D. at all. Any such references could serve no legitimate purpose. It would only confuse the jury, raise questions about what happened with C.D.'s claims, and cause prejudice to Mr. Fowler that could not be undone, especially if a juror wrongly assumed C.D.'s claims were settled or, worse, that he prevailed in some fashion. Relatedly, although Mr. Fowler does not expect any pleading or other document referencing C.D. to be introduced into evidence, any such trial exhibit or document shown to the jury should be scrubbed to remove any reference to C.D. or his allegations.

B.  **The Court Should Preclude Any Pseudo-Expert Or Hearsay Statements From Fact Witness Sean Snow And Otherwise Preclude Any Reference To His Occupation As A Police Officer.**

Plaintiff disclosed fact witness Sean Snow in his FRCP 26 disclosures, stating, "It is expected that Mr. Snow will testify that Mr. Rapp told him in approximately 1993 about the sexual abuse and assault by defendant Spacey." Scolnick Decl., Ex. 1. Notably, Plaintiff did not disclose Snow as an expert witness. *See* Fed. R. Civ. P. 26(a)(2)(A); Scolnick Decl., ¶ 4.

Snow met Plaintiff on the set of the movie *School Ties* and met again while both attended Tisch at New York University. After 2001, Snow switched occupations and became a police officer. He worked as a homicide detective for five years, and for at least the past six years has investigated sexual crimes against children. Scolnick Decl., Ex. 3 (Rocchio Report) at pp. 14-16.

Besides being deposed, Snow was interviewed by Plaintiff's expert, Lisa Rocchio, Ph.D., and by Mr. Fowler's rebuttal expert, Alexander Bardey, M.D.  In her report, Dr. Rocchio described Snow's occupational history and work as a detective on cases involving sex crimes against children.  *Id*.  Dr. Rocchio also reported that "Mr. Snow stated that while he and Mr. Rapp are friends, Mr. Rapp's behavior was consistent with what he has commonly seen in survivors of childhood sexual abuse."  *Id*.  Dr. Rocchio also conveyed in her report that Snow "believed that Mr. Rapp used his intellect as a defense," that "Mr. Rapp struggled a lot in intimate relationships," that Plaintiff "struggled to form lasting bonds with intimate partners."  *Id*. Snow purportedly also told Dr. Rocchio that Snow "believed Mr. Rapp initially felt that he somehow should have known better than to have been at the party, and that later he blamed himself for not coming forward earlier, as he believed he may have prevented others from subsequently being assaulted by Mr. Spacey."  *Id*.  Snow also told Dr. Rocchio that Mr. Fowler's alleged abuse of Plaintiff was an "open secret" in Hollywood.  *Id*.  And in stating her ultimate opinions, Dr. Rocchio claimed her testing of Plaintiff was consistent with information from others, including Snow "who is currently a detective working on sex crimes perpetrated against children."  *Id*. at 22.

Plaintiff intends to present Snow's testimony at trial via his deposition.  The Court already has sustained Mr. Fowler's objections to Snow's deposition testimony designated by Plaintiff.  *See, e.g.*, ECF No. 234; Scolnick Decl., Ex. 5 (Snow Depo. RT) at 8:12-23 (Snow testimony he has testified in 15-20 trials for the prosecution in cases about theft, DUI, child abuse, child molestation, and homicide), 43:7-13 (Snow testimony he was in the major crimes division in the child abuse unit), 71:6-13 (references to Snow's experience with victims based on his role in law enforcement).

7

But Plaintiff may attempt to present Snow's statements on the above subjects made to Dr. Rocchio.[1]

Plaintiff should not be permitted to present any evidence of Snow's statements that would be undisclosed expert opinions, such as comparing Plaintiff's alleged symptoms or behavior to that which he has witnessed from victims he has encountered in his job. Snow was not disclosed as an expert witness, nor does he claim to have expertise to do so. But the jury would be improperly influenced by his testimony if his specific occupation or job experiences were discussed. Plaintiff most likely would attempt to present this evidence through Dr. Rocchio, as her report includes the inadmissible statements described above.

