**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANTHONY RAPP,

                              Plaintiff,

   -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                              Defendant.

Case No. 1:20-cv-09586 (LAK) (SDA)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO PRECLUDE PLAINTIFF FROM PRESENTING EVIDENCE ABOUT OR REFERENCING DAWES AND HOLTZMAN OR ANY OTHER UNRELATED ALLEGED INCIDENT**

KELLER / ANDERLE LLP
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick
Jay P. Barron (*pro hac vice*)
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
(949) 476-8700
jkeller@kelleranderle.com
cscolnick@kelleranderle.com
jbarron@kelleranderle.com

SHER TREMONTE LLP
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey*
*Fowler a/k/a Kevin Spacey*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

    A.    Dawes's Story About An Alleged Encounter With Mr. Fowler In 1988 ............... 3

            1.    Dawes Contacts *Buzzfeed* After Seeing Its Article About Plaintiff's Allegations ..................................................................................... 4

            2.    Dawes's Deposition Testimony .................................................. 5

            3.    Brown's Deposition Testimony ................................................. 7

    B.    Holtzman's Story About An Alleged Encounter With Mr. Fowler In 1981 .......... 8

    C.    Plaintiff's Counsel's Repeated References To Unproven, Unsubstantiated Accusations of Third Parties ..................................................... 10

LEGAL STANDARD .................................................................................................. 11

ARGUMENT ............................................................................................................... 12

    A.    Dawes's And Holtzman's Testimony Is Not Admissible Under FRE 415 .......... 12

            1.    Plaintiff Alleges No Conduct Which Could Make Any FRE 415 Evidence Relevant Or Admissible ................................................. 12

            2.    Dawes's Alleged Conduct Does Not Qualify As "Sexual Assault" Or "Child Molestation" Under FRE 415 ......................................... 16

            3.    The Testimony Of Dawes And Holtzman Is Not Relevant To Plaintiff's Claims ...................................................................... 17

    B.    Dawes's And Holtzman's Testimony Is Not Admissible Under FRE 404(b) ...... 17

    C.    Even If It Were Otherwise Admissible, Dawes's And Holtzman's Testimony Should Be Excluded Under FRE 403 ................................................ 20

    D.    Plaintiff Also Should Be Precluded From Referencing Or Asking Any Witness About Other Rumors Or Accusations Of Other Alleged Sexual Misconduct By Mr. Fowler ............................................................................. 23

CONCLUSION ............................................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Doe v. City of San Diego*, 2014 WL 11997809 (S.D. Cal. July 25, 2014) ................................... 22

*Doe v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) ...................................................................... 12

*Huddleston v. United States*, 485 U.S. 681 (1988) ................................................................. 18

*Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496 (1988) ............................................ 22

*Johnson v. Elk Lake School District*, 283 F.3d 138 (3d Cir. 2002) ............................................ 22

*Montanez v. City of Syracuse*, 2019 WL 4328872 (N.D.N.Y. Sept. 12, 2019) ........................... 19

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ............................................................. 12

*State v. Jason B*., 729 A.2d 760, 776 (Conn. Sup. Ct.1999) ......................................................... 6

*United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ........................................................ 19

*United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013) ..................................................... 11

*United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993) ............................................................. 19

*United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) ........................................................... 21

*United States v. McCallum*, 584 F.3d 471 (2d Cir. 2009) ......................................................... 18

*United States v. Spoor*, 904 F.3d 141 (2d Cir. 2018) .......................................................... 17, 21

*Wilson v. Muckala,* 303 F.3d 1207 (10th Cir. 2002) ................................................................ 18

**Statutes**

18 U.S.C. § 2244 ......................................................................................................... 14

18 U.S.C. § 2246 ................................................................................................. 13, 14, 16

18 U.S.C. § 2246(2) ..................................................................................................... 13

18 U.S.C. § 2246(3) ................................................................................................. 14, 15

8 U.S.C. § 2246 ........................................................................................................... 14

Connecticut General Statute § 53a-73a ............................................................................. 6

N.Y. Penal Law § 130.00(3) .......................................................................................... 14

**Rules**

Fed. R. Evid. 401 ................................................................................................ 17

Fed. R. Evid. 403 ................................................................................... 20, 21, 22

Fed. R. Evid. 404(b) ........................................................................................... 18

Fed. R. Evid. 404(b)(1) ...................................................................................... 17

Fed. R. Evid. 404(b)(2) ...................................................................................... 17

Fed. R. Evid. 413 ................................................................................................ 13

Fed. R. Evid. 413(d) .................................................................................... 13, 16

Fed. R. Evid. 414 ................................................................................................ 13

Fed. R. Evid. 414(d)(1) ...................................................................................... 13

Fed. R. Evid. 415 ................................................................................. 12, 15, 16, 17

Fed. R. Evid. 415(a) ..................................................................................... 12, 17

Defendant Kevin Spacey Fowler ("Mr. Fowler"), by and through his counsel, respectfully submits this memorandum of law in support of his Motion *in Limine* No. 4 To Preclude Plaintiff From Presenting Evidence About Or Referencing Dawes and Holtzman Or Any Other Unrelated Alleged Incidents.[1]

## INTRODUCTION

Plaintiff Anthony Rapp's ("Plaintiff") claims about an alleged incident with Mr. Fowler in 1986 have been refuted and left unsubstantiated, including from independent third party witnesses. The evidence adduced during discovery makes clear the incident Plaintiff alleges did not occur. Plaintiff intends to obscure the flimsiness of his claims by presenting evidence at trial about unrelated alleged incidents involving Mr. Fowler.  Specifically, he intends to offer testimony from two individuals about decades-old incidents they allege, neither of which pertains to Plaintiff's claims.  Nor is there any basis for any evidence about either incident (or any other unrelated incident) being injected into the trial on Plaintiff's claims.

Plaintiff first seeks to introduce evidence from Justin Dawes ("Dawes") about an alleged incident in which Dawes and a friend briefly met with Mr. Fowler after a theater event in an apartment where pornography allegedly was playing on a television.  Dawes – who was sixteen years old (and an adult under Connecticut law) – and his 21-year-old friend had a drink and then left.  Dawes reported his story to *Buzzfeed* shortly after Plaintiff publicly accused Mr. Fowler. Dawes never mentioned any physical contact between him and Mr. Fowler in his written account to *Buzzfeed* about that alleged incident.  Nor did the resulting article mention any touching.  Nor does Dawes's friend recall any touching.  At deposition, Dawes mentioned for the first time that

---

[1]     To provide greater clarity when referencing the various motions *in limine*, Mr. Fowler has numbered his motions *in limine*.

Mr. Fowler allegedly touched Dawes's knee just above the knee for 30-45 seconds while they were talking on a couch.

Plaintiff also seeks to introduce evidence from Andrew Holtzman ("Holtzman") about an alleged incident in 1981 when Mr. Fowler allegedly approached Holtzman in a theater office, briefly grabbed his crotch, and lifted him onto a desk.  As with Dawes, Holtzman did not publicize his story until after Plaintiff's public accusations.  Holtzman was a 27-year-old man at the time of the alleged incident while Mr. Fowler was five years younger and just starting as an actor. Holtzman claims he had no previous or subsequent interaction with Mr. Fowler, although he thinks he knew who Mr. Fowler was because Mr. Fowler was involved in the play being put on at the theater.

