# Exhibit 8

UNITED STATES DISTRICT COURT                                    1

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

ANTHONY RAPP and C.D.,

                    Civil Action No. 1:20-cv-09586(LAK)

                        Plaintiffs,

                    - against -

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,

                        Defendant.

------------------------------------------------ X

                        Zoom Deposition


                        January 26, 2022

                        11:03 a.m.


            EXAMINATION BEFORE TRIAL of the Expert

Witness, ALEXANDER BARDEY, M.D., pursuant to Order,

held on the above date and time, via

videoconference, taken by and before KRYSTINA

KORNAK FLORA, RPR, a Notary Public within and for

the State of New York.

```
(1)              - DR. ALEXANDER BARDEY -        215
(2)  Mr. Rapp and explained what my thinking was and
(3)  raised a different possibility.
(4)        Q.   Do you think in considering the
(5)  credibility of Mr. Rapp in order to do a thorough,
(6)  fair, completely investigation, you should consider
(7)  the credibility of Mr. Spacey?
(8)        A.   Not in this situation, no.  Not given
(9)  the task that I was asked to perform.
(10)       Q.   So if you were told that Mr. Spacey
(11) said I did it, you still would have that same
(12) thought that it's reasonable to think that Mr. Rapp
(13) is lying because he was jealous.  Is that what
(14) you're telling us?
(15)           MR. SCOLNICK:  Objection.  There's no
(16)       good-faith basis to raise that hypothetical.
(17)       And form.  Argumentative.  Incomplete
(18)       hypothetical.  Go ahead, you could answer.
(19)       A.   Sure.  No, that's not what I'm saying
(20) at all.
(21)       Q.   If Mr. Spacey -- well, let me ask you
(22) this:  Do you know who Andy Holtzman is?
(23)       A.   Andy Holtzman.  The name does not ring
(24) a bell right now.
(25)       Q.   Okay.  You've never been given his
```

(1)                    - DR. ALEXANDER BARDEY -              216

(2)    deposition in this case, right?

(3)           A.    I have not reviewed his deposition in

(4)    this case, no.

(5)           Q.    Mr. Scolnick never mentioned this guy's

(6)    name to you at all, right?

(7)           A.    Correct.

(8)           Q.    I want you to assume that Andy Holtzman

(9)    is a witness who testified that he worked with

(10)   Mr. Spacey in the Public Theater in the summer of

(11)   1981 when Spacey was acting in Henry IV, Part I, and

(12)   that Mr. Holtzman was working in an office in the

(13)   theater, and that one day Mr. Spacey came into the

(14)   office, grabbed Mr. Holtzman's crotch, pinned him to

(15)   the desk, grinded Mr. Holtzman until he pushed him

(16)   off.  Mr. Holtzman said what the fuck are you doing,

(17)   this is my office.  And that Mr. Spacey didn't say a

(18)   word and left.  Assuming that was his testimony,

(19)   this is the first you're hearing about this in this

(20)   case?

(21)          A.    Yes.

(22)          Q.    Assuming it to be true, does it affect

(23)   your opinion in any way with regard to the issues

(24)   you brought up about Mr. Rapp lying about what

(25)   happened here?

(1)                    - DR. ALEXANDER BARDEY -              217

(2)                    MR. SCOLNICK:  Objection as to form.

(3)          Beyond the scope.  Incomplete hypothetical.

(4)          A.    It does not.

(5)          Q.    Can you explain your answer please?

(6)                    MR. SCOLNICK:  Same objections.

(7)              A.    Whether or not Mr. Spacey engaged in

(8)      such conduct, which by your description is overtly

(9)      sexual, does not imply that he engaged in anything

(10)     similar with anybody else at any given moment.  I

(11)     have to look at Mr. Rapp's case specifically,

(12)     especially to answer the question that I was asked,

(13)     which was did he suffer psychological damages.  The

(14)     fact that Kevin Spacey may have or may have not done

(15)     that to the individual you mentioned has absolutely

(16)     no bearing on whether or not Mr. Rapp suffered any

(17)     psychological consequences.

(18)          Q.    Well, as a forensic psychiatrist, if

(19)     someone who engages in aggressive sexual conduct,

(20)     un-wanted touching, is that relevant in determining

(21)     whether or not they did it in another instance?

(22)                    MR. SCOLNICK:  Objection as to form.

