**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY RAPP, | Case No. 1:20-cv-09586 (LAK) (SDA) |
| Plaintiff, | |
| -against- | |
| KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE*
NO. 3 TO PRECLUDE PLAINTIFF FROM OFFERING EXPERT TESTIMONY ON
CREDIBILITY ISSUES AND OTHER IMPROPER OPINIONS OF HIS EXPERT
WITNESS, LISA ROCCHIO, Ph.D.**

KELLER / ANDERLE LLP
Jennifer L. Keller (*pro hac vice*)
Chase A. Scolnick
Jay P. Barron (*pro hac vice*)
18300 Von Karman Ave., Ste. 930
Irvine, California 92612
(949) 476-8700
jkeller@kelleranderle.com
cscolnick@kelleranderle.com
jbarron@kelleranderle.com

SHER TREMONTE LLP
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
mtremonte@shertremonte.com

*Counsel for Defendant Kevin Spacey
Fowler a/k/a Kevin Spacey*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    Plaintiff's Allegations............................................................................................. 3

    B.    Plaintiff Seeks To Rely On The Purported Expert Opinions of Lisa Rocchio, Ph.D. In Support Of His Claims........................................................................................... 3

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

    A.    Plaintiff Should Be Precluded From Eliciting Any Opinion From Dr. Rocchio That Comments Or Opines On The Credibility of Plaintiff Or Any Other Evidence. ..... 5

            1.    The Credibility Of Plaintiff – A Key Issue In This Case – Is Solely The Domain Of The Jury. ................................................................................ 5

            2.    Besides Being An Improper Subject For Expert Testimony, Dr. Rocchio Is Not Qualified To Opine About Whether The Alleged Incident Occurred 11

            3.    Mr. Fowler's Expert – Dr. Bardey – Likewise Will Not Testify About Credibility Issues, And Plaintiff's Counsel Should Be Precluded From Asking Him Irrelevant Questions Seeking For Him To Do So ................ 11

    B.    Plaintiff Should Be Precluded From Eliciting Any Testimony From Dr. Rocchio Concerning Legal Conclusions ............................................................................. 13

    C.    Plaintiff Should Be Precluded From Eliciting Any Testimony From Dr. Rocchio That Would Constitute An Improper And Unnecessary Narrative Based On Hearsay Or Other Evidence Of Which Dr. Rocchio Has No Personal Knowledge 14

    D.    Dr. Rocchio Should Not Be Permitted To Express Opinions Not Stated In Her Report ................................................................................................................... 18

CONCLUSION................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 11 S.Ct. 720 (1891) ........................................................ 5

*CIT Group/Business Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673 (S.D.N.Y. 2011) ........................................................................................................... 14, 15, 17

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) ............................. 11

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173 (S.D.N.Y. 2008) ................. 6, 15

*In re Blech Sec. Litigation*, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ................................. 13

*In re Puda Coal Sec. Inc. Litigation*, 30 F.Supp.3d 230 (S.D.N.Y. 2014) .................................... 6

*In Re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................ 15, 17

*LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551 (S.D.N.Y. July 16, 2022) ................................. 15

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ................................................ 5, 6, 7, 11

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ........................................................................... 4

*Stern v. Shammas*, 2015 WL 4530473  (E.D.N.Y. July 27, 2015) ................................................. 6

*United States Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*, 552 F.Supp.3d 427 (S.D.N.Y. 2021) ............................................................................................................................................ 6

*United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013) ................................................................... 4

*United States v. Gatto*, 2019 WL 266944 (S.D.N.Y. Jan. 17, 2019) ........................................... 13

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) ................................................................... 15

*United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999) ................................................................. 5

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ................................................................... 15

*United States v. Scop*, 846 F.2d 125 (2d Cir. 1988) ............................................................. 5, 7, 8

**Rules**

Fed. R. Civ. P. 26(a)(2) ................................................................................................................ 18

Fed. R. Civ. P. 37(c)(1) ................................................................................................................ 18

Fed. R. Evid. 401 .......................................................................................................................... 13

Fed. R. Evid. 403 ................................................................................................................ 5

Fed. R. Evid. 702 ................................................................................................................ 5

Fed. R. Evid. 703 .............................................................................................................. 15

Defendant Kevin Spacey Fowler ("Mr. Fowler"), by and through his counsel, respectfully submits this memorandum of law in support of his Motion *in Limine* No. 3 To Preclude Plaintiff From Offering Expert Testimony On Credibility Issues And Other Improper Opinions Of His Expert Witness, Lisa Rocchio, Ph.D.[1]

## INTRODUCTION

Plaintiff Anthony Rapp ("Plaintiff") seeks ten million dollars in emotional pain and suffering damages from Mr. Fowler for an incident over 35 years ago for which he has no corroborating witnesses.  As this Court recognized, Plaintiff's claim therefore will rise or fall based on his credibility.

