UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY RAPP,  Case No. 1.20-cv-09586 (LAK)(SDA)

                      Plaintiffs,

      -against-

KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY

                    Defendant.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE PLAINTIFF FROM OFFERING EXPERT TESTIMONY ON CREDIBILITY ISSUES AND OTHER IMPROPER OPINIONS OF HIS EXPERT WITNESS, LISA ROCCHIO, Ph.D.**

GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
By: Peter J. Saghir
80 Pine Street, 34th Floor
New York, NY 10005
Tel: (212) 943-1090
Fax: (212) 425-7513
Email: psaghir@gairgair.com

*Attorneys for Plaintiffs Anthony Rapp*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………....…3

PRELIMINARY STATEMENT……………………………………………………………….4

I. PLAINTIFF'S EXPERT DR. ROCCHIO'S OPINION IS THAT PLAINTIFF SUFFERS FROM PTSD AS A RESULT OF THE SEXUAL ABUSE BY SPACEY……………………….7

    1. Dr. Rocchio's attribution of Plaintiff's PTSD to Defendant Sexually Abusing Plaintiff is a Proper Expert Opinion Related to Causation…………………………………………6

    2. Dr. Rocchio's Research and Process of reaching Conclusions Must be Evaluated by the Jury to Assess her own credibility………………………………………………………...9

II. DR. BARDEY'S EXPERT OPINION IS FOCUSED ALMOST EXCLUSIVELY ON CREDIBILITY …………………………………………………………………………….11

    1. Dr. Bardey's Theories Regarding Plaintiff's Motive to Lie…………………………..11

    2. Dr. Bardey's Conclusion That Plaintiff Experienced No Trauma is a Result of False Premises and Theories That Must Be Explained to The Jury……………...…………….13

CONCLUSION……………………………………………………………………………….16

# TABLE OF AUTHORITIES

**CASES**

*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994)………………….…………...………14

*General Elec. Co. v. Joiner,* 522 U.S. 135,146 S Ct(1977)……………………………….10,13,14

*Nimely v. The City of New York*, 414 F.3d 381(2nd Cir. 2005)……………………………………8

*United States v. Azure*, 801 F.2d 336 (8th Cir. 1986)…………………………………………...7

*United States v. Herron,* No. 10 CR NGG, 2014 WL 1871909 (E.D.N.Y. May. 8, 2014)……...8

*United States v. Lumpkin*, 192 F.3d 280 (2nd Cir. 1999)…………………………………….....8

*United States v. Provost*, 875 F.2d 172, 176 (8th Cir. 1989)…………………………………....7

*United States v. Whitted*, 11 F.3d 782 (8th Cir. 1993) …………………………………….....7

**SECONDARY SOURCES**

1 Federal Evidence 702§ (2022)
Fed. R. Evid. advisory committee's note……………………….....……………….…10,13

1 Federal Evidence 703§ (2022)
Fed. R. Evid. advisory committee's note……………………………………………….…10

1 Federal Evidence 704§ (2022)
Fed. R. Evid. advisory committee's note……………………………………………....……….7

**PRELIMINARY STATEMENT**

Plaintiff Anthony Rapp submits this response in opposition to Defendant's Motion *In Limine* No. 3 to preclude plaintiff from offering expert testimony on credibility issues and other improper opinions of his expert witness, Lisa Rocchio, Ph.D. Preliminarily, it must be noted that plaintiff's expert, Dr. Rocchio is an expert in the field of forensic and clinical psychology and was hired by plaintiff to assess plaintiff's psychological damage. In light of this task, Dr. Rocchio completed an in-depth psychiatric evaluation of plaintiff, including written testing, a clinical interview of Mr. Rapp and others and ultimately concluded that plaintiff suffers from Post Traumatic Stress Disorder. Dr. Rocchio was transparent in both her report and deposition that she does not have an opinion as to the truth of any specific allegation, but rather that her analysis ends at what, if any, psychological damage Mr. Rapp sustained as a result of the incident with Mr. Spacey. Dr. Rocchio will opine to a reasonable degree of medical certainty that plaintiff suffers from PTSD as a result of being sexually abused by Kevin Spacey, which is well within the scope of proper expert testimony.

Defendant retained his own psychiatric expert, Dr. Alexander Bardey, to provide his opinion. Similar to Dr. Rocchio, Dr.Bardey conducted written testing (which, like the ones given by Dr. Rocchio, reflected that Mr. Rapp was not malingering) and conducted interviews with the plaintiff and others. His report and deposition testimony, make clear, however, that Dr. Bardey specifically undertook to evaluate Mr. Rapp's credibility, ultimately reaching a determination that Mr. Rapp has been lying about this incident for over thirty years, although his motives have evolved from sexual jealousy to professional jealousy to a desire to participate in the "Me Too" movement to finally, greed.

