

Alexander Sasha Bardey, M.D., PLLC
Kate Termini, Psy.D.
Amy DeSimon, LMHC

# FORENSIC PSYCHIATRIC EVALUATION

## ANTHONY RAPP

### June 7, 2021

Chase A. Scolnick, Esq.
Keller/Anderle LLP
18300 Von Karman Ave.
Suite 930
Irvine, CA 92612

Dear Mr. Scolnick,

At your request, I performed an independent and impartial psychiatric evaluation of Mr. Anthony Rapp, in connection with his claim of psychological damages in the matter of Anthony Rapp vs. Kevin Spacey Fowler a.k.a. Kevin Spacey. Specifically, my aim was to assist you in gaining a full understanding of whether he suffered emotional or psychological impairment as a direct result of his contact with Kevin Spacey. I also assessed his current ability to function emotionally, socially, and vocationally, as well as his current mental state. The examination took place via Zoom, a secure video-conferencing platform, on March 26, 2021.

In conducting the psychiatric examination, I reviewed Mr. Rapp's personal, social, educational, vocational, and psychiatric histories. I performed a mental status examination to assess his intelligence, thought process, cognitive functioning, memory, credibility, orientation, judgement, insight, and impulse control. The limits of confidentiality inherent to such an evaluation were explained to Mr. Rapp.

In addition to my examination, I conducted the following collateral interviews:

1. Mr. Sean Snow, Mr. Rapp's close friend, on April 15, 2021
2. Ms. Robin Magid, LCSW, Mr. Rapp's current mental health treatment provider, on April 22, 2021
3. Mr. Ken Ithiphol, Mr. Rapp's husband, on June 1, 2021
4. Mr. Adam Rapp, Mr. Rapp's brother, on June 1, 2021

According to Mr. Ithiphol, Mr. Rapp tends to avoid seeing anything that Mr. Spacey is involved in. He claimed that the current lawsuit has been "difficult" for his husband, and participating in his deposition in February 2021 impacted him in negative ways. Mr. Rapp also reportedly confided in Mr. Ithiphol that he felt as though he had difficulties setting boundaries with people, in that there were times that people pursued him romantically or sexually and he was uncomfortable with their pursuits but he continued to go along with their advances.

Mr. Ithiphol reported that since their initial conversation about Mr. Spacey, the topic has come up regularly throughout their relationship. He explained that Mr. Rapp is very outspoken and when the #MeToo movement started he was reading about the various stories from victims of abuse, and these stories resonated with him. Mr. Ithiphol reported that his husband felt compelled to share his story too and he felt very connected with the movement. He noted that Mr. Rapp has received both positive and negative responses from the public after disclosing the alleged incident, thought mostly positive, and he feels affirmed by his decision to come forward. Mr. Ithiphol stated that his husband is "feeling like there is a meaningful difference he is making."

## MENTAL STATUS EXAMINATION

Mr. Rapp is a 49-year-old Caucasian male who looked slightly younger than his stated age at the time of the evaluation. He was alert and fully oriented. He was dressed appropriately, wore glasses, and wore headphones. He was appropriately groomed, well-related to the examiner, and cooperative. He maintained good eye contact with the examiner and spoke at an appropriate rate, rhythm, and volume. His thought processes were logical and goal-oriented and there was no evidence of a thought disorder. He appeared to be of above average intelligence and was intact cognitively.

Mr. Rapp's mood was euthymic and his affect, or expressed emotional tone, was congruent with his mood. There was no evidence to suggest that Mr. Rapp had ever experienced psychotic symptoms, such as delusions, hallucinations, or paranoia, nor any symptoms of mania. He denied experiencing any suicidal or homicidal ideation.

Mr. Rapp endorsed having anxiety, specifically in relation to the current lawsuit. However, he did not endorse or manifest symptoms consistent with a diagnosis of PTSD. The alleged incident, if it did occur, was not an act of threatened death, serious injury, or sexual violence; he does not experience negative alterations in mood associated with the alleged traumatic event that worsened after the alleged incident would have occurred; and he does not exhibit marked alterations in arousal and reactivity associated with the alleged incident. Further, Mr. Rapp does not meet the Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition (DSM-5) criterion G for PTSD, "the disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning."[167] Mr. Rapp alleged that an

---

[167] American Psychiatric Association. (2013). Diagnostic and statistical manual of mental disorders (5th ed.). Arlington, VA: American Psychiatric Publishing

incident occurred with Mr. Spacey in 1986, and over the nearly 35 years since, he has not only been extremely successful in his occupational life, as evidenced by his noteworthy body of work which includes his place in the original cast of *Rent*, but also his social life, as evidenced by his successful relationship with his current partner, good relationships with his siblings, and positive relationships with friends and fans throughout the country.

