```
UNITED STATES DISTRICT COURT                                    1
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
ANTHONY RAPP and C.D.,
                Civil Action No. 1:20-cv-09586(LAK)
                    Plaintiffs,
                - against -
KEVIN SPACEY FOWLER a/k/a KEVIN SPACEY,
                    Defendant.
------------------------------------------------ X
                    Zoom Deposition


                    January 26, 2022
                    11:03 a.m.


        EXAMINATION BEFORE TRIAL of the Expert
Witness, ALEXANDER BARDEY, M.D., pursuant to Order,
held on the above date and time, via
videoconference, taken by and before KRYSTINA
KORNAK FLORA, RPR, a Notary Public within and for
the State of New York.
```

(1)                - DR. ALEXANDER BARDEY -                159
(2)   result of that.
(3)        Q.   But trauma is subjective.  Right?  In
(4)   other words, is what happened to Mr. Rapp, as he
(5)   alleges, a 26-year-old man throwing him down --
(6)   picking him up, throwing him down on the bed,
(7)   getting on top of him, putting him in that
(8)   sexualized position when he was 14 years old, would
(9)   that be a competent-producing cause of PTSD?
(10)           MR. SCOLNICK:  Well, objection as to
(11)       the characterization of it as a sexualized
(12)       event.  Misstates the evidence.
(13)       A.   I would not characterize what
(14)   happened -- what he claims happened to him as a
(15)   sexualized event.  You know, in his descriptions to
(16)   me about what happened he made it seem as though --
(17)   he claimed that Mr. Spacey picked him up, was drunk,
(18)   and fell on top of him in a drunken state, did not
(19)   move, didn't say or do anything sexual, and that he
(20)   squirmed out.  So I don't necessarily see that as
(21)   being a sexualized assault.
(22)       Q.   Can you please, as specifically as
(23)   possible, point to any place in the record where
(24)   Mr. Rapp said that Mr. Spacey fell on him?
(25)       A.   That was during my conversation with

```
(1)                - DR. ALEXANDER BARDEY -                    160
(2)   him.
(3)        Q.    Was that a discrepancy between
(4)   everything else in the record and your conversation?
(5)        A.    I wouldn't so much call it a
(6)   discrepancy as a more precise description.  I think
(7)   it speaks to a different intent and situation.  If
(8)   someone carries someone and falls because they're
(9)   unsteady on their feet because they're drunk and
(10)  lands on top of them, as opposed to carefully
(11)  putting him down on a bed and then carefully
(12)  climbing on top of him, I think those describe very,
(13)  very different mental states.
(14)             For some reason you're completely out
(15)  of focus.
(16)       Q.    Might just be my face.  Well, we could
(17)  do better.  Maybe.
(18)       A.    Yeah, that's a little -- there we go.
(19)  Perfect.  Sorry about that.
(20)       Q.    Did you ask Mr. Rapp specifically
(21)  whether or not Mr. Spacey just fell in a drunken way
(22)  or whether he got on top of him volitionally?
(23)       A.    Yes.  I asked him that question and he
(24)  described Mr. Rapp picking him up and instantly
(25)  falling over him, you know, in his drunken state.
```

```
(1)                  - DR. ALEXANDER BARDEY -              211
(2)         A.   Well, again, the purpose of my
(3)    evaluation was not to determine whether Mr. Rapp was
(4)    lying or not, it was to determine whether he had
(5)    psychological damages.  So the fact --
(6)              MR. STEIGMAN:  Move to strike as
(7)         nonresponsive.
(8)         A.   I'm answering your question.
(9)         Q.   That would be nice.
(10)        A.   What I'm saying is that given the
(11)   absence of psychological damages, as I said in my
(12)   report, whether it happened or not does not make any
(13)   difference.
(14)        Q.   So try my question, because that was
(15)   not the answer.
(16)             MR. STEIGMAN:  And move to strike as
(17)        nonresponsive.
(18)        Q.   You brought up many times your belief
(19)   that Mr. Rapp is lying because he was jealous of
(20)   Barrowman and Spacey.  Do you recall saying that
(21)   today?
(22)        A.   I raised it as a possibility that he
(23)   could be lying.
(24)        Q.   If Mr. Spacey admitted he did this,
(25)   would that still be a reasonable possibility in your
```