UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANTHONY RAPP,

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 10-6-22

Plaintiff,

-against-                                                      20-cv-9586 (LAK)

KEVIN SPACEY FOWLER,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER ON
## DEFENDANT'S *IN LIMINE* MOTION NOS. 4 AND 5
## *(CORRECTED)*

LEWIS A. KAPLAN, *District Judge*.

Defendant has filed four new motions *in limine* entitled in part Nos. 2 through 5. A

previous memorandum disposed of Nos. 2 and 3. Dkt 282. This one disposes of Nos. 4 and 5.

Although the Court may expand on the bases for any or all of these pre-trial rulings at a later time,

these pending motions are disposed of as follows.

*Motion No. 4 [Dkt 259]*

Defendant seeks to preclude plaintiff from (1) introducing proposed deposition

testimony of Justin Dawes and Andrew Holtzman concerning two different alleged incidents said

to have involved inappropriate contact initiated by the defendant over 35 years ago, and (2)

"questioning witnesses about or referencing at trial any other alleged accusations of sexual

misconduct or sexual harassment against Mr. Fowler, including allegations by non-public accusers,

by C.D., by complainants to the London Metropolitan Police Force, and by the witnesses who

confidentially testified in [an] arbitration concerning *House of Cards.*"[1]

### *The Two Depositions*

In broad strokes, the testimony at issue may be summarized as follows: Dawes testified that defendant, when Dawes was 16 years of age,[2] placed defendant's hand on Dawes' leg and left it there for about 30 to 45 seconds. Holtzman testified that defendant, whom he had never met before, came into Holtzman's office over 40 years ago (when Holtzman was 27 years old), waited until Holtzman finished a phone call, grabbed Holtzman's crotch and lifted him onto a desk, whereupon the defendant began "grinding" and "gyrating" his erection into Holtzman for several seconds before "storm[ing]" out of the room when Holtzman objected. Neither witness has any personal knowledge concerning the alleged interaction between Mr. Rapp and defendant. The allegations of both are flatly denied by the defendant.

Evidence to show propensity in most circumstances is precluded by the Federal Rules of Evidence. In 1994, however, Congress enacted Rule 415, which created a limited exception from that principle. In a civil case involving a claim of sexual assault or child molestation, as those terms are defined in Rules 413(d) and 414(d), "evidence that the [defendant] committed any other sexual assault or child molestation" may be considered, subject in all cases to Rule 403.

As an initial matter, Rule 414(d) defines "child" as a person below the age of 14.

---

[1]

Dkt 260, at 24.

[2]

The age of consent in the state in which the alleged incident is said to have occurred was and remains 16.

3

This is not a claim of child molestation as defined in that rule, as Messrs. Rapp, Dawes, and Holtzman all claim to have been 14 or older when the alleged incidents said to have involved them are said to have occurred.  Rule 414(d) therefore has not been satisfied.

Rule 413(d) defines "sexual assault" as "a crime under federal law or under state law . . . involving" any of five categories of conduct, two of which are patently inapplicable here[3] and two others of which are of questionable applicability.[4]  The one warranting further discussion is Rule 413(d)(1), which defines as "sexual assault" "any conduct prohibited by 18 U.S.C. chapter 109A." Under that branch of the rule, the questions are (a) whether Mr. Rapp's claim against Mr. Fowler involves conduct prohibited by chapter 109A and, if so, (b) whether the Dawes and Holtzman incidents also involved such conduct.

Chapter 109A criminalizes various types of "sexual abuse" and "abusive sexual contact."   Those terms, however, are not used in a colloquial sense. They are defined in 18 U.S.C. §§ 2241 through 2243, and it is those definitions that control.  In addition, Section 2246 defines two additional terms, "sexual act" and "sexual contact,'" note of which must be taken in order properly to construe Sections 2241 through 2243.

Suffice it to say, for present purposes, that neither Mr. Rapp's claim in this case nor the alleged incidents involving Messrs. Dawes and Holtzman involved a "sexual act" as defined in

---

[3]

Fed. R. Evid. 413(d)(4)-(5).

[4]

*Id.* 413(d)(2)-(3).

Plaintiff's assumption that any crime characterized as sexual assault by state law qualifies is mistaken.  In order to constitute "sexual assault" for purposes of Rule 413(d), the conduct at issue must satisfy one of the five enumerated categories under that rule and, in addition, constitute a crime under either federal or state law.

4

Section 2246. In consequence, none of Sections 2241 through 2243, all of which focus on "sexual acts," has any *direct* bearing here. But Section 2244 criminalizes, among other things, knowingly engaging in "sexual contact" with another *if* "the sexual contact" would have violated any of Sections 2241 through 2243 and *if* "the sexual conduct [had] been a sexual act." And it here that the definition of "sexual contact" becomes important.

