1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                          <u>Not for Publication</u>
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANTHONY RAPP,

                              Plaintiff,

                    -against-                               20-cv-9586 (LAK)

KEVIN SPACEY FOWLER,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

       This case, familiarity with which is assumed, was tried to a jury which returned a special verdict to the effect that plaintiff had failed to prove that the defendant touched one or more of plaintiff's sexual or intimate parts.  Plaintiff thus failed to prove a fact that was a *sine qua non* to the timeliness of plaintiff's action, and the case therefore was dismissed.  During the course of the trial, the Court made two evidentiary rulings upon which it reserved the ability to elaborate at a later time.  This memorandum states the bases for those two rulings.

*The Dawes Testimony*

       Mr. Dawes, who did not appear at trial, testified by deposition that in 1988, when Mr. Dawes was 16 years of age, Mr. Spacey placed his hand on Mr. Dawes' leg "about two inches above [his] knee" for "maybe 30 to 45 seconds."  This allegedly took place while Messrs. Dawes and Spacey were sitting on a sofa and chatting.  On defendant's motion *in limine,* the Court held that this

testimony was not admissible under either Fed. R. Evid. 415(a) or 404(b). Dkt. 284, at 4-5.

Following Mr. Spacey's direct testimony, plaintiff sought leave to confront Mr. Spacey with "a small portion of Mr. Dawes' [deposition] testimony,"[1] ostensibly to impeach what counsel claimed were statements by Mr. Spacey, both on direct examination and in "an exhibit," that Mr. Spacey was "not interested in underage boys."[2] Tr. 964:24-965:2. The theory plaintiff offered for doing so was that he was entitled to confront Mr. Spacey with Mr. Dawes' deposition testimony as "impeachment by contradiction." *Id.* at 966:14-16 , 967:7-16, 986:4-10. The Court ultimately sustained Mr. Spacey's objection. *Id.* at 986:11.

In these circumstances, the request to confront Mr. Spacey with any of Mr. Dawes' deposition presented multiple problems. First, the testimony for which the plaintiff sought to impeach Mr. Spacey – a claim that Spacey has "never been attracted to underage people" – was not contradicted by Mr. Dawes' testimony. *Id.* at 964:24-965:2.[3] Plaintiff does not dispute that Mr.

---

[1]    Plaintiff did not specify what portion of Mr. Dawes' deposition he proposed to use. Nor did he make an offer of proof.

[2]    Although the record is far from clear, plaintiff perhaps sought also to confront Mr. Spacey with Mr.Dawes' deposition testimony that Mr. Spacey in 1988 had given Mr. Dawes two drinks, the implication being that this would have been inconsistent with Mr. Spacey's testimony about his having given up drinking either in 1986 or 1987. Tr., 965:17-966:2.

[3]    As an initial matter, this does not accurately describe the relevant portion of Mr. Spacey's testimony on direct, which was as follows:

> "Q. Did you think his allegations were true when you received this e-mail?
> A. I knew what wasn't true was that I would have had any sexual interest in Anthony Rapp or any child. That, I knew." Tr. at 932:7-10.

And while plaintiff's counsel contended that Mr. Spacey made the described statement in "an exhibit," it was debatable whether any such statement was attributable to Mr. Spacey, at least in a sense that would have made it a proper subject of impeachment. The "exhibit" to which plaintiff referred was DX VV, an email thread generated by Mr. Spacey's advisors and Mr. Spacey in the course their preparation and consideration, both in emails and in unrecorded

Dawes was, at all relevant times, above the legal age of consent in Connecticut, the state in which the event was said to have taken place. *See* Dkt. 249 at 6 n.3.[4]

Second, Mr. Dawes' deposition testimony was to the effect that Mr. Spacey invited Dawes and a friend, William Brown, to Mr. Spacey's residence. Mr. Dawes testified that there was gay pornography playing on the television set during their visit and, as noted, that Mr. Spacey put his hand on Mr. Dawes' leg. But Mr. Brown was deposed too. Mr. Brown recalled having gone to Mr. Spacey's apartment with Mr. Dawes and said he was with Mr. Dawes during their entire visit. But he recalled no pornography on the television, no touching of Mr. Dawes by Mr. Spacey, and no statement to him by Mr. Dawes that Mr. Spacey had touched Mr. Dawes. Thus, had plaintiff been permitted to "confront" Mr. Spacey with Mr. Dawes' deposition, it would have been quite likely that Mr. Spacey would have called Mr. Brown (who resides in Connecticut) as a witness or, if he were unwilling to testify voluntarily and resided outside subpoena range, offered his deposition. Thus, the trial would have been prolonged and confusion engendered for very little if any gain.