Besides precluding Snow's inadmissible statements and opinions, the Court should restrict any reference to Snow's occupation. Again, the disclosure Snow works as a police officer or detective investigating child sexual abuse cases could cause the jury to improperly give his testimony the weight of an expert or quasi-expert. Nor is Snow's occupation relevant at all to his testimony or role in this case. Plaintiff has identified him as a fact witness for the narrow reason that Plaintiff allegedly told Snow about the incident with Mr. Fowler in the mid-1990s (*i.e.*, several years before Snow became a police officer).

### C.  The Court Should Preclude Plaintiff From Testifying About What He Purportedly Will Do With Any Monetary Recovery He Receives From This Case

Plaintiff has acknowledged he is very active in the #MeToo movement and wants to "stand up for and protect victims." *See, e.g.*, Scolnick Decl., Ex. 4 (Plaintiff Depo. RT) at 138:4-9,

---

[1] As set forth in Mr. Fowler's Motion *in Limine* No. 3, Dr. Rocchio should not be able to communicate to the jury *any* of the hearsay statements made to her in her collateral interviews of third parties.

286:16-18, 287:5-25.  Plaintiff told Dr. Rocchio he wanted to "give others the courage to come forward" and to "serve as a role model for others." *Id.*, Ex. 3 (Rocchio Report) at p. 9.

The Court should preclude Plaintiff from testifying about what he intends to do or would do with the money if he received a recovery in this case.  If Plaintiff were permitted to testify that he would donate part or all any monetary recovery to charitable causes or to otherwise advance #MeToo or other social causes, Mr. Fowler would be irreparably harmed.  Any such testimony would be entirely speculative, irrelevant, and inadmissible.  And it could improperly influence the jury, which could be incentivized to find for Plaintiff or award damages due to the expectation or hope that the money would be used for a certain reason.  Plaintiff seeks $40 million in damages from Mr. Fowler, and he cannot mitigate the brazenness of that demand by suggesting he would not keep all of the recovery.  And, even if Plaintiff intended to donate all or any portion of a monetary recovery, he still would receive a benefit through recognition or other accolades for such a maneuver.

D. **The Court Should Preclude Christopher Denny From Testifying About Service Of A Deposition Subpoena In A Way He Found Distasteful**

Plaintiff intends to call Christopher Denny to testify about Plaintiff telling his story about Mr. Fowler to Denny in the 1990s.  At his deposition, Denny testified he was displeased by how he was served with a deposition subpoena in this case.  Scolnick Decl., Ex. 6 (Denny Depo. RT) at 11:1-18:9.  Denny acknowledges he had spoken with Plaintiff's counsel and understood his name would be disclosed as a potential witness.  *Id*.  Nonetheless, he refused to respond when a process server came to his door to serve him with a deposition subpoena.  *Id*. Denny claimed the process servers later accomplished service by posing as delivery men dropping off a fruit basket, and thus were let into his apartment by his foster son.  *Id*.

9

Denny has no personal knowledge about this service attempt, as he was not home at the time. Nor was Mr. Fowler's counsel aware of how service was attempted or accomplished. Instead, Mr. Fowler's counsel requested the process server continue trying to serve a witness who appeared to have evaded service the first time around. Scolnick Decl., ¶ 7. Regardless, how Denny was served or why it was done in a certain matter are entirely irrelevant. The only possible basis for Plaintiff to elicit this testimony would be an unwarranted attempt to denigrate Mr. Fowler's counsel and, by association, Mr. Fowler. The Court should issue an order precluding Denny from testifying about the means or circumstances by which he was served with a deposition subpoena.