No evidence about either alleged incident should be admissible during the trial of Plaintiff's claims.  Plaintiff cannot admit such evidence under Federal Rule of Evidence ("FRE") 415 because Plaintiff's allegations do not meet the threshold requirement for introduction of any such evidence. Nor does Dawes's alleged incident qualify as a "sexual assault" or other covered conduct.  Plaintiff also cannot admit such evidence under FRE 404(b).  Plaintiff has no legitimate purpose for introducing such evidence, as the alleged Dawes and Holtzman incidents have no bearing on motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistaken, or lack of accident as to the wholly unrelated incident which Plaintiff alleged occurred between Mr. Fowler and him.  Rather, Plaintiff seeks to introduce evidence of these unrelated incidents as propensity or character evidence plainly barred by FRE 404.

Finally, even if there were some basis for otherwise admitting evidence of the alleged Dawes and Holtzman incidents, such evidence should be precluded under FRE 403.  The alleged Dawes and Holtzman incidents are contested and unsubstantiated.  Unlike Plaintiff's claim, the

other incidents involved adults.  And the other alleged incidents involved different alleged acts and circumstances than that asserted by Plaintiff.  Any minimal relevance of these other alleged acts is greatly outweighed by the risk of undue prejudice to Mr. Fowler, confusing the issues to be decided, misleading the jury, wasting of time and delaying trial.

Finally, Plaintiff may attempt to question witnesses or otherwise reference various rumors or other unsubstantiated incidents of alleged sexual misconduct by Mr. Fowler for which no witness will testify.  In over two years since this case was filed, Plaintiff has disclosed only the equivocal and refuted allegations of Dawes and Holtzman as potential third-party witnesses of Mr. Fowler's other alleged sexual misconduct.  But in pleadings and during discovery, Plaintiff posed many questions and made repeated reference to various media articles or other publicly asserted accusations.  If permitted to do so at trial, Plaintiff will irreparably prejudice Mr. Fowler and undermine the fairness and legitimacy of trial, as Plaintiff's counsel would be suggesting to the jury that Mr. Fowler engaged in other wrongdoing for which Plaintiff will present no evidence. The trial should focus on Plaintiff's claims, rather than being sidetracked by a series of mini-trials about unrelated, irrelevant rumors and alleged incidents intended only to unfairly predispose the jury against Mr. Fowler.

Mr. Fowler therefore respectfully requests that the Court grant this motion and preclude Plaintiff from introducing any testimony or evidence about or otherwise referencing Mr. Fowler's alleged encounters with Dawes and Holtzman or any other alleged incident of sexual misconduct of Mr. Fowler in any manner.

## **FACTUAL BACKGROUND**

A.  **Dawes's Story About An Alleged Encounter With Mr. Fowler In 1988**

Dawes has no information about Plaintiff's allegations.  He has no knowledge of Plaintiff's

alleged incident in New York with Mr. Fowler in 1986.  Dawes has never met or communicated with Plaintiff.  *See* Scolnick Decl., Ex. 1 (Dawes Depo. RT, Vol. I) at 143:9-13.  And he claimed to have only met or spoken with Mr. Fowler once, in 1988.  *Id*. at 31:16-17.  The existence and circumstances of that alleged encounter are heavily disputed and, in any event, inadmissible.

1.   **Dawes Contacts *Buzzfeed* After Seeing Its Article About Plaintiff's Allegations**

After Plaintiff publicly accused Mr. Fowler through his proactive participation in the October 2017 *Buzzfeed* article written by Plaintiff's longtime friend (Adam Vary), Dawes contacted *Buzzfeed* to make his own unrelated allegations against Mr. Fowler.  *See* Scolnick Decl., Ex. 1 (Dawes Depo. RT, Vol. I) at 78:14-22.  *Buzzfeed* asked Dawes to put in writing what he claimed happened with Mr. Fowler, and he did so by sending a written account via e-mail.  *Id*. at 79:15-80:9; *see also id*., Ex. 2 (Dawes Depo. RT, Vol. II) at 57:20-58:12; *id*., Ex. 3 (Depo Ex. 143).  Before that November 2017 e-mail, Dawes had never communicated in writing with anyone about his allegations against Mr. Fowler stemming from the claimed incident.  *Id*., Ex. 2 (Dawes Depo. RT, Vol. II) at 88:7-13.

In his e-mail to Vary, Dawes claimed in 1988, when he was sixteen, he visited his adult friend Bill Brown in New Haven, Connecticut.  *Id*., Ex. 3 (Depo. Ex. 143).  Brown was attending college and working as an assistant house manager at the Long Wharf Theater in New Haven, Connecticut.  Dawes worked as a volunteer usher during his visit.  Dawes and Brown accompanied several theater employees and cast members to the Bennigan's restaurant after one of the shows.  *Id*.  Mr. Fowler was part of the group at Bennigan's.  As the group was leaving the restaurant, Mr. Fowler allegedly told Brown and Dawes there was a party at his apartment afterwards, and invited them to stop by.  *Id*.  According to Dawes's story, Mr. Fowler offered them drinks when they arrived.  *Id*.  Brown and Dawes then allegedly sat down in the living room while Mr. Fowler was

getting drinks.  *Id*.  Dawes allegedly noticed a television in the living room playing gay pornography.  *Id*.  When Mr. Fowler came back to the room, Brown and Dawes allegedly asked who else was coming to the party.  *Id*.  Mr. Fowler replied that he thought no one else was coming. Neither Mr. Fowler, Brown, nor Dawes mentioned or referenced the gay pornography on the television.  *Id*.  Dawes wrote, "We sat awkwardly for about 10 minutes, long enough to finish our drinks."  *Id*.  Brown and Dawes then left the apartment and allegedly laughed to each other about "how awkward it was to sit with him while watching gay porn."  *Id*.

Dawes' written account of the alleged incident in his lengthy e-mail to Vary makes no mention of Mr. Fowler making any physical contact with Brown or Dawes, nor any attempt by Mr. Fowler to do so.  *See* Scolnick Decl., Ex. 2 (Dawes Depo. RT, Vol. II) at 57:20-59:10; *see also id*., Ex. 3 (Depo. Ex. 143).  Nor does it mention Brown leaving the room at any time.  *Id*.

Dawes also gave *Buzzfeed* the contact information for Brown to verify Dawes's story, but *Buzzfeed* was unable to get in touch with Brown.  *See* Scolnick Decl., Ex. 1 (Dawes Depo. RT, Vol. I) at 82:18-21; *see also id*., Ex. 10 (11/3/17 Buzzfeed article).  Despite that, *Buzzfeed* published an article on November 3, 2017, that included Dawes's story.  *Id*., Ex. 10 (11/3/17 *Buzzfeed* article).  In the story, Dawes is quoted as stating the incident was "cringey" but "benign." *Id*.  Dawes also is quoted as stating Mr. Fowler was not "intimidating or pushy."  *Id*.  As with his written account to Vary, the *Buzzfeed* article describing Dawes's story mentions no physical contact with Mr. Fowler or attempted physical contact by Mr. Fowler.  *Id*.