(23)          This is beyond the scope of this witness'

(24)          testimony.  He's been called and he will

(25)          offer testimony regarding your client's

```
(1)                  - DR. ALEXANDER BARDEY -              218
(2)        alleged claims of emotional distress.   This
(3)        is not relevant.   This is beyond the scope.
(4)        Q.    You could answer.
(5)        A.    Sure.  If I were or had been tasked
(6)   with conducting a psychosexual evaluation of
(7)   Mr. Spacey, then what you're telling me now would be
(8)   relevant, but that's not what I was tasked with.
(9)        Q.    Why would that be relevant if you were
(10)  tasked with doing a psychosexual evaluation of
(11)  Mr. Spacey?
(12)              MR. SCOLNICK:   Objection.  This is
(13)       beyond the scope of testimony.   This
(14)       hypothetical, you have no good-faith basis to
(15)       ask it.  This is not the task, and we're
(16)       going so far field here of what we're talking
(17)       about.  This is about Mr. Rapp and his
(18)       allegations and claims.   There's no
(19)       good-faith basis for these questions.  Form.
(20)       Incomplete hypothetical.
(21)       Q.    You could answer.
(22)       A.    I could answer?
(23)       Q.    Yeah.
(24)       A.    Well, if I were conducting a
(25)  psychosexual evaluation of an individual it would be
```

- DR. ALEXANDER BARDEY -                        219

(1)

(2) important for me to know the repeated acts to see if

(3) there's a specific modus operandi, if this is part

(4) of a proclivity, if this is part of some paraphilia

(5) because that speaks to risk of recidivism and it

(6) speaks to dangerousness to the community.  So that

(7) specific inquiry is relevant in doing a psychosexual

(8) evaluation of an individual who's committed or is

(9) accused of committing such acts.

(10)          Q.    What you're saying is it would be

(11) relevant to determine the likelihood that they might

(12) act that way again, right?

(13)              MR. SCOLNICK:  Objection.  This is

(14)          beyond the scope of the testimony; beyond the

(15)          scope of what Dr. Bardey has been called to

(16)          do; and beyond the scope of the testimony

(17)          we'll provide at trial.   Incomplete

(18)          hypothetical, vague and ambiguous, and form.

(19)          Q.    You could answer.

(20)          A.    Sure.  That's what recidivism means.

(21)          Q.    Right.  It also might be relevant in

(22) determining whether or not a person is guilty of the

(23) act they're charged of, whether or not they tend to

(24) engage in such behavior, right?

(25)              MR. SCOLNICK:  Same objections.  Beyond

- DR. ALEXANDER BARDEY -                    220

(1)

(2)      the scope.  Form.  Incomplete hypothetical.

(3)      Vague and ambiguous.

(4)         A.    In a criminal setting where someone's

(5)   guilt or innocence about having committed such an

(6)   act would be the issue at hand then, yes.

(7)         Q.    Even in such a civil case where the

(8)   issue is whether or not the act occurred, whether or

(9)   not the person has a proclivity to act that way

(10)  would be relevant to determine if they acted that

(11)  way in this particular instance.  You'd agree with

(12)  that as a forensic psychiatrist, right?

(13)         MR. SCOLNICK:  Same objection.  Beyond

(14)      the scope.  Form.  Relevance.  Incomplete

(15)      hypothetical.  Vague and ambiguous.

(16)         A.    Well, the allegations that you

(17)  described are far field from the allegations that

(18)  Mr. Rapp brings forward.  So, you know, with that

(19)  limited presentation and hypothetical I don't see a

(20)  real connection between those two behaviors,

(21)  certainly not enough to draw conclusions that one

(22)  speaks to a proclivity towards engaging in that kind

(23)  of inappropriate sexual conduct.

(24)         Q.    By the way, we talked this morning

(25)  about your having done reviews on other CVA cases,

(1)                    - DR. ALEXANDER BARDEY -                221

(2)    about 50 of them.  Do you recall that?

(3)         A.    Yes, sir.

(4)         Q.    One of the things you told us was

(5)    those -- some of those claims were credible because

(6)    the defendants in those cases had acted in similar

(7)    peculiar ways, right?

(8)         A.    Yes, I did testify to that.

(9)         Q.    Why in the world were you reviewing

(10)   that, the proclivities of the defendants if you were

(11)   just doing this psychological report of the damages

(12)   that was caused to the plaintiffs?

(13)        A.    As I said during my testimony, because

(14)   of the bizarre nature of the abuse itself, that some

(15)   of what was described was so, in a sense, incredible

(16)   that the repeated consistent descriptions by the

(17)   various plaintiffs made that incredible description

(18)   of the abuse they suffered more credible.

(19)        Q.    Do you know who Justin Dawes is?

(20)        A.    I beg your pardon?

(21)        Q.    You ever hear the name Justin Dawes,

(22)   D-A-W-E-S?

(23)        A.    I have not.