To support his claim for damages, Plaintiff designated a forensic psychological expert, Lisa Rocchio, Ph.D., to opine about his purported emotional distress, including Plaintiff's alleged suffering from Post-Traumatic Stress Disorder ("PTSD").  But Dr. Rocchio goes far beyond the scope of permissible expert testimony.  Plaintiff's thinly-veiled plan is for his expert to vouch for his credibility and claim Plaintiff's allegations about the alleged incident are true and corroborated by other evidence.  Besides being inaccurate, this testimony is inadmissible and improper under black letter law, including authority from the Second Circuit, because it would invade the province of the jury.  The jury is charged with evaluating credibility of witnesses and the evidence, and a party cannot try to tip the scales by offering witnesses to vouch for the party's credibility under the guise of expert testimony.  Dr. Rocchio should be precluded from opining, either directly or

---

[1]     To provide greater clarity when referencing the various motions *in limine*, Mr. Fowler has numbered his motions *in limine*.  Mr. Fowler has designated this as Motion *in Limine* No. 3, because he previously filed his Motion *In Limine* To Preclude Plaintiff From Eliciting Testimony About Hearsay Statements He Made To Third Parties on August 23, 2021 (*see* ECF No. 78) and filed under seal his Motion *in Limine* No. 2 Regarding Evidence To Which Plaintiff Objected Or Potentially Objects Under FRE 412 (*see* ECF Nos. 231-233).

indirectly, about Plaintiff's credibility or whether the evidence supports the alleged incident.

Relatedly, Mr. Fowler's rebuttal expert will refute and counter Dr. Rocchio's opinions about Plaintiff's alleged emotional distress. But Mr. Fowler's expert will not testify about credibility. Plaintiff should therefore be precluded from asking Mr. Fowler's expert about rumors and other alleged misconduct by Mr. Fowler or about Mr. Fowler's psychological traits. Although they were unrelated to Mr. Fowler's expert designation, Plaintiff's counsel focused on these issues at the deposition of Mr. Fowler's rebuttal expert in an apparent attempt to introduce inadmissible evidence under the pretext that it relates to the experts' evaluation of credibility. Both experts were designated to testify about Plaintiff's alleged emotional distress only. There is no issue in this case that requires a psychological or psychosexual evaluation of Mr. Fowler, or that makes other alleged misconduct of Mr. Fowler relevant to their opinions.

Dr. Rocchio's anticipated expert opinion suffers from other problems. Just as she cannot be permitted to testify about credibility, Dr. Rocchio cannot be permitted to provide a narrative based on hearsay and other inadmissible evidence of which she has no personal knowledge. For example, Dr. Rocchio purports to testify about Plaintiff's alleged motives in publicly accusing Mr. Fowler in 2017 and some negative reactions he received from the public about doing so. Such testimony has no relevance to any legitimate opinion Dr. Rocchio may offer at trial and constitutes only her restating curated hearsay statements Plaintiff believes sheds him in a favorable light. Likewise, in forming her opinions, Dr. Rocchio interviewed Plaintiff and other third parties. She cannot parrot back those hearsay statements to the jury because any minimal probative value from disclosing those statements cannot substantially outweigh the prejudicial effect of their admission. Any relevant evidence Plaintiff or these third parties have should be communicated to the jury directly from their own testimony, not through the secondhand testimony of Dr. Rocchio.

Finally, Dr. Rocchio should be precluded from testifying about any opinion or conclusion not stated in her expert report. Such gamesmanship would undermine the purpose of Federal Rule of Civil Procedure 26's disclosure obligations and unfairly prejudice Mr. Fowler.

Mr. Fowler does not seek to exclude Dr. Rocchio' testimony in its entirety. But many opinions and conclusions in her report, which were reiterated by her at deposition, are improper and inadmissible in many respects, including her opinions on the credibility of witnesses and evidence and her relaying inadmissible hearsay to the jury. Mr. Fowler respectfully requests the Court grant this Motion *in Limine* No. 3, and find Dr. Rocchio may not testify at trial about such matters and that Plaintiff's counsel may not ask Mr. Fowler's expert about irrelevant matters pertaining to credibility.

## **FACTUAL BACKGROUND**

### A.    **Plaintiff's Allegations**

Plaintiff's complaint asserted causes of action for (1) assault, (2) battery, and (3) intentional infliction of emotional distress ("IIED"). *See* ECF No. 6-1. The Court granted summary judgment on Rapp's assault claim, leaving only his battery and IIED claim at issue. *See* ECF No. 217. Rapp's claims all are based on an alleged incident from 1986 when Mr. Fowler purportedly picked up Plaintiff, lifted him onto a bed, and laid on Plaintiff's body, before Plaintiff "wriggled out" with no resistance. According to Plaintiff, the entire incident took no more than one minute. The incident involved no groping, no undressing, no touching of genitalia, no kissing, and no communications about sex or any sexual innuendo.