In spite of his own expert's methodology and findings, defendant now moves to limit Dr. Rocchio's testimony and concomitantly, the cross-examination of Dr. Bardey's testimony regarding his findings regarding credibility. As set forth herein, defendant's argument to proactively preempt Dr. Roccio's testimony and curtail cross-examination of Dr. Bardey is without merit and should be denied in all respects.

Dr. Rocchio has repeatedly testified her role in this case was neither to determine the specific facts of what did or did not happen, or arbitrarily opine as to the truth or lack of truth of any specific allegation of which she has no direct knowledge. In her report and deposition, she detailed the manner in which she performs such an evaluation, including the objective testing elements and her interviews in order to reach an opinion specific to plaintiff's damages. Nonetheless, defendant seeks to limit her testimony, perhaps owning to a concern about their own expert's testimony on these points, under the guise of playing by the same rules. Defendant's expert's evaluation of plaintiff's credibility was not merely an element, but rather the focal point, of both his report and deposition testimony. Consequently, defendant's motion is a last-minute effort to hide this testimony and analytically flawed process from the jury.

It must be noted, at the onset of this case, defendant's primary theory was that the incident which plaintiff alleges was merely a matter of misremembering. They sought to establish this theory by way of calling as their expert Dr. Elizabeth Loftus, who was to testify that Mr. Rapp suffered from memory conflation and must have been confusing his role in the play Precious Sons with his real everyday life. Defendant's abandoned their intention to call Dr. Loftus as their expert at trial and were left with Dr. Alexander Bardey whom they retained to evaluate the plaintiff's psychological damages. In doing so, however, Dr. Bardey issued a 49-page report which has little to do with plaintiff's damages but rather focuses on the issue of whether or not

5

the alleged incident between Mr. Rapp and Spacey ever occurred. Dr. Bardey's report focuses almost exclusively on Anthony Rapp's purported motives for lying, rather than assessing psychological damages. Initially, Dr. Bardey adopted the theory of Dr. Loftus, that plaintiff was conflating memories, then he shifted to a variety of theories including that plaintiff was lying for attention, that he lied to be a part of the *#MeToo* movement, and that his lie was born out of resentment for Spacey. Then, upon being confronted with each of his theories at his deposition, Dr. Bardey's opinion morphed again into a new set of theories that plaintiff was jealous of Spacey, jealous of John Barrowman, and jealous of their relationship. Dr. Bardey's deposition was plaintiff's opportunity to bring out the flaws in both Dr. Bardey's opinions and the methods by which he reached those opinions, and the trier of fact is absolutely entitled to evaluate the credibility of Dr. Bardey based upon that testimony.

Dr. Bardey's assessment as to plaintiff's psychological damage is inseparable from his theories regarding plaintiff's motivation to lie. Because Dr. Bardey's conclusions are clearly a product of his various theories, his opinions regarding plaintiff's credibility speak directly to Dr. Bardey's own credibility and must be heard by the finder of fact. The jury cannot properly assess the credibility of Dr. Bardey's conclusions without being afforded the opportunity to assess the credibility of the process by which those conclusions were reached.

Defendant's suggestion that he intends to play by the same rules and not have his expert reference credibility is unpersuasive given what he has already testified to and included in the majority of his report. Further, defendant's moving papers fail to cite a single controlling source which would justify in any way limiting the appropriate damages testimony of plaintiff's sole expert. Nonetheless, to the extent the Court has any doubt with respect to the issues raised

regarding the testimony of either expert, it can hear the testimony and make appropriate rulings upon objections at the time of trial, should they arise.