## FORMULATION

Mr. Rapp is a 49-year-old Caucasian male that I psychiatrically evaluated in relation to his claim of psychological damages in the matter of Anthony Rapp vs. Kevin Spacey Fowler a.k.a. Kevin Spacey. Specifically, my aim was to assist you in gaining a full understanding of whether he suffered any emotional or psychological impairment as a direct result of his contact with Kevin Spacey.

As summarized in the body of this report, Mr. Rapp is an intelligent, successful man that has achieved great success as an actor. Psychological reports, mental health treatment notes, Mr. Rapp's memoir, and the transcript of several witness depositions document that Mr. Rapp has suffered through several setbacks and traumatic experiences in his life, which he has both spoken about or written about for years. Notably, despite an obvious desire to share his psychological issues in public, there is little to no mention of the specific acts allegedly committed by Mr. Spacey until Mr. Rapp chose to involve himself in the #MeToo movement. Mr. Rapp has apparently enjoyed being in the public eye, and appears to thrive off the positive feedback he has received from the public in relation to his professional exploits.

Mr. Rapp is an openly homosexual man, and part of his entire public persona has included his advocacy for others around the issue of sexuality. Mr. Rapp is proud of his having spoken publicly about his sexuality before it was acceptable to do so. He has publicly and privately expressed his frustration with Hollywood's bias against out-gay actors. Mr. Rapp apparently believes this bias has impacted his career and he feels resentment towards closeted gay actors, who he believes should come out to 'level the playing field." For years, Mr. Spacey was just such an actor and his tremendous success made him a focus of Mr. Rapp's resentment. Indeed, Mr. Rapp repeated his allegations against Mr. Spacey to others immediately after they celebrated or praised Mr. Spacey for his talent and success.

Mr. Rapp was apparently moved by the #MeToo movement and wanted very much to be a part of it. Openly disclosing this alleged incident that occurred with Mr. Spacey became an effective vehicle to move the movement's spotlight onto himself. Mr. Rapp has enjoyed the attention, praise and sympathy his allegations have given him. He has repeated his allegations during interviews, podcasts, and at an awards show. And though he has privately acknowledged the reaction to his allegations have been 99% positive, Mr. Rapp chose to share each negative comment he has received with the public, again reinforcing his 'victim" status.

Obviously, as with any civil lawsuit involving a claim of psychological damage, one cannot ignore the lure of a substantial financial settlement as a motivating factor for making such a claim either. In other words, in my psychiatric opinion, there are both external (financial reward) and internal (emotional gratification and public support) reasons for advancing Mr. Rapp's claim against Mr. Spacey.

In her report, Dr. Rocchio opined that Mr. Rapp's account of the alleged incident is "corroborated by multiple sources, and was consistent with his public disclosures about the incident…messages between Mr. Rapp and his friends and colleagues…and with information provided by collateral sources."[168] However, this is simply not true. Mr. Rapp has generated multiple different versions of the alleged incident that occurred with Mr. Spacey in 1986. In one version he fell asleep next to a pile of coats, in another Mr. Spacey tried to kiss him, in another Mr. Spacey rubbed against him, and in others Mr. Spacey picked him up and drunkenly fell on top of him. Additionally, Mr. Rapp has always claimed that Mr. Barrowman was with him and Mr. Spacey a few days prior to the alleged incident. Mr. Rapp reported that Mr. Spacey was touching Mr. Barrowman's leg and knee under the table that evening as they all sat in the VIP section at Limelight and that Mr. Spacey invited them to a party some days later; he also claimed that when he went to the party at Mr. Spacey's apartment alone it was his first time there. He also described the apartment as having one bedroom, a key factor in his account, when in fact objective testimony described Mr. Spacey's apartment as a studio. This fact significantly impacts on the credibility of the events alleged to have occurred and must be considered in any forensic psychological assessment

A review of witness deposition transcripts also add significant doubt as to the accuracy and veracity of Mr. Rapp's account. In fact, Mr. Barrowman's testimony completely contradicts Mr. Rapp's claims. According to Mr. Barrowman, Mr. Spacey did not touch his knee under a table, the three of them danced at the Limelight, as opposed to sitting, and nothing inappropriate happened with Mr. Spacey. Mr. Barrowman recalled going back to Mr. Spacey's apartment after leaving Limelight accompanied by Mr. Rapp to admire the view of the city and to see Mr. Spacey's dog. While at Mr. Spacey's studio apartment, Mr. Barrowman recalled, "playfully, Mr. Spacey pushed me back, and we were laying down. And he leaned to the side to talk to me with arm on top of me, and that was – I didn't – I'm saying this – it didn't affect me in a bad way. It didn't – I didn't feel threatened."[169] Mr. Barrowman further denied anything inappropriate happening between Mr. Spacey and Mr. Rapp. Mr. Rapp makes no mention of this previous encounter with Mr. Spacey and Mr. Barrowman and claimed that he and Mr. Barrowman safely made their way home from the Limelight. Mr. Barrowman also denied telling Mr. Rapp that Mr. Spacey had bought him flowers or that Mr. Barrowman parents asked Mr. Spacey to stop calling their home.