> "Sexual contact" is:
>
> "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."[5]

And one effect of this definition is to bring "sexual contact," as defined in Section 2246(3), within the Rule 413(d)(1) definition of "sexual assault" – provided that all of the other elements of at least one of Section 2244's predicates are satisfied. So that brings us to the question whether the testimony concerning the alleged Dawes and/or Holtzman incidents is evidence of an "other sexual assault."

The question is readily answered in the case of Mr. Dawes. He testified that he and Mr. Fowler were sitting on a sofa, chatting, when Mr. Fowler's "hand was on my leg . . . about two inches above my knee" and remained there for "maybe 30 to 45 seconds."[6] The incident, assuming it occurred, is not said to have involved any "touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks." It therefore was not a "sexual contact" within

---

[5]

18 U.S.C. § 2246(3).

[6]

Dawes Dep., Dec. 28, 2021, at 27:12-13, 28:6-10.

the meaning of Section 2246(3). It thus was not a "sexual contact" for purposes of chapter 109A and not proscribed by virtue of Section 2244. The Dawes testimony accordingly is not evidence of an "other sexual assault" within the meaning of Rule 415(a), regardless of any question of intent. It is not admissible under Rule 415(a).

Nor is the Dawes incident admissible under Rule 404(b). That rule emphatically precludes evidence of other crimes, wrongs or acts in a civil case for the purpose of showing "a person's character in order to show that on a particular occasion the person acted in accordance with the character" – in another word, propensity. Prior bad acts evidence "may" be admissible only "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." And even in such circumstances, it is limited by Rule 403.

Plaintiff here argues that the evidence of Mr. Fowler's hand on Mr. Dawes' knee for "maybe 30 or 45 seconds" on a different occasion is pertinent to whether Mr. Fowler's interaction with Mr. Rapp was motivated by Mr. Fowler's desire to gratify either his own or Mr. Rapp's sexual desire or to degrade or abuse Mr. Rapp or, alternatively, to corroborate Mr. Rapp's testimony concerning his encounter with the Mr. Fowler. The second of these arguments really amounts to saying that the evidence is offered precisely for the prohibited purpose of showing Mr. Fowler's character in order to show that he acted in accordance with that character on a different occasion -- is offered purely to show propensity. And the probative value of the first argument, if it has any, would be outweighed quite substantially by the risk that the jury would consider the evidence regarding Mr. Dawes purely or predominantly for the unfair, and prejudicial purpose foreclosed by Rule 404(b)(1).

Defendant's motion to preclude Mr. Dawes' testimony therefore is granted.

The Holtzman incident is another matter. If in fact Mr. Fowler grabbed Holtzman by his crotch and lifted him on to a desk, as Mr. Holtzman claims, the incident certainly involved "sexual contact." Accordingly, it is admissible under Rule 415. And given the stark difference in the character of Mr. Holtzman's claim as compared with that of Mr. Dawes, the Court is not persuaded that the Holtzman evidence would substantially outweigh the fact that Rule 415 expressly contemplates the receipt of propensity evidence in sexual assault cases in appropriate circumstances.

Defendant's motion to preclude Mr. Holtzman's testimony therefore is denied.

*Questioning and Comment Relating to Other Alleged Incidents and Rumors*

Defendant seeks an order precluding plaintiff from delving into certain matters about which prior orders of the Court precluded discovery. Specifically, he asks that plaintiff be precluded "from questioning witnesses about or referencing at trial any other alleged accusations of sexual misconduct or sexual harassment against Mr. Fowler, including allegations by non-public accusers, by C.D., by complainants to the London Metropolitan Police Force, and by the witnesses who confidentially testified in the arbitration concerning *House of Cards.*"[7] He points out that plaintiff has no admissible evidence concerning any of these matters and argues that the Court should confirm that its orders limited discovery in these respects will govern at trial.

Plaintiff's response is that he should have the right at trial to attempt to impeach Mr. Fowler's credibility if he testifies in certain ways as he is said to have done at his deposition.

---

7

Dkt 260, at 24.

As the Court explained in a prior opinion,[8] both Mr. Fowler and others with whom he may have had sexual or romantic relationships have important privacy interests that warrant some protection from boundless inquiry. Those interests are relevant on cross-examination. Moreover, Fed. R. Evid. 611(a) specifically empowers the trial court to exercise "reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment."