Finally, plaintiff's counsel were seeking to read parts of the testimony to Mr. Spacey

---

phone conversations, various possible public statements that Mr. Spacey might make in response to the then imminent publication of the *Buzzfeed* article. One of the drafts exchanged, in this particular instance a draft of a possible public statement set out in an email typed by Mr. Spacey, contained the statement that Mr. Spacey was "not interested in underage boys." DX VV, at KF000480. But the record is unclear as to whether that statement originated with or was adopted by Mr. Spacey as opposed to having been proposed by one of his advisors and merely typed by Mr. Spacey. Tr., at 935:16-937:5, 940:9-945:9. Indeed, neither plaintiff's nor defendant's counsel ever asked him. What is clear is that the quoted statement did not appear in the release that Mr. Spacey finally adopted and put out.

[4]

Neither was any of Dawes' deposition testimony inconsistent with Mr. Spacey's statements about having given up alcohol in 1986 or 1987. Whether Mr. Spacey served alcohol to Dawes and/or Dawes' friend does not bear directly on whether Mr. Spacey was drinking in 1988. And in any case, a closer inspection of the Dawes and Brown deposition transcripts reveals that neither claims to know whether Spacey consumed alcohol either at the restaurant or in his apartment that day.

and ask him, in one way or another, whether that testimony was true.  But that would have placed

Dawes' testimony – which the Court already had ruled inadmissible under Rule 415(a) [Dkt 284,

at 4-5] – in front of the jury.  While the Court in that event would have instructed that the questions

were not evidence, the circumstances would have been such that a substantial risk of unfair prejudice

would have remained.  That is particularly true in light of the fact that plaintiff and/or his counsel

violated on several occasions the Court's orders with respect to referring to allegations against Mr.

Spacey by others. *See, e.g.,* Tr. at 1257-58.

*Missing Witness Charge*

Plaintiff was not entitled to his missing witness charge regarding Mr. Spacey's

decision not to call Dr. Elizabeth Loftus at trial.  The request failed for several reasons.

First, Dr. Loftus's testimony was available to Plaintiff, who "reserve[d] the right to

call or read in deposition testimony of Elizabeth Loftus, PhD" in the March 4, 2022 Joint Pretrial

Order.  Indeed, it was the plaintiff who noticed Dr. Loftus's deposition.

Second, it is far from clear that Dr. Loftus's testimony would have been admissible

despite her impressive credentials.  *See R.D. v. Shohola, Inc.*, No. 3:16-CV-01056, 2019 WL

6053223, at \*10-\*13 (M.D. Pa. Nov. 15, 2019).  Even if it were, the substance of that testimony

concerned scientific principles about memory that plainly were not at issue in this case.

Third, plaintiff's requested charge contained – and indeed was premised upon –

multiple inaccuracies.  To begin with, there was no evidence that Mr. Spacey had retained Dr. Loftus

to testify on the issue of *plaintiff's* memory.  The Court disallowed plaintiff's attempt to cross-

examine Dr. Bardey about the subject matter Dr. Loftus's expertise solely to "set up either a missing

witness charge or an opportunity . . . to argue an inference should be drawn from a missing witness

5

irrespective of whether [the Court] give[s] a charge." *See* Tr. at 1199-1201. The Court expressly noted that those two purposes did "not exhaust the conceivable reasons why [plaintiff] might possibly wish to ask a question of Dr. Bardey on cross" and afforded plaintiff an opportunity to question further Dr. Bardey. *Id.* at 1201. Plaintiff declined to do so. *Id.*

Neither would it have been appropriate to give a proposed charge explaining that the "defendant has not offered any explanation for not calling Dr. Loftus." *See* Request to Charge No. 15 [Dkt 239]. As defendant noted in pretrial briefing, plaintiff's request to charge was, in essence, an attempt to penalize Mr. Spacey for not wasting the jury's time with a witness whose opinion plainly was not material and whose deposition plaintiff was free to offer if he genuinely believed it relevant. In this case, the only discernible effect of adding the missing witness charge would have been to confuse the issues.

Dated:        October 26, 2022

Lewis A. Kaplan
United States District Judge