### E.      **The Court Should Preclude Plaintiff From Inquiring About Or Presenting Evidence of Evan Lowenstein's Divorce Or Spousal Support Proceedings**

Evan Lowenstein is Mr. Fowler's business partner and manager. During his deposition, Plaintiff's counsel asked Lowenstein about divorce proceedings between himself and his ex-wife. Scolnick Decl., Ex. 7 (Lowenstein Depo. Tr.) at 276:2-278:4; 286:10-288:11. Although the divorce preceded Plaintiff's public accusation against Mr. Fowler, Lowenstein's ex-wife filed a motion in 2018 that sought a modification of the spousal support agreement. *Id*. In her filing, Lowenstein's ex-wife made reference to keeping their children from Mr. Fowler. *Id*. Lowenstein testified this filing was done at the suggestion of Lowenstein's ex-wife's lawyers, who were looking for leverage for their request to modify the spousal support agreement. *Id*. Lowenstein also testified the request was not granted, that his ex-wife was "held in contempt," and that he and his ex-wife ultimately resolved the request for revised spousal support. *Id*. Lowenstein also testified he had zero concerns about his children being around Mr. Fowler, stating, "I told her I 100 percent thought our children were safe and she 100 percent trusted me." *Id*. at 277:21-278:4.

That Lowenstein's ex-wife made a request in unrelated spousal support proceedings in 2018 seeking to prevent Lowenstein from bringing their children around Mr. Fowler after

10

Plaintiff's public accusations – and the motives, circumstances, and resolution of his ex-wife's request – are entirely irrelevant. And any questions or reference to those proceedings would unfairly prejudice Mr. Fowler by suggesting Lowenstein's ex-wife thought Mr. Fowler was dangerous in some way. Besides the prejudice, any reference to Lowenstein's ex-wife's request would unnecessarily waste trial time, including potentially requiring Mr. Fowler to call Lowenstein's ex-wife to rebut or refute the insinuation suggested by Plaintiff's counsel raising the issue. The Court should issue an order preventing Plaintiff and his counsel from asking about or referencing Lowenstein's divorce proceedings or any specific request made by his ex-wife in those proceedings.

**F.      The Court Should Preclude Plaintiff From Inquiring About Or Referencing Mr. Fowler's Rehab And Medical Treatments Because They Are Irrelevant, Prejudicial, And Protected by HIPAA And Other Law**

During discovery, Plaintiff asked Mr. Fowler to provide "[f]ully executed HIPAA authorization permitting the release of all records from any and all facilities Spacey allegedly sought evaluation and treatment following the allegations of sexual misconduct in 2017." Scolnick Decl., Ex. 2. Mr. Fowler objected to this document request on multiple grounds, including that it sought private and confidential information covered by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and other law. *Id*. Mr. Fowler's stated he would not produce documents to this request. *Id*. Plaintiff never challenged this objection or refusal to provide the protected information.

Plaintiff's counsel later posed questions at deposition to Mr. Fowler about such information. Mr. Fowler's counsel objected, and Mr. Fowler refused to respond, except to state the treatment was not for sex addiction as suggested by Plaintiff's counsel's question. *See id*., Ex. 9 (Fowler Depo. RT) at 191:16-195:3. Mr. Fowler's counsel confirmed Mr. Fowler was asserting

11

privacy and privilege over Mr. Fowler's protected information and that Mr. Fowler would not be raising the issue of his treatment at trial. *Id.* Plaintiff's counsel acquiesced, stating he did not want to get into the issue and that if it's "not an issue [that will be raised at trial], then that's the end of it." *Id.* As with the objections to the written discovery, Plaintiff did not challenge Mr. Fowler's objections at deposition and did not otherwise press for disclosure of the protected information.

Although Plaintiff's counsel has conceded the issue will not be raised at trial, Mr. Fowler respectfully requests the Court confirm that with an order that Plaintiff and his counsel are precluded from making any reference to Mr. Fowler seeking medical or psychiatric treatment or the specific purpose, motive, or outcome of any such treatment or "rehab."