### 2.    Dawes's Deposition Testimony

Despite Dawes's identity being publicly available since November 2017 and unquestionably known to Plaintiff's counsel by December 2020, Plaintiff did not disclose Dawes as a potential witness until a supplemental F.R.C.P. 26 disclosure on December 6, 2021.  As was

later revealed, Plaintiff's counsel first contacted Dawes in early December 2021.  *See* Scolnick
Decl., Ex. 1 (Dawes Depo. RT, Vol. I) at 35:5-8.  Dawes agreed to participate in a remote
deposition, and Plaintiff noticed Dawes's deposition without serving him with a subpoena.

Dawes's first deposition occurred on December 28, 2021.  Because Dawes refused to
disclose his friend's identity to Mr. Fowler's counsel (despite revealing it to Plaintiff's counsel
and, previously, to *Buzzfeed*), Mr. Fowler filed a motion seeking various relief.[2]  The Court issued
an order on that motion that, among other things, required Dawes to sit for a second deposition,
which ultimately occurred on February 10, 2022.  *See* ECF No. 137.

During his depositions, Dawes testified about the alleged incident he had disclosed to
*Buzzfeed*.  He claimed he was 16 years old at the time while his friend – ultimately revealed to be
Bill Brown – was at least 21 years old at the time.[3]  *See* Scolnick Decl., Ex. 1 (Dawes Depo. RT,
Vol. I) at 7:9-14, 96:10-18.  He testified that he was warned by Brown that Mr. Fowler had a
"fondness or predilection for boys -- younger boys" and to be aware of that in his interactions with
him.  *Id*. at 96:19-97:13.  This purported detail was not mentioned in the *Buzzfeed* article or
mentioned to anyone before his deposition.  *Id*.

Dawes testified that when he and Brown arrived at the apartment after Bennigan's, gay
pornography was playing on a small television in the living area, although neither Mr. Fowler,

---

[2]     Dawes testified that when he cooperated with *Buzzfeed* in communicating his allegations
against Mr. Fowler, he did not express any reluctance in disclosing Brown's name and, indeed, he
provided it to *Buzzfeed* so the publication could attempt to contact Brown.  *See* Scolnick Decl., Ex.
2 (Dawes Depo. RT, Vol. II) at 53:8-15.  He also acknowledged he failed to provide Mr. Fowler's
counsel with a copy of Dawes' written account to *Buzzfeed* after his first deposition, despite his
promises at that deposition to do so.  *Id*. at 56:9-57:2, 57:16-19.

[3]     Like his 21-year-old friend, Dawes was a legal adult at the time of the alleged incident.
The age of consent in Connecticut in 1988 (and today) is sixteen years old. *See, e.g., State v. Jason
B*., 729 A.2d 760, 776 (Conn. Sup. Ct.1999); Connecticut General Statute § 53a-73a (criminalizing
sexual contact with a person "under age 16").

Brown, or he mentioned or referenced the video.  Dawes testified he and his friend had two drinks

with Mr. Fowler and were at his apartment for 20-25 minutes (unlike his account to *Buzzfeed* which

stated he and his friend had only one drink and were there for a total of about 10 minutes).  *See id*.

at 22:6-14.

At deposition, Dawes also testified that Brown got up to use the bathroom or get another

drink at one point, at which time Mr. Fowler and Dawes were sitting alone together on the couch.

As they chatted, Dawes claimed that Mr. Fowler put his hand on Dawes' leg slightly above the

knee for about 30-45 seconds.  *Id*. at 27:4-20, 28:6-10.  Dawes claimed he did not "feel threatened"

but it was "mildly uncomfortable."  *Id*.  The conversation that night was about the play at the Long

Wharf Theater, the people in the play, and other small talk.  *Id*. at 135:3-10.  During the alleged

encounter, Mr. Fowler discussed nothing sexual in nature.  *Id*. at 135:11-20.  He did not assault or

attempt to assault Dawes or his friend.  *Id*. at 88:22-89:2, 133:21-135:2, 166:8-13.  Nor did he

inappropriately touch Dawes or his friend in any way.  *Id*.  Dawes stated the incident was not

"particularly grievous or traumatic."  *Id*. at 33:2-11, 162:9-15.  He thought nothing that night could

constitute "sexual abuse."  *Id*. at 134:8-135:2.

### 3.    Brown's Deposition Testimony

As stated, Dawes refused to disclose Brown's identity during his first deposition and

provided it at his second deposition only after ordered to do so by the Court.[4]  At his deposition,

Brown contradicted key portions of Dawes's story.

Brown did not recall Mr. Fowler inviting Dawes and him to a party at his apartment, but

---

[4]    Despite the order from the Court, Dawes continued to give evasive or non-responsive
answers during his second deposition, which prompted Mr. Fowler's counsel to appropriately
articulate motions to strike on the record.  Dawes became increasingly combative and flippant, at
one point claiming he "ha[s] to drink every time you say that" when a motion to strike was stated.
*See* Scolnick Decl., Ex. 2 (Dawes Depo. RT, Vol. II) at 54:4-20.

instead had suggested they could watch the movie *Chinatown* which had come up during the conversation at Bennigan's.  *See* Scolnick Decl., Ex. 9 (Brown Depo. RT) at 46:21-48:14.  Brown did not recall pornography playing on a television in Mr. Fowler's apartment.[5]  *Id.* at 13:3-14:4, 55:19-56:6.  Nor did Brown recall discussing with Dawes any pornography playing at Mr. Fowler's apartment after they left the house or apartment in 1988.  *Id.*  Brown also did not recall ever leaving the room or otherwise leaving Dawes and Mr. Fowler alone.  *Id.* at 14:13-17.  Nor did Brown see Mr. Fowler touch Dawes in an inappropriate manner, touch Dawes's leg, or touch Dawes at all.  *Id*. at 14:19-16:19.  Brown does not recall Dawes ever telling him that Mr. Fowler allegedly touched Dawes's leg.  *Id*. at 16:21-17:16.  Brown also did not recall giving any warnings to Dawes about Mr. Fowler.  *Id*. at 17:24-20:5.  And, contrary to Dawes's testimony, Brown testified that Dawes did not inform him in 2017 that Dawes had given *Buzzfeed* his name or inform Brown that the publication would be attempting to contact him.  *Id*. at 31:4-33:1, 33:24-34:10.

## B.    Holtzman's Story About An Alleged Encounter With Mr. Fowler In 1981

Like Dawes, Holtzman has no information about Plaintiff's allegations, and no knowledge of Plaintiff's alleged incident in New York with Mr. Fowler in 1986.  *See, e.g*., Scolnick Decl., Ex. 4 (Holtzman Depo. RT) at 49:3-20.  Nor has Holtzman ever met Plaintiff.  *Id*. at 48:20-21.  Instead, Holtzman testified about an unrelated incident with Mr. Fowler in 1981.  As with Dawes's testimony, Mr. Fowler vehemently disputes Holtzman's testimony; but that dispute need not play out in front of the jury because Holtzman's testimony is irrelevant and inadmissible for several reasons.