(24)        Q.    You have no idea who he is with respect

(25)   to this case, right?

(2)     A.     Correct.

(3)     Q.     You never read his deposition
(4) transcript in the case, right?

(5)     A.     Did not.

(6)     Q.     Mr. Scolnick never mentioned him to
(7) you? Never told you to assume anything about him?

(8)     A.     He did not.

(9)     Q.     I want you to assume that Mr. Dawes
(10) testified that in the fall of 1988 he was 16 years
(11) old and he was volunteering at a theater in
(12) Connecticut where Mr. Spacey was performing in a
(13) play, and that Mr. Spacey invited Dawes and a friend
(14) of his to his house for an alleged party, and when
(15) he got there there was no party. That Mr. Spacey
(16) had gay pornography playing on the television, that
(17) he made the 16-year-old a couple of alcoholic
(18) drinks, that he put his hand on Mr. Dawes' leg.
(19) Assume that's true, do you think that has any
(20) relevance in determining whether or not Mr. Rapp is
(21) lying about this?

(22)     MR. SCOLNICK: Beyond the scope of the
(23) testimony. Form objection. Misstates the
(24) testimony. Incomplete hypothetical. You
(25) could answer.

- DR. ALEXANDER BARDEY -                223

(2)      A.    It doesn't move the needle either way

(3) in terms of the credibility of what was recounted in

(4) Mr. Rapp's case.

(5)      Q.    Well, if Mr. Dawes' testimony is true

(6) do you think it reflects that Mr. Spacey may be

(7) attracted to underaged boys?

(8)           MR. SCOLNICK:  Objection.  This is so

(9)      far field and inappropriate.  This is not an

(10)     evaluation that Dr. Bardey is doing of

(11)     Mr. Spacey.  This is not responsive to any of

(12)     the opinions your expert has given.  This is

(13)     not anything he's going to testify to or has

(14)     been tasked to testify to.  Argumentative.

(15)     Entirely irrelevant.  Incomplete

(16)     hypothetical.  Vague and ambiguous.  Form.

(17)     Q.    You could answer.

(18)     A.    If I could remember the question, I'm

(19) sorry.

(20)     Q.    The question is:  Assume Mr. Dawes'

(21) testimony is true, does it reflect that Mr. Spacey

(22) has an attraction to teenage boys?

(23)           MR. SCOLNICK:  Same objections.

(24)     A.    It could.

(25)     Q.    Could you think of any other reason why

- DR. ALEXANDER BARDEY -                    224

(1)

(2)    a grown man would invite a 16-year-old kid over,

(3)    play him gay porn, and make him alcoholic drinks and

(4)    touch him?

(5)            MR. SCOLNICK: Objection. Now

(6)        you're --

(7)        Q.    -- other than sexual attraction to a

(8)    kid?

(9)            MR. SCOLNICK: Objection. Now you're

(10)        misstating the evidence.

(11)            MR. STEIGMAN: Okay. You have your

(12)        objection, counsel.

(13)            MR. SCOLNICK: Misstating the evidence.

(14)        Beyond the scope. Calls for speculation.

(15)        Entirely irrelevant. Beyond the scope of

(16)        anything that your witnesses testified to or

(17)        in any witness' report. Beyond anything that

(18)        Dr. Bardey is going to testify to. Calls for

(19)        speculation. Misstates the evidence.

(20)        Q.    You could answer.

(21)        A.    Sure. Before I could draw any

(22)    conclusions about someone's sexual attraction to

(23)    minors or to the existence of any sexual paraphilia

(24)    I would need to conduct a much more in-depth

(25)    evaluation. Individuals engage in bizarre behaviors

```
(1)                  - DR. ALEXANDER BARDEY -              225
(2)    for a number of reasons; sometimes driven by
(3)    psychosis, sometimes driven by substance use,
(4)    sometimes driven by the manifestations of another
(5)    mental illness, and sometimes driven by some sort of
(6)    sexual paraphilia.  A full and complete evaluation
(7)    would be necessary to draw those kinds of very
(8)    important conclusions from any single fact.
(9)          Q.    I appreciate your answer, sir.  What
(10)   you're saying is if Mr. Dawes' testimony is true,
(11)   then Mr. Spacey certainly engaged in bizarre
(12)   behavior, right?
(13)              MR. SCOLNICK:  Objection.  Misstates
(14)          the testimony.  Also beyond the scope.
(15)          Argumentative.  Incomplete hypothetical.
(16)          Vague and ambiguous.
(17)          Q.    You could answer.
(18)          A.    Sure.  It would seem bizarre.
(19)          Q.    Okay.  And one of the possibilities for
(20)   that bizarre behavior would be sexual attraction to
(21)   teenage boys, right?
(22)              MR. SCOLNICK:  Objection.  This is
(23)          beyond the scope of the doctor's testimony,
(24)          Richard.  If you want to keep going down this
(25)          road, it's entirely irrelevant, it's wasting
```