### B.    **Plaintiff Seeks To Rely On The Purported Expert Opinions of Lisa Rocchio, Ph.D. In Support Of His Claims**

Plaintiff disclosed one expert witness, Lisa Rocchio, Ph.D. Dr. Rocchio is a forensic psychologist who submitted a 22-page report dated February 25, 2021. To arrive at her opinions,

Dr. Rocchio remotely conducted an interview of Plaintiff as well as "collateral interviews" of Sean Snow (Plaintiff's friend), Robin Magid (Plaintiff's therapist), and Ken Ithipol (Plaintiff's partner). She also relied on Plaintiff's deposition transcript, Adam Vary's October 2017 *Buzzfeed* article about Plaintiff's allegations, and various other articles and documents. Dr. Rocchio did not rely on any deposition testimony other than that of Plaintiff, as her expert report was submitted before most fact depositions occurred.

Following her psychological examination, Dr. Rocchio arrived at six opinions which Plaintiff apparently seeks to elicit from her during trial. The main opinion Dr. Rocchio intends to offer at trial is that Plaintiff was suffering from PTSD at the time of her examination and in 2017. Dr. Rocchio confirmed at deposition that the six opinions in her report are the only opinions she expected to provide at trial, and that she had no other opinions on this matter other than those on pages 19-22 of her report.

Many of Dr. Rocchio's opinions and conclusions are improper. To avoid prejudice or delays at trial, Mr. Fowler respectfully requests that the Court rule before trial that the opinions and conclusions stated below are inadmissible.

## LEGAL STANDARD

District courts may determine evidentiary issues in motions *in limine* before trial. *See, e.g.*, *United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013). "The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

Under Federal Rule of Evidence 702, expert testimony is admissible only if, among other things, it "help[s] the trier of fact to understand the evidence or to determine a fact in issue." Fed.

R. Evid. 702; *see also Unites States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 552 F. Supp. 3d 427, 430, *quoting United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) ("In deciding whether expert testimony will be helpful to the fact-finder, the Court must ensure that the testimony does not 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'").  Further, under Federal Rule of Evidence 403, even otherwise relevant evidence should be found inadmissible where its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

A. **Plaintiff Should Be Precluded From Eliciting Any Opinion From Dr. Rocchio That Comments Or Opines On The Credibility of Plaintiff Or Any Other Evidence.**

### 1. The Credibility Of Plaintiff – A Key Issue In This Case – Is Solely The Domain Of The Jury.

"It is a well-recognized principle of our trial system that 'determining the weight and credibility of a witness's testimony . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of mean.'"  *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005), *quoting Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720 (1891).  "The credibility of witnesses is exclusively for the determination of the jury."  *United States v. Scop*, 846 F.2d 125, 142 (2d Cir. 1988).

The Second Circuit "has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."  *Id*. at 398; *see also Scop*, 846 F.2d at 142 ("[E]ven expert witnesses possessed of medical knowledge and skills that relate to credibility may not state an

opinion as to whether another witness is credible."); *United States Sec. & Exch. Comm'n v. Collector's Coffee, Inc*., 552 F.Supp.3d 427, 430, 432 (S.D.N.Y. 2021) (finding testimony about credibility "is barred by well-settled case law holding that expert testimony about a witness's credibility is improper" and that an expert "may not give testimony stating ultimate legal conclusions based on those facts"); *Stern v. Shammas*, 2015 WL 4530473, at *2-5 (E.D.N.Y. July 27, 2015) (prohibiting expert from testifying about legal conclusions or credibility issues); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 180 (S.D.N.Y. 2008) ("Such subjective review of the evidence is improper, and [an expert] does not have 'personal knowledge of the underlying facts.'"); *In re Puda Coal Sec. Inc. Litigation*, 30 F.Supp.3d 230, 251 (S.D.N.Y. 2014). This prohibition applies even where witness credibility factors into or relates to the expert's opinion.

The Second Circuit's opinion in *Nimely* is instructive. In *Nimely*, the plaintiff brought a civil rights action against the City of New York, the police department, and a police officer who shot plaintiff following a foot pursuit. *Nimely*, 414 F.3d at 384. A key issue was whether plaintiff was facing the officer when he was shot or had his back turned. At trial, the defendants' medical expert was permitted to provide testimony that commented on the credibility of the police officers involved in the incident while explaining plaintiff's injuries and the trajectory of the bullet that hit him. *Id*. at 393-398. The Second Circuit found the district court had abused its discretion, reversed the resulting verdict in favor of defendants, and ordered a new trial. *Id*. at 400.