I. **PLAINTIFF'S EXPERT DR. ROCCHIO'S OPINION IS THAT PLAINTIFF SUFFERS FROM PTSD AS A RESULT OF THE SEXUAL ABUSE BY SPACEY**

*1. Dr. Rocchio's attribution of Plaintiff's PTSD to Defendant Sexually Abusing Plaintiff is a Proper Expert Opinion Related to Causation*

Dr. Rocchio is a clinical and forensic psychologist with expertise in traumatic stress (Saghir Decl., Ex. A at 40). Based on her expertise, Dr. Rocchio will testify that as a result of being sexually abused by Kevin Spacey, plaintiff suffers from Post-Traumatic Stress Disorder (Saghir Decl., Ex B). It is well established that "A doctor can summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse." *United States v. Whitted,* 11 F.3d 782, 785, 1993; see *United States v. Azure*, 801 F.2d 336, 340 (8th Cir. 1986); see also *United States v. Provost*, 875 F.2d 172, 176 (8th Cir.), cert. denied, 493 U.S. 859 (1989). Further, in *Whitted* the court concluded jurors are equally capable of considering the evidence and passing on the ultimate issue of sexual abuse, however, a doctor's opinion that sexual abuse has in fact occurred is ordinarily neither useful to the jury nor admissible. (id) Here, Dr. Rocchio's testimony will fall squarely within these bounds, rather than definitively concluding plaintiff's allegation of sexual abuse "has in fact occurred." (id) Further, the point on which defendant focuses so heavily in their moving papers regarding Dr. Rocchio usurping the jury's function by opining to a degree of medical certainty that Anthony Rapp's PTSD is a direct result of being sexually abused by Kevin Spacey lacks merit. In response to concerns of precisely this nature, the Committee crafted FRE 704 and in its most recent amendment commentary states:

> "The old rule prohibiting opinions on the so called 'ultimate issue'
> was abolished because the rule was unduly restrictive and generally

> served only to deprive the trier of fact of useful information." "The basis usually assigned for the rule, to prevent the witness from "<u>usurping the province of the jury</u>" is aptly characterized as "<u>empty rhetoric</u>."

And continues:

> "In cases of medical causation, witnesses were sometimes required to couch their opinions in cautious phrases of "might or could" rather than 'did", though the result was to deprive many opinions of the positiveness to which they were entitled, accompanied by the hazard of a ruling of insufficiency to support a verdict."

Further, defendant's contention that the Second Circuit's opinion in *Nimely v. The City of New York* is instructive and applicable to this case is incorrect. While the Second Circuit in *Nimely* found the trial court abused its discretion in enabling the defendants' expert to testify he believed the police officers were telling the truth as they perceived it, and that an expert may not testify to opinions that constitute evaluations of witness credibility, this prohibition applies to "expert opinion as to the testimony of **other witnesses at the trial**. *United States v. Herron,* 2014 U.S. Dist. LEXIS 63872, *22, 94 That is, offering an opinion on witnesses whose "live testimony and demeanor jurors can assess for themselves. (id.) *see also United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999). Moreover, the circumstances in which the defendants' expert's opinion in *Nimely* arose were substantially different than is the case here. As defendant correctly indicates, the issue in *Nimely* was whether the plaintiff was facing the officers or had his back turned when he was shot. Defendants' medical expert then provided testimony at trial that commented on the officer's credibility while explaining the injuries and trajectory of the bullet that hit him. The officer's credibility as a witness at the trial had absolutely no bearing whatsoever on the expert's medical evaluation. In comparing that case to the present case however, defendant is comparing apples to oranges. Dr. Rocchio simply has not

offered any opinion specific to the credibility of any witness or his/her testimony (Saghir Decl., Ex. A at 54).

Instead, Dr. Rocchio in concluding that plaintiff has PTSD as a result of being sexually abused by Kevin Spacey, will discuss the data she reviewed as part of her psychological evaluation of plaintiff and its impact on her findings. Both Dr. Bardey and Dr. Rocchio agree that in forensic evaluation, specifically as it pertains to the analysis of Mr. Rapp, one must consider malingering (Saghir Decl., Ex. A at 68). An essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms motivated by external incentives (Saghir Decl., Ex. A at 73). Dr. Rocchio testified that she "checked for malingering and came to a determination whether there is a discrepancy between Rapp's claimed stress and the objective findings and observations" (Saghir Decl., Ex. A at 74). As she testified at her deposition, plaintiff's reports to Dr. Rocchio regarding his claimed stress was highly consistent with the objective findings and observations not only of the evaluation but with other forms of data that she reviewed in the context of the evaluation, including the collection of texts, collateral interviews, and new articles, among others (Saghir Decl., Ex. A at 74). Defendant's suggestion then that Dr. Rocchio be barred from testifying about her interviews or other data analysis eliminates plaintiff's ability to convey to the jury why Dr. Rocchio's conclusions pertaining to plaintiff's psychological damages have merit. Moreover, Dr. Rocchio's diagnosis of PTSD and describing its severity specifically as it pertains to eliminating the possibility of plaintiff's malingering is predicated upon explaining to the jury each element of the evaluation she undertook.