Mr. Rapp, in his claim that Mr. Spacey picked him up "like a bride," and fell on top of him while intoxicated, suggests that he experienced at the very same period of time, being manhandled in the same way by the actor Ed Harris in the play they were both in and by Mr.

---

[168] Report by Lisa M. Rocchio, PhD, dated 2/25/21
[169] Deposition of John Barrowman, dated 5/26/21

Spacey at the party. In the play *Precious Sons*, which Mr. Rapp was acting in at the time of the alleged incident, there are two specific scenes in which Ed Harris, who plays his father in the play, picks up Mr. Rapp. In one scene he is holding Mr. Rapp similarly to how a groom would pick up a bride over the threshold.[170] In a second scene, Ed Harris is drunk and mistakes his son, Mr. Rapp, for his wife and makes a sexual advance towards the individual by falling onto him in a dimly lit room on a couch covered in coats or clothing. Mr. Rapp performed this play on an almost daily basis for months in 1986, the same year that the alleged incident with Mr. Spacey occurred. The incident that has several similarities to what occurs in the play itself. The likelihood that two such almost identical events would happen to Mr. Rapp throughout the same time period seems remote at best. More likely, Mr. Rapp either consciously adopted the inappropriate behavior portrayed in the play as a real life event involving Mr. Spacey, or he conflated his recollection of the action in the play with what benign interaction he might have had with Mr. Spacey at the time. It is thus likely that Mr. Rapp, if he in fact believes that the incident in question occurred, created a false memory of the alleged incident.

According to the first studies aimed to plant false memories:

*"participants were told that researchers had spoken with their parents and learned about some events from their childhoods (Hyman, Husband, & Billings, 1995; Loftus & Pickrell, 1995; Porter, Yuille, & Lehman, 1999). This was actually the case for some events, but in each study, one childhood event was actually provided by the researchers, after being specifically disconfirmed by the parents (e.g. being lost in a shopping mall, spilling punch on the brides' parents at a family wedding, having a serious accident). After a series of suggestive interviews, modeled on therapy techniques used to recover memories, substantial minorities of participants (20%-25% in these early studies) reported remembering the false event (these numbers increased over time, such that Wade and Garry [2005] found a weighted mean of 37% of participants in 10 studies developing false memories). The false memories produced in these studies were often detailed and even emotionally laden for those who acquired them..."*[171]

Further, "studies conducted in laboratories around the world have demonstrated that human memory is susceptible to errors as a result of exposure to post-event information such as leading questions and reports of others."[172] Here numerous factors included in this report suggest that over the years Mr. Rapp has generated and perpetuated a false memory about the alleged incident. I understand this will be the subject of further expert testimony at trial.

Diagnostically, Mr. Rapp displays narcissistic personality traits, in that he has an excessive need for admiration, has a grandiose sense of self-importance, and believes that he is special (i.e. saved his family's life on several occasions). In his memoir, Mr. Rapp provided very personal,

---

[170] Precious Sons Playbill, p.53-55; a photo of this interaction is also in the Buzzfeed News Article, Actor Anthony Rapp: Kevin Spacey Made a Sexual Advance Toward Me When I Was 14, last updated 10/30/17
[171] Laney, C. & Loftus, E. (2013). Recent advances in false memory research. *South African Journal of Psychology, 43* (2), p. 137-146. https://doi.org/10.1177/0081246313484236
[172] Laney, C. & Loftus, E. (2013). Recent advances in false memory research. *South African Journal of Psychology, 43* (2), p. 137-146. https://doi.org/10.1177/0081246313484236

intimate details about his mother, his career, and his sex life. However, not once in that memoir was there any mention of Mr. Spacey in general, or the alleged misconduct specifically.