That said, the Court is in no position to make a definitive ruling in the abstract. Suffice it for present purposes to say that the limitations that the Court imposed on the deposition of Mr. Fowler in its December 13, 2021 order, unless otherwise ordered, will apply to his examination by the plaintiff's counsel at trial. Should counsel believe there is appropriate reason to depart from those limitations, they are welcome to apply to the Court outside the hearing of the jury and the Court will consider the matter.

*Motion No. 5 [Dkt 263]*

Defendant's final *in limine* motion seeks an order precluding a laundry list of types of evidence and arguments. Plaintiff opposes them only to the extent that defendant seeks to preclude plaintiff from testifying as to what he purportedly will do with any monetary recovery he may obtain from this case. And his point is straightforward. Defendant, he fears, will refer to the fact that plaintiff is seeking $40 million, including $30 million in punitive damages, in this case for the purpose of impugning plaintiff's credibility and motives. If defendant does so, plaintiff wishes

---

8

*Rapp v. Fowler,* No. 20-cv-9586, 2021 WL 5910288 (S.D.N.Y. Dec. 13, 2021).

8

to remain free to testify as to his intended use of any recovery, which the Court understands to be to support the "Me Too" movement.

Certainly it would be entirely unfair for defendant to attempt to depict Mr. Rapp as motivated by greed, rather than his obligation to testify truthfully, without permitting Mr. Rapp to answer such a portrayal. But the apparently intended answer, true or false, would not only deny greed. It would be an appeal, intentional or not, to juror sympathy based on a sociopolitical commitment of plaintiff that may be shared by many, including members of the jury.

The primary purpose of this lawsuit is to determine whether Mr. Fowler wronged Mr. Rapp and, if so, to provide reasonable monetary compensation for any injury suffered as a proximate consequence of any such action. That purpose underlies the fact that trial judges, in their discretion, may prohibit plaintiffs' counsel from making specific monetary demands for damages that are incapable of objective quantification, such as pain and suffering. Judges have that authority to avoid specific demands "anchoring" jurors to certain figures or orders of magnitude of appropriate damages based on counsel's demands or suggestions rather than the evidence and thus interfere with fair, evidence-based determinations by jurors.[9] Accordingly, in the interests of an entirely fair trial, the Court hereby exercises its discretion under *Consorti* to preclude plaintiff from demanding or suggesting any specific figure or range of figures for compensatory damages and to preclude defendant from referring to any amount or range of damages that plaintiff seeks or might seek or hope for in this case, either now or in the past, whether or not previously expressed.

To be sure, the fact that the plaintiff here seeks not only compensatory, but punitive

---

9

*Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996).

damages reflects the fact that this case has a secondary purpose. If the plaintiff convinces the jury that the legal standard that would permit a jury, in its discretion, to award punitive damages has been satisfied, issues of punishment, financial ability to pay, and others would arise. Reference to specific figures or ranges of figures, as well as to the parties' respective financial situations, then might be appropriate. But this Court's usual practice, which it will employ here, is to split or bifurcate the trial of the issue whether the plaintiff has proved the factual basis necessary to permit a jury to award punitive damages from the question of whether the jury wishes to do so and the amount, if any, it wishes to award. The first question will be put to the jury as part of the special verdict that will be taken in the liability-compensatory damages trial. If the plaintiff prevails on liability and recovers compensatory damages, the jury will be asked to determine whether the plaintiff has satisfied the factual prerequisites necessary for the recovery of punitive damages. If the jury finds that the plaintiff has done so, there would be a brief additional hearing before the same jury. A second verdict then would taken as to whether the jury awards punitive damages and, if so, the amount. If the jury finds that the plaintiff has not satisfied the standard, satisfaction of which is a prerequisite to punitive damages, there will be no consideration of punitive damages.

This procedure is well established in both the New York courts and the federal courts in this Circuit.[10] And to avoid introducing the issue of punitive damages prematurely, neither side shall make any reference in the presence of the jury to punitive damages or offer any evidence relating only to the issue of punitive damages until after there is a verdict in the liability-compensatory damage phase of the proceedings.

---

[10] *E.g., Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990); *Rupert v. Sellers,* 48 A.D.2d 265, 272 (4th Dept. 1975).

10

*Conclusion*

> Defendant's motion *in limine* No. 4 [Dkt 259] is granted to the extent that the Dawes deposition is precluded and the limitations that the Court imposed on the deposition of Mr. Fowler in its December 13, 2021 order, unless otherwise ordered, will apply to his examination by the plaintiff's counsel.  It is otherwise denied without prejudice to the extent indicated above.

> Defendant's motion *in limine* No. 5 [Dkt 263] is granted in all respects save that items C and H are disposed of as indicated above.

> SO ORDERED.

Dated:          October 5, 2022

Corrected:      October 6, 2022

_____
Lewis A. Kaplan
United States District Judge