### G. Any Testimony From Elizabeth Loftus, Ph.D, Should Not Include Questioning Her About Her Prior Engagements

Mr. Fowler designated a memory expert, Dr. Loftus, who is a preeminent expert in her field. She has testified frequently as an expert witness in other lawsuits, often as a teaching expert on issues related to memory. Mr. Fowler does not intend to call Dr. Loftus at trial because her testimony about memory is no longer relevant to Mr. Fowler's defense that Plaintiff is lying about the alleged incident, as was borne out by discovery including of third-parties deposed after Mr. Fowler disclosed Dr. Loftus. But Plaintiff's counsel has indicated they may attempt to present evidence from Dr. Loftus if Mr. Fowler does not call her. If the Court allows Plaintiff to use Dr. Loftus's video testimony, the Court should preclude Plaintiff's counsel from presenting evidence about Dr. Loftus' prior engagements. Although she has testified in hundreds of cases, Plaintiff's counsel attempted at deposition to focus on her involvement in cases for various notorious individuals, including O.J. Simpson, Ted Bundy, Rodney King, Ghislaine Maxwell, the Menendez brothers, and Michael Jackson *See* Scolnick Decl., Ex. 8 (Loftus Depo. RT) at 69:9-74:11. Her

involvement in these cases is irrelevant to her testimony here other than as to her qualifications as an expert, which Plaintiff has not challenged.

Plaintiff's counsel should not be able to present evidence to the jury about Dr. Loftus' prior engagements because its only purpose would be to inflame the jury's emotions and prejudice Mr. Fowler by suggesting he is "guilty by association" simply because an expert witness he designated has been involved in high-profile cases with notorious individuals. To the extent Dr. Loftus' experience or qualification as an expert needs to be addressed, it should be done outside the presence of the jury.

H. **Plaintiff Should Be Precluded From Presenting Evidence About Mr. Fowler's Purported Financial Condition Or Other Evidence Related Only To The Issue Of Punitive Damages Absent Bifurcation Of That Issue From A First Trial Phase**

Plaintiff's complaint seeks punitive damages against Mr. Fowler. *See* ECF No. 6-1. Plaintiff, however, took no meaningful discovery about Mr. Fowler's financial condition or other evidence which would be relevant only to punitive damages.[2] Mr. Fowler requests Plaintiff not be permitted to present testimony or evidence about Mr. Fowler's financial condition or other evidence relevant only to punitive damages. In the unlikely event the jury finds for Plaintiff and that he is entitled to punitive damages, the issue should only be decided in a bifurcated, second phase trial on that narrow issue. *See, e.g.*, Fed. R. Civ. P. 42(b); *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 374 (2d Cir. 1988) ("Since it often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages, the preferred method of accommodating the various interests is to delay

---

[2] Mr. Fowler does not seek to exclude reference to the fact that Plaintiff is seeking $40 million, including $30 million in punitive damages in this case. That request is relevant to Plaintiff's credibility and motives, which can and will be presented to the jury in a phase on liability.

13

trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all.")

## CONCLUSION

For the foregoing reasons, Mr. Fowler respectfully requests that the Court grant this motion and preclude Plaintiff and his counsel from introducing evidence or referencing the materials described above. To the extent necessary, Mr. Fowler also requests that the Court order Plaintiff's counsel to inform Plaintiff's expert and any other witness presented by Plaintiff of the ruling so those witnesses do not inadvertently disclose any of the precluded materials.

Dated: September 26, 2022
      Irvine, California

Respectfully submitted,

/s/ *Jennifer L. Keller*
    Jennifer L. Keller

Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick
Jay P. Barron (*pro hac vice*)
KELLER / ANDERLE LLP
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
(949) 476-8700
jkeller@kelleranderle.com
cscolnick@kelleranderle.com
jbarron@kelleranderle.com

Michael Tremonte
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey Fowler a/k/a Kevin Spacey*

14

**CERTIFICATE OF SERVICE**

    In accordance with Local Rule 5.2, I, Jennifer L. Keller, hereby certify that on September 26, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                                          */s/ Jennifer L. Keller*
                                                                           Jennifer L. Keller