---

[5]      Brown had discussions with Plaintiff's counsel in early December 2021, before Dawes's first deposition, in which Brown communicated that he did not recall any pornography playing in the apartment in 1988.  *See* Scolnick Decl., Ex. 9 (Brown Depo. RT) at 28:3-21.  Plaintiff's counsel therefore knew Brown would not verify key aspects of Dawes's account when he encouraged Dawes's concealment of Brown's identity at his first deposition.

Holtzman testified he worked at the New York Shakespeare Festival Public Theater during the summer of 1981.  *See* Scolnick Decl., Ex. 4 (Holtzman Depo. RT) at 6:22-7:15.  At that time, Holtzman was a 27-year-old man, while Mr. Fowler was at least five years younger and a fledgling actor.  *Id*. at 155:24-156:16, 156:22-157:4, 157:9-158:11.  Holtzman claims Mr. Fowler came into his office and used a guest space commonly used by others.  *Id*. at 20:9-16, 29:18-30:5, 128:2-9, 129:6-24.  Holtzman had never met or interacted with Mr. Fowler before this occasion, although he believes he knew Mr. Fowler was involved in the production then being put on at the theater. *Id*. at 21:23-22:12, 160:2-5, 175:9-176:12.  Holtzman claims Mr. Fowler came into the office during the day when Holtzman was finishing a phone call.  *Id*. at 19:3-9, 161:8-11, 23-25.  When Holtzman hung up the phone, Holtzman stood up first and Mr. Fowler then stood up and approached him.  *Id*. at 30:12-21, 172:10-22, 173:8-10.  Holtzman states he could tell Mr. Fowler had an erection from observing the front of his jeans as Mr. Fowler walked toward him.  *Id*. at 30:22-31:3, 173:8-174:23.  Holtzman claims Mr. Fowler then grabbed Holtzman's crotch, lifted him into the air for a "nanosecond" onto the desk, and grinded his erection into him.  *Id*. at 31:4-23, 32:14-33:24, 183:8-10, 187:13-17.  Holtzman told Mr. Fowler to get off of him and pushed him away, and then Mr. Fowler stormed out of the room.  *Id*.  Holtzman never saw Mr. Fowler again.  *Id*. at 35:9-13.

Holtzman told no one else about this alleged incident on that day and told no one else about the incident until several years later, when he told his then-partner with whom he was living (and is now deceased).  *Id*. at 195:6-21, 196:24-197:4.  He told no one else working at the theater.  *Id*. at 201:7-17.  Other than his then-partner, Holtzman recalled telling no one else about the incident before the 1990s.  *Id*. at 202:16-21.  Holtzman later would tell the story at dinner parties because it was "almost amusing in the sense that this guy is becoming a big star."  *Id*. at 199:16-201:6.

Holtzman did not tell a "ton of people" and the majority of his friends did not know about the alleged incident before he made a Facebook post in 2017.  *Id*. at 209:14-211:25.

After Plaintiff's public accusations in 2017, Holtzman posted his allegations in a message to his Facebook friends, but the media picked up on the story and his allegations received some publicity.  *Id*. at 36:13-38:2.  Plaintiff's counsel's office first contacted Holtzman on or around December 26, 2021, and after several discussions with Plaintiff's counsel, Holtzman agreed to testify.  *Id*. at 58:15-59:20, 61:2-6.  Near the beginning of their discussions, Plaintiff's counsel told Holtzman they were bringing the case to seek "reparations" of $40 million.  *Id*. at 68:25-69:21, 71:2-72:2, 73:7-12.

Holtzman testified his encounter with Mr. Fowler was "not something I focused on in 40 years" so he acknowledged he did not recall some details.  *Id*. at 79:12-80:12.  Holtzman testified the alleged incident was "more shocking than it was traumatizing."  *Id*. at 200:6-19.

## C.    Plaintiff's Counsel's Repeated References To Unproven, Unsubstantiated Accusations of Third Parties

Besides Dawes and Holtzman, Plaintiff has not identified or disclosed any witness who claims to personally know of any other accusation of misconduct against Mr. Fowler.  Nor has Plaintiff identified any such witness on his list of trial witnesses.  But throughout this case, Plaintiff's counsel has referenced third-party accusers in pleadings and asked questions about such accusations at deposition.  For example, Plaintiff began this case by unsuccessfully seeking a remand to state court.  In his filing, Plaintiff gratuitously referenced unrelated allegations against Mr. Fowler and attached various media articles about them, even though such alleged misconduct had nothing to do with the jurisdictional issue or this case at all.  *See, e.g.*, ECF No. 11-2, 11-5, 11-15, 11-18.   Plaintiff's counsel also asked about these allegations at Mr. Fowler's deposition and at the depositions of his expert witnesses, Alexander Bardey, M.D. and Elizabeth Loftus,

Ph.D., even though they do not pertain to Plaintiff's claims or the expert opinions.

The Court already narrowed Plaintiff's ability to take discovery about such matters, including by limiting Plaintiff's ability to ask Mr. Fowler in discovery about third-party accusers whose identities have not been publicly disclosed.  *See* ECF No. 128.  Plaintiff's counsel nonetheless asked at Mr. Fowler's deposition about certain accusations reported by third-parties in media articles.  Mr. Fowler denied the allegations.  Plaintiff's counsel also posed questions to Mr. Fowler's experts about other alleged misconduct, even though they have no relevance to the opinions those experts were designated to give and are otherwise not based on any evidence which will be introduced at trial.

In over two years since filing this case, Plaintiff has generated no evidence about any other alleged misconduct by Mr. Fowler, other than that alleged by Dawes and Holtzman.  Besides prohibiting reference to Dawes and Holtzman for the reasons stated in this motion, Mr. Fowler asks the Court to preclude Plaintiff and his counsel from referencing or asking questions about any other alleged sexual misconduct by Mr. Fowler, as no witness will testify about such matters and no evidence exists to support them.  Absent a preemptive order on this such subject, Plaintiff or his counsel could taint the jury proceedings by making reference to inadmissible evidence solely to prejudice Mr. Fowler.  And any such references will risk the trial devolving into a series of mini-trials about allegations wholly unrelated and unconnected to those made by Plaintiff, resulting in a wasteful exercise that will only confuse and mislead the jury (besides unfairly prejudicing Mr. Fowler).

## **LEGAL STANDARD**

District courts may determine evidentiary issues in motions *in limine* before trial.  *See, e.g., United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013).  "The purpose of an *in limine* motion

is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

## ARGUMENT

### A.   Dawes's And Holtzman's Testimony Is Not Admissible Under FRE 415

Federal Rule of Evidence ("FRE") 415(a) states: "In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation.  The evidence may be considered as provided in Rule 413 and 414."  *See* Fed. R. Evid. 415(a).  In evaluating whether evidence is potentially admissible under FRE 415, "courts adopt a three-step inquiry. . . . First, the defendant must be accused of an offense of sexual assault or child molestation; second, the evidence being proffered must relate to the commission of another offense of sexual assault or child molestation; and last, the evidence has to be relevant."  *Doe v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000), *citing United States v. Guardia*, 135 F.3d 1326, 1328, 1332 (10th Cir. 1998).

Plaintiff cannot demonstrate Dawes's and Holtzman's testimony is admissible under FRE 415 for several reasons.