(1)              - DR. ALEXANDER BARDEY -              226

(2)   your time, it's wasting the doctor's time,

(3)   it's wasting my time.  At this point it's

(4)   getting to be harassing.  It has no place in

(5)   this testimony.  It's beyond the scope of

(6)   anything we're going to testify to, and at

(7)   this point you're just seeking to get sound

(8)   bites that you could play, and they're not

(9)   admissible at trial.  They have no possible

(10)  basis to be admitted at trial.

(11)         MR. STEIGMAN:  I guess we're going to

(12)  see, judge, but in the meantime I'd like the

(13)  answer to the question.

(14)         MR. SCOLNICK:  Calls for speculation as

(15)  well.  Incomplete hypothetical.

(16)         MR. STEIGMAN:  So I stipulate you have

(17)  an objection on all of those bases, plus

(18)  whatever else you want at the time of trial

(19)  and there is no need, as we go through the

(20)  other people that have complained about

(21)  Mr. Spacey, to interrupt the deposition with

(22)  your laundry list of objections.  I

(23)  stipulate.  You have an objection on every

(24)  ground plus the ones you haven't thought of

(25)  yet.  Okay?

```
(1)                    - DR. ALEXANDER BARDEY -              227
(2)          Q.     You could answer the question, Doctor.
(3)          A.     Certainly.   In terms of evaluating
(4)     someone's psychosexual profile, all of that
(5)     information would be relevant and would raise
(6)     various possibilities including the one that I
(7)     mentioned before.
(8)          Q.     Right.   So that bizarre behavior could
(9)     be explained by sexual attraction, psychosis, drug
(10)    or alcohol use, true?
(11)              MR. SCOLNICK:   Objection.   Same
(12)         objections before.
(13)         A.     True.
(14)         Q.     Probably not that he wanted to mentor
(15)    him on the finer points of filmmaking, can we agree
(16)    on that?
(17)              MR. SCOLNICK:   Objection.
(18)         Argumentative.   Speculation.   Incomplete
(19)         hypothetical.
(20)         Q.     You could answer.
(21)         A.     You're referring to Mr. Dawes?
(22)         Q.     Yeah.
(23)         A.     I don't know what -- I don't know who
(24)    Mr. Dawes is.   I don't know if he was an actor or
(25)    not.   I don't know what the relationship was with
```

(1)                    - DR. ALEXANDER BARDEY -              228

REDACTED

(1)                    - DR. ALEXANDER BARDEY -              229

REDACTED

(1)                    - DR. ALEXANDER BARDEY -              230
                              REDACTED

(1)                    - DR. ALEXANDER BARDEY -              231

REDACTED

(1)                    - DR. ALEXANDER BARDEY -              232
                              REDACTED

(1)                     - DR. ALEXANDER BARDEY -            233

REDACTED

(1)                    - DR. ALEXANDER BARDEY -              234
REDACTED

(1)                        - DR. ALEXANDER BARDEY -                260
                                    REDACTED

(1)                    - DR. ALEXANDER BARDEY -            261

REDACTED

(1)                    - DR. ALEXANDER BARDEY -              262

REDACTED

(1)                    – DR. ALEXANDER BARDEY –              263
                                REDACTED

(1)                    - DR. ALEXANDER BARDEY -            264

REDACTED

```
(1)                    CERTIFICATION                 340

(2)    STATE OF NEW YORK   )

                          )  ss.:

(3)    COUNTY OF NASSAU    )

(4)

(5)                  I, KRYSTINA KORNAK, a Notary Public

(6)    within and for the State of New York, do hereby

(7)    certify:

(8)                  That ALEXANDER BARDEY, M.D. the

(9)    witness(es) whose deposition(s) is(are) hereinbefore

(10)   set forth, was(were) duly sworn by me and that such

(11)   deposition(s) is(are) a true and accurate record of

(12)   the testimony given by such witness(es).

(13)                  I further certify that I am not

(14)   related to any of the parties to the action by blood

(15)   or marriage; and that I am in no way interested in

(16)   the outcome of this matter.

(17)                  IN WITNESS WHEREOF, I have hereunto

(18)   set my hand this 8th day of February, 2022.

(19)

(20)   _____

(21)                  KRYSTINA KORNAK

(22)

(23)

(24)

(25)
```