The court reiterated that a key requirement of Federal Rule of Evidence 702 is that the opinion "assist the trier of fact." It noted the Second Circuit has "consistently held, in that respect, that expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it . . ., by definition

does not aid the jury in making a decision." *Id*. at 397 (citation and internal quotations omitted). Instead, "it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Id*. (citation and internal quotations omitted).   The defendants' expert in *Nimely* testified he believed the police officers were "telling the truth as they perceived it." *Id*. at 398.  Even if the expert was otherwise qualified to testify about "the tendencies of police officers to lie or tell the truth in investigations of the sort at issue here . . ., his statements essentially instructed the jury as to an ultimate determination that was exclusively within its province, namely, the credibility of [the police officers]." *Id*.  The expert "commented directly, under the guise of expert opinion, on the credibility of trial testimony from crucial fact witnesses.  Indeed, [the expert] was permitted not only to state his belief that the officers were not lying, but also to give to the jury a series of rationales for that belief." *Id*.  This issue of credibility "lay at the heart of this trial," and the district court's permission of expert testimony about that critical issue of credibility was an abuse of discretion requiring a retrial.  *Id*.

Likewise, in *Scop*, the Second Circuit explained that an expert's testimony on credibility "not only should be excluded as overly prejudicial but also renders inadmissible any secondary opinion based upon it." *Scop*, 846 F.2d at 142.  The Court held "that witness *A* may not offer an opinion as to relevant facts based on *A*'s assessment of the trustworthiness or accuracy of witness *B* where *B*'s credibility is an issue to be determined by the trier of fact." *Id*.  Any other result would either ask the jury to evaluate opinion testimony "in ignorance of an important foundation for that opinion" or force the opponent to delve into such issues on cross-examination, thereby allowing the jury to "hear testimony that is otherwise inadmissible and highly prejudicial." *Id*.[2]

---

[2]      The Court in *Scop* noted that "[w]here the credibility of the witness is an issue, the expert may assume the truth of his or her trial testimony and thereafter offer an opinion based on the

Here, Dr. Rocchio attempts to offer testimony in which she impermissibly opines on Plaintiff's testimony and other information supplied to her, in purported support of her improper "opinion" that the incident Plaintiff alleges actually occurred and is corroborated by other evidence. For example, Dr. Rocchio's Opinion No. 1 states:

> The results of this evaluation found ample evidence to support the conclusion that Mr. Rapp experienced this reported episode of sexual victimization by Mr. Spacey in the spring or early summer of 1986 at Mr. Spacey's home, when Mr. Rapp was aged fourteen.

> As detailed above, Mr. Rapp's account of the assault was corroborated by multiple sources, and was consistent with his public disclosures about the incident, with text and social media messages between Mr. Rapp and friends and colleagues regarding his very early disclosures of his alleged victimization by Mr. Spacey, other's experiences and/or knowledge of allegations of Mr. Spacey's predatory behaviors, and with information provided by collateral sources.

*See* Scolnick Decl., Ex. 1 (Rocchio Report) at p. 19.[3]

Dr. Rocchio's Opinion Nos. 2 through 6 continue to express opinions that comment directly or indirectly on Plaintiff's credibility and Dr. Rocchio's asserted conclusion that the incident Plaintiff alleged actually occurred. For example, her opinion impermissibly asserts:

- ". . . and there was evidence throughout this evaluation that *with the exception of the assault by Mr. Spacey*, those experiences had been positive, supportive, and many adult actors had served as mentors." *Id*. at pp. 19-20 (Opinion No. 2; emphasis added).

---

substance of the testimony." *Scop*, 846 F.2d at 143. An expert therefore may not testify about credibility but may make explicit assumptions in offering a related expert opinion.

[3]     Dr. Rocchio's reference to "other's experiences and/or knowledge of allegations of Mr. Spacey's predatory behaviors" is unsupported, speculative, inadmissible, and should be excluded for the independent reasons addressed in Mr. Fowler's Motion *in Limine* No. 4.

- "*Mr. Spacey's sexual assault* violated Mr. Rapp's sense of safety and greatly increased his sense of vulnerability, as well as causing feelings of great distress, confusion, and shame." *Id*. at p. 20 (Opinion No. 2; emphasis added).

- "The psychological strategies utilized by Mr. Rapp in an effort to cope with the effects of *this sexual victimization experience* include denial, suppression, compartmentalization, directed forgetting, minimization and avoidance." *Id*. (Opinion No 3; emphasis added).

- "…and greatly interfered with his ability to recognize that *he had been victimized by Mr. Spacey, and had been harmed as a result of that victimization*." *Id*. (Opinion No. 3; emphasis added.)