> *2. Dr. Rocchio's Research and Process of reaching Conclusions Must be Evaluated by the Jury to Assess her own Credibility*

To appreciate the value of Rocchio's experience within the field of forensic psychology and specifically her analysis of Anthony Rapp's struggles with PTSD directly as a result of being sexually abused by Kevin Spacey, the jury must hear not only her conclusions but her methodology as "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner* 522 U.S. 136,146 1977. Moreover, in order for the jury to fairly assess the credibility of Dr. Rocchio's testimony, they must too have access to her analysis.

Indeed, contrary to defendant's assertions however, Dr. Rocchio testified that within the realm of determining what did and did not happen, she goes only so far as a clinical and forensic psychologist to "determine whether the data does or does not support the subjects' claims" (Saghir Decl., Ex. A at 38). It is well established that, FRE Rule 702 calls for a quantitative rather than qualitative analysis. As the committee writes:

"The amendment requires that expert testimony be based on sufficient underlying "facts or data." The language "facts or data" is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence. When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts." (FRE 702 Commentary)

The intent of the committee to include this language supports plaintiff's objective position. The jury will be assisted in assessing the validity of competing theories by not merely hearing conclusions but rather the methods and analysis by which those conclusions were reached. Enabling the jury to hear the underlying analysis by both experts allows the jury to assess the respective expert's credibility and objectivity, it does not prejudice either party as defendant continuously suggests. Finally, contrary to defendant's position that some of Dr. Rocchio's findings contain hearsay statements, and specifically that all interviews she conducted and referenced in her report cannot be part of her trial testimony, has also been considered by the committee in commentary on FRE 703: "The words 'in assisting the jury to evaluate the expert's opinion' were added to the text, to specify the proper purpose for offering the otherwise

10

inadmissible information relied on by an expert." This argument by defendant too must fail, as it was a concern contemplated and addressed by the committee. To preclude Dr. Rocchio's interviews as well as much of her testimony is to undermine the jury's ability to fully and fairly assess the credibility of the experts, their opinions, and their analysis.

Moreover, as defendant's papers acknowledge, an expert may base her opinion, in part, on hearsay when experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. The collateral interviews which both experts conducted are the exact type of information psychologists or psychiatrists utilize in forming opinions in cases such as these, and may form part of the basis for their opinions.

Further, since Dr. Rocchio issued her report, much has been added to the record in the case, including the report and testimony of Dr. Bardey himself. Indeed, Dr. Bardey's deposition testimony went far beyond the confines of his original report, featuring his opinions on matters he claimed to have later learned. Certainly, Dr. Rocchio should be permitted to offer similar observations during her testimony, including, but not limited to, opinions regarding Dr. Bardey's methods and conclusions.

## II. DR. BARDEY'S EXPERT OPINION IS FOCUSED ALMOST EXCLUSIVELY ON CREDIBILITY

*1. Dr. Bardey's Theories Regarding Plaintiff's Motive to Lie*

Dr. Bardey has shifted theories on why he believes plaintiff is lying multiple times throughout the course of this litigation. While defense counsel has elected not to call Dr. Elizabeth Loftus, their "False Memory" expert, Dr. Bardey cites on multiple occasions within his report Dr. Loftus' research in drawing his conclusion "Mr. Rapp, if he in fact believes that the incident in question occurred, created a false memory of the alleged incident" and "numerous factors included in this report suggest that over the years Mr. Rapp has generated and

perpetuated a false memory about the alleged incident" (Saghir Decl., Ex. C). In his deposition however, Dr. Bardey was quick to abandon this theory: when asked if he thought it was even a reasonable possibility that he was conflating memories in this case, he answered "Not anymore, no" (Saghir Decl., Ex. D at 110).

Defendant's expert jumped to another theory when in his report he opined Mr. Rapp has apparently enjoyed being in the public eye, and appears to thrive off the positive feedback he has received from the public in relation to his professional exploits (Saghir Decl., Ex. C). He opined that Mr. Rapp apparently believes the bias against out-gay actors has impacted his career and he feels resentment towards closeted gay actors, like Spacey. Dr. Bardey pointed to this resentment, and "attention craving" as a motive to lie and suggests in his report that there was little to no mention of the specific acts allegedly committed by Mr. Spacey until Mr. Rapp chose to involve himself in the #MeToo movement (Saghir Decl., Ex. C). When confronted, however, with the fallacy of the #Metoo movement as a motive to lie, based on the fact that the #MeToo movement did not exist in the 80's, 90's and 2000's, Dr. Bardey agreed that plaintiff's telling of various people prior to the existence of the movement rules out the idea that he created this allegation to be a part of it (Saghir Decl., Ex. D at 127).