Given the unlikely scenario that Mr. Rapp's alleged abuse happened, that it matched almost identical behaviors that had occurred nightly in a play he was in, that it partially mirrors an innocuous experience Mr. Barrowman conveyed to him, that he did not disclose the incident to any therapist, and that he did not write about it in a memoir that includes discussions of prior trauma, there is no evidence that the alleged incident caused Mr. Rapp any significant psychological trauma or associated personal, social, or vocational dysfunction. The event as described by Mr. Rapp, especially in his account to me, appears little more than an intoxicated Mr. Spacey falling onto Mr. Rapp as dead weight, there is little to no evidence of a sexualized action or sexual violence. Sexual violence is defined as "any sexual act, attempt to obtain a sexual act, unwanted sexual comments or advances, or acts to traffic, or otherwise directed, against a person's sexuality using coercion, by any person regardless of their relationship to the victim, in any setting, including but not limited to home and work."[173] If the alleged incident with Mr. Spacey did occur as Mr. Rapp described it in the present evaluation (as there are multiple different versions of alleged events articulated by Mr. Rapp), then it does *not* meet the definition of an act of sexual violence for purposes of a psychiatric evaluation. Mr. Rapp's allegation is that Mr. Spacey:

> *"approached me, and he picked me up, he put his arm beneath me, because I was sitting on the edge of the bed. So he put his hand under my butt and down my legs to my knees, like scooped me like that and held me like a bride in that famous image…he laid me down on the bed on my back, and he laid on top of me…it felt like drunk and clumsy… his full weight was on my body…His hands were like behind my back clutching my shoulders…pressing his weight into me, I don't recall him saying anything…was able to make the decision to squirm away, he wasn't grinding into me, he wasn't caressing me, it was just sort of dead weight and holding me."*

Mr. Rapp's statement does not indicate that any sexual act occurred. Mr. Spacey did not expose himself, did not attempt to remove Mr. Rapp's clothing, or initiate sexual contact with Mr. Rapp. According to this statement, he grazed Mr. Rapp's buttocks as he picked him up and his body fell on top of him in a "drunk and clumsy way." It is not unreasonable to believe that, if the incident did occur as Mr. Rapp now alleges, Mr. Spacey was intoxicated and not much larger than Mr. Rapp at the time of the alleged incident, and he simply fell over when he tried to move him. Further, Mr. Spacey did not follow Mr. Rapp into the bathroom. He did not say anything, let alone anything sexual, to Mr. Rapp, nor did he forcibly restrain Mr. Rapp from leaving his home. Thus, Mr. Kevin Spacey did not sexually assault Mr. Rapp.

Additionally, Mr. Rapp has experienced several well-documented traumatic events, including actual sexual assaults, that could have had lasting effects on his psyche and potentially cause emotional and psychological dysfunction. These events include waking up with another young boy in his bed when he was six or seven years old, "mutual" masturbation as a young

---

[173] https://www.who.int/violence_injury_prevention/violence/global_campaign/en/chap6.pdf

teenager, an 18-year-old boy performing oral sex on him when he was only 14 years old, an actress in her 40's having sexual intercourse with him when he was only 17 years old, being physically assaulted in London, being hit by a drunk driver in the 1990's, being punched by Yul Brynner, and being sexually assaulted by a massage therapist. He was also involved in multiple toxic relationships, which is corroborated throughout this report, that involved emotional abuse and manipulation, and physical abuse.

Further, in the collateral interview that I conducted with Ms. Magid, she did not recall Mr. Rapp disclosing any traumatic incidents to her other than this alleged incident with Mr. Spacey. Thus her error in ascribing all of Mr. Rapp's reported psychological symptoms to this incident is understandable. However, in her deposition she contradicted herself and claimed that he only did not tell her about the sexual assault by the 18-year-old boy when he was 14 years old. Though it is unknown which of the two claims is true, he at the very least failed to disclose an actual act of sexual abuse by an adult to the therapist that he has been in treatment with for over 20 years. Ms. Magid, self-admittedly lacking experience and/or evidence formed an inaccurate impression of her client that influenced her unsubstantiated diagnosis of PTSD. Notably, Ms. Magid admitted not knowing all of the criteria in the DSM-5 for a diagnosis of PTSD and does not consider herself as someone that uses the DSM-5 in her therapeutic practice.

According to Ms. Magid, Mr. Rapp experiences intrusive memories, avoidance behaviors, and "freeze" responses. Ms. Magid attributed all of these behaviors solely to the alleged incident, rather than considering more likely causes for these reported symptoms. For example, Mr. Rapp has been involved in multiple toxic relationships that were emotionally abusive in the past, and he has even engaged in physical altercations with his husband throughout the course of their relationship. If he has been victimized by his romantic partners in the past, it is likely that these intrusive thoughts, avoidant behaviors, and especially the freeze responses, could be attributed to his history of poor romantic partners. Additionally, he has been sexually victimized on at least three separate occasions, each of which was more traumatic than the alleged incident and more likely to be a contributing factor to these symptoms. Of note, these symptoms do not seem to have caused any significant dysfunction of any kind at any point in Mr. Rapp's life.