### 1.   Plaintiff Alleges No Conduct Which Could Make Any FRE 415 Evidence Relevant Or Admissible

Plaintiff cannot offer Dawes's or Holtzman's testimony because Plaintiff's allegations do not involve a "claim for relief based on a party's alleged sexual assault or child molestations," which is the initial threshold requirement for any potential evidence under FRE 415.  The acts which can constitute "child molestation" or "sexual assault" are determined under FRE 413-414.  *See* Fed. R. Evid. 415(a).

First, Plaintiff makes no allegation of child molestation under FRE 414, which only applies to alleged crimes committed against a child under fourteen years of age. *See* Fed. R. Evid. 414(d)(1). Besides failing to allege or demonstrate the underlying wrongdoing, Plaintiff claims to have been fourteen years old during the alleged incident, rendering FRE 414 inapplicable. *See, e.g.*, Scolnick Decl., Ex. 5 (Plaintiff Depo. RT) at 10:8-13.

Second, FRE 413 only applies to a case of alleged "sexual assault" as defined in that section. That definition encompasses criminal conduct involving: "(1) any conduct prohibited by 18 U.S.C. chapter 109A; (2) contact, without consent, between any part of the defendant's body — or an object — and another person's genitals or anus; (3) contact, without consent, between the defendant's genitals or anus and any part of another person's body; (4) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or (5) an attempt or conspiracy to engage in conduct described in subparagraphs (1)–(4)." *See* Fed. R. Evid. 413(d). Plaintiff does not allege Mr. Fowler made any contact with his genitals or anus or touched Plaintiff with Mr. Fowler's genitals. Plaintiff also does not allege Mr. Fowler derived sexual gratification from inflicting bodily injury or physical pain on Plaintiff. Nor does Plaintiff allege Mr. Fowler engaged in any conspiracy.

Plaintiff's attempted reliance on FRE 415 therefore depends on Mr. Fowler's alleged conduct violating 18 U.S.C. chapter 109A. The definitions of prohibited conduct under that chapter are set forth in 18 U.S.C. § 2246. Plaintiff alleges no "sexual act" as that term is defined under 18 U.S.C. § 2246(2), which requires contact between the penis and vulva or anus, between the mouth and penis or anus, penetration, or other touching indisputably not present here. The term "sexual contact" means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse,

humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(3).

Notably, this definition of "sexual contact" applicable to the FRE 415 analysis provides an enumerated list of body parts applicable to the prohibited contact. That contrasts with New York's Penal Law section 130, which includes within the definition of "sexual contact" the wrongful touching of "sexual or other intimate parts" of a person. *Compare* 18 U.S.C. § 2246(3) *with* N.Y. Penal Law § 130.00(3).[6]   This Court previously noted that "intimate parts" under New York's Penal Law "is not defined solely in terms of anatomy" but also must be evaluated based on the manner and circumstances of the alleged physical contact. *See* ECF No. 217 at 4-5.   In contrast, the definition of "sexual contact" for purpose of FRE 415 is narrower and more limited, applying only to touching of specific body parts rather than the more amorphous definition encompassed by New York's use of "intimate parts" in the state's criminal penal code.[7]

Plaintiff has not alleged Mr. Fowler touched Plaintiff's genitalia, anus, groin, breast, or inner thigh. *See, e.g.,* Scolnick Decl., Ex. 5 (Plaintiff Depo. RT) at 91:7-8, 91:13-22.   The only allegedly wrongful touching of Plaintiff under FRE 415 was when Mr. Fowler's hand allegedly "grazed" Plaintiff's (clothed) buttocks during the act of Mr. Fowler picking up Plaintiff. *Id.* at 77:14-78:3.   That fleeting contact was not made "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(3).   Plaintiff

---

[6]   While 18 U.S.C. § 2246 defines "sexual contact," the specific statute setting forth the applicable criminal act which Plaintiff appears to claim applicable here is 18 U.S.C. § 2244(b), which states that someone who "knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both."

[7]   The federal statute's definition also is narrower in that it only applies where the body parts of the claimant are touched, as opposed to the New York statute's encompassing the circumstance when a sexual part of the defendant touches claimant.

does not allege Mr. Fowler's hand lingered on Plaintiff's buttocks for any period of time – he claims it simply passed over his buttocks briefly during the act of picking up Plaintiff.  *See* Scolnick Decl., Ex. 5 (Plaintiff Depo. RT) at 74:18-75:4, 75:18-76:20, 77:14-78:3.  After being picked up, Plaintiff alleges Mr. Fowler put him on the bed and put his body weight on Plaintiff, while at a "slight angle."  *Id.* at 88:12-16.  In doing so, Plaintiff does not allege Mr. Fowler touched any part of Plaintiff's body encompassed by 18 U.S.C. § 2246.  Plaintiff experienced Mr. Fowler's weight on top of him as "dead weight," which lasted for only ten to thirty seconds before Plaintiff "wriggled out."  *Id.* at 85:15-86:15, 97:3-20. [8]  Again, Plaintiff does not allege Mr. Fowler touched any part of Plaintiff's body covered by 18 U.S.C. § 2246, nor can he show any alleged touching was done with the specific intent of satisfying a sexual desire.

Plaintiff admitted at his deposition that the alleged incident with Mr. Fowler involved no touching or groping of genitals or anus, no kissing, no undressing of either Plaintiff or himself or any attempt to do so, and no sexualized statements or other statements suggesting an intent to engage in any such conduct.  *See* Scolnick Decl., Ex. 5 (Plaintiff Depo. RT) at 88:8-11, 89:16-22, 90:14-92:2, 92:18-96:23.  Plaintiff does not recall Mr. Fowler having an erection or being aroused. *Id.* at 89:9-15.

Because Plaintiff's claims against Mr. Fowler allege no conduct qualifying as "sexual assault" or "child molestation" under FRE 415, any testimony from Dawes or Holtzman and any purported evidence about their allegations of unrelated incidents (or any other allegations of unrelated sexual assault) must be inadmissible.

---

[8]     Plaintiff claims Mr. Fowler pressed his groin into Plaintiff's side after picking him up and placing him on a bed.  Besides being insufficient under New York law to constitute a sexual offense, such conduct also cannot apply under 18 U.S.C. § 2246(3) because Plaintiff does not allege Mr. Fowler touched *Plaintiff's* groin.

2.      **Dawes's Alleged Conduct Does Not Qualify As "Sexual Assault" Or "Child Molestation" Under FRE 415**

Additionally, the alleged incident about which Dawes testified also unquestionably does not qualify as a "sexual assault" or "child molestation" under FRE 415.

First, Dawes was 16 years old at the time of the alleged incident and indisputably alleges no "child molestation" under FRE 414, which only applies to complainants under fourteen years old.  *See* Scolnick Decl., Ex. 1 (Dawes Depo. RT, Vol. I) at 7:9-11.  Dawes also was an adult under Connecticut law.