- "In my opinion, Mr. Rapp is currently experiencing Posttraumatic Stress Disorder (PTSD), *in response to this sexual assault. . . . . Mr. Rapp's symptoms are clearly and substantially related to the alleged assault by Mr. Spacey*." *Id*. (Opinion No. 4; emphasis added).

- "With respect to prognosis, *Mr. Rapp experienced a sexual assault that has directly resulted in Posttraumatic Stress disorder . . .*" *Id*. (Opinion No. 5; emphasis added).

- "There was no evidence in Mr. Rapp's psychological testing or psychosocial history to suggest that he was misrepresenting, exaggerating, or manufacturing his account of his experiences, symptoms, or psychological distress." *Id*. at 22 (Opinion No. 6).

- "*It is also significant to note that the information Mr. Rapp shared both publicly and privately with those close to him has been consistent*, and was initially shared in a non-forensic context . . ." *Id*. at 22 (Opinion No. 6; emphasis added).

These opinions, conclusions, and characterizations attempt to validate and vouch for Plaintiff's credibility and the veracity of his account about the alleged incident that lies at the heart of this case. Dr. Rocchio appeared to recognize the problem with her report during her deposition when she verified her role was *not* to determine whether someone's claims of past sexual abuse are credible and that she was not opining on whether Plaintiff's allegations against Mr. Fowler were true or false. *See* Scolnick Decl., Ex. 2 (Rocchio Depo. RT) at 37:15-25, 38:12-15, 220:9-19. And Dr. Rocchio agreed her opinions would *not* be valid if Plaintiff's allegations against Mr. Fowler were not true. *Id*. at 245:1-11. But despite providing the illusory caveat that credibility determinations were for the jury, Dr. Rocchio reiterated at deposition the impermissible credibility opinions in her report and stressed she had made a "finding" that Plaintiff's claims are true. *Id*. at 242:15-243:15.

While Dr. Rocchio may be able to express her opinion of Plaintiff's alleged psychological distress, her report and deposition testimony go far beyond that. She opined about Plaintiff's credibility and asserted the alleged incident did, in fact, occur. She included her personal evaluation of other evidence and her opinion of the credibility and corroboration of other evidence and witness statements, which she claims support and are consistent with Plaintiff's claims. These opinions all invade the province of the jury and violate well-established Second Circuit precedent. This Court already has recognized and emphasized that Plaintiff's claims likely will rise or fall based on the jury's determination of his credibility. The jury – and the jury alone – is tasked with determining Plaintiff's credibility and the accuracy of his account, and with evaluating the evidence presented at trial. As in *Nimely*, Dr. Rocchio's purported opinions and conclusion on those subjects do not "help the trier of fact" and must be precluded.

2. **Besides Being An Improper Subject For Expert Testimony, Dr. Rocchio Is Not Qualified To Opine About Whether The Alleged Incident Occurred**

Even if Dr. Rocchio otherwise were permitted to testify about credibility and her assessment of other evidence (which she is not), Dr. Rocchio still would be unable to offer the above-identified opinions, conclusions, and characterizations. Dr. Rocchio admitted she has no expert qualifications in determining whether an act of past sexual abuse actually occurred. She explicitly admitted it is not part of her role "as a treating therapist to determine whether someone's claims of past sexual abuse are credible." *See* Scolnick Decl., Ex. 2 (Rocchio Depo. RT) at 38:12-15. Therefore, Dr. Rocchio cannot be qualified as an expert witness on the issue of credibility or truth-telling under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). *See also Nimely*, 414 F.3d at 398-399 (finding purported expert's "personal view of the officers' credibility . . . could not even begin to satisfy any of *Daubert's* criteria for assessing the scientific reliability of an opinion").

3. **Mr. Fowler's Expert – Dr. Bardey – Likewise Will Not Testify About Credibility Issues, And Plaintiff's Counsel Should Be Precluded From Asking Him Irrelevant Questions Seeking For Him To Do So**

Mr. Fowler intends to play by the same rules. His rebuttal expert witness, Alexander Bardey, M.D., will not opine about credibility issues. Nor does Mr. Fowler intend to present such credibility opinions at trial. Dr. Bardey's expert report did include an assessment of credibility and evaluation of other evidence. But this was a necessary refutation of Dr. Rocchio's report and opinions in the event, however unlikely, that Dr. Rocchio would be permitted to testify about credibility and her assessment of the evidence. Absent that rebuttal statement in Dr. Bardey's report, Mr. Fowler could not have rebutted Dr. Rocchio's incomplete and skewed opinions on credibility and other evidence in the unlikely event this Court were to depart from established

Second Circuit precedent and allow those portions of Dr. Rocchio's asserted opinions.  Notably, Dr. Rocchio came to her opinion without considering many other depositions that occurred only after her report but which raised new inconsistencies and challenges to Plaintiff's account, which Dr. Bardey noted in his report.