Dr. Bardey's final theory, that Mr. Rapp concocted this story as a result of jealousy, was not one referenced in his expert report. Rather it was not until January 2022, the month of his deposition that he formed the opinion Mr. Rapp's motive for lying was jealousy (Saghir Decl., Ex. D at 131). Indeed, Dr. Bardey first testified that Mr. Rapp was jealous of the success that Mr. Spacey had and that he was more distinguished (Saghir Decl., Ex. D at 76). When confronted with the distinguished career plaintiff was already experiencing at this time, Dr. Bardey makes his first shift in theory and testifies "It had nothing to do with who had more accolades or who

12

had more, you know, distinguished performances," but rather plaintiff was jealous of the interaction between John Barrowman and Spacey (Saghir Decl., Ex. D at 79). Dr. Bardey testified "Barrowman and Spacey were on the bed, they laid back on the bed, I think they touched in some kind of way while Rapp was in the bathroom" (Saghir Decl., Ex. D at 165). But, when confronted with the fact that plaintiff had no knowledge of this interaction between Barrowman and Spacey until many years later, and that plaintiff told Christopher Hart weeks after the incident, it did *not* change his opinion that Mr. Rapp was lying to Christopher Hart out of jealousy (Saghir Decl., Ex. D at 174, 167).

> 2. *Dr. Bardey's Conclusion That Plaintiff Experienced No Trauma is a Result of False Premises and Theories That Must Be Explained to The Jury*

The jury cannot properly assess the credibility of Dr. Bardey's conclusions without being able to assess the credibility of the analytical process by which those conclusions were reached. Indeed, courts have long recognized "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136,146 1977. Dr. Bardey highlighted the interconnected nature of his theories relating to plaintiff's credibility and his conclusions about plaintiff's psychological damages when he testified at his deposition that plaintiff's involvement in the *#MeToo* movement was no longer a motive to lie, but rather "has bearing on whether the allegation had any psychological impact on him" (Saghir Decl., Ex. D at 71). In fact, each of Dr. Bardey's opinions on plaintiff's motivation to lie, he later abandoned, but serve as the foundations for his conclusions regarding psychological damage. A jury cannot possibly evaluate the credibility of these opinions without evaluating the credibility of Bardey's methodology. The commentary to FRE Rule 702 sets forth "the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the experts opinion." (Committee Note 702) Contrary to the committee's note, divorcing the

*insufficiency* of Dr. Bardey's analysis from his opinion is precisely what defendant is seeking to accomplish by their motion.

Courts have held that factors in determining whether expert testimony is sufficiently reliable includes whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Dr. Bardey's testimony is riddled with contradictions and extrapolations from his theories to his determination that plaintiff is suffering no psychological damage. For example, Dr. Bardey testified that: **i.)** a 26 year-old man doing what Spacey is alleged to have done to a 14 year-old boy could be a competent producing cause of trauma and *one could end up with PTSD* (Saghir Decl., Ex. D at 159); **ii.)** Mr. Rapp's scene in the play precious sons when Ed Harris's character "acts in a sexual manner" towards plaintiff was relevant to him because it was *identical to what he was alleging* (Saghir Decl., Ex. D at 109); but, **iii.)** that he precluded PTSD as a diagnosis for Mr. Rapp because even accepting the allegations as true, *it does not rise to the level of sexual violence* (Saghir Decl., Ex. D at 164). These statements are paradoxical, and bear directly on the credibility of Dr. Bardey's primary opinion, that plaintiff suffered no psychological damage. Dr. Bardey must not be empowered to take the stand at trial and testify that plaintiff does not have PTSD without being subject to cross-examination on this testimony, which is rooted in one of his several theories on plaintiff's motive to lie. Bardey's preclusion of PTSD as a diagnosis for plaintiff based on his reliance on the false premise that plaintiff's allegation did not rise to the level of sexual violence, is logically unsound.