Additionally, these "symptoms," taken at face value, do not warrant a diagnosis of PTSD, as Mr. Rapp does not meet the DSM-5 criteria for the disorder. As previously stated, he does not experience negative alterations in mood associated with the alleged traumatic event that worsened after the alleged incident would have occurred and he does not exhibit marked alterations in arousal and reactivity associated with the alleged incident, nor does he meet the DSM-5 criterion G for PTSD, "the disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning."[174]

Dr. Rocchio opined the following:

---

[174] American Psychiatric Association. (2013). Diagnostic and statistical manual of mental disorders (5th ed.). Arlington, VA: American Psychiatric Publishing

> *"Mr. Rapp is currently experiencing Posttraumatic Stress Disorder (PTSD), in response to this sexual assault. Mr. Rapp currently meets the full DSM-5 criteria for Posttraumatic Stress Disorder, with the identified Criterion A stressor being the alleged sexual assault by Mr. Spacey…*
>
> *In addition to Posttraumatic Stress Disorder, Mr. Rapp has experienced difficulties with setting limits and boundaries in intimate relationships, has experienced intense feelings of shame and confusion, guilt for not coming forward sooner, and interpersonal difficulties which included episodes of impaired sexual desire and functioning. He has also been subjected to negative comments, harassment, and insults following his public disclosure of his experience of assault by Mr. Spacey. It is my opinion that these additional difficulties are substantially related to the alleged sexual assault by Mr. Spacey…"*[175]

Here, Dr. Rocchio, though performing a forensic assessment, made the same error as Dr. Magid in failing to adequately consider, or even explore, the possible relevance of the multiple traumatic experiences that Mr. Rapp experienced in the past. Instead, she attributes everything he is experiencing to this sole, relatively inconsequential, alleged event that occurred over 35 years ago. Dr. Rocchio also failed to consider the internal and external likely motivators for Mr. Rapp to have made this claim against Mr. Spacey at the time that he did. As one would expect, Mr. Rapp is currently experiencing anxiety related to the lawsuit, but overall he reported receiving 99% positive feedback from the public for making this allegation, has won awards, and has received an enormous amount of public exposure.

For the reasons stated in this report, I disagree with Dr. Rocchio's opinions one through six. Mr. Rapp's current accusations are unsupported and contradicted by the record. Mr. Rapp continued to pursue his acting career and has abandoned any claims of lost employment, further highlighting the absence of any significant impact that the allegations of abuse had on him. Mr. Rapp does not meet the DSM-5 diagnostic criteria for PTSD, and his alleged emotional distress and relationship "boundary issues" were likely caused by the significant traumatic events in his life, including multiple abusive relationships, not anything to do with Mr. Spacey. Evidence of Mr. Rapp's sexual activity and emotional instability predated the alleged incident with Mr. Spacey. Mr. Rapp's decision to publicly make these allegations in the midst of the #MeToo movement is consistent with his need for attention and narcissistic personality traits. His failure to mention these allegations to his therapists until speaking with Buzzfeed – and his express denial of any abuse only months before making his public allegations – are telling and inconsistent with his current claims.

In summary, as Mr. Rapp's account of the alleged incident lacks substantial credibility, as his account of the incident having a profound effect on him lacks evidence and corroboration, and given the absence of legitimate emotional, social, or vocational dysfunction, there is no psychiatric evidence that Mr. Rapp was ever traumatized or sexually abused by anything that Mr. Spacey did to him. Whether the alleged incident is completely fabricated, a false memory, or did actually occur, there is no evidence to suggest that this alleged incident caused Mr. Rapp to become afflicted with PTSD or incur emotional or psychological damages of any sort. Therefore,

---

[175] Report by Lisa M. Rocchio, PhD, dated 2/25/21

it is my opinion, to a reasonable degree of medical certainty, that Mr. Rapp has not suffered any emotional or psychological damages as a direct result of any contact that he might have had with Mr. Kevin Spacey.


Respectfully submitted,

*[signature]*

**Alexander Sasha Bardey, M.D.**
**FIFTH AVENUE FORENSICS**
Diplomate in Psychiatry, American Board of Psychiatry and Neurology
Diplomate in Forensic Psychiatry, American Board of Psychiatry and Neurology
Clinical Faculty, Department of Psychiatry, New York University Medical Center
Adjunct Assistant Professor, Department of Psychiatry and Behavioral Sciences
New York Medical College