Second, Dawes also asserts no conduct that could constitute "sexual assault" under FRE 413.  The only alleged physical conduct between Mr. Fowler and Dawes when was Mr. Fowler's hand allegedly touched Dawes's leg a few inches above his knee for 30-45 seconds while they were talking on the couch.  *Id.* at 27:4-20, 28:6-10.  Mr. Fowler denies Dawes's claims, and Dawes's assertion is not credible for several reasons.  Dawes did not include that information in his written account of the alleged incident to *Buzzfeed*, nor did he mention any physical conduct with Mr. Fowler at all.  Likewise, the eventual *Buzzfeed* article based on Dawes's account mentions no touching between Mr. Fowler and Dawes.  And Dawes's friend who accompanied him during the alleged incident, Bill Brown, does not recall seeing any touching between Mr. Fowler and Dawes, nor does he recall Dawes ever telling him about any alleged touching.

Besides its lack of credibility, Dawes's testimony alleges no conduct which could provide a foundation for its admission under FRE 415.   Mr. Fowler's alleged touching of Dawes's knee does not constitute any conduct prohibited by 18 U.S.C. chapter 109A or any contact constituting "sexual assault" under FRE 413(d).  For example, as described above, "sexual contact" under 18 U.S.C. § 2246 only includes the intentional touching of "the genitalia, anus, groin, breast, inner

thigh, or buttocks" of the other person.  Dawes alleges no such touching, and his testimony therefore cannot be admitted under FRE 415.

### 3.    The Testimony Of Dawes And Holtzman Is Not Relevant To Plaintiff's Claims

Under FRE 402, only relevant evidence is admissible, while irrelevant evidence is inadmissible.  To be relevant, potential evidence must have a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  FRE 415 does not mandate admission of prior alleged acts of sexual assault or child molestation; instead, it simply states that the court "may" admit such evidence.  Fed. R. Evid. 415(a).  Dawes's and Holtzman's testimony about unrelated incidents do not make it more or less likely that Mr. Fowler sexually assaulted Plaintiff.

Even if Dawes's and Holtzman's testimony could meet some minimal threshold for relevance, the FRE 415 analysis does not end there.  Instead, courts must still engage in a balancing test to determine whether the evidence should be excluded under FRE 403.  *See, e.g., United States v. Spoor*, 904 F.3d 141, 154-155 & n. 10 (2d Cir. 2018) ("In concluding that Rule 414 does not circumscribe the district court's discretion under Rule 403 we join the majority of circuits to have considered this issue.").  And, as set forth below, Dawes's and Holtzman's testimony should be excluded under FRE 403, especially given the stark differences between the unrelated incidents they allege and Plaintiff's allegations.

### B.    Dawes's And Holtzman's Testimony Is Not Admissible Under FRE 404(b)

Besides FRE 415, Plaintiff also has suggested Dawes's and Holtzman's testimony is admissible under FRE 404(b).  This is incorrect.  FRE 404(b)(1) provides "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  FRE 404(b)(2) provides

17

certain limited exceptions to this bar on propensity evidence when the evidence is used only to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  To determine whether to admit FRE 404(b) evidence, courts evaluate whether "(1) the prior [bad act] evidence [is being] 'offered for a proper purpose'; (2) the evidence [is] relevant to a disputed issue; (3) the probative value of the evidence [is] substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) [there is] an appropriate limiting instruction."  *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009), quoting *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).  Plaintiff can meet none of these requirements.

First, Plaintiff has articulated no legitimate purpose under FRE 404(b) for the admissibility of Dawes's and Holtzman's testimony.  Nor does one exist. Their testimony is not relevant to opportunity, plan, knowledge, identity, absence of mistake, or lack of accident, none of which are at issue here.  And their testimony about unrelated encounters with Mr. Fowler several years before and after the alleged incident with Plaintiff does not inform Mr. Fowler's alleged motive or intent during Plaintiff's claimed encounter.  Instead, Plaintiff impermissibly seeks to introduce Dawes's testimony as propensity and character evidence to show Mr. Fowler is more likely to have engaged in the wrongful conduct alleged by Plaintiff due to the alleged wrongful conduct alleged by Dawes and Holtzman.  *Cf. Wilson v. Muckala,* 303 F.3d 1207, 1217 (10th Cir. 2002) (Under Fed. R. Evid. 404(b), "alleged previous harassment cannot be used to show that a defendant harassed a plaintiff on a specific subsequent occasion.").

That Plaintiff is trying to use these other incidents as prohibited propensity evidence is reinforced by the substantial differences between Plaintiff's alleged incident and those alleged by Dawes and Holtzman.  The participants are different ages.  Plaintiff was 14 years old at the time of the alleged incident, and Plaintiff's counsel has asserted he looked even younger.  *See* Scolnick

Decl., Ex. 7 (Fowler Depo. RT) at 72:17-73:5.  In contrast, Dawes was a mature 16 year old who

was an adult under Connecticut law.  *See, e,g*., Scolnick Decl., Ex. 1 (Dawes Depo. RT, Vol. I) at

102:20-103:6; *see also* footnote 3, *infra*.  And Holtzman was a 27-year-old man who was many

years older than Mr. Fowler during his alleged encounter with Mr. Fowler.  *See* Scolnick Decl.,

Ex. 4 (Holtzman Depo. RT) at 155:24-156:16, 156:22-157:4, 157:9-158:11.

The circumstances of the alleged incidents are also far different.  Unlike Dawes's claim,

Plaintiff does not allege any pornography was playing.  Nor does Plaintiff allege any third person

was involved in the encounter, unlike Dawes who claims to have come with his friend.  Nor does

Plaintiff allege Mr. Fowler gave him an alcoholic beverage, as Dawes claimed.  And unlike

Holtzman's claim, the alleged incident occurred during the day at an office rather than at night at

Mr. Fowler's residence.  Nor does Plaintiff allege Mr. Fowler had an erection or any other visible

signs of arousal, unlike what Holtzman claims.

And the alleged acts differ substantially.  *See, e.g., United States v. Aminy*, 15 F.3d 258,

260 (2d Cir. 1994) ("[E]vidence of another act should not be admitted as proof of the defendant's

knowledge or intent unless the other act is sufficiently similar to the conduct at issue to permit the

jury reasonably to draw from that act the knowledge [or intent] inference advocated by the

proponent of the evidence. . . Similarity, being a matter of relevancy, is judged by the degree in

which the prior act approaches near identity with the elements of the offense charge[d]. There is

no necessity for synonymity but there must be substantial relevancy....") (internal quotation and

citations omitted); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (stating FRE 404(b)

evidence requires "close parallel" to charged offense to warrant consideration for admission);

*Montanez v. City of Syracuse*, 2019 WL 4328872, at *4 (N.D.N.Y. Sept. 12, 2019) ("The proffering

party must show more than the mere repeated commission of crimes of the same class, such as

repeated burglaries or thefts.  The device used must be so unusual and distinctive as to be like a signature.") (internal quotations omitted).  Plaintiff alleges Mr. Fowler picked up Plaintiff, put him on a bed, and put his body weight on him.  There was no groping, grinding, or arousal like Holtzman claims.  And it differed substantially from the momentary touching of the leg that Dawes alleges.

Second, Dawes's and Holtzman's testimony do not relate to any disputed issue.  Plaintiff's allegations center on an alleged incident in 1986 when he claims to have found himself alone with Mr. Fowler.  Dawes's and Holtzman's testimony pertains to wholly separate alleged incidents with different circumstances and claims.  While Mr. Fowler disputes their claims, the wrongdoing Dawes and Holtzman asserts is not at issue here, nor does it need to be proved or disproved for any party to prevail.  Plaintiff's claims do not hinge in any legitimate way on whether Dawes's or Holtzman's testimony is true or not.  Whether Plaintiff acknowledges it or not, Plaintiff's purpose in seeking to introduce Dawes's and Holtzman's testimony is so he can use it as impermissible propensity evidence in an effort to poison the jury against Mr. Fowler.

And, finally, any marginal relevance Dawes's testimony may have is substantially outweighed by the unfair prejudice, besides the legitimate danger it will confuse the issues, mislead the jury, cause undue delay, and waste time, as set forth below in greater detail.

## C.  Even If It Were Otherwise Admissible, Dawes's And Holtzman's Testimony Should Be Excluded Under FRE 403

Even if Dawes's and Holtzman's testimony otherwise were admissible under FRE 404(b) or 415, it should be excluded under FRE 403, which provides that a court may exclude "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The Second Circuit has confirmed that evidence

otherwise meeting the qualifications under FRE 413-415 is not always admissible.  *See, e.g.*, *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018).  Nor does the narrow exception to propensity evidence codified in FRE 413-415 "require the district court to evaluate such evidence with a thumb on the scale of admissibility." *Id*. (internal quotations omitted).  Instead, the court retains discretion "to determine the probative value of this inference and to weigh whether the prior act evidence will be unfairly prejudicial." *Id*.  And in making that determination, courts consider factors such as "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." *Id*. at 154-155 (internal quotation omitted), *citing United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001).

Here, Dawes and Holtzman testified about unrelated incidents several years removed from Plaintiff's allegations, and which they claim occurred under different circumstances, and involved far different alleged acts.  Nor do Plaintiff's claims rely on the occurrence or non-occurrence of the incidents alleged by Dawes or Holtzman.  Plaintiff's claims about his isolated encounter with Mr. Fowler in 1986 will rise or fall on their own merit.  Even if FRE 404(b) and 415 did not preclude admitting this evidence, the evidence should be excluded under FRE 403.  If permitted to be introduced at trial, any alleged evidence of these unrelated incidents presents a tremendous risk of unfair prejudice to Mr. Fowler. *See, e.g., Spoor*, 904 F. 3d at 155 ("The district court should also consider the potential for unfair prejudice, including the possibility that prior act evidence will lead the jury to convict out of passion or bias or because they believe the defendant is a bad person deserving of punishment – a particular risk with this sort of evidence.").  Plaintiff already tarnished Mr. Fowler's reputation and career by publicly accusing him of conduct he did not commit.

Plaintiff should not be able to unfairly prejudice the jury against Mr. Fowler by offering evidence of wholly unrelated incidents that have no credibility (or, at most, can charitably be characterized as highly questionable and heavily disputed). *See, e.g., Johnson v. Elk Lake School Dist.*, 283 F.3d at 152 (recognizing that limits need to be placed on admissibility of FRE 415 evidence "to ensure that the plaintiff may not 'parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo,'" *quoting Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496 (1988)).

Admitting Dawes's and Holtzman's testimony will also confuse and mislead the jury about the conduct on which Plaintiff's claims are based. The heavily disputed and equivocating nature of Dawes's and Holtzman's testimony also militate against their admission because it would waste time and require a disproportionate amount of the trial to be focused on extraneous, unrelated incidents. For example, introducing Dawes's testimony would require not only Dawes's testimony but also testimony from Mr. Fowler to dispute Dawes's testimony and from Brown to elucidate inconsistencies and lack of corroboration with Dawes's testimony. *See, e.g., Johnson v. Elk Lake School Dist.*, 283 F. 3d at 156 ("Where a past act cannot be shown with reasonable certainty, its probative value is reduced and it may prejudice the defendant unfairly, confuse the issues, mislead the jury, and result in undue delay and wasted time – all reasons for excluding evidence under Rule 403."); *Doe v. City of San Diego*, 2014 WL 11997809, at *4 (S.D. Cal. July 25, 2014) (finding FRE 415 evidence inadmissible under FRE 403 in part because "mini-trials would be required to provide sufficient proof for the jury to find that these events occurred in the manner necessary to support Plaintiff's claim")

Given its prejudicial impact, its risk of confusing the issues, its heavily disputed credibility, and the prospect for wasting trial time and causing delays, any evidence about Dawes and

Holtzman's alleged encounters with Mr. Fowler should be excluded under FRE 403, even if found to be otherwise admissible under FRE 415 or 404(b) (which they should not be).

## D. Plaintiff Also Should Be Precluded From Referencing Or Asking Any Witness About Other Rumors Or Accusations Of Other Alleged Sexual Misconduct By Mr. Fowler

While Plaintiff has suggested his accusations of misconduct against Mr. Fowler encouraged other accusers to come forward about their claims of abuse against Mr. Fowler, Plaintiff generated no such admissible evidence during discovery, other than the testimony of Dawes and Holtzman (which should be precluded for the reasons stated above). Plaintiff's counsel should not be permitted to comment on, or ask witnesses questions about, other accusations reported in the media or elsewhere simply for the effect they believe it will have in prejudicing the jury against Mr. Fowler. Such questioning cannot elicit any legitimate evidence by a witness with personal knowledge, let alone meeting the standards of FRE 415 or 404(b). And even if some portion of such evidence could be admissible, it should be excluded under FRE 403.

This Court appropriately put limitations on the questions and information Plaintiff's counsel could ask Mr. Fowler at deposition and during discovery. For example, in the Court's December 13, 2021 Order, ("December 13th Order"), the Court held that "[d]uring discovery, plaintiff shall not inquire of the defendant concerning his prior sexual or romantic experiences or encounters, if any, with anyone unless the identity of the person in respect of whom the inquiry is made (the 'Subject') has been disclosed by the Subject or otherwise become public, in either case in connection with a claim, published report in mainstream media, or public allegation that any such sexual or romantic experience or encounter was not in all respects consensual." *See* ECF No. 128 at p. 6. The Court's December 13th Order also mandated that "[d]uring discovery, plaintiff shall not inquire of the defendant concerning his prior sexual or romantic experiences or encounter, if any, with former plaintiff C.D." *Id.* at p. 7. The Court also denied Plaintiff's later motion to

compel information and documents about individuals who confidentially testified about alleged sexual harassment during the filming of *House of Cards* in an unrelated arbitration.  *See* ECF No. 207.   And the Court denied Plaintiff's motion to compel materials received by Mr. Fowler from the London Metropolitan Police Force regarding its investigations into offenses in the U.K.  *See* ECF No. 115 at pp. 5-6; ECF No. 128 at p. 7.

Having prohibited Plaintiff's ability to delve into these matters during discovery, the Court should confirm its prior orders also apply to the upcoming trial.  Specifically, the Court should preclude Plaintiff from questioning witnesses about or referencing at trial any other alleged accusations of sexual misconduct or sexual harassment against Mr. Fowler, including allegations by non-public accusers, by C.D., by complainants to the London Metropolitan Police Force, and by the witnesses who confidentially testified in the arbitration concerning *House of Cards*.  Plaintiff has no admissible evidence concerning these matters.   No witness with personal knowledge will testify about them at trial.   Plaintiff has no legitimate claim that any purported evidence about allegations that does not identify the accusers (*e.g.*, a media article, the motion to compel the arbitration award, etc.) could be admissible at trial.   And even if Plaintiff did have a basis to admit such evidence, its probative value would be marginal at best, while the risk of prejudice, undue delay, and confusion of the issues would predominate.   This trial is about Plaintiff's claim of an alleged incident in 1986.  If Plaintiff were permitted to inject extraneous, unrelated allegations into the trial, it would require mini-trials about each allegation.  And Plaintiff would be prejudiced not only by the introduction of this irrelevant evidence but also because he has no ability to subpoena witnesses or take discovery of rebuttal information which could be used at trial.

The non-public accusers are not the only potential means by which Plaintiff could jeopardize the fairness and legitimacy of trial proceedings. Plaintiff did ask Mr. Fowler and other witnesses at deposition about various public accusations against Mr. Fowler not subject to the Court's December 13th Order or other orders. But these questions yielded nothing. For example, Plaintiff's counsel asked Mr. Fowler about a handful of other allegations against Mr. Fowler made in media articles and elsewhere (and about one alleged accuser with whom Plaintiff's counsel apparently communicated but whose allegations do not appear to have been made public). *See* Scolnick Decl., Ex. 7 (Fowler Depo. RT) at 271:18-293:23. Mr. Fowler denied these allegations. None of these other alleged accusers were disclosed in Plaintiff's FRCP 26 disclosures or on his witness list. Nor were these witnesses disclosed in any FRE 415(b) disclosure required to be made at least 15 days before trial. Apart from Dawes and Holtzman, Plaintiff has no other evidence of any other alleged sexual misconduct by Mr. Fowler. Nor would any such evidence be relevant or admissible even if Plaintiff did attempt to proffer evidence about them. Plaintiff's counsel should not be permitted to pose questions at trial merely to generate a denial from Mr. Fowler about unrelated, unsubstantiated allegations about which Plaintiff will offer no evidence. Such a tactic would be only to unfairly prejudice the jury against Mr. Fowler.

Relatedly, Plaintiff's counsel also asked Mr. Fowler's expert witnesses, Alexander Bardey, M.D. and Elizabeth Loftus, Ph.D., about various other accusations against Mr. Fowler which have nothing to do with either's opinions. Dr. Bardey is a rebuttal witness to testify about Plaintiff's alleged emotional distress. Dr. Loftus is a memory expert.[9] Neither was disclosed to testify about any issues about Mr. Fowler's psychological traits or any other topics for which unproven allegations, including those loosely reported in the media, have any relevance. Yet Plaintiff's

---

[9]      Mr. Fowler does not intend to call Dr. Loftus at trial.

counsel may again attempt to inject such extraneous issues into the case by asking the expert witnesses about these allegations as a means of impermissibly influencing and poisoning the jury against Mr. Fowler.

For example, Plaintiff's counsel used Dr. Bardey's deposition to question him about the extent to which he considered rumors and other claims of sexual misconduct against Mr. Fowler as an indirect means of assessing the credibility of Plaintiff's account. *See, e.g.*, Scolnick Decl., Ex. 8 (Bardey Depo RT) at 215:21-234:22, 260:20-264:17. But as stated in Mr. Fowler's Motion *in Limine* No. 3, Dr. Bardey will not be testifying about credibility determinations, nor was he disclosed to engage in any psychological evaluation of Mr. Fowler (nor did Plaintiff designate any expert for such testimony as the issue is irrelevant). Likewise, Plaintiff's counsel questioned Dr. Loftus about other reported misconduct to speculate that Plaintiff's memory was or could be tainted or that his view of Mr. Fowler was biased. *See, e.g.,* Scolnick Decl., Ex. 6 (Loftus Depo. RT) at 90:25-100:10, 104:9-107:11. But Plaintiff acknowledged he had no knowledge about most allegations about which Dr. Loftus was questioned before Plaintiff publicly disclosed his allegations in the *Buzzfeed* article in 2017. *See, e.g., id*., Ex. 5 (Plaintiff Depo. RT) at 192:12-195:9. And Plaintiff's counsel elicited testimony from Dr. Loftus that acknowledged any rumors or information about other accusations that Plaintiff may have learned after first telling others what he alleged happened with Mr. Fowler could not have affected or influenced him. *Id*., Ex. 6 (Loftus Depo. RT) at 143:10-144:21.

In short, none of the allegations of other misconduct against Mr. Fowler relate to any expert opinion. And the prejudice from these questions – about accusations or rumors which no witness with personal knowledge will testify – greatly outweighs any tangential relevance Plaintiff claims

these issues may have.  Such questions lack foundation, assume facts not in evidence, and should be precluded.

The Court should exclude any evidence of the accusations of Dawes and Holtzman for the many reasons stated above.  The need to exclude all other allegations of alleged sexual misconduct against Mr. Fowler also is paramount to ensuring a fair, efficient trial.  If Plaintiff's counsel were permitted to ask questions that suggest – but provide no evidence for – other alleged misconduct, Mr. Fowler will be irreparably prejudiced.  The jury could be misled into thinking Plaintiff has evidence to support the allegations embedded in Plaintiff's counsel's questioning, even when none is ultimately presented.  And Mr. Fowler may need to respond to the false implication of such questions.  This is a trial about Plaintiff's allegations alone.  The Court should not permit Plaintiff's counsel to invite a series of mini-trials about unrelated, unproven, unsubstantiated allegations against Mr. Fowler based on inadmissible hearsay statements reported in the media or elsewhere.

## <u>CONCLUSION</u>

Mr. Fowler respectfully requests that the Court grant this Motion *In Limine* No. 4 and rule that Plaintiff is precluded from introducing any testimony from Dawes or Holtzman at trial and is precluded from referencing or presenting evidence about any other alleged sexual misconduct by Mr. Fowler.  Such evidence is not admissible under FRE 404(b), 415, or any other evidentiary rule, and any possible relevance is tangential and greatly outweighed by the risk of prejudice, undue delay, waste of time, confusing the issues, and misleading the jury.  The prohibition of any evidence of other alleged sexual misconduct should apply to any testimony or purported evidence Plaintiff may attempt to proffer at trial, whether from Dawes or Holtzman, from Mr. Fowler or Plaintiff, from any expert witness, or from any other witness.

Dated: September 26, 2022
     Irvine, California

Respectfully submitted,

*/s/ Jennifer L. Keller*
    Jennifer L. Keller

    Jennifer L. Keller (*pro hac vice*)
    Chase A. Scolnick
    Jay P. Barron (*pro hac vice*)
    KELLER / ANDERLE LLP
    18300 Von Karman Ave., Ste. 930
    Irvine, California 92612
    (949) 476-8700
    jkeller@kelleranderle.com
    cscolnick@kelleranderle.com
    jbarron@kelleranderle.com

    Michael Tremonte
    SHER TREMONTE LLP
    90 Broad Street, 23rd Floor
    New York, New York 10004
    (212) 202-2600
    mtremonte@shertremonte.com

    *Counsel for Defendant Kevin Spacey Fowler a/k/a Kevin Spacey*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2, I, Jennifer L. Keller, hereby certify that on September 26, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

<u>        /s/ Jennifer L. Keller  </u>
Jennifer L. Keller