Even if the experts otherwise were allowed to testify, either directly or indirectly, about credibility, such a battle of expert testimony should be inadmissible under FRE 403, because it would only waste time, confuse the jury, and constitute cumulative evidence which instead should be presented by those with personal knowledge.

Relatedly, Plaintiff's counsel should be precluded from seeking credibility determinations from Dr. Bardey at trial or otherwise presenting his deposition testimony in which they asked him about credibility issues.  Plaintiff's counsel used Dr. Bardey's deposition to question him about the extent to which he considered rumors and other claims of sexual misconduct against Mr. Fowler in assessing the credibility of Plaintiff's account.  *See, e.g.*, Scolnick Decl., Ex. 3 (Bardey Depo RT) at 215:21-234:22, 260:20-264:17.  Plaintiff also asked questions about Mr. Fowler's alleged personality traits or psychological characteristics, which is not the subject Dr. Bardey was designated to testify (nor was Dr. Rocchio).  *See, e.g., id*. at 275:4-276:7, 278:2-279:17, 282:3-291:13, 294:13-295:13.  These questions are entirely irrelevant and improper.

First, Dr. Bardey will not be testifying about credibility determinations, provided the Court agrees Dr. Rocchio cannot present such improper opinions in Plaintiff's case-in-chief.  Plaintiff's counsel therefore will have no reason to question Dr. Bardey on cross-examination about these issue of credibility as to Plaintiff, Mr. Fowler, or any other witness.  Such questions would not relate to any of Dr. Bardey's opinions and would exceed the scope of the direct examination.

Second, Dr. Rocchio and Dr. Bardey were tasked with evaluating and assessing Plaintiff's claimed emotional distress damages.  Neither expert was disclosed to provide a psychological forensic evaluation of Mr. Fowler, nor did either expert opine on such issues.  Other alleged wrongdoing by Mr. Fowler simply is irrelevant to their opinions.  Likewise, any evaluation of Mr. Fowler's alleged psychological or psychosexual characteristics goes far beyond the scope of any expert witness's designation or testimony and is entirely irrelevant and prejudicial.  Such questions therefore have no relevance to any fact "of consequence."  *See, e.g.*, Fed. R. Evid. 401; *United States v. Gatto*, 2019 WL 266944, at *11 (S.D.N.Y. Jan. 17, 2019).

Third, Plaintiff has no legitimate evidence of other alleged wrongdoing by Mr. Fowler that would be relevant to Plaintiff's claims.  Plaintiff has listed only two witnesses of other alleged wrongdoing by Mr. Fowler – Justin Dawes and Andrew Holtzman – which Plaintiff attempts to admit under FRE 404(b) and 415.  As stated in Mr. Fowler's Motion *in Limine* No. 4, this evidence does not meet the requirements of admissibility under those sections and should be precluded at trial.  And, as also stated in that motion, Plaintiff cannot be allowed to ask questions at trial about other third-party accusers or other rumors for which Plaintiff has no admissible evidence.  Such questioning would be used only to prejudice the jury against Mr. Fowler by suggesting Mr. Fowler committed other wrongdoing but about which Plaintiff has no evidence.  And regardless of the evidence's admissibility, Plaintiff should be prohibited from questioning Dr. Bardey about other alleged wrongdoing, as it is irrelevant to the opinions he will present at trial.

**B.**     **Plaintiff Should Be Precluded From Eliciting Any Testimony From Dr. Rocchio Concerning Legal Conclusions**

The Second Circuit and courts in this District repeatedly have excluded expert testimony that constitutes "inappropriately drawn conclusions regarding legal significance of various facts." *In re Blech Sec. Litigation*, 2003 WL 1610775, at *21   (S.D.N.Y. Mar. 26, 2003) (internal

quotations omitted).  An expert "cannot determine the legal significance of documentary evidence" or state legal conclusions based on alleged facts.  *Id*.  Such testimony "improperly impinges upon the roles of the court and jury," and "is not helpful if it draws inferences or reaches conclusions within the jury's competence or within the exclusive function of the jury."  *Id*.; *see also CIT Group/Business Credit, Inc. v. Graco Fishing & Rental Tools, Inc*., 815 F.Supp. 2d 673, 678 (S.D.N.Y. 2011) (stating that testimony such as whether "certain events constituted a material breach . . . would constitute an impermissible opinion as to an ultimate legal conclusion in this case").

Here, Dr. Rocchio purports to testify about her opinions and conclusions that the alleged incident with Mr. Fowler constituted a "sexual assault."  But such testimony would constitute an impermissible legal conclusion, as the jury is the factfinder of whether the incident Plaintiff alleges constitutes a "sexual assault" or battery.  For many of the same reasons Dr. Rocchio cannot opine on witness credibility or her view of the evidence, Dr. Rocchio also cannot testify about her alleged conclusion or belief that Plaintiff was sexually assaulted or abused by Mr. Fowler.  Plaintiff bears the burden of establishing the elements of his claims, and he cannot attempt an end run around that obligation by having his psychological expert effectively testify that he has met it.

C.   **Plaintiff Should Be Precluded From Eliciting Any Testimony From Dr. Rocchio That Would Constitute An Improper And Unnecessary Narrative Based On Hearsay Or Other Evidence Of Which Dr. Rocchio Has No Personal Knowledge**

Mr. Fowler does not dispute that under Federal Rule of Evidence 703, an expert witness can testify to opinions based on inadmissible evidence such as hearsay if "[e]xperts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."

*See* Fed. R. Evid. 703; *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993).[4] But even where an expert may rely on inadmissible evidence, the expert does not have carte blanche to testify about such matters. FRE 703 warns that the proponent of the expert opinion may disclose the otherwise inadmissible facts or data to the jury "only if their probative value in helping the jury evaluate the opinion *substantially outweighs* their prejudicial effect." *See* Fed. R. Evid. 703 (emphasis added).

The Second Circuit consistently has warned that an expert may not "simply transmit that hearsay to the jury," as such testimony would "circumvent the rules prohibiting hearsay." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *see also CIT Group/Business Credit, Inc. v. Graco Fishing & Rental Tools, Inc*., 815 F. Supp. 2d 673, 678 (S.D.N.Y. 2011). An expert cannot merely describe, summarize, or repeat information the expert had read or heard. *Mejia*, 545 F.3d at 191-192, 197. An expert's "factual narrative of events giving rise to [an] action is inadmissible," because the expert has no personal knowledge of those facts. *Highland Capital Mgmt*., 551 F. Supp. 2d at 180; *see also In Re Rezulin Prods. Liability Litig*., 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (noting that courts exclude "expert" testimony under FRE 702 where it consists of "factual narratives and interpretations of conduct or views as to the motivation of parties"). Nor can an expert make "arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language." *LinkCo, Inc. v. Fujitsu Ltd*., 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2022). Such improper testimony displaces and usurps the role of the jury in applying the law to the facts and permits the expert's testimony to act as another closing argument, which prejudices the other side. *Mejia*, 545 F.3d at 191-192, 197; *LinkCo, Inc*., 2002 WL 1585551, at *2; *In Re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 551.

---

[4]      An expert's reliance on inadmissible evidence "is not admissible simply because the opinion or inference is admitted." *See* Fed. R. Evid 703, Committee Notes on Rules, 2000 Amendment.

Here, Dr. Rocchio reviewed various materials of which she has no personal knowledge, including Plaintiff's allegations, Plaintiff's deposition testimony, the *Buzzfeed* article from 2017 in which Plaintiff publicly disclosed his allegations against Mr. Fowler, and other media articles involving Plaintiff.  *See* Scolnick Decl., Ex. 1 (Rocchio Report) at p. 2.  She also interviewed Plaintiff, Sean Snow, Ken Ithiphol, and Robin Magid.  *Id.*  While the statements made to Dr. Rocchio and in the documents she read may be considered by her in forming her opinions, she cannot testify in a manner that discloses or restates that hearsay to the jury.  Nor can she relay information or narratives told to her by Plaintiff or other third parties as a way of introducing hearsay testimony aimed to bolster Plaintiff's testimony or engender the jury's sympathies.

For example, among Dr. Rocchio's "opinions," she provides a narrative that (1) Plaintiff did not fully appreciate the alleged assault until seeing publicity around the #MeToo movement, (2) Plaintiff made the "difficult decision to share his story publicly," (3) Plaintiff hoped that by coming forward publicly he "could prevent any further abuse perpetrated by Mr. Spacey upon others, and that he would serve as a role model for others, particularly men, who may feel shame and fear about coming forward," and (4) Plaintiff had "been subjected to negative comments, harassments, and insults following his public disclosure of his experience of assault by Mr. Spacey."  Scolnick Decl., Ex. 1 (Rocchio Report) at 20-21.  Plaintiff's purported reasons and motives for publicly disclosing his allegations through the 2017 *Buzzfeed* article have no clinical significance or value to Dr. Rocchio's opinions about his alleged distress over an incident that occurred over thirty years earlier.  Nor do the alleged online comments and harassments Plaintiff received after participating in the *Buzzfeed* story have any relevance or significance.  Instead, in these portions of her report, Dr. Rocchio simply repeats Plaintiff's narrative, his alleged motives for participating in a media story, and the negative reactions he received from doing so.  Dr.

Rocchio knows of this information only because Plaintiff told her.  She cannot repeat it under the guise of expert testimony.  And even if this information had some clinical value or relevance, this testimony would serve only to confuse and mislead the jury, unfairly garner sympathy or goodwill from the jury, and improperly prejudice the jury against Mr. Fowler.  This testimony is also inadmissible because it purports to testify about Plaintiff's state of mind, and "expert testimony is not admissible to establish a fact fundamentally grounded on a party's state of mind."  *CIT Group/Business Credit, Inc.*, 815 F.Supp.2d at 678; *see also In Re Rezulin Prods. Liability Litig.*, 309 F.Supp.2d at 541, 546, 554 ("Inferences about intent or motive of parties or others lie outside the bounds of expert testimony.").

Likewise, Dr. Rocchio recounts other hearsay statements told to her, such as (1) statements from Plaintiff that the theater was "a place of safety and comfort for Mr. Rapp" until the alleged incident with Mr. Fowler and (2) information "reported during collateral interviews with [Plaintiff's] psychotherapist, partners, and close friend of thirty years, who is currently a detective working on sex crimes perpetrated against children."  Scolnick Decl., Ex. 1 (Rocchio Report) at 19-20, 22.  Dr. Rocchio cannot relay to the jury the hearsay statements made to her by Plaintiff, Sean Snow, Ken Ithiphol, or Robin Magid.  To the extent those witnesses have personal knowledge relevant to this case, they are required to testify, either live or, if appropriate, by deposition.  And each was deposed, other than Ithiphol (who is not on either party's witness list).[5]

---

[5]     Further, the alleged opinions and conclusions described above concerning Dr. Rocchio's improper credibility determinations and assessment of extrinsic information provided to her also would be the improper retelling of inadmissible hearsay.  Those portions of Dr. Rocchio's opinions therefore should be precluded for that additional and independent reason.

**D.**   **Dr. Rocchio Should Not Be Permitted To Express Opinions Not Stated In Her Report**

Under Federal Rule of Civil Procedure 26, a party must disclose the identity of any expert witness *and provide a written report by that witness* within the prescribed time period.  Fed. R. Civ. P. 26(a)(2).  A party that fails to provide the required disclosure or report is "not allowed to use that information or witness to supply evidence" unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).

Here, Dr. Rocchio was designated to conduct a forensic psychological examination of Plaintiff and to opine on his mental pain and suffering.  Dr. Rocchio provided a report with her opinions.  Dr. Rocchio should not, however, be permitted to testify about any other opinions or conclusions other than those disclosed in her expert report (except those portions of her expert opinion which should be excluded for the reasons stated above) or offered at deposition.

At her deposition, Dr. Rocchio verified that the stated opinions in her expert report are the opinions she expects to offer at trial and that she does not expect to offer any other opinions at trial which are not listed in pages 19-22 of her report.  Scolnick Decl., Ex. 2 (Rocchio Depo RT) at 219:19-24.  Dr. Rocchio also confirmed she had no plans to conduct any other collateral interviews. *Id*. at 86:3-18.  It would be patently unfair and prejudicial to Mr. Fowler for Dr. Rocchio to testify at trial about previously undisclosed opinions or conclusions not disclosed in her expert report.

## CONCLUSION

Mr. Fowler respectfully requests that the Court grant this Motion *In Limine* No. 3 and rule that Plaintiff and his counsel cannot (1) offer any testimony from Dr. Rocchio that relates to the assessment of the credibility of witness or evidence, (2) ask Dr. Bardey any questions that relate only to witness credibility or a psychological assessment of Mr. Fowler about which neither party made an expert disclosure, (3) offer any testimony from Dr. Rocchio that would disclose

inadmissible evidence or hearsay reviewed by her during the course of her engagement, or (4) offer any opinions or conclusions from Dr. Rocchio not stated in her expert report or offered at deposition.

Dated: September 26, 2022                      Respectfully submitted,
       Irvine, California

                                       */s/ Jennifer L. Keller*
                                          Jennifer L. Keller

                                          Jennifer L. Keller (*pro hac vice*)
                                          Chase A. Scolnick
                                          Jay P. Barron (*pro hac vice*)
                                          KELLER / ANDERLE LLP
                                          18300 Von Karman Ave., Ste. 930
                                          Irvine, California 92612
                                          (949) 476-8700
                                          jkeller@kelleranderle.com
                                          cscolnick@kelleranderle.com
                                          jbarron@kelleranderle.com

                                          Michael Tremonte
                                          SHER TREMONTE LLP
                                          90 Broad Street, 23rd Floor
                                          New York, New York 10004
                                          (212) 202-2600
                                          mtremonte@shertremonte.com

                                          *Counsel for Defendant Kevin Spacey Fowler a/k/a Kevin Spacey*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2, I, Jennifer L. Keller, hereby certify that on September 26, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jennifer L. Keller*
Jennifer L. Keller