Courts have also considered relevant in assessing whether expert testimony is reliable "whether the expert has adequately accounted for obvious alternative explanations." *See Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994) Later in his deposition Dr. Bardey was read a

statement he was previously unaware of, made by Mr. Spacey: "there's no excuse for the behavior that he describes, and I want to apologize immediately" (Saghir Decl., Ex. D at 272). Dr. Bardey then agreed that if Mr. Rapp's allegation was true, Spacey's conduct was inexcusable, because "it would be inappropriate to engage in inappropriate contact with a minor" (Saghir Decl., Ex. D at 272). In expanding on this point, he testified that unwanted sexual touching would constitute sexual violence because inappropriate sexual touching is part of the definition of sexual violence (Saghir Decl., Ex. D at 272). Bardey is completely walking back his testimony, further contradicting his own conclusions, and making clear that fairness requires plaintiff be able to bring this testimony out at trial. Indeed Dr. Bardey's misanalysis of trauma resulting from his reliance on false premises continued at his deposition when, in response to plaintiff counsel's question about ordinary responses for trauma victims, he opined:

> "If he is forced to be exposed to it [depictions of a person someone felt traumatized by] then, yes, you would expect some sort of exaggerated startled response, some sort of alteration in the arousal when confronted with the subject of trauma. In general though, individuals who have been traumatized tend to avoid encounters with individuals that traumatize them, and there was no evidence that Rapp avoided that" (Saghir Decl., Ex. D at 174-175).

Dr. Bardey supported his proposition by testifying that plaintiff saw the movie "Working Girl" which featured Spacey, and attended award ceremonies knowing Spacey would be present. He concluded that this was not avoidance but rather "actively seeking it out and reacting to it" (Saghir Decl., Ex. D at 176-177). When confronted with Plaintiff's testimony that plaintiff did not know Spacey was in Working Girl, Dr. Bardey agreed that "he had a minor character. [Spacey] probably wouldn't be on a Marquee. [Rapp] would have no way of knowing." (Saghir Decl., Ex. D at 176-177). Similarly, when confronted with whether Dr. Bardey thought plaintiff shouldn't attend award shows as a major Broadway star in one of Broadway's most famous

shows of all time, Rent, Dr. Bardey testified "I'm not saying he should or shouldn't" (Saghir Decl., Ex. D at 176-177). Dr. Bardey's analytical flaws as it pertains to the assessment of plaintiff's psychological damages, are unequivocally rooted in his tendency to evaluate those damages based on his various theories for plaintiff's motivation to lie, which serve as false premises for his conclusions. Bardey did not believe plaintiff's account of what occurred and specifically determined that Mr. Rapp is lying. In determining the credibility of these witnesses Dr. Bardey testified that "the more inconsistencies there are the more question they raise about the veracity of the claim" and the very next question when asked if it is suspicious when the memories of people are too consistent, making it likely that Mr. Rapp is lying, answered "In this *particular* case, yes." As it pertains to the right level of consistency, Dr. Bardey's expert testimony was that it was a "judgment call." (Saghir Decl., Ex. D at 187). The prejudicial effect of the jury not hearing this flawed logical analysis is overwhelming. Dr. Bardey's theories on plaintiff's motivation to lie are inseparable from his conclusions pertaining to plaintiff's psychological damages. His opinions as to credibility therefore must be heard by the jury. Dr. Bardey's inconsistencies as to fundamental details in reaching his conclusions cannot be reasonably perceived is irrelevant as defendant contends. In fact, his contradictions and reliance on false premises strike to the very core of each one of his findings.

## CONCLUSION

Defendant's moving papers are bereft of relevant case law which would justify in any way limiting the appropriate damages testimony of plaintiff's sole expert. Moreover, to the extent the court has any doubt with respect to the issues raised regarding the testimony of either expert, it need not rule now but could hear testimony and make an appropriate ruling upon objections at the time of trial, should they arise. Defendant had the opportunity to depose Dr.

Rocchio and Plaintiff deposed Dr. Bardey, the jury has a right to now hear their respective testimonies in full and evaluate the validity of competing theories. Dr. Bardey's various opinions which relate to plaintiff's credibility are inseparable from his opinions regarding plaintiff's psychological damages and speak directly to his own credibility and therefore must be evaluated by the jury. Based on the foregoing, Plaintiff Anthony Rapp respectfully requests that the Court deny Defendant's Motion in *Limine* No. 3.

Dated: New York, NY
October 3, 2022

Respectfully submitted,

_____
Peter J. Saghir (PJS 4276)
GAIR, GAIR, CONASON, RUBINOWITZ, BLOOM,
HERSHENHORN, STEIGMAN & MACKAUF
Attorneys for Plaintiff
Anthony Rapp
80 Pine Street, 34th Floor
New York, NY 10005
Tel: (212) 943-1090
Email: psaghir@gairgair.com

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2, I, Peter J. Saghir, hereby certify that on October 3, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

_____
Peter